**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All End-Payor Actions | MDL No. 2580<br><br>Lead Case No. 14 C 10150<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS
INTERIM CO-LEAD COUNSEL FOR THE END-PAYOR CLASS**

## TABLE OF CONTENTS

I.  ARGUMENT...................................................................................................................... 4

    A.  The Court should appoint Proposed Lead Counsel as interim counsel for the End-Payor
        Class. ........................................................................................................................... 4

        1.  Proposed Lead Counsel identified, investigated, and prepared the claims
            brought on behalf of the End-Payor Class.................................................. 5

        2.  Proposed Lead Counsel have a wealth of experience with the type of
            pharmaceutical antitrust claims at issue and a deep knowledge of the
            applicable law............................................................................................. 6

        3.  Proposed Lead Counsel have the resources necessary to achieve a positive
            result for the End-Payor Class.................................................................. 18

        4.  Other factors support the appointment of Proposed Lead Counsel......................... 18

II.  CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*FTC v. Actavis*, *Inc.*,
   133 S. Ct. 2223 (2013) ......................................................................................... 2, 5

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ................................................................................................. 6

*Walker v. Discover Fin. Servs.*,
   No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803 (N.D. Ill. May 26, 2011) ................................ 4

**Other Authorities**

Manual For Complex Litigation (Fourth) (2014) .......................................................... 4, 19

**Rules**

Fed. R. Civ. P. 23(g) ................................................................................................. 4

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiffs Wisconsin Masons' Health Care Fund, Pennsylvania Employees Benefit Trust Fund, and Fraternal Order of Police, Miami Lodge 20 Insurance Trust Fund ("Moving Plaintiffs" or "End-Payor[1] Plaintiffs") move this Court to enter an order appointing Kenneth A. Wexler of Wexler Wallace LLP ("Wexler Wallace"), Daniel E. Gustafson of Gustafson Gluek PLLC ("Gustafson Gluek"), Jeffrey L. Kodroff of Spector Roseman Kodroff & Willis, P.C. ("Spector Roseman"), and Jayne A. Goldstein of Pomerantz LLP ("Pomerantz") (collectively, "Proposed Lead Counsel") as interim co-lead counsel for the End-Payor Class.[2]

End-Payor Plaintiffs' claims stem from the suppression of generic competition for Opana ER through, *inter alia*, a reverse payment settlement of patent infringement litigation and other abuses of the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"). These claims thus arise at an intersection of patent rights, antitrust protections, and regulation and will involve complicated legal analyses of the Hatch-Waxman Act, which Moving Plaintiffs are uniquely suited to address. *See, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011, at *48 (D.N.J. Sept. 13, 2005).

---

[1] Moving Plaintiffs generally use the term "End-Payor" instead of the broader "Indirect Purchaser" to distinguish between purchasers at the end of the distribution chain, such as consumers and third-party payors, on the one hand, and retailers (who generally purchase indirectly but resell to other purchasers) on the other. Although all three types of actions that are frequently brought in this type of litigation—direct purchaser, indirect purchaser for resale, and end-payor actions—involve similar factual allegations, the groups suffer different injuries due to defendants' anticompetitive conduct and bring their claims under different statutes. Additionally, issues of "pass through" overcharges and antitrust damages can potentially put the interests of the three groups at odds with one another.

[2] Moving Plaintiffs are plaintiffs in the following three actions: *Wisconsin Masons' Health Care Fund v. Endo Health Solutions, Inc.*, No. 14-cv-4651; *Pennsylvania Employees Benefit Trust Fund v. Endo Health Solutions, Inc.*, No 14-cv-6171; *Fraternal Order of Police, Miami Lodge 20 Insurance Trust Fund v. Endo Health Solutions Inc.*, 14-cv-10153. Plaintiff's counsel in *International Union of Operating Engineers, Local 138 Welfare Fund v. Endo Health Solutions Inc.*, No. 14-cv-7742, also support Proposed Lead Counsel's bid for leadership. All actions brought on behalf of the putative class of end-payor purchasers are referred to collectively herein as the "End-Payor Actions."

"[M]ost if not all reverse payment settlement agreements arise in the context of pharmaceutical drug regulation, and specifically in the context of suits brought under statutory provisions allowing a generic drug manufacturer (seeking speedy marketing approval) to challenge the validity of a patent owned by an already-approved brand-name drug owner." *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2227 (2013) ("*Actavis*"). Those statutory provisions are found in the Hatch-Waxman Act, which is Congress's attempt to balance the consumer surplus realized from generic drug competition against the need for innovation that our patent laws encourage. As the Supreme Court made clear in *Actavis*, antitrust claims concerning reverse payment settlements in the pharmaceutical context—like the End-Payor Plaintiffs' claims—thus involve careful consideration of patent law policies, antitrust policies, and the features of the drug-regulatory framework. *See, e.g.*, *id.* at 2227-28 (describing "key features of the relevant drug-regulatory framework"); *id.* at 2231 ("[I]t would be incongruous to determine antitrust legality by measuring the settlement's anticompetitive effects solely against patent law policy, rather than by measuring them against procompetitive antitrust policies as well.").

