## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | Lead Case No. 14 C 10150 |
| | MDL No. 2580 |
| THIS DOCUMENT RELATES TO:<br>All End-Payor Actions | Hon. Harry D. Leinenweber |
| Case Nos. 14 C 6171; 14 C 4651; 14 C 7742;<br>14 C 10153; 14 C 10154; 14 C 10289;<br>15 C 0269; 15 C 1473 | |

## MOTION FOR APPOINTMENT OF JOSEPH SAVERI LAW FIRM, INC. AS INTERIM LEAD CALIFORNIA COUNSEL FOR CALIFORNIA PLAINTIFFS

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g) and the Court's minute order dated February 17, 2015 (Dkt. 31), the undersigned counsel respectfully submit this Motion for an order appointing the Joseph Saveri Law Firm, Inc. ("JSLF")[1] as Interim Lead Counsel on behalf of California indirect purchaser Plaintiffs ("Interim Lead California Counsel").[2] The appointment of Interim Lead California Counsel is consistent with the criteria of Rule 23 and principles of sound case administration because California indirect purchasers are best served by separate counsel. If appointed to be part of the leadership structure, JSLF will work cooperatively and efficiently with all other court-appointed counsel, including counsel for plaintiffs asserting claims under other states' laws, as it has in numerous other cases. JSLF takes no position as to the

---

[1] A firm resume detailing the experience and qualifications of JSLF ("JSLF Firm Resume") is attached as Exhibit A to the Declaration of Joseph R. Saveri in Support of Application of Joseph Saveri Law Firm, Inc. for Appointment as Interim Lead California Counsel ("Saveri Decl."). Additional information regarding the firm's credentials, accolades, and expertise can be found at www.saverilawfirm.com.

[2] As described in more detail below, JSLF, together with Ralph B. Kalfayan of the law firm of Krause Kalfayan Benink & Slavens, represent Kim Mahaffay, a California resident who brings claims on behalf of a proposed class of California indirect purchaser end-payors. Mahaffay asserts claims only under California law, including under the Cartwright Act, California's antitrust law, Cal. Bus. & Prof Code § 16720, et seq., and the California Unfair Competition Law, Cal. Bus. & Prof Code § 17200, et seq.

appointment of Interim Lead Counsel for other indirect purchasers or with respect to claims under other indirect purchaser state law.[3] Nonetheless, JSLF is requesting is be appointed to part of the end-payor leadership structure to be designated as Interim Lead California Counsel.

Based in San Francisco, California, JSLF is uniquely qualified to serve as Interim Lead California Counsel. JSLF has an extensive track record of success in prosecuting and managing complex antitrust class actions, including federal and state antitrust litigation involving reverse payment agreements and pharmaceutical pricing generally. JSLF has the experience, qualifications, and resources to steer this litigation in an effective and efficient manner, for the benefit of all California Opana ER end-payors.

JSLF has unrivalled experience in prosecuting reverse payment cases brought under California law. Most notably, JSLF serves as Co-Lead Counsel in the California indirect purchaser litigation involving the antibiotic drug Cipro, *In re Cipro Cases I and II*, JCCP Nos. 4154, 4220 (San Diego County Sup. Ct.) ("*Cipro*"), which involves claims of an unlawful reverse payment agreement similar to those alleged here. That litigation has produced ground-breaking developments in the law, including seminal decisions on class certification and the standard applicable to reverse payment issues. JSLF recently negotiated a $74 million partial settlement with one defendant, one of the largest partial settlements of an indirect purchaser case in the country and the largest for the benefit of a class of California indirect purchasers. Most recently, the California Supreme Court scheduled oral arguments and is poised to interpret California antitrust law applicable to reverse payment cases such as this one, and in doing so, will become the first high court of any state to determine the legality of reverse payments under state law.

JSLF's antitrust experience and leadership in general, and performance in reverse payment litigation in particular, demonstrate JSLF's qualifications to serve as part of the court-appointed leadership. Furthermore, the appointment of lead counsel for California end-payors

---

[3] The undersigned notes that counsel for Direct Purchaser Plaintiffs have reached an agreement providing for two firms to serve as Interim Co-Lead Counsel and one firm as Interim Liaison Counsel. With respect to the End-Payor Plaintiffs, we note that it is logical to appoint a similar number of firms to leadership positions.

best achieves efficiency and economy while protecting the interests of California residents, who are sure to comprise a significant part of the class.[4] Appointing JSLF as Interim Lead California Counsel will ensure that California residents are adequately and fairly represented in this multi-district litigation.

