**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All End-Payor Actions | MDL No. 2580<br><br>Lead Case No. 14 C 10150<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LOUISIANA
HEALTH INSURANCE INDEMNITY COMPANY'S MOTION TO APPOINT
INTERIM CO-LEAD COUNSEL FOR THE END-PAYOR CLASS**

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiff Louisiana Health Service and Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana ("BCBSLA") moves this Court to enter an order appointing James R. Dugan, II of The Dugan Law Firm, APLC as Interim Co-Lead Counsel for the End-Payor Class (*i.e.* consumers and third-party payors, such as insurers and health benefit funds) ("End-Payor Class"). End-Payor Plaintiffs allege that Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Penwest Pharmaceuticals Co. and Impax Laboratories Inc. (collectively, "Defendants") engaged in an unlawful scheme to unreasonably delay entry of generic versions of the drug Opana ER and seek redress for injuries suffered as a result of Defendants' unlawful anticompetitive conduct.

Currently, there are twelve putative class actions related to the conduct described above, three brought by direct purchasers of Opana ER and eight brought by end-payors. On December 13, 2014, the Judicial Panel on Multidistrict Litigation ("JPMDL") issued a Transfer Order centralizing the related actions in this Court. Subsequently on December 23rd, the JPMDL issued a Conditional Transfer Order ("CTO") transferring the BCBSLA action to this District. On

January 9, 2015, this Court issued an Order scheduling an organizational conference for February 17th and requested suggestions on a method for establishing lead or liaison counsel. (ECF No. 4). On January 30, 2015, the parties filed a joint proposed agenda which included a proposed method for selecting lead and liaison counsel for the End-Payor Class should an agreement amongst counsel not be reached. (ECF No. 21). Following the February 17, 2015 hearing, the Court entered a minute order that, among other things, set a briefing schedule for organization and management of the case. (ECF No. 31).

Mr. Dugan currently serves as lead counsel for the named End-Payor Plaintiff BCBSLA which is the only nationwide health care plan to file a complaint in this action. BCBSLA provides health benefits and prescription drug coverage to millions of members in all 50 states and has the greatest economic interest of any named end-payor plaintiff in the prosecution of this action. BCBSLA respectfully suggests that counsel for plaintiffs with the greatest economic damages have a heightened interest in the case and should be appointed as lead counsel, a practice that is common in large securities class actions; however, BCBSLA supports a multiple member firm co-lead counsel structure that will allow for a more effective and efficient management of the end-payor actions. This structure would not be out of the ordinary as demonstrated in the *In Re: Effexor XR Antitrust Litigation*, No. 3:11-cv-5590 (D.N.J), where Judge Pisano presided and appointed a six person executive committee of which Mr. Dugan and other counsel in this MDL also serve.

Furthermore, BCBSLA respectfully suggests that an effective leadership team should encompass representation from the various geographic regions and The Dugan Law Firm is the only law firm representing the South. At present, there are four proposed leadership structures comprised of the law firms of Wexler Wallace, Gustafson Gluek, Spector Roseman and

Pomerantz ("Wexler Group"), Freed Kanner and Labaton Sucharow ("Kanner Group"), Joseph R. Saveri Firm ("Saveri"), and The Dugan Law Firm. BCBSLA respectfully submits that a four member regional firm co-lead counsel structure with representation from each group would serve the best interest of the End-Payor Class and ensure the most effective, fair and adequate representation of all parties involved.

BCBSLA respectfully submits that its counsel, Mr. Dugan of The Dugan Law Firm ("DLF") is best qualified to assume the role of Interim Co-Lead Counsel for the End-Payor Class. Mr. Dugan will best serve the interest of the class by prosecuting their claims most efficiently and effectively. As set forth below, Mr. Dugan has assumed leadership roles in litigating complex antitrust class actions and has a proven track record of success in representing the interests of end-payors in healthcare matters, including many pharmaceutical and generic suppression cases similar to this litigation.

