# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All Actions | |

### PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA *DUCES TECUM* SERVED ON ACTAVIS SOUTH ATLANTIC LLC AND ACTAVIS ELIZABETH LLC

Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), Direct Purchaser Plaintiffs ("Plaintiffs") submit this Motion to Compel Compliance with a Non-Party Subpoena *Duces Tecum* Served on Actavis South Atlantic LLC and Actavis Elizabeth LLC (together, "Actavis").[1]

This Motion to Compel concerns Subpoena Requests Nos. 4 and 5 of the Subpoena dated January 20, 2017,[2] which request production of Actavis' transactional sales data and related chargeback records for Actavis' sales of generic Opana ER. Complete transactional sales data and

---

[1] This is a multidistrict litigation and this Court has the authority under 28 U.S.C. § 1407 to enforce the Subpoena, which was issued out of this District. *See, e.g.*, *In re Disposable Contact Lens Antitrust Litig.*, No. 17-MC-00247, 2017 WL 3704822, at *4 (D.D.C. May 18, 2017) ("the transferee judge who manages an MDL has jurisdiction under section 1407 (i.e., the statute authorizing MDL proceedings) to enforce a subpoena that requires compliance in another district, despite the procedural requirements of Rule 45"). Even before the recent amendments to Federal Rule of Civil Procedure 45, it was well-established that an MDL judge has the power to centrally enforce non-party subpoenas. *See, e.g.*, *In re Factor VIII*, 174 F.R.D. 412 (N.D. Ill. 1997); *In re Neurontin Mktg., Sales Practices, and Prod. Liab. Litig.*, 245 F.R.D. 55, 57 (D. Mass. 2007). In addition, Actavis' products are sold nationwide and it thus transacts business in this District.

[2] Plaintiffs served the Subpoena containing six Requests on January 20, 2017. *See* Exhibit 1 (subpoena) and Exhibit 2 (email chain accepting service) to Caplan Declaration of Zachary D. Caplan ("Caplan Decl."). On February 17, 2017, Actavis South Atlantic LLC and Actavis Elizabeth LLC served responses and objections to the Subpoena. *See* Exhibit 3.

related chargeback records are highly relevant to claims and defenses in this litigation, including to Plaintiffs' calculation of damages and class certification, and proportional to the needs of the case. Actavis does not debate this, but nonetheless has failed to produce the requested chargeback records for 2013 and 2014. Thus, Plaintiffs seek an Order directing Actavis to produce within 14 days the requested 2013 and 2014 chargeback records, which were originally requested more than nine months ago.

I.   **FACTUAL BACKGROUND & LOCAL RULE 37.2 STATEMENT**

Actavis, the first generic filer and first seller for the 7.5 and 15 mg strengths of generic Opana ER, launched its generic Opana ER in 7.5 and 15 mg dosage strengths on or about July 15, 2011.[3] Actavis launched its generic Opana ER in 5, 10, 20, 30, and 40 mg dosage strengths in or around September 2013.[4] Actavis is one of only two generic companies (the other being Defendant Impax) that ever sold generic Opana ER.

As is common in cases alleging impaired generic competition like this one, Plaintiffs served targeted non-party subpoenas on Actavis, a generic company, pursuant to Federal Rule of Civil Procedure 45(a)(1). Plaintiffs subpoenaed Actavis on January 20, 2017.[5] The Subpoena contains six Requests. So that Plaintiffs can calculate the net prices paid by members of the proposed class of direct purchasers for generic Opana ER, Subpoena Requests 4 and 5 seek data showing transactional returns, chargeback, rebate, and other price adjustment data along with data dictionaries or legends sufficient to understand this data.[6]

---

[3] *See, e.g.*, DPP First Amended Consolidated Class Action Complaint ("DPP CAC"), ECF 101 (filed on May 4, 2015), at ¶ 172 ("Actavis launched generic versions of 7.5 and 15 mg Opana ER on or about July 15, 2011).

[4] *Id.* at ¶ 189 n.40.

[5] *See* Exhibits 1 and 2 (subpoena and email chain accepting service).

[6] *See* Exhibit 1 at Request for Production Nos. 4 & 5.

On February 17, 2017, Actavis' counsel Christopher T. Holding of Goodwin Procter LLP served responses and objections to the Subpoena on behalf of Actavis.[7] As to Request No. 4, Actavis stated that, subject to various objections, Actavis would "produce information concerning its sales of generic Opana ER in the format that Actavis customarily uses to produce such information in litigation."[8] As to Request No. 5, Actavis stated that, subject to various objections, it would be "willing to meet and confer on an appropriate way to supply this information."[9]

On May 12, 2017, Actavis produced some but not all of the requested transactional data.[10] On June 27, 2017, Plaintiffs' counsel wrote to Actavis' counsel stating, among other things, that the produced chargeback records were missing certain required information, making them unusable.[11] Plaintiffs requested that Actavis comply with the Subpoena by reproducing the previously-produced chargeback records to include all the required information.[12]

---

[7] Exhibit 3.