Collectively, Proposed Lead Counsel have unparalleled experience in precisely this type of antitrust lawsuit. In light of this experience and the successful prosecution of this species of antitrust litigation for more than fifteen years, Proposed Lead Counsel are uniquely qualified to lead this case for the class of consumers and third-party payors they seek to represent.

As discussed below, Proposed Lead Counsel have already demonstrated the fulfillment *in this case* of each of the factors that should be considered when deciding who should be designated as interim counsel. Members of Proposed Lead Counsel:

- Began investigating the case beginning in May, *2013*.

- Began drafting the first End-Payor complaint in May, 2014.

2

- Filed the first End-Payor complaint on June 4, 2014.

- Filed the second End-Payor complaint—the first in this Court—on June 19, 2014.

- Reached out to counsel for the Direct Purchaser Plaintiffs, with whom they have worked for many years, to begin the process of coordinating pretrial efforts, including the formulation of a position on where the Judicial Panel on Multidistrict Litigation (the "Panel") should centralize these cases.

- Reached out to counsel for Defendant Endo, against whom Proposed Lead Counsel have litigated previously, including in similar Hatch-Waxman antitrust litigation, in an effort to reach agreement on pretrial/pre-MDL decision pleading issues.

- Worked with all counsel to reach an agreement that all cases should be transferred to this Court and advised the Panel of that agreement both before and at the hearing concerning centralization.

- In conjunction with counsel for the Direct Purchaser Plaintiffs, and based on experience in previous cases, reached agreement with the Defendants for the production of a limited—but nonetheless significant—set of documents before any responsive pleadings are due.[3]

- Negotiated agreement on the matters memorialized in the Joint Agenda filed on January 30, 2015 in anticipation of the February 17, 2015 Organizational Conference.

- Notified all counsel representing third-party payors of the types of documents Defendants are likely to seek in discovery in an effort to 1) facilitate timely production at the appropriate time, 2) aid in the preparation of Rule 26(a) disclosures, and 3) gather facts for purposes of the anticipated consolidated amended complaint.

- Engaged in negotiations concerning the protective order and expert stipulation, to which all parties are expected to agree.

In short, Proposed Lead Counsel not only developed, but also have been actively leading, this case on behalf of End-Payors from the get-go. They also have an unmatched understanding of Hatch-Waxman antitrust litigation. The Court should therefore allow Proposed Lead Counsel to continue to lead this litigation to its ultimate conclusion.

---

[3] Given the present lack of formal organization of interim counsel and their respect for the Rule 23(g) process, Proposed Lead Counsel made sure to secure the agreement of all End-Payor counsel on steps they were taking on behalf of the End-Payor Class.

# I.   ARGUMENT

**A.   The Court should appoint Proposed Lead Counsel as interim counsel for the End-Payor Class.**

Rule 23(g)(3) of the Federal Rules of Civil Procedure permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  "Few decisions by the court in complex litigation are as difficult and sensitive as the appointment of designated counsel."  MANUAL FOR COMPLEX LITIGATION (FOURTH) §10.224 (2014) ("MANUAL").  The "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  *Id.* § 21.11.

In deciding who is best suited to represent the putative Class at this stage of the proceedings, the key factors for the Court to consider are: (1) the work proposed interim lead counsel has performed in identifying or investigating the potential claims; (2) counsel's experience with claims of the type asserted in the action; (3) counsel's knowledge of applicable law; and (4) the resources counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).  *See also Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803, at *2 (N.D. Ill. May 26, 2011) (considerations governing the appointment of class counsel "apply equally to the designation of interim class counsel before certification").  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).

Consideration of these factors strongly supports the appointment of Proposed Lead Counsel as interim co-lead counsel in this case.

4

1. **Proposed Lead Counsel identified, investigated, and prepared the claims brought on behalf of the End-Payor Class.**

Proposed Lead Counsel have third-party payor clients that ask them to monitor events for the presence of potential wrongdoing and the possibility of recovering excessive costs paid in the provision of medical benefits to their plan participants or beneficiaries. While the Supreme Court was considering *Actavis*, members of Proposed Lead Counsel became aware of various settlements of patent litigation as ultimately alleged in the End-Payor complaints, reverse payment terms, and citizen petitions, and began investigating whether something untoward had occurred that adversely affected their clients. Beginning as early as May *2013*, counsel immersed themselves in the underlying facts alleged in the settled patent litigation, reviewed publicly-available documents and media coverage, and looked for any arguably procompetitive justifications for the conduct they were understanding had occurred.

Proposed Lead Counsel members also carefully researched developments in federal and state law to ensure that their state statutory claims and class definition accounted for any shifts in precedent. And, of course, counsel were immediately aware of the shift in landscape caused by *Actavis*, a decision that the Supreme Court issued in June, 2013. Proposed Lead Counsel were also attuned to how the law attendant to class certification was developing, both in the Supreme Court and through interpretive decisions of the various Circuits, including the Seventh Circuit.