Finally, JSLF has contacted Wexler Wallace LLP and Freed Kanner London & Millen LLC, counsel for other end-payor plaintiffs, and informed them of JSLF's intention to serve as Interim Lead California Counsel. *See* Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 17. JSLF has committed to working cooperatively with these firms, or any firm representing end-payor plaintiffs, in prosecuting this MDL. *Id.*

## II.    Background.

Opana ER is an oxymorphone hydrochloride tablet used to treat moderate and severe pain. Complaint ¶ 1. Plaintiff Kim Mahaffay alleges that defendants, who manufactured and sold the popular drug, conspired to inflate the prices of Opana ER by engaging in a scheme to settle baseless patent litigation claims to extend the branded manufacturer's dominance and to delay generic entry, to the detriment of California end-payors. *See id.* ¶¶ 2-5. This reverse payment scheme resulted in decreased availability of less expensive generic versions of Opana ER in California, and caused California end-payors to pay inflated prices for both branded and generic Opana ER tablets. *Id.* at ¶¶ 6-7.

In this Multi-district Litigation, certain plaintiffs have brought class action claims under the Sherman Act, 15 U.S.C. § 1. These plaintiffs are direct purchasers from the alleged conspirators and seek damages and other relief, solely under federal antitrust laws. Under the Supreme Court's decision in *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), consumers and other end-payors may not recover damages under federal antitrust law. Such indirect purchasers can maintain claims for damages under the laws of certain states which have authorized such claims. *California v. ARC America Corp.*, 490 U.S. 93, 100- 106 (1989) (the rule limiting federal antitrust

---

[4] Based on data from prior cases, purchasers in California can be expected to represent the largest segment of all states with respect to indirect purchaser antitrust claims. *See* Saveri Decl., Ex. D.

recoveries to direct purchasers does not prevent indirect purchasers from recovering damages under California law flowing from antitrust law violations).

Based on a substantial investigation of the underlying facts, which included a thorough review of documents filed with the SEC concerning the settlements at issue and the market for Opana ER, Plaintiff Mahaffay filed a class action in California state court for damages under the Cartwright Act, Cal Bus & Prof Code § 16720, et seq., and the California Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq. Mahaffay v. Impax Labs. Inc., et al.* (Alameda Sup. Ct. Dec. 22, 2014). Saveri Decl., ¶ 2. Mahaffay seeks to represent a class of all similarly situated California consumers and other end-payors who paid supracompetitive prices for Opana ER as a result of Defendants' alleged unlawful agreements. Following removal, the case was pending in the United States District Court for the Northern District of California. Subsequently, the Judicial Panel on Multidistrict Litigation ("JPML") entered an order transferring this case to the Northern District of Illinois for pretrial proceedings. *See* 28 U.S.C. §1407; *see also Lexecon Inc. v. Milberg Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (JPML required to remand all transferred cases to their original district courts for trial at or before the conclusion of the pretrial proceedings). *Mahaffay* has now been transferred to the Court for pretrial proceedings as part of the *In re Opana ER* multidistrict proceedings.

## III.   ARGUMENT

Federal Rule 23 provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The goal in appointing class counsel is to achieve "efficiency and economy without jeopardizing fairness to the parties." Manual for Complex Litigation (Fourth) § 10.221 (2004) ("Manual").

Courts "typically appoint a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic." *In re Zyprexa Prods. Liability Litig.*, 594 F.3d 113, 130 (2d Cir. 2010). Indeed, appointing seasoned lead counsel is one of the district court's key organizational tools. Manual §§ 10.224, 21.272. The "designation of interim [class] counsel clarifies responsibility

4

for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* § 21.11. Because lead counsel perform critical tasks and act on behalf of the class they represent throughout the entire litigation, it is the duty of the Court to appoint lead counsel who are fully capable and qualified to fairly and adequately represent the interests of the class. *See id.* §§ 10.22, 21.271, 21.272; *see also* Fed R. Civ. P. 23(g)(2).