## ARGUMENT

As the Court is well aware, multidistrict litigation is extremely complex, involving extensive discovery, scores of depositions, intricate issues of fact and law, and substantial damages. Coordination and effective leadership is necessary for the efficient advancement of the case. In appointing a leadership committee, the court must ensure it chooses seasoned lead counsel who are "qualified and responsive" and who will "fairly and adequately represent all of the parties on their side." Manual for Complex Litigation § 10.222 (4th ed. 2004).

District courts have "broad discretion" in managing multidistrict litigation, including "appoint[ment of] lead counsel . . . to minimize expense to all litigants and to provide judicial efficiency." *In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). Where, as here, multiple cases are pending, "appointment of interim counsel is

necessary to protect the interests of class members." *Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006); *see also, In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006). "The ultimate goal is that the district court to which pretrial proceedings in multi-district litigation have been transferred 'promote the just and efficient conduct of such actions.'" *Showa*, 953 F.2d at 165 (*quoting* 28 U.S.C. § 1407(a) (1988)).

With respect to appointment of lead counsel, a court should consider "whether designated counsel fairly represent the various interests in the litigation." Manual § 10.224. Because "[i]nterim class counsel will also be acting on behalf of other attorneys and those other attorneys' clients in the role of lead counsel or liaison counsel," "[u]ltimately, the court's goal is achieving efficiency and economy without jeopardizing fairness to the parties." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57-58. Courts regularly appoint multiple firms to serve as co-lead counsel. *See, e.g.*, *id.* at 58-59 (appointing four law firms as co-lead counsel); *In re Korean Ramen Direct Purchaser Antitrust Litig.*, No. 3:13-cv-04148-WHO (N.D. Cal.), Dkt. No. 30 (Feb. 20, 2014) (appointing two lead counsel); and *Four In One Co., Inc. v. SK Foods, L.P.*, No. 2:08-CV-03017-MCE EFB, 2009 WL 747160, at *1, *3 (E.D. Cal. Mar. 19, 2009) (appointing two firms). *See also* Manual § 10.221 ("One attorney or several may serve as liaison, lead, and trial counsel.").

While an agreement among the various attorneys on the appointment of lead counsel outside the court – "private ordering" – can save the court time, "the judge still has a fiduciary duty to the class and to safeguard their interests," and courts should invite submissions from all counsel and conduct an independent review. Herbert Newberg & Alba Conte, *Newberg on Class Actions* (5th ed.) ("*Newberg*"), § 10:11, *citing* Manual, § 10.224. "Deferring to proposals by

4

counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road ..." Manual § 10.224.

The Federal Rules of Civil Procedure recognize the importance of appointing lead counsel to act on behalf of a putative class by expressly granting courts the power to appoint interim class counsel and Rule 23(g) identifies four factors to be considered in selecting class counsel. The Court should consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-iv)). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The Dugan Law Firm and Mr. Dugan have a long history of zealously, efficiently and effectively leading end-payor actions to advance the best interest of the class. Mr. Dugan has a proven track record of working cooperatively and productively with other end-payor co-counsel, counsel for direct purchasers, and defense counsel. As set out in detail below, Mr. Dugan satisfies all of the criteria for an appointment as Interim Co-Lead Class Counsel.

### A. The Dugan Law Firm Has Done Work Necessary to Investigate and Identify Potential Claims

Rule 23 requires a qualitative assessment of the work performed by counsel and the knowledge, skill and experience of counsel in the area of law at issue. Quality, not speed, should be paramount when evaluating counsel's work.[1]

---

[1] "Whether someone was 'first to file' by itself has little to do with the best qualified to lead the case, and does not satisfy the requirements of Rule 23(g). To hold otherwise would further encourage a 'rush to the courthouse.'" *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006).

5

DLF devotes resources and dedicated lawyers to this practice, gaining their expertise in pharmaceutical litigation and in working for their client BCBSLA, which will benefit members of the class. Mr. Dugan has a longstanding relationship with BCBSLA and has conferred with them on this lawsuit and other similar lawsuits numerous times, working through questions of in-house counsel and providing advice and analysis in legal memoranda.