[8] *Id.*

[9] *Id.*

[10] In particular, Actavis produced transactional data for its generic Opana ER product covering the period February 2013 to December 2016, but Actavis did not produce transactional data for the period from July 2011 through January 2013, during which Actavis also sold generic Opana ER. Plaintiffs requested and received from Actavis a good faith cost estimate for production of the transactional data for July 2011 through January 2013. This Motion to Compel does not seek production of the July 2011 to January 2013 transactional data.

[11] *See* Exhibit 4 (Letter from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated June 27, 2017).

[12] Specifically, as to the chargeback records, DPPs stated as follows: "The produced chargeback records do not contain any indirect customer information (customer names or addresses). Please reproduce the chargeback data to include the following fields: wholesaler name, indirect customer name, indirect customer address, product description (NDC), transaction date (month, day, year), indirect sales quantity (units), and chargeback dollars paid to the wholesaler. The transaction-level data should cover all generic Opana ER chargebacks paid by Actavis to direct purchasers from product launch through present day." *Id.*

On August 8, 2017, Actavis' counsel wrote in response to Plaintiffs' June 27, 2017 correspondence stating that Actavis was investigating the possibility of producing the information requested by Plaintiffs.[13]

On September 20, 2017, Plaintiffs' counsel wrote to Actavis' counsel to inquire as to whether any additional information had been gathered concerning the requested chargeback records.[14]

On October 4, 2017, Actavis' counsel wrote to Plaintiffs' counsel concerning the chargeback records stating that "there is additional chargeback information in the legacy Actavis database for the years 2015 and 2016 . . . [w]e are working on collecting that information and will produce it as is."[15] Actavis' counsel further stated that "[t]here is some question about whether such data is available for 2013 or 2014[.]"[16]

On October 5, 2017, Plaintiffs' counsel wrote to Actavis' counsel to inquire as to whether any additional information had been gathered concerning the requested chargeback records.[17]

On October 10, 2017, Actavis' counsel responded that: "I do not have any more information for you at this time. I am happy to circle back later in the week."[18]

---

[13] Exhibit 5 (Letter from Actavis' counsel C. Holding to Plaintiffs' counsel Z. Caplan dated Aug. 8, 2017) (emphasis added).
[14] Exhibit 6 (Letter from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Sept. 20, 2017).
[15] Exhibit 7 (Email from Actavis' counsel C. Holding to Plaintiffs' counsel Z. Caplan dated Oct. 4, 2017).
[16] *Id.*
[17] Exhibit 8 (Email from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Oct. 5, 2017).
[18] *Id.*

On October 19, 2017, Plaintiffs' counsel wrote to Actavis' counsel stating that Plaintiffs had requested the chargeback records nine months ago, asking that Actavis produce by October 27, 2017 the requested chargeback records for 2013 to 2016, and stating that, absent production of the requested chargeback records, Plaintiffs understood that the parties had reached an impasse.[19]

On October 26, 2017, Actavis' counsel wrote to Plaintiffs' counsel stating that additional information was forthcoming.[20]

On November 1, 2017, Actavis' counsel wrote to Plaintiffs' counsel and produced a file containing the requested chargeback records for the period June 2014 to December 2016.[21] This produced file still did not contain the requested chargeback records for January 2013 through May 2014.

On November 3, 2017, Plaintiffs' counsel wrote to Actavis' counsel to inquire as to the status of the 2013 and 2014 chargeback records.[22] Actavis' counsel did not respond.

On November 14, 2017, Plaintiffs' counsel again wrote to Actavis' counsel to inquire as to the status of the 2013 and 2014 chargeback records.[23] Actavis' counsel again did not respond.