Armed with the results of their thorough research and long-running investigatory efforts, Proposed Lead Counsel members Wexler Wallace and Pomerantz worked together to draft the first End-Payor complaint, which Pomerantz filed on behalf of the Fraternal Order of Police and the putative End-Payor Class on June 4, 2014—the first day *any* action was filed in this litigation. Gustafson Gluek and Wexler Wallace filed the second End-Payor complaint on June

19, 2014—the first day *any* action was filed in this District—and Spector Roseman and Wexler Wallace filed the fourth End-Payor complaint, again in this District, on August 11, 2014.

### 2. Proposed Lead Counsel have a wealth of experience with the type of pharmaceutical antitrust claims at issue and a deep knowledge of the applicable law.

"[A]ntitrust analysis must sensitively recognize and reflect the distinctive economic and legal setting of the regulated industry to which it applies." *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411-12 (2004) (internal quotation marks omitted). Accordingly, it is crucial that any appointed leadership team have experience with "generic suppression" antitrust claims, in particular, as litigation of the End-Payor Actions will require knowledge of, *inter alia*, the intricacies and peculiarities of the Hatch-Waxman Act, overlapping issues involving patents and Food and Drug Administration regulations, and economic characteristics unique to the pharmaceutical industry.

Proposed Lead Counsel have unparalleled experience not only in litigating antitrust class actions generally, but more importantly, in litigating pharmaceutical antitrust cases involving the interplay of patent and antitrust analyses in the context of the Hatch-Waxman Act. As evidenced by the descriptions below and the attached resumes, Proposed Lead Counsel have been on the forefront of the precise type of litigation that is pending here. They have held leadership positions in Hatch-Waxman cases since as early as 1997, and they have worked together on some of the most complex and groundbreaking pharmaceutical class action cases of the past two decades. Proposed Lead Counsel currently serve in leadership positions in *eleven* Hatch-Waxman cases, including matters involving reverse payment patent settlements, product hops, and the unlawful creation and extension of generic "bottlenecks," all of which are issues in this case.

6

It is precisely because of their exceptional experience and demonstrated success that Proposed Lead Counsel have been so frequently appointed to leadership positions in antitrust class actions involving the Hatch-Waxman Act. Proposed Lead Counsel know from this experience how to promote efficiencies amongst plaintiffs' counsel and have, in the past, issued guidelines intended to avoid duplication of effort and excessive billing. They have worked smoothly and collegially with counsel for the Direct Purchaser Plaintiffs, and their ability to draw from past experiences uniquely qualifies them as advocates for the proposed End-Payor Class. The combined experience of this leadership team will be a great help to the Court in streamlining the litigation and creating efficiencies for all parties.

### Kenneth A. Wexler – Wexler Wallace

Kenneth A. Wexler is the founder of Wexler Wallace, which is recognized nationally as a leading firm in complex class action and multidistrict litigation. Mr. Wexler has been practicing complex class action litigation for the better part of his thirty-four years as a lawyer, and he has been at the forefront of the fight against pharmaceutical fraud for some eighteen years. Beginning with *In re Synthroid Marketing Litigation*, No. 97-cv-06017, MDL No. 1182 (N.D. Ill. Aug. 26, 1997), Mr. Wexler helped pioneer "generic suppression" drug cases, and he has remained in the vanguard of that pursuit as the law has developed. Among other types of litigation, Mr. Wexler and Wexler Wallace have held leadership positions in a number of pharmaceutical overpricing and Hatch-Waxman antitrust cases:

- *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456, No. 01-cv-12257-PBS (D. Mass.) (pharmaceutical overpricing) (settlements with various defendants totaling approximately $350 million; Co-Lead Counsel);

- *New England Carpenters Health Benefits Fund v. First Databank, Inc. and McKesson Corp.*, No. 05-cv-11148 (D. Mass.) (pharmaceutical overpricing) ($350 million settlement, exclusive of non-monetary relief valued at hundreds of millions of dollars; Co-Lead Counsel);

- *District 37 Health and Securities Fraud v. Medi-Span*, No. 07-10988 (D. Mass. 2007) (published inflated pharmaceutical prices) (settlement resulted in a major change in pricing for prescription drugs; Co-Lead Counsel);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (generic suppression reverse payment antitrust case) (pending; Co-Lead Counsel);

- *In re Lipitor Antitrust Litig.*, No. 12-cv-02389 (D.N.J.) (generic suppression reverse payment and *Walker Process* antitrust case) (pending; Co-Lead Counsel);

- *In re Effexor XR Antitrust Litig.*, No. 11-cv-5590 (D.N.J.) (generic suppression reverse payment and *Walker Process* antitrust case) (pending; Plaintiffs' Executive Committee, with Spector Roseman);

- *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2433 (E.D. Pa.) (generic suppression reverse payment antitrust case) (pending; Co-Lead Counsel);