Under Rule 23(g), [5] the factors that should be considered in appoint interim class counsel are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

As set forth below, the relevant criteria support appointing JSLF as Interim Lead California Counsel.

---

[5] A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Id.* While neither Rule 23(g) nor the Advisory Committee Notes explicitly set forth the standards to be applied in choosing *interim* class counsel, courts have held that the same factors that apply in choosing class counsel upon class certification apply in choosing interim class counsel. *See In re Air Cargo Shipping Servs. Antitrust Litig.,* 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."); *Parkinson v. Hyundai Motor Am.,* 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably the same factors apply, however.").

### A. JSLF Is Well Qualified and Has Substantial Experience Handling Complex Antitrust Class Actions Including Reverse Payments Claims.

JSLF is a civil litigation firm specializing in antitrust and complex civil and class action litigation in federal and state courts throughout the United States. *See* Saveri Decl., Ex. A. The firm was founded in 2012 by Joseph R. Saveri. *Id.* Since that time, JSLF has quickly developed a track record of success in prosecuting cases on behalf of its clients and performing the highest quality legal work. In the nearly three years of its existence, JSLF has produced settlements of over $670 million on behalf of its clients—all in connection with antitrust class actions. *Id.*

Joseph R. Saveri, the firm's founder, has more than 25 years of professional and leadership experience in litigating numerous antitrust claims on behalf of businesses, entrepreneurs, individuals, consumers, and public officials negatively affected by price-fixing, cartel behavior, monopolies and other anticompetitive business practices.[6] Saveri Decl., ¶ 7. Mr. Saveri has over 20 years of experience in prosecuting antitrust cases involving reverse payments and drug pricing. *Id.*

In 1992, Mr. Saveri joined the plaintiffs' firm that would eventually become Lieff, Cabraser, Heimann & Bernstein ("Lieff"), where he founded the firm's Antitrust and Intellectual Property Practice Group. Saveri Decl., ¶ 9. Mr. Saveri chaired this award-winning practice group[7] for his entire tenure at Lieff, and under his direction, it obtained over $4 billion in settlements including the prosecution of various novel and landmark antitrust class actions. *Id.*

Mr. Saveri's experience in pharmaceutical antitrust litigation dates back over twenty years. Mr. Saveri, while at the Lieff firm, served as plaintiffs' counsel in *In re Brand Name*

---

[6] Mr. Saveri is an AV peer-rated attorney who was recognized as a top-ranked attorney by Chambers USA in 2014, and has been recognized as a Northern California Super Lawyer from 2006 to 2014. Saveri Decl., Ex. A.

[7] In 2012, the Daily Journal selected Lieff's antitrust practice group as one of the top five practice groups of leading California law firms. Saveri Decl., Ex. A.

*Prescription Drugs Antitrust Litigation* ("*BNPD*"), No. 94 C 897, MDL No. 997 (N.D. Ill.) [8]
Saveri Decl., Ex. A. Mr. Saveri was appointed Lead Counsel in the related California indirect
purchaser action, *Pharmaceutical Cases I, II, and III*, J.C.C.P. Nos. 2969, 2971, 2972 (San
Francisco County Sup. Ct.), which produced settlements of over $170 million. *Id.*

Subsequently, in addition to successfully prosecuting a number of California indirect
purchaser actions involving a wide range of products and materials, Mr. Saveri served in a
leadership role in a number of cases involving drug prices. These included *In re Lupron Marketing
and Sales Practices Litigation* ("*Lupron*"), in which he served as Co-lead Counsel.[9] *Id.* Mr. Saveri
served as one of the Lead Counsel in the *Lupron* case, which raised RICO and other claims arising
from the sale and marketing of the drug Lupron and produced settlements of over $150 million.
*Id.* Mr. Saveri was also one the first to successfully prosecute reverse payment cases. *See In re
Buspirone Patent & Antitrust Litig.* ("*Buspirone*"), 185 F. Supp. 2d 363 (S.D.N.Y. 2002) (denying
defendants' motions to dismiss); *see also* Saveri Decl., Ex. A (*Buspirone* settled for $90 million
cash in November 2003). During that time, Mr. Saveri also filed the *Cipro* case in California state
court, where it has been pending for fifteen years.[10] Mr. Saveri also was one of trial counsel in the
Norvir antitrust litigation which challenged monopolization and other antitrust violations in
connection with the AIDS drug Norvir. Among other things, Mr. Saveri handled jury selection in
the matter. Mr. Saveri's objection during *voir dire* that a juror was improperly excluded on the
basis of sexual orientation produced a landmark decision, involving the application of the
Supreme Court's decision in *Batson v. Kentucky*, 106 S. Ct. 1712 (1986) to sexual orientation of
jurors. After reviewing the issue, the Ninth Circuit established that *Batson* applies in civil cases