On November 17, 2014, DLF filed a complaint on behalf of BCBSLA and the proposed End-Payor Class in the Middle District of Louisiana. Prior to filing, DLF meticulously evaluated BCBSLA's claims, conducted a robust investigation into the factual underpinnings, carefully analyzed the merits of the claims, and weighed all potential alternatives. In addition to investigating and confirming all underlying facts, DLF conducted extensive research into the potential antitrust and state claims asserted against Defendants. This factor weighs in favor of appointing Mr. Dugan and DLF as Interim Co-Lead Class Counsel.

> **B.** *Appointment of Mr. Dugan as Interim Co-Lead Counsel Will Ensure the Most Efficient, Fair and Adequate Representation of the End-Payor Class*

Mr. Dugan and his firm have experience prosecuting antitrust claims on behalf of consumers and third-party payors. As reflected in his resume, Mr. Dugan has experience in a wide variety of complex class action litigation matters and has served on leadership committees for a number of large pharmaceutical antitrust cases.[2] As stated *supra,* Mr. Dugan currently serves as lead counsel for the only nationwide health care plan to file a complaint in this action. BCBSLA provides health benefits and prescription drug coverage to millions of members and is uniquely situated to prosecute this action because it has members in all 50 states. It also has the greatest economic interest of any named end-payor plaintiff in the prosecution of this action.

---

[2] Exhibit A – The Dugan Law Firm Resume.

BCBSLA's membership in all 50 states and its purchases during the proposed Class Period provide the broadest standing for recoveries of end-payors for antitrust violations. *In re Flonase Antitrust Litig.*, No. 08-cv-03301-ABB (E.D. Pa.) (Dkt. Nos. 436–437) (June 18, 2012) (denying certification of health and welfare funds' proposed multistate class; limiting class coverage to states where purchases were made). The Taft-Hartley welfare fund and other end-payor plaintiffs before the Court likely do not have purchases in as many of the pleaded "indirect purchaser" states. Presently, BCBSLA has expenditures in excess of $3 million for Opana ER and has provided reimbursement in over twenty-five states including but not limited to Louisiana, Alabama, Arkansas, Arizona, California, Florida, Georgia, Illinois, Kansas, Massachusetts, Minnesota, Missouri, Mississippi, North Carolina, New York, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Virginia, Washington and elsewhere.

Recently, courts have held that selection of counsel by the plaintiff with the "greatest economic interest" is a "highly relevant" factor in selecting interim lead counsel. *See In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262, 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011) (Buchwald, J.) (finding the selection of counsel by the plaintiff with the "greatest economic interest" to be a "highly relevant" factor in selecting interim lead class counsel). While this case in not governed by the Private Securities Litigation Reform Act of 1995, where the largest economic impact is often dispositive of the lead counsel selection, courts presiding over other types of class actions have endorsed Congress' rationale for focusing on the magnitude of the named plaintiff's claim: "that large [plaintiffs] would do a better job at counsel selection, retention, and monitoring than judges have traditionally done . . . ." *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001). The same factors weigh in favor of recognizing BCBSLA's choice and support for Mr. Dugan and DLF.

7

### C. DLF Has the Resources and is Committed to Prosecuting this Matter and Will Work Cooperatively with Other Counsel

Mr. Dugan and his firm possess, and will devote, the resources necessary to prosecute this litigation on behalf of the named plaintiffs and putative End-Payor Class. BCBSLA recognizes that firms representing other end-payor plaintiffs in this case are experienced in these matters and Mr. Dugan has worked with, and will continue to work with, other counsel in this litigation. Currently, there are four proposed leadership structures comprised of the law firms of Wexler Wallace, Gustafson Gluek, Spector Roseman and Pomerantz ("Wexler Group"), Freed Kanner and Labaton Sucharow ("Kanner Group"), Joseph R. Saveri Firm ("Saveri"), and DLF. Mr. Dugan has worked with these law firms in various cases and respectfully submits that a four member regional firm co-lead counsel structure with representation from each separate group, that when combined, will serve the best interest and ensure the most effective, fair and adequate representation of the End-Payor Class.