On November 16, 2017, Plaintiffs' counsel wrote to Actavis' counsel and stated that, absent an immediate commitment from Actavis to produce the 2013 and 2014 chargeback records

---

[19] Exhibit 9 (Letter from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Oct. 19, 2017).
[20] Exhibit 10 (Email from Actavis' counsel C. Holding to Plaintiffs' counsel Z. Caplan dated Oct. 26, 2017).
[21] Exhibit 11 (Email from Actavis' counsel C. Holding to Plaintiffs' counsel Z. Caplan dated Nov. 1, 2017).
[22] Exhibit 12 (Email from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Nov. 3, 2017).
[23] Exhibit 13 (Email from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Nov. 14, 2017).

on a date certain, Plaintiffs would file this Motion to Compel.[24] That same day, Actavis' counsel wrote to Plaintiffs' counsel and stated that Actavis had not located the missing 2013 and 2014 chargeback records and Actavis would let Plaintiffs know if these records are ever located.[25]

Actavis has been aware of Plaintiffs' request for the 2013 and 2014 chargeback records for many months. These records are necessary so that Plaintiffs can calculate the net prices paid for generic Opana ER by members of the class. Plaintiffs will, *inter alia,* compare net prices paid to the lower prices they would have paid to calculate overcharges. Because Actavis has failed to produce these records and has refused to commit to produce these records, this Motion to Compel is necessary.

## II. ARGUMENT

### A. Legal Standard

"The scope of material obtainable pursuant to a Rule 45 subpoena is "as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, No. 17-CV-01287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017); *see also Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ("The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45."). Rule 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[24] Exhibit 14 (Email from Plaintiffs' counsel Z. Caplan to Actavis' counsel C. Holding dated Nov. 16, 2017).
[25] Exhibit 15 (Email from Actavis' counsel C. Holding to Plaintiffs' counsel Z. Caplan dated Nov. 16, 2017).

"For the purpose of discovery, relevancy is to be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-CV-241-MJR-DGW, 2016 WL 8539974, at *3 (S.D. Ill. Jan. 25, 2016). Courts do not apply a different standard of relevance when discovery is sought from a non-party. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987) ("Nothing in the rules, however, makes controlling a distinction between parties and non-parties in respect to the type of information sought"); *Centurion Indust., Inc. v. Warren Steurer & Assoc.*, 665 F. 2d 323, 325 (10th Cir. 1981) (ordering disclosure of non-party's trade secrets in patent litigation); *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 882 (3d Cir. 2002) (non-precedential opinion) (enforcing non-party subpoena over relevancy objection because Rule 26's relevance standard met).

      **B.**    **Actavis' Transactional Sales Data and Chargeback Records are Within the Scope of Discovery in this Litigation**

As a generic manufacturer which has sought and obtained approval to market generic Opana ER from the U.S. Food and Drug Administration and has actually sold generic Opana ER, Actavis has possession, custody, or control of documents and data that are highly relevant to Plaintiffs' claims in this litigation.

Plaintiffs seek Actavis' complete generic Opana ER chargeback records for 2013 and 2014. Such chargeback records are necessary in order for the transactional data that Actavis has already produced to be complete. Transactional sales data and related chargeback records of this type are routinely requested and produced in antitrust cases involving claims of delayed generic drug entry. They are typically used to assess injury and damages to the classes, and have been used and produced in many prior cases. *See, e.g.*, *In re Neurontin Antitrust Litig.*, No. 02-1390, 2011 WL

286118, at *7 (D.N.J. Jan. 25, 2011) (proof of harm included "transactional data reflecting that the generics' actual market entry did in fact reduce the cost of gabapentin dramatically"); *In re Wellbutrin XL Antitrust Litig.*, No. CIV. A. 08-2431, 2011 WL 3563385, at *12 (E.D. Pa. Aug. 11, 2011); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003).

Antitrust cases are generally data-intensive. *See* F. Matthew Ralph & Caroline B. Sweeney, E-Discovery and Antitrust Litigation, 26 ANTITRUST 58, 61 (2011) ("[T]he production of voluminous transactional data . . . in an antitrust case is routine and happens in every case.") (internal marks and citation omitted);*see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632 (1985) ("antitrust issues, prone to complication, require sophisticated legal and economic analysis"). Denying necessary data discovery can constitute reversible error. *See, e.g., Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1192 (11th Cir. 2003) (vacating antitrust decision for failure to allow appropriate data discovery).

In similar generic suppression cases, courts have ordered third parties to produce transactional sales data and complete chargeback records similar to the information that Actavis has failed to produce here. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488, 2017 WL 4700367, at *1 (S.D.N.Y. Oct. 19, 2017) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records over relevancy, burden, and confidentiality objections noting that "[t]here is little question that the transactional sales information sought by the plaintiffs is relevant"); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 16-62492-MC, ECF 14, Slip Op., at 7-8, (S.D. Fla. May 15, 2017) ("*Celebrex*") (Exhibit 16) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records where it was relevant to "determining damages in the Antitrust Litigation" and holding that this data is "necessary to an element of the claims in the Antitrust Litigation"); *In*

*re K-Dur Antitrust Litig.*, No. 03-21589, 2003 WL 27375780 (S.D. Fla. Aug. 21, 2003) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records over relevancy objection and concern about confidentiality).