- *In re Nexium (Esomeprazole Antitrust Litig.*, 12-md-02409 (D. Mass.) ("*Nexium* litigation") (generic suppression reverse payment antitrust case) (pending; Co-Lead Counsel);

- *In re Wellbutrin SR Antitrust Litig.*, No. 04-cv-05898 (E.D. Pa.) (generic suppression sham litigation antitrust case) ($21.5 million settlement);

- *In re Flonase Antitrust Litig.*, No. 08-cv-3301 (E.D. Pa.) (generic suppression sham litigation antitrust case) ($46 million settlement; Plaintiffs' Executive Committee);

- *Nichols v. Smithkline Beecham Corp. ("Paxil")*, No. 00-cv-6222 (E.D. Pa.) (generic suppression sham litigation antitrust case) ($65 million settlement; Co-Lead Counsel);

- *In re Buspirone Antitrust Litig.*, No. 01-md-01413 (S.D.N.Y.) (generic suppression antitrust case) ($90 million settlement);

- *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317 (S.D. Fla.) (generic suppression antitrust case) (settlement in excess of $92 million);

- *In re Augmentin Antitrust Litig.*, No. 02-cv-445 (E.D. Va. Norfolk Div.) (generic suppression antitrust case) ($29 million settlement);

- *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, No. 01-cv-01295 (D.D.C.) (generic suppression antitrust case) ($135 million settlement);

- *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343 (E.D. Tenn.) (generic suppression antitrust case) (preliminary approval granted to class settlement, Plaintiffs' Executive Committee);

- *In re Prograf Antitrust Litig.*, No. 11-cv-11870 (D. Mass.) (generic suppression sham citizen petition antitrust case) (pending; Plaintiffs' Executive Committee); and

- *In re Suboxone (Buprenorphine Hydrochlorideand Naloxone) Antitrust Litig.*, No. 2:13-md-02445 (E.D. Pa.) (generic suppression product hop antitrust litigation ) (pending; Co-Lead Counsel).

Mr. Wexler was part of the team that recently tried the first post-*Actavis* reverse payment case, and he argued an appeal in that case wherein the First Circuit affirmed the District Court's decision certifying a class similar to the one alleged here. *Astrazeneca AB v. UFCW* (*In re Nexium Antitrust Litig.*), Nos. 14-1521, 14-1522, 2015 U.S. App. LEXIS 968 (1st Cir. Jan. 21, 2015).

Mr. Wexler has been designated an Illinois "Super Lawyer" for multiple years running, has taught Complex Litigation as an adjunct professor at Loyola University Chicago School of Law, and recently lectured on reverse payment patent settlements at the DePaul Health Law Institute. A number of the courts in which Mr. Wexler has practiced have recognized him and other attorneys at Wexler Wallace for their professional, vigorous advocacy on the behalf of class members and their experience in the prosecution of complex class action claims. More information can be found in the Wexler Wallace Firm Resume, attached hereto as Exhibit A.

### Daniel E. Gustafson – Gustafson Gluek

Gustafson Gluek is a Minneapolis law firm with a national practice, with emphasis in antitrust, consumer protection, and class action litigation. The six principal members of the firm have over one-hundred years of experience in these areas, as well as in the areas of intellectual property litigation involving patents, trademarks and trade dress, complex business litigation, and securities fraud litigation. Gustafson Gluek PLLC practices before state and federal courts throughout the country and works with and opposes some of the nation's largest companies and

9

law firms.  Gustafson Gluek's attorneys are consistently recognized for the quality of their legal work and their commitment to their clients and the community.

Mr. Gustafson, a founding member of Gustafson Gluek PLLC, has more than twenty-two years of experience litigating complex cases.  Mr. Gustafson has devoted his entire career to the prosecution of complex cases including antitrust, patent, consumer protection, and product liability matters in federal and state courts across the country.  Mr. Gustafson has served as counsel for both direct and end-payor purchaser plaintiffs in Hatch-Waxman cases.  To the extent there are underlying patent issues in this case, Mr. Gustafson brings a special expertise, as he has tried a number of intellectual property suits to verdict, including:

- *Synthes USA, LLC v. Spinal Kinetics*, No. 5:09-cv-01201 (N.D. Cal.) (co-lead trial counsel in patent infringement action relating to lumbar and cervical devices; case went to jury verdict);

- *KBA-Giori, North America, Inc. v. Muhlbauer, Inc.*, No. 2:08-cv-34 (E.D. Va.) ("KBA I") (co-lead trial counsel in patent infringement action relating to print inspection equipment; case went to jury verdict);

- *Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc.*, No. 2:07-cv-02175 (W.D. Tenn.) (co-lead trial counsel in patent infringement action relating total spinal disc replacement; case went to jury verdict);

- *J.D. Edwards World Solutions Company Arbitrations* (AAA) (arbitration co-lead trial counsel in three separate cases against J.D. Edwards raising fraud claims relating to software system).