---

[8] The *BNPD* case was assigned to Judge Kocoras. Michael Freed served as one of the court
appointed Co-Lead Counsel. The federal litigation produced settlements of over $723 million.
Saveri Ex. A. Mr. Saveri participated extensively in the *BNPD* litigation and participated on the
trial team.

[9] Mr. Saveri served with the law firms of Cohen Milstein Sellers & Toll; Hagens Berman; Hagens
Berman Sobol Shapiro LLP; and Spector Roseman Kodroff & Willis, P.C.

[10] The fact that the California Supreme Court is now set to resolve important issues of California law
after over 15 years of litigation stands as a testimony to the dogged determination and tenacity with
which JSLF prosecutes cases on behalf of its client.

and that a juror may not be stricken based on sexual orientation. *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471 (9th Cir. 2014).

Since founding JSLF in 2012, Mr. Saveri has served and continues to serve in leadership positions through the firm's appointment as sole Lead Counsel or Co-Lead Counsel in a number of significant antitrust class actions:

- ***In re Titanium Dioxide Antitrust Litigation*, Case No. 10-cv-00318-RDB (D. Md.):** JSLF served as Co-Lead Counsel, representing the titanium dioxide direct purchaser class in prosecuting their price-fixing claims against manufacturers. Mr. Saveri was responsible for directing and conducting all phases of the litigation and trial preparation. The case settled on the day before the start of trial, with the complete settlement ultimately totaling $163.5 million. Saveri Decl., Ex. 6.

- ***In re High-Tech Employee Antitrust Litigation*, Case No. ll-cv-2509 (N.D. Cal.):** JSLF currently serves as one of the Lead Counsel for a class of high-tech employees denied job opportunities by defendants' unlawful agreements to not recruit or hire each other's employees. Mr. Saveri's tireless prosecution of this case has been profiled throughout the media (Wall Street Journal, New York Times, Wired, CBS Evening News)[11] over the last four years. Mr. Saveri investigated and initiated the litigation and has been responsible for all phases of this litigation, in which many of the most powerful companies in Silicon Valley were named as defendants. In 2013, three defendants settled for $20 million, and in January 2015 the remaining defendants (Adobe, Apple, Google, and Intel) agreed to settle for $415 million. *Id.*

- ***In re Capacitors Antitrust Litigation,*** **Case No. 14-cv-03264 (N.D. Cal.):** JSLF has been appointed Interim Lead Class Counsel representing a class of direct purchasers of

---

[11] http://www.nytimes.com/2014/08/09/technology/settlement-rejected-in-silicon-valley-hiring-case.html?smid=fb-nytimes&WT.z_sma=TE_JRS_20140808&bicmp=AD&bicmlukp=WT; http://online.wsj.com/article/BT-CO-20131025-706737.html; http://www.wired.com/2015/01/apple-google-tech-giants-reach-415m-settlement-poaching-suit/; http://www.cbsnews.com/news/silicon-valley-software-engineers-accuse-google-apple-intel-adobe-of-collusion/.

capacitors. Plaintiffs allege that Defendants formed a cartel and conspired to fix, raise and stabilize prices in the multi-billion dollar market for aluminum, tantalum, and film capacitors. *Id.*

- ***In re Lidoderm Antitrust Litigation,*** **Case No. 14-md-02521 (N.D. Cal.)** JSLF serves as End-Payors' Interim Liaison Counsel in a proposed class action lawsuit brought by indirect purchasers of Lidoderm against Endo Pharmaceuticals Inc., Teikoku Seiyaku Co., Inc. and Actavis Inc. (as well as their respective subsidiaries). Plaintiffs claim that Defendants entered into an illegal reverse payment agreement whereby Endo provided nearly $100 million worth of branded Lidoderm to Actavis to keep generic lidocaine patches off the market. Endo further promised not to launch an authorized generic version of Lidoderm to compete with Actavis' generic version for seven and a half months. Plaintiffs allege that this anticompetitive scheme employed by Endo and Actavis amounted to an unlawful reverse payment that caused plaintiffs to pay higher prices for Lidoderm.