If appointed Interim Co-Lead Class Counsel, Mr. Dugan and DLF will commit the necessary time and resources to pursue the matter to its conclusion, will coordinate and cooperate with co-counsel to prosecute the case efficiently, effectively, and in a manner that minimizes costs, and will at all times act in the best interest of the class. Mr. Dugan is fully capable of serving as Interim Co-Lead Class Counsel and will devote the necessary time, resources and cooperative spirit this case requires.

### D. Mr. Dugan has the Experience, Knowledge and Skill Necessary to Serve as Interim Co-Lead Class Counsel

Mr. Dugan has experience working in the areas of class action, mass tort, and complex litigation, beginning with the seminal class action lawsuit filed against the tobacco industry on the basis of nicotine addiction, *Castano v. American Tobacco*. Over the years, Mr. Dugan has

represented hundreds of consumers and third party-payors, including BCBSLA and other health insurers in cases involving class action, mass tort and antitrust law. Mr. Dugan has extensive knowledge of antitrust law, as well as substantial experience in the prosecution of complex litigation cases. Courts have repeatedly recognized his and his firm's abilities.

By way of example, Mr. Dugan has been appointed to serve in key leadership positions in a number of pharmaceutical antitrust class action cases on behalf of end-payors, including: *In re Prograf Antitrust Litigation*, MDL No. 2242, (D. Mass.) (co-lead counsel); *In re Niaspan Antitrust Litigation*, MDL No. 2460 (E.D. Pa.) (executive committee); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, MDL No. 2445 (E.D. Pa.) (executive committee); *In re Nexium (Esomeprazole) Antitrust Litigation*, MDL No. 2409 (D. Mass.) (executive committee); *In re Effexor Antitrust Litigation*, 11-cv-05590 (D. N.J.) (executive committee); *In re Skelaxin (Metaxalone) Antitrust Litigation*, MDL No. 2343 (E.D. Tenn.) (executive committee); and *In re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D. CA) (executive committee).

As a result of his demonstrated skill and experience, Mr. Dugan has also been appointed by the court to serve in key leadership positions in a number of large national federal court class action cases. In all of the cases in which Mr. Dugan and his firm have served in leadership roles, they have contributed significantly to the prosecution of the case by briefing and arguing dispositive motions, taking and defending the depositions of key fact and expert witnesses, and successfully negotiating complex multi-million dollar settlements for the benefit of class members. It is clear that Mr. Dugan has extensive experience with handling complex litigation and is eminently qualified to fill this role.

Indeed, Mr. Dugan's leadership and prior experience in these types of cases, his skill, his willingness to commit his firm's resources, and his credentials amply demonstrate that he should be appointed as Interim Co-Lead Counsel for the End-Payor Class.

## **CONCLUSION**

For the foregoing reasons, Plaintiff BCBSLA respectfully request the Court appoint James R. Dugan, II of The Dugan Law Firm, APLC as Interim Co-Lead Counsel for the End-Payor Class.

Dated: February 24, 2015

Respectfully submitted,

*/s/ James R. Dugan, II*
James R. Dugan, II
Douglas R. Plymale
David B. Franco
Lanson Bordelon
Scott Joanen
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Tel: (504) 648-0180
Fax: (504) 648-0181
Email: jdugan@dugan-lawfirm.com

Charles A. O'Brien
BLUE CROSS AND BLUE SHIELD OF LOUISIANA
5525 Reitz Avenue
P.O. Box 98029
Baton Rouge, Louisiana 80809
Tel: (225) 295-2454
Fax: (225) 297-2760
Email: andy.o'brien@bcbsla.com

*Counsel for Plaintiff Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 24, 2015, I electronically filed the foregoing Memorandum to Appoint Interim Co-Lead Counsel for the End-Payor Class with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ James R. Dugan, II*
James R. Dugan, II