In this case, Actavis has not claimed that the sought 2013 and 2014 chargeback records are irrelevant to this litigation (nor can it), that it has any concerns about confidentiality concerning data and chargeback records, or that these chargeback records are too burdensome to produce.[26] Instead, Actavis has provided no information or justification regarding its failure to produce the requested chargeback records for 2013 and 2014 beyond making the unsupported claim that they may not be "reasonably accessible." But Actavis' failure to provide specific information concerning the burden of producing the 2013 and 2014 chargeback records (or explain why they were lost or destroyed) means that it cannot make the necessary "particularized showing" and thus should be compelled to produce the requested 2013 and 2014 chargeback records.

*Namenda* is instructive. There, in a closely analogous situation, the court examined "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Namenda*, 2017 WL 4700367, at *2. Further, the non-party generic manufacturer in *Namenda*, unlike Actavis here, submitted a good faith cost estimate to particularize its burden claim. *Id.* at *3. That good faith cost estimate provided that production of

---

[26] Even if Actavis hadn't waived any burden argument, it would bear the burden of establishing, with evidence and argument that the discovery sought is unduly burdensome." *Namenda*, 2017 WL 4700367, at *2; *see also Reed v. Illinois*, 318 F.R.D. 77, 79 (N.D. Ill. 2016) (noting that non-parties must still "establish undue burden with a particularized showing") (citing *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002)); *Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924 CFD/WIG, 2009 WL 585430, at *6 (D. Conn. Mar. 4, 2009) ("This burden requires an evidentiary showing by competent evidence and cannot be discharged by mere conclusory or *ipse dixit* assertions.") (internal cites and quotes omitted).

the requested "sales data at the transactional level would require 150 hours of employee time, cost between $10,000 and $15,000, and take approximately twenty-seven days to compile." *Id*. The *Namenda* court nonetheless found the non-party's burden argument "unpersuasive" and outweighed in the proportionality calculus because: (1) the non-party generic manufacturer was "the only source for the requested information," (2) the "potential damages" in the litigation vastly exceeded the cost of the requested discovery, (3) the non-party generic manufacturer had "over 10% of generic Namenda IR sales in the United States, making it the fourth largest seller of the product," and (4) plaintiffs' request was limited to transactional sales data and related records. *Id.*; *see also Kleimar*, 2017 WL 3386115, at *7 (concluding that "producing communications (even voluminous communications) that [a non-party] has already identified is not unduly burdensome").

All of the same factors apply here and weigh in favor of production. *First*, Actavis, one of only two generic companies that sold generic Opana ER (the other being Defendant Impax) and is the only source of the requested 2013 and 2014 chargeback records. *Second*, the "potential damages" in this litigation may run into the hundreds of millions of dollars and, thus, it is safe to assume that they easily exceed the cost of the requested discovery from Actavis. *Third*, Actavis is one of only two manufacturers of generic Opana ER (the other being Defendant Impax). *Fourth*, Plaintiffs request on this Motion to Compel is targeted to the 2013 and 2014 chargeback records.

In short, even if Actavis were to make an untimely attempt to provide a good faith cost estimate of the burdens imposed by Plaintiffs' Motion to Compel, it remains highly unlikely that any such burden would be disproportional to the obvious relevance and necessity of Actavis' 2013 and 2014 chargeback records in this significant multidistrict litigation.

### III. CONCLUSION

Plaintiffs respectfully request that this Court compel Actavis to produce within 14 days complete chargeback records requested by Subpoena Requests No. 4 and 5.

Dated: November 17, 2017                               Respectfully Submitted,

*/s/ Zachary D. Caplan*
David F. Sorensen                                          Bruce E. Gerstein
Andrew C. Curley                                           Jonathan M. Gerstein
Zachary D. Caplan                                          GARWIN GERSTEIN & FISHER, LLP
Richard Schwartz                                           Wall Street Plaza
BERGER & MONTAGUE, P.C.                                    88 Pine Street, 10th Floor
1622 Locus Street                                          New York, NY 10005
Philadelphia, PA 19103                                     T: (212) 398-0055
T: (215) 875-3000                                          F: (212) 764-6620
F: (215) 875-4604                                          bgerstein@garwingerstein.com
dsorensen@bm.net                                           jgerstein@garwingerstein.com
acurley@bm.net
zcaplan@bm.net
rschwartz@bm.net

*Interim Co-Lead Counsel for the Direct Purchaser Class*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on November 17, 2017, I caused a true and correct copy of the foregoing to be served upon counsel of record via ECF and Actavis' counsel by electronic mail.

By: */s/ Zachary D. Caplan*
Zachary D. Caplan