Mr. Gustafson has been litigation co-counsel in thirteen other cases involving, *inter alia*, claims of patent infringement, unfair competition, and violations of the Lanham Act.

Mr. Gustafson has also been named Lead Counsel, Co-Lead Counsel, been appointed to a leadership committee, or had a significant role in many complex cases across the country, including:

- *In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig.*, No. 08-md-01905

(D. Minn.) (appointed lead counsel for consumer class; achieved $268 million settlement);

- *In re Medtronic, Inc. Implantable Defibrillators Products Liab. Litig.*, No. 05-md-1726 (D. Minn.) (appointed co-lead counsel for consumer class; achieved settlement of over $100 million);

- *Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-00048 (E.D.N.Y.) (appointed co-lead counsel for direct purchaser class; case ongoing, but settlements of over $120 million approved to date, with settlement of several hundred million more pending court approval);

- *Dryer v. NFL*, No. 09-cv-02182 (D. Minn.) (appointed plaintiffs' lead settlement counsel for class of former NFL players; resulted in establishment of a $42 million Common Good Fund and agency to license class members' publicity rights on their behalf);

- *In re National Arbitration Forum Litig.*, No. 10-md-02122 (D. Minn.) (appointed co-lead counsel and liaison counsel; obtained injunctive relief estimated to exceed $1 billion in value);

- *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (E.D.N.Y.) (appointed co-lead counsel for indirect purchaser class; case ongoing, but achieved $3.7 million in settlements to date);

- *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal. and multiple state court actions) (representing consumer purchasers of DRAM chips; $310 million settlement);

- *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (representing indirect purchasers in price-fixing case; $1.1 billion in settlements);

- *Infant Formula Antitrust Litig.*, MDL No. 878 (multiple state court actions; lead trial counsel for Wisconsin action; litigation ultimately settled for $125 million); and

- *Yarrington, et al. v. Solvay Pharmaceuticals, Inc.*, No. 09-cv-02261 (D. Minn.) (appointed co-lead counsel for consumer class; obtained settlement of $16.5 million, which allowed class members to recover 100% of their claimed damages).

In these, and other, leadership roles, in complex class action and mass tort proceedings, Gustafson Gluek, and Mr. Gustafson specifically, have demonstrated repeatedly that they have the skill and experience needed for, and the resources at the ready to devote to, this litigation. *See* Gustafson Gluek PLLP Firm Resume, attached hereto as Ex. B.

11

Mr. Gustafson also serves as an adjunct professor at the University of Minnesota Law School teaching a course on the "Fundamentals of Pretrial Litigation." In 2009, he helped found the Federal Bar Association's *Pro Se* Project, which coordinates volunteer representation for *pro se* litigants. From 2001-2014, Mr. Gustafson was designated by *Law & Politics* magazine as a Minnesota "Super Lawyer" in the fields of business litigation, class actions, and antitrust. He was also ranked in the Top 100 MN Super Lawyers in 2012, 2013, and 2014.

### Jeffrey L. Kodroff – Spector Roseman

For over twenty years, Mr. Kodroff has represented third-party payors and consumers in cases of this kind and other complex health care matters in which hundreds of millions of dollars were at stake. He is adept at understanding the relevant data, selecting necessary experts, and engaging in meaningful relationships with end-payor clients, who are keenly interested in cost recovery in the face of alleged wrongdoing that unnecessarily increases the cost of health care. Mr. Kodroff developed the pioneering cases against pharmaceutical companies for overcharging, and he is well-versed in the process most efficient to achieve success in this litigation.

Spector Roseman is a highly regarded and successful law firm with a nationwide practice that focuses on class actions and complex litigation, including antitrust, securities, and consumer protection claims. Spector Roseman attorneys have served as lead or co-lead counsel in numerous major antitrust and/or health care fraud class actions including the following cases summarized in the Spector Roseman Firm Resume (attached as Exhibit C):

- *New England Carpenters Health Benefits Fund v. First Databank, Inc. and McKesson Corp.*, No. 05-11148 (D. Mass.), in which plaintiffs settled their claims against McKesson for $350 million;

- *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.), in which $75 million was recovered on behalf of the indirect purchaser class and counsel devised an innovative new program to ensure that settlement moneys went into the hands of over 200,000 consumers;

12

- *In re TriCor Antitrust Litig.*, No. 05-360 (D. Del.), in which $65.7 million was recovered for a class of consumers and third-party payors (in addition to a separate substantial settlement amount recovered for certain insurance company opt-outs);

- *Stop & Shop Supermarket Co. v. SmithKline Beecham Cop.*, No. 03-4578 (E.D. Pa.), in which $100 million was recovered for the class;

- *District 37 Health and Securities Fraud v. Medi-Span*, No. 07-10988 (D. Mass. 2007), which resulted in a major change in pricing for prescription drugs;

- *Vista Healthplan, Inc. v. Cephalon*, No. 06-1797 (E.D. Pa.) (Provigil);

- *In re OSB Antitrust Litig.*, Master File No. 06-CV-00826 (E.D. Pa.), in which settlements with nine defendants exceeded $120 million;

- *In re Mercedes-Benz Antitrust Litig.*, Master File No. 99-4311 (D.N.J.), in which more than $17 million was recovered on behalf of the class;

- *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.), in which $120 million was recovered on behalf of the class; and

- *In re Linerboard Antitrust Litig.*, No. 98-5055 (E.D. Pa.), in which $202 million was recovered on behalf of the class.