- ***Cung Le v. Zuffa, LLC ,*** **Case No. 5:14-cv-05484-EJD (N.D. Cal.)**. JSLF represents Elite Professional Mixed Martial Arts Fighters in a class action against Ultimate Fighting Championship (or "UFC"). Plaintiffs allege that UFC illegally acquired and maintained monopoly power which it used to prevent other promoters from competing for the Fighters' services, which artificially suppressed wages for the Fighters. Plaintiffs also allege that UFC used its monopoly power to expropriate some fighters' likenesses, further suppressing their wages

- ***Insulate SB, Inc. v. Advanced Finishing Systems,*** **Case No. 14-2561 (8th Cir.)**. JSLF serves as counsel for a proposed class of fast-set spray foam equipment purchasers who have alleged various federal and state antitrust violations against Graco Inc. and several of its distributors. The case is currently pending on appeal to the Eighth Circuit Court of Appeals. JSLF has been retained to handle the appeal.

- ***In re Cipro Cases I and II,*** **JCCP Nos. 4154, 4220 (San Diego County Sup. Ct.)**. Mr. Saveri serves as Co-Lead Counsel for consumers who purchased Cipro, a blockbuster

antibiotic drug. Plaintiffs allege that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to keep a generic version of the drug off the market that allowed Bayer to sell Cipro at inflated prices. In November 2013, the California Superior Court for the County of San Diego approved a $74 million class action settlement between Bayer and the Class. The case continues against the Generic drug companies and is currently on appeal to the California Supreme Court, where oral argument is set for March 3, 2015.

As demonstrated by the *Cipro* and *Lidoderm* cases, JSLF team members have significant experience litigating "reverse payment" antitrust schemes. Additionally, Counsel Joshua P. Davis is a thought-leader. Saveri Decl., Ex. B. Mr. Davis, in addition to his experience in private litigation, has published extensively on issues regarding antitrust law, including reverse payments, and class actions.[12]

### B. JSLF Is a Nationally Recognized Leader in "Reverse Payment" Litigation.

Particularly relevant to appointment as Interim Lead California Counsel, JSLF serves as one of the Court appointed Lead Counsel in the cases pending in California court, *Cipro*, which involve state law antitrust claims against pharmaceutical drug companies that entered a reverse payment settlement for the blockbuster antibiotic Cipro. Mr. Saveri has been responsible for all phases of the litigation, including researching the claims, drafting the complaint, briefing successful motions on the pleadings, creating a discovery plan, organizing discovery, successfully briefing and arguing motions for class certification at the trial court and in the court of appeals,[13] developing expert testimony and taking and defending expert depositions. Saveri Decl., ¶ 16. Most recently, JSLF obtained an order from the California Supreme Court granting review of the

---

[12] In addition to his fully tenured professorship at the University of San Francisco Law School, Mr. Davis serves as Counsel to JSLF and is actively engaged in its litigation of numerous cases. JSLF is co-sponsoring a symposium at the University of San Francisco Law School on February 27, 2015 entitled "After *Actavis*: Litigating Reverse Payment Cases." Saveri Decl., ¶ 15. Both Mr. Saveri and Mr. Davis are panelists at this event. *Id.*

[13] *In re Cipro Cases I and II*, 121 Cal. App. 4th 402 (2004) (affirming order certifying class of California indirect purchasers).

prior order granting summary judgment. Briefing of the appeal to the California Supreme Court and the oral argument is set for March 3, 2015. Saveri Decl., Ex. C. Recently, at the request of the California Supreme Court, the parties submitted supplemental briefing discussing the relevance of *FTC v. Actavis*, 570 U.S. \_, 133 S. Ct. 2223 (2013). This is of particular significance to the present litigation as the Opana ER end-payors' claims derive from state antitrust laws and will likely be impacted by the decision of the California Supreme Court in *Cipro*. Among other things, the court will be asked to decide whether claims for damages arising from illegal reverse payments like those at issue in this case will be judged under a *per se* standard or some other standard. Regardless of the ultimate resolution, the California Supreme Court's decision in *Cipro* will certainly be the most important post-*Actavis* decision to date with respect to indirect purchaser litigation in the United States and perhaps of more general application to the interpretation and application of *Actavis* as well.