Furthermore, Spector Roseman initiated the private investigation and filed the first cases challenging the misuse of the "Average Wholesale Price" in selling pharmaceutical products. *See In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430 (D. Mass.); *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.). These cases, pursued by a team of co-lead counsel that included Mr. Wexler, resulted in settlements of $150 million in *Lupron* and over $350 million in *AWP*.

Importantly, Spector Roseman has also been a leader in other health care class actions similar to this case. Spector Roseman has brought several cases challenging efforts by brand name pharmaceutical companies to delay generic drugs from entering the market. Spector Roseman's leadership in this type of Hatch-Waxman Act antitrust/patent litigation has resulted in the recovery of hundreds of millions of dollars on behalf of end-payors of drugs. Spector

13

Roseman has also been at the forefront of litigation relating to the illegal marketing activities of pharmaceutical companies, including massive off-label marketing schemes, as well as litigation regarding pharmacy benefit managers. Representative cases include:

- *In re Effexor XR Antitrust Litig.*, No. 11-cv-5590 (D.N.J.) (with Wexler Wallace);

- *In re DDAVP Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y.);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (Liaison Counsel);

- *Vista Healthplan Inc. v. Cephalon*, No. 06-1797 (E.D. Pa.) (Provigil);

- *In re Express Scripts, Inc., PBM Litig.*, Master Case No. 05-md-01672 (E.D. Mo.);

- *In re Ditropan XL Antitrust Litig.*, No. 06-1761-JSW (N.D. Cal.);

- *In re Lovenox Antitrust Litig.*, No. CV05-5598 (C.D. Cal.);

- *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litig.*, MDL No. 1699 (N.D. Cal.); and

- *In re Buspirone Antitrust Litig.* (S.D.N.Y.), which settled as to all claims by purchasers, state attorneys general, and the Federal Trade Commission, for $670 million.[4]

Spector Roseman's reputation for excellence has been recognized on numerous occasions by courts that have appointed the firm as lead counsel in major class actions. Judicial recognition regarding Spector Roseman speaks for itself: *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, C.A. No. 03-4578 (E.D. Pa. May 19, 2005) ("[h]ere, Plaintiffs' counsel are highly experienced in complex antitrust litigation, as evidenced by the attorney biographies filed with the Court. . . . They have obtained a significant settlement for the Class despite the complexity and difficulties of this case."); *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137-38 (D. Mass. 2004) ("Counsel are among the most experienced

---

[4] *See also In re SCOR Holding (Switzerland) AG Litig.*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (counsel for lead plaintiff in securities action, settlements of $145 million for nationwide class); *In re Parmalat Sec. Litig.*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) ($96.5 million settlement for nationwide class).

lawyers the national bar has to offer in the prosecution and defense of significant class actions.");
*In re OSB Antitrust Litig.*, Master File No. 06-CV-00826 (E.D. Pa.) (Judge Diamond's December
9, 2008 Order, page 5, approving Plaintiffs' request for attorneys' fees) ("Counsel have
represented their clients with consummate skill and efficiency, bringing this massive matter to
conclusion in less than three years . . . ."); *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL
2253418, at *4 (E.D. Pa. Aug. 3, 2007) (certifying class of direct purchaser plaintiffs) ("[a]t the
outset of this litigation, I appointed Spector Roseman & Kodroff, P.C. Lead Counsel for the
Direct Purchaser Plaintiffs. . . . To date, Lead . . . Counsel have vigorously and capably
prosecuted this extremely demanding litigation."); *In re Mercedes-Benz Antitrust Litig.*, Master
File No. 99-4311 (D.N.J.) (at May 18, 2009 hearing on distribution of settlement funds, Judge
Walls stated: "I think that this is a fitting resolution of what has been a very protracted course of
litigation. And I think overall you are to be commended."); *In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D 180, 185 (D.N.J. 2003) ("[p]laintiffs' counsel's conduct of this case to date has led to
a sophisticated and professional exposition of the issues to the Court").