Recently, the Court overseeing the *Lidoderm* JPML proceedings appointed JSLF to serve as Liaison Counsel. *In re Lidoderm Antitrust Litigation*, Case No. 14-md-02521-WHO (N.D. Cal.). The plaintiffs in *Lidoderm*, like Plaintiff here, allege state law antitrust claims against pharmaceutical companies that entered a reverse payment agreement. In particular, plaintiffs there allege, as Plaintiff alleges here, that the reverse payment includes various forms of compensation provided by the brand manufacturer to the generic manufacturer, including a promise not to launch an authorized generic during the generic's 180-day exclusivity period. *See United Food & Commer. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 2014 U.S. Dist. LEXIS 161069 (N.D. Cal. Nov. 17, 2014); Complaint ¶ 3. Plaintiffs recently defeated defendants' motion to dismiss in most meaningful respects. *Id.*

**C.      JSLF Is Committed to Prosecuting this Case on Behalf of End-Payors.**

JSLF is willing and available to commit to service as Lead Counsel. As noted above, JSLF has been appointed to serve as Lead Counsel in a number of significant antitrust cases, including multidistrict litigation and numerous class actions. From that experience, JSLF attorneys know the commitment of time, energy and finances necessary to prosecute such cases successfully and to provide the best available representation to the class. Saveri Decl., ¶ 3. The commitment of

sufficient resources has been repeatedly acknowledged by courts around the country that have appointed JSLF as lead counsel in complex litigation numerous times. Having successfully done so in numerous cases, JSLF fully appreciates the commitment necessary and is willing to make it here.

### D.    Ability to Work Cooperatively with Others.

JSLF's ability to work cooperatively with others is demonstrated by Mr. Saveri's long history of service in leadership and other roles in antitrust cases. It is further demonstrated by his work in connection with various committees in service to the court, the bar and other stakeholders. Saveri Decl., ¶¶ 4-5.

Over 25 years, Mr. Saveri has served as part of dozens of teams prosecuting antitrust class actions and other complex cases. Saveri Decl., ¶ 4. Mr. Saveri has served both as a court-appointed leader of such efforts, as well as a valued member of the teams operating under the leadership of others, including numerous collaborations with many of the firms that have appeared as plaintiffs' counsel in this case. *Id.*

Mr. Saveri has investigated and filed numerous complex antitrust cases, organized the litigation, set strategy, organized teams of lawyers, and taken a personal role in leading and performing all major tasks in cases involving global price-fixing cartels, reverse payment cases, monopolization cases and other complex litigation matters. Saveri Decl. ¶ 4 This has included all phases of litigation, including factual and economic analysis of market conditions and pricing practices, drafting of pleadings, addressing issues raised to the sufficiency of the pleadings under *Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007), organizing electronic discovery, creating a discovery plan, administering and directing on-line review of documents which requires coordination of dozens of lawyers fluent in English and foreign languages, propounding written discovery, taking and defending percipient and expert witness depositions, organizing the factual record, briefing and arguing summary judgment, trial and appellate work. *Id.* Mr. Saveri has not only directed the work of others with respect to each of those tasks, but he has also performed them himself—to the highest professional standards, as is demonstrated by his various accolades. *Id.*, ¶¶ 10-12.

### E. Appointing JSLF as Interim Lead California Counsel Will Best Achieve Efficiency and Economy.

There are many options for leadership structures. MANUAL § 10.221 ("One attorney or several may serve as liaison, lead, and trial counsel."). In determining the "types of appointments and assignments of responsibilities," the "most important [factor] is achieving efficiency and economy without jeopardizing fairness to the parties." *Id.*

It is important that the California end-payors are represented by counsel with particular expertise in California law and undivided loyalty to them. As noted above, there is no firm with as extensive a track record of successful prosecution of California antitrust and unfair competition claims involving drug pricing and the pharmaceutical industry as JSLF. JSLF is the "applicant best able" to represent the interests of the California class. *See* Fed. R. Civ. Pro. 23(g)(2).