### Jayne A. Goldstein – Pomerantz

Ms. Goldstein leads Pomerantz's antitrust group and serves as the resident partner of its
Florida office. Pomerantz is one of the oldest and most respected law firms in the United
States dedicated to representing investors, unions, consumers, and businesses. For almost fifty
years, Pomerantz has developed a national reputation for its vigorous, innovative, and successful
prosecution of complex antitrust class action cases. Pomerantz's antitrust practice has resulted in
the recovery of hundreds of millions, if not billions, of dollars for its individual and business
clients and the classes that they represent. *See* Pomerantz Firm Resume attached as Ex. D. Ms.
Goldstein concentrates her practice on representing plaintiffs in securities, antitrust, and

consumer class actions as well as other complex litigation, including litigation involving the type of Hatch-Waxman related pharmaceutical antitrust claims asserted here. Ms. Goldstein's background as a registered nurse provides her with a unique ability to understand complex scientific issues arising from the pharmacokinetics of the pharmaceuticals subject to Hatch-Waxman litigation, thereby facilitating the best possible presentation of these issues to the Court.

Ms. Goldstein has served as lead, co-lead, or class counsel in numerous class action cases throughout the United States and has significant experience in antitrust class actions and, in particular, cases dealing with Hatch-Waxman litigation and the application of antitrust law in the pharmaceutical and patent law fields. Ms. Goldstein's involvement in this area of healthcare antitrust class action litigation has been at the forefront of precedent setting cases. Specifically, Ms. Goldstein is interim co-lead counsel for the end-payor purchasers in *In re AndroGel Antitrust Litigation (No. II)*, (N.D. Ga.), which is the companion case to the groundbreaking *Actavis* case. Ms. Goldstein also served on the trial team of *In re Nexium Antitrust Litigation*, which was the first post-*Actavis* reverse payment case to go to trial. Ms. Goldstein served as part of a discovery team in *In re OSB Antitrust Litigation*, 06-CV-00826 (E.D. Pa.), which settled on the eve of trial for over $120 million. She also served as allocation counsel and a member of the discovery team in *McDonough v. Toys "R" Us, Inc., d/b/a Babies "R" Us*, 2:06-cv-0242, (E.D. Pa.). The following are examples of some of the pharmaceutical antitrust cases in which Ms. Goldstein has a significant role:

- *In re Nexium Antitrust Litig.*, MDL No. 2409 (D. Mass.) (co-lead counsel) (pending challenge to exclusion payment agreements used to suppress generic competition for Nexium);

- *In re AndroGel Antitrust Litig. II*, MDL No. 2084 (N.D. Ga.) (interim co-lead counsel) (pending challenge to exclusion payment agreements used to suppress generic competition for AndroGel);

16

- *In re Actos End-Payor Antitrust Litig.*, No. 1:13-cv-09244 (S.D.N.Y.) (interim co-lead counsel) (pending challenge to exclusion payment agreements used to suppress generic competition for ACTOS and ACTO*plus* met);

- *In re Solodyn (minocycline hydrochloride) Antitrust Litig.*, No. 14-md-02503 (D. Mass.) (executive committee) (pending challenge to exclusion payment agreements used to suppress generic competition for Solodyn);

- *In re Loestrin Antitrust Litig.*, No. 13-md-2472 (D.R.I.) (executive committee) (pending challenge to exclusion payment agreements used to suppress generic competition for Loestrin 24);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (executive committee) (pending challenge to exclusion payment agreements used to suppress generic competition for Niaspan); and

- *In re Lipitor Antitrust Litig.*, MDL No. 2332 (D.N.J.) (executive committee) (pending challenge to exclusion payment agreements used to suppress generic competition for Lipitor).

In addition, Ms. Goldstein supervised and had a role in her prior firm's participation in the following pharmaceutical antitrust cases:

- *In re Buspirone Antitrust Litig.*, No. 01-md-01413 (S.D.N.Y.) (chair third-party discovery);

- *Ryan-House v. GlaxoSmithKline, PLC*, No. 2:02-cv-00442 (E.D.Va.) (co-chair third-party discovery);

- *In re K-Dur Antitrust Litig.*, MDL No. 1419 (D.N.J.) (challenging exclusion payment agreements regarding the potassium supplement K-Dur); and

- *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.) (challenging scheme to mislead the U.S. Patent and Trademark Office and prosecute sham litigation against potential generic competitors).

Colleagues and private institutions have recognized Ms. Goldstein's skills and expertise as a class action lawyer. Ms. Goldstein has been selected to serve as co-chair for the Practicing Law Institute's Class Action Litigation Strategies Conference, held in New York, every year since 2010. In addition, Ms. Goldstein is a contributor to a book published by the American Bar Association, <u>The Road to Independence: 101 Women's Journeys to Starting Their Own Law</u>

Firms.  She has been a frequent speaker at public pension fund conferences and has been asked

to speak about recent Supreme Court opinions.

Last year, Ms. Goldstein provided a telephonic presentation to an audience of colleagues

concerning seminal Supreme Court decisions, and she has recently been invited to present in a

webinar concerning the recent *Actavis* decision.  On February 17, 2014, Ms. Goldstein made a

presentation to a conference of Taft-Hartley funds entitled "Pay for Delay – How Brand and

Generic Pharmaceutical Companies Collude to Keep Generics From Coming to Market."