California end-payors are uniquely situated. As the most populous state in the union, California end-payors will assuredly represent a significant portion of the class members in this case. As an example of California's purchasing power, in *Cipro*, California end-payor purchases represented 11.2% of nationwide sales and 20.3% of sales within in the indirect purchaser states, as is reflected in documents submitted to a San Diego state court related to a partial settlement with Bayer. Saveri Decl., Ex. D. Opana ER, a drug of general and widespread distribution, can be expected to follow a similar distribution along state lines. Moreover, as of December 2013, "California had the greatest number of uninsured residents of any state, seven million." Saveri Decl., Ex. E. According to data compiled by the U.S. Census Bureau for the Bureau of Labor Statistics, during most of the proposed class period over 20% of Californians were uninsured (greater than the national average of 15%), and would have paid cash for Opana ER, making it likely that California will play an even larger role in the class. *Id.*

Historically, California has been at the forefront of the development of indirect purchaser antitrust litigation since the Supreme Court's decision in *Illinois Brick. See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 763 (2010) ("unlike federal law, [California] state law permits indirect purchasers as well as direct purchasers to sue"); *Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 15, 20 (1984) (California's 1978 amendment to section 16750 of California Business &

Professions Code "in effect incorporates into the Cartwright Act the view of the dissenting opinion" in *Illinois Brick* that "indirect purchasers are persons 'injured' by illegal overcharges passed on to them in the chain of distribution"). Indeed, Mr. Saveri has prosecuted such cases for over 25 years and has played a significant role in the advancement of the law in this area. In the course of this work, in large part due to the work of Mr. Saveri, California law has led the way with respect to indirect purchaser antitrust litigation. This trend will likely continue in the future.

As noted above, Mr. Saveri is currently handling the *Cipro* cases, set for argument in the California Supreme Court on March 3, 2015, and will likely be the most significant decision in this area since *Actavis. See* https://www.law.stanford.edu/news/california-top-court-to-review-cipros-pay-for-delay-agreements-antitrust. At this juncture, it is possible—if not likely—that the California Supreme Court will enunciate a standard to apply to such claims under California law. As the pronouncement of the highest court of California, such interpretation will be binding with respect to the California claims.[14] At a minimum, the California class should be represented by counsel with undivided loyalty, and the unrivalled combination of expertise with respect to the development and establishment of California law and successful prosecution of antitrust class actions in federal and state courts throughout the United States.

The undersigned counsel respectfully submit that appointing a single experienced and highly qualified firm as counsel for California end-payors will best achieve efficiency, as JSLF's expertise in California law and experience in prosecuting antitrust class action litigation uniquely position JSLF to best serve the interests of Californian end-payors.

F.    **JSLF has Informed Other Firms of Their Intention to Serve as Interim Lead California Counsel.**

JSLF has made its intention to serve as counsel for California claims known to counsel for other Plaintiffs, including the Wexler Wallace and Freed Kanner firms. Saveri Decl., ¶.17. JSLF has requested that it be included as part of the leadership structure for this MDL as Interim Lead

---

[14] The decision will certainly be informative with respect to the interpretation of the indirect purchaser laws of other states as well.

California Counsel, and has given assurance, consistent with past practice, that JSLF will work cooperatively with counsel for all end-payor plaintiffs to prosecute this MDL. *Id.*

## IV.    CONCLUSION

For the above reasons, the undersigned counsel request that the Court appoint JSLF to serve on the leadership structure of this MDL as Interim Lead California Counsel.

Dated: February 24, 2015

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:    *Joseph R. Saveri*
          Joseph R. Saveri

Joseph R. Saveri (*Pro Hac Vice* Application Pending)
Joshua P. Davis (*Pro Hac Vice* Application Pending)
Matthew S. Weiler (*Pro Hac Vice* Application Pending)
Ryan J. McEwan (*Pro Hac Vice* Application Pending)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
          jdavis@saverilawfirm.com
          mweiler@saverilawfirm.com
          rmcewan@saverilawfirm.com

Ralph B. Kalfayan (*Pro Hac Vice* Pending)
KRAUSE, KALFAYAN, BENINK & SLAVENS
550 West C Street, Suite 530
San Diego, California 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
Email: rkalfayan@kkbs-law.com

*Attorneys for Individual and Representative Plaintiff Kim Mahaffay*