### 3. Proposed Lead Counsel have the resources necessary to achieve a positive result for the End-Payor Class.

Proposed Lead Counsel stated in open court on February 17 that they are willing to fund

the End-Payor litigation.  As they have demonstrated in the similar complex class actions

outlined above, Proposed Lead Counsel are well-established and successful law firms that have

the financial resources necessary to pursue a case of this magnitude.  Proposed Lead Counsel's

resources are not merely financial, however; they also have the personnel and expertise

necessary to litigate this case effectively.  Proposed Lead Counsel have a strong team assigned to

prosecute this case, including numerous attorneys skilled in generic suppression cases.  This

expertise will be an obvious benefit to the End-Payor Class.

### 4. Other factors support the appointment of Proposed Lead Counsel.

Other factors support Proposed Lead Counsel's bid for leadership.

First, Proposed Lead Counsel have proven that they will work hard to establish

cooperative and productive working relationships that will help ensure the efficient prosecution

of this litigation.  As demonstrated above, Proposed Lead Counsel have all brought about

successful and appropriate resolutions to large complex litigation; cooperation with co-counsel is

key to achieving that level of success.  Proposed Lead Counsel have, moreover, already

demonstrated their ability to work cooperatively with others in this case. Mr. Wexler and Ms.
Goldstein coordinated with counsel in the End-Payor Actions, counsel for Direct Purchaser
Plaintiffs, and defense counsel to achieve consensus as to the most appropriate venue for the
consolidated actions. Pursuant to that agreement, all parties recommended that the Panel
centralize the Opana cases before this Court, where Mr. Gustafson and Mr. Wexler had the first-
filed complaint. Mr. Wexler also coordinated with counsel in the End-Payor Actions, Direct
Purchaser Plaintiffs' counsel, and defense counsel to prepare the agreed agenda for the February
17, 2015 Organization Conference and, more recently, to negotiate a protective order and expert
stipulation. The leadership team's ability and willingness to ensure meaningful coordination and
cooperation will help streamline this litigation and can also, as in similar cases, save the End-
Payor Class significant expense through cost-sharing and reduced duplication of effort.

Second, the proposed leadership team includes both local attorneys and attorneys located
outside the state; it also includes attorneys who filed their respective complaints in this District
and an attorney who filed initially outside of this District. All of these attorneys bring important
perspectives to leadership and will help ensure that all interests in the End-Payor Actions are
represented. *See* MANUAL § 10.224 (courts appointing class counsel should assess "whether
designated counsel fairly represent the various interests in the litigation").

## II.  CONCLUSION

For the reasons stated above, End-Payor Plaintiffs respectfully request that the Court

appoint Proposed Lead Counsel as interim co-lead counsel for the End-Payor Class.

Dated:  February 24, 2015                         Respectfully submitted,


                                                  By:   /s/ Kenneth A. Wexler
                                                        Kenneth A. Wexler
                                                        Thomas A. Doyle
                                                        Bethany R. Turke
                                                        Justin N. Boley
                                                        **WEXLER WALLACE LLP**
                                                        55 West Monroe Street, Suite 3300
                                                        Chicago, IL 60603
                                                        Phone: 312.346.2222
                                                        Fax: 312.346.0022
                                                        kaw@wexlerwallace.com
                                                        tad@wexlerwallace.com
                                                        brt@wexlerwallace.com
                                                        jnb@wexlerwallace.com

                                                        *Counsel for Wisconsin Masons' Health
                                                        Care Fund, Pennsylvania Employees
                                                        Benefit Trust Fund, and the Putative
                                                        End-Payor Class*


                                                        Daniel E. Gustafson
                                                        Jason S. Kilene
                                                        Sara J. Payne
                                                        **GUSTAFSON GLUEK PLLC**
                                                        120 South Sixth Street, Suite 2600
                                                        Minneapolis, MN 55402
                                                        Tel: 612-333-8844
                                                        Fax: 612-339-6622
                                                        dgustafson@gustafsongluek.com
                                                        jkilene@gustafsongluek.com
                                                        spayne@gustafsongluek.com

                                                        *Counsel for Wisconsin Masons'
                                                        Health Care Fund and the Putative
                                                        End-Payor Class*


                                                        Jeffrey L. Kodroff
                                                        John A. Macoretta
                                                        **SPECTOR ROSEMAN KODROFF &**

20

**WILLIS, P.C.**
1818 Market Street, 25th Floor
Philadelphia, PA 19103
Tel. (215) 496-0300
Fax: (215) 496-6611
jkodroff@srkw-law.com
jmacoretta@srkw-law.com

*Counsel for Pennsylvania Employees*
*Benefit Trust Fund and the Putative*
*End-Payor Class*


Jayne A. Goldstein
**POMERANTZ LLP**
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Tel. (954) 315-3454
jagoldstein@pomlaw.com

*Counsel for Fraternal Order of Police,*
*Miami Lodge 20, Insurance Trust*
*Fund and the Putative End-Payor*
*Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to send notification of such filing to all counsel of record.

/s/ Kenneth A. Wexler
Kenneth A. Wexler