**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case no. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All End-Payor Actions | **FILED UNDER SEAL** |
| | PUBLIC REDACTED VERSION |

**END-PAYOR PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION**
**FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

GLOSSARY OF DEFINED TERMS ................................................................................ vi

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  EPPS' AMENDED CLASS DEFINITIONS ............................................................. 2

III.  THE EPP CLASSES, AS AMENDED, SATISFY RULE 23 ................................... 2

    A.  The Classes Are Ascertainable ...................................................................... 2

    B.  Common Issues Predominate .......................................................................... 6

        1.  Defendants Misstate EPPs' Burden at Class Certification ........................ 7

        2.  Courts May Certify Classes that Include Uninjured Members ................. 7

        3.  Classwide Antitrust Impact Exists, Despite Defendants' Erroneous
            Suggestions Otherwise ............................................................................. 8

        4.  The Number of Uninjured Class Members Is *De Minimis* ...................... 12

        5.  Defendants Wrongly Argue that Damages Cannot Be Established
            on a Classwide Basis ................................................................................ 14

    C.  Differences Among Applicable State Laws Are Immaterial or Nonexistent ....... 16

    D.  The Named EPPs Satisfy the Adequacy and Typicality Requirements ............... 19

IV.  ALTERNATIVE CLASSES CAN BE CERTIFIED ...................................................... 20

V.  CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 19

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ...................................................................... 15

*Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408 (N.D. Ill. 2012) ........................ 4

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ............................................ *passim*

*Calif. v. ARC Am. Corp.*, 490 U.S. 93 (1989) .............................................................. 18

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...................................... 4

*Chaudhry v. Provident Life & Accident Ins. Co.*,
    2015 WL 1980253 (N.D. Ill. May 1, 2015) .......................................................... 10

*Clark v. Bumbo Int'l Trust*, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017) ................................ 4

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................ 16

*Costal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
    175 F.3d 18 (1st Cir. 1999) ...................................................................... 15

*Dvorak v. St. Clair Cnty., Ill.*, 2018 WL 514326 (S.D. Ill. Jan. 23, 2018) ........................... 11

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) .................................... 19

*Fox v. Riverview Realty Partners*, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014) ......................... 16

*Gordon v. Caribbean Cruise Line, Inc.*, 2019 WL 498937 (N.D. Ill. Feb. 8, 2019). ..................... 11

*Hacker v. Dart*, 2019 WL 1239706 (N.D. Ill. Mar. 18, 2019) ............................................. 3

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) ................................... 13

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) ....................................................... 13

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharm., Inc.*
    *& Sandoz Inc.*, 2019 WL 4573433 (M.D. Tenn. Sept. 20, 2019) ...................................... 17, 19

*In re Asacol Antitrust Litig.*, 907 F.3d 42 (2018) .............................................. 6, 11, 12, 19

*In re Cardizem DC Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001) ............................... 14, 19

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012)................................... 14

*In re Foreign Exchange Benchmarks Antitrust Litig.*,
2019 WL 4171032 (S.D.N.Y. Sept. 3, 2019)...................................................... 2, 20

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)........................................................ 8

*In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599 (7th Cir. 2014)............................ 16

*In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .................... *passim*

*In re Loestrin Fe Antitrust Litig.*, 2019 WL 5406077 (D.R.I. Oct. 17, 2019) ...................... *passim*

*In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013) ................ *passim*

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ...................................... *passim*

*In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016) ....................... 18

*In re Opana ER Antitrust Litig.*, 2016 WL 4245516 (N.D. Ill. Aug. 11, 2016) ......................... 18

*In re Restasis Antitrust Litig.*, 2018 WL 5094090 (E.D.N.Y. Oct. 18, 2018) ............................. 11

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)................................... 6

*In re Solodyn Antitrust Litig.*, 2017 WL 4621777 (D. Mass. 2017) ....................................... 13, 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)................................................................... 18

*In re Suboxone Antitrust Litig.*, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019) ....................... 2, 20

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) ................ 14, 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010).......................... 2

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) ................................... 7

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001).............................. 5

*In re Yasmin & Yaz Mkt'g, Sales Prac. & Prods. Liability Litig.*,
2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ............................................................... 8

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981) ............................. 5

*Jay Edwards, Inc. v. New England Toyota Distrib. Inc.*, 708 F.2d 814 (1st Cir. 1983) ................ 5

*Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015) .......................... 1, 7, 11, 14, 16

*Kleen Prod. LLC v. Int'l Paper*, 831 F.3d 919 (7th Cir. 2016).............................................. *passim*

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009)............................................. 3, 7

*Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88 (2d Cir. 2018) .............................. 19

*Manpower Inc. v. Ins. Co. of Penn.*, 732 F.3d 796 (7th Cir. 2013) ............................................ 10

*McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461 (E.D. Pa. 2009)........................................ 14

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) .................... 1, 3, 7, 14

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)................................... 1, 3, 5, 10, 16

*Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575 (N.D. Ill. 2005) ........................................... 3

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010)...................................................... 17

*Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*,
    533 F.2d 510 (10th Cir. 1976) ................................................................................................. 5

*Riffey v. Rauner*, 2016 WL 3165725 (N.D. Ill. June 7, 2016),  .................................................. 8

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009),......................................................... 3, 6

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    2010 WL 3855552 (E.D. Pa. Sept. 30, 2010) ................................................................... 10, 12

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)............................................... 11, 12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)  ....................................................... 14

*Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005 (E.D. Pa. June 10, 2015) .............. 11

**Rules**

Fed. R. Civ. P. 23(a)(4)................................................................................................................ 19

Fed. R. Civ. P. 23(b)(3)................................................................................................................. 7

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................. 3

Fed. R. Civ. P. 23(c)(4) ................................................................................. 1, 2, 6, 20

**Other**

7 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1781 (3d ed. 2005) ............................... 6

## <u>GLOSSARY OF DEFINED TERMS</u>

| <u>Abbreviation</u> | <u>Description</u> |
|---|---|
| **"Antitrust/Consumer Protection Class"** | All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased. |
| **"Unjust Enrichment Subclasses"** | All persons or entities who from April 2011 through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg, other than for resale, as set forth in the following groups:<br><br>**Subclass 1**: Iowa, Michigan, Oregon, West Virginia<br><br>**Subclass 2**: Maine, New Mexico, Wisconsin<br><br>**Subclass 3**: Hawaii, Massachusetts, Mississippi, Nebraska, Vermont<br><br>**Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah<br><br>**Subclass 5**: Arizona, North Dakota |
| **"Amended Class/Subclass Exclusions"** | (a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;<br>(b) All governmental entities, except for government-funded employee benefit plans;<br>(c) All persons or entities who purchased Opana ER for purposes of resale or directly from defendants or their affiliates;<br>(d) Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members); |

vi

(e) Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

(f) Any consumer who purchased only Endo's branded version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists");

(g) Consumers with copay insurance plans that purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");

(h) PBMs;

(i) All Counsel of Record; and

(j) The Court, Court personnel and any member of their immediate families.

**"Alternative TPP-Only Antitrust/Consumer Protection Class"**

All third party payor entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased.

**"Alternative TPP-Only Unjust Enrichment Subclasses"**

All third party payor entities that from April 2011 through and including the date that the anticompetitive effects of Defendants' unlawful conduct ceased indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg, other than for resale, as set forth in the following groups:

**Subclass 1**: Iowa, Michigan, Oregon, West Virginia

**Subclass 2**: Maine, New Mexico, Wisconsin

**Subclass 3**: Hawaii, Massachusetts, Mississippi, Nebraska, Vermont

**Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah

**Subclass 5**: Arizona, North Dakota

| | |
|---|---|
| **"Alternative TPP-Only Class/Subclass Exclusions"** | (a) All natural persons;<br><br>(b) Defendants and their subsidiaries or affiliates;<br><br>(c) All governmental entities, except for government-funded employee benefit plans;<br><br>(d) All entities that purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;<br><br>(e) Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members); and<br><br>(f) PBMs |
| **"Alternative Issues Class"** | Certification of the following issues under Rule 23(c)(4):<br><br>(1) whether Defendants' SLA and DCA, individually or collectively created an unlawful reverse payment from Endo to Impax;<br><br>(2) whether oxymorphone ER is the relevant product market;<br><br>(3) whether Endo possessed monopoly power in the relevant market;<br><br>(4) whether the anticompetitive effects of Defendants' conduct outweigh their proffered procompetitive benefits, if any; and<br><br>(5) whether Defendants could have entered into an alternative settlement containing the same patent license, but without a reverse payment and an earlier entry date for Impax. |
| **"Br."** | EPPs' Memorandum of Law in Support of Motion for Class Certification, dated March 25, 2019 (ECF No. 439) |
| **"Brand Loyalist"** | Any consumer who purchased only Endo's branded version of Opana ER after the AB-rated generic version became available in January 2013 |
| **"Caremark Decl."** | Declaration of Steven Schaper (Caremark, L.L.C.), dated Dec. 7, 2018 |
| **"Craft Rep."** | Rebuttal Expert Report of Laura R. Craft, dated Nov. 5, 2019 |
| **"DCA"** | Development and Co-Promotion Agreement between Endo and Impax |

| | |
|---|---|
| **"Endo"** | Endo Pharmaceuticals, Inc., Endo Health Solutions Inc., and Penwest Pharmaceuticals Co. |
| **"EPPs"** | End-Payor Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Wisconsin Masons' Health Care Fund, Pennsylvania Employees Benefit Trust Fund, and International Union of Operating Engineers, Local 138 Welfare Fund |
| **"ESI Decl."** | Declaration of Non-Party Express Scripts, Inc. (Tom Henry) filed in *In re Niaspan Antitrust Litig.*, No. 1:13-md-02472 (E.D. Pa.) on Dec. 14, 2018 (Dkt. No. 664-11). |
| **"Flat Copay Consumers"** | Any consumer who paid the same insurance copay for both branded and generic versions of Opana ER |
| **"Freed Decl."** | Declaration of Michael J. Freed, Esq., dated March 25, 2019 in support of EPPs' motion for class certification |
| **"Freed Kanner"** | Freed Kanner London & Millen LLC |
| **"Generic-Only Copay Consumers"** | Any consumer who purchased only the AB-rated generic version of Opana ER and only incurred an insurance copay |
| **"generic Opana ER"** | AB-rated generic versions of Opana ER sold by Impax and Actavis |
| **"Hughes Rep."** | Expert Report of James W. Hughes, PhD, dated August 29, 2019 |
| **"Impax"** | Impax Laboratories Inc. |
| **"Labaton Sucharow"** | Labaton Sucharow LLP |
| **"McGuire Rebuttal Rep."** | Expert Rebuttal Report of Thomas G. McGuire, Ph.D., dated Nov. 5, 2019 |
| **"Opp."** | Defendants' Memorandum of Law in Opposition to End-Payor Plaintiffs' Motion for Class Certification, dated August 29, 2019 (ECF No. 451) |
| **"OptumRx Decl."** | Declaration of Kent Rogers (OptumRX, Inc.), dated Dec. 7, 2018 |

| | |
|---|---|
| **"PBM"** | Pharmacy benefit manager |
| **"Prime Decl."** | Declaration of Non-Party Prime Therapeutics LLC (Kyle P. Bruna) filed in *In re Niaspan Antitrust Litig.*, No. 1:13-md-02472 (E.D. Pa.) on Dec. 14, 2018 (Dkt. No. 664-13) |
| **"reformulated Opana ER"** | Endo's reformulated version of Opana ER, known internally at Endo as EN3288. |
| **"Rosenthal Rep."** | Expert Report of Meredith Rosenthal, Ph.D., dated March 25, 2019 |
| **"R.R."** | Expert Rebuttal Report of Meredith Rosenthal, Ph.D., dated November 5, 2019 |
| **"SLA"** | Settlement and License Agreement, dated June 8, 2010, between Endo and Impax |
| **"TPPs"** | Third party payors |

## I. PRELIMINARY STATEMENT

In their opening brief, EPPs showed that they satisfy Rule 23. Notably, Defendants do not contest numerosity, commonality, or that common evidence exists to determine whether the SLA and DCA were anticompetitive.[1] Defendants only challenge EPPs' ability to satisfy: (a) predominance and superiority due to the presence of allegedly uninjured class members and variation in certain state laws; and (b) adequacy and typicality due to alleged differences between the class representatives and other class members. None of Defendants' arguments have merit:

- *First*, Defendants do not deny that whether their conduct was anticompetitive, and the evidence supporting such a determination, is an issue common to all class members. This alone is sufficient to warrant certification, particularly under Rule 23(c)(4).[2]

- *Second*, Defendants' ascertainability argument is inconsistent with Seventh Circuit law. Because EPPs' class definition uses objective criteria and is administratively feasible, EPPs meet that standard. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Moreover, variations in damages amounts are not a reason to deny certification.[3]

- *Third*, Defendants grossly overinflate the number of uninjured class members by relying on merits arguments concerning the nature of EPPs' but-for world, misapplying the class definition, and committing a variety of legal errors—none of which defeat certification. After dispensing with those arguments, only a *de minimis* percentage of class members are uninjured and damages attributable to them are, in any event, excluded from EPPs' aggregate damages calculation. Indeed, to avoid any doubt, EPPs' Amended Class Definitions specifically exclude certain class members.

- *Fourth*, small variations among applicable state laws do not predominate over EPPs' core claim that Defendants unlawfully restrained competition, causing overcharges to EPPs and enabling Defendants to unjustly "enrich themselves at the expense of consumers."[4]

---

[1] *See* ECF 443-1 (Federal Trade Commission opinion finding SLA anticompetitive by delaying generic competition). Defendants also concede that EPP Class Counsel satisfy the Rule 23(g) requirements for appointment.

[2] *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("a class action limited to determining liability on a class-wide basis . . . is permitted by Rule 23(c)(4) and will often be the sensible way to proceed").

[3] *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012); *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, *aff'd* 831 F.3d 919 (7th Cir. 2016); *Butler*, 727 F.3d at 801.

[4] ECF 443-1 at 42.

- *Fifth*, the class representatives, all TPPs, are adequate, as they have participated in the litigation, and their interests are aligned with absent class members.

- *Finally*, even if Defendants' arguments are credited—which EPPs do not concede— certification of Alternative TPP-Only Class/Subclasses would avoid any perceived complications arising from estimating and identifying uninjured consumers.[5] At a minimum, under Rule 23(c)(4), an Alternative Issues Class should be certified.[6]

## II.    EPPS' AMENDED CLASS DEFINITIONS

EPPs' originally-defined classes satisfied Rule 23. Nevertheless, to avoid *any* potential confusion about class membership, the Amended Class Definitions now explicitly exclude both Brand Loyalists and Generic Only Copay Consumers.[7] By excluding Brand Loyalists, the class is now limited to those who, in the actual world, bought Opana ER before Impax launched and then made at least one purchase of generic Opana ER.[8] These class members showed a willingness to purchase less expensive generic Opana ER when it became available and therefore incurred antitrust injury. Excluding Generic Only Copay Consumers is a change in form only because EPPs' economic expert Dr. Rosenthal never assessed injury or damages for such consumers.

## III.    THE EPP CLASSES, AS AMENDED, SATISFY RULE 23

### A.    The Classes Are Ascertainable

#### *The Class Definitions and Amended Exclusions Are Based on Objective Criteria.*

Consistent with Seventh Circuit law, the EPP classes are based on "objective criteria": (1) branded or generic Opana ER purchases not for resale, (2) in certain states, and (3) during a

---

[5] *See, e.g.*, *In re Loestrin Fe Antitrust Litig.*, 2019 WL 5406077 (D.R.I. Oct. 17, 2019).

[6] *See, e.g.*, *In re Suboxone Antitrust Litig.*, 2019 WL 4735520, at *40-47 (E.D. Pa. Sept. 27, 2019) (certifying (c)(4) class); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2019 WL 4171032, at *10 (S.D.N.Y. Sept. 3, 2019) ("*FX*") (same).

[7] EPPs may amend their class definitions during Rule 23 briefing. *See Loestrin*, 2019 WL 5406077, at *28 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 591 (N.D. Cal. 2010)).

[8] As Endo's own projections show, ███████████████████████████████████████████████████████████████████████████████

discrete time period.[9] The class exclusions are similarly objective and largely turn on the type of health plan under which consumers made their purchases. The Seventh Circuit has explicitly rejected the practice of moving "beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit." *Mullins*, 795 F.3d at 659.

Defendants argue that EPPs' class definitions are too broad. Opp. at 12-13. And, through flawed methodology, incorrect inferences, and erroneous conclusions, they posit that there are "too many uninjured in the proposed class." Opp. at 12. To the contrary, Dr. Rosenthal's analysis predicts that the vast majority of consumers and TPPs *are* injured.[10] And as her rebuttal report explains, *all* class members are injured by the same event: belated generic entry. R.R. (Ex. A hereto) ¶¶ 10, 17, 57-63, 127-34. Defendants' suggestion that class certification should be denied entirely based on their perceived overbreadth of the original proposed class definitions is contrary to well-established authority stating that class definitions may be tailored as the litigation progresses.[11]

---

[9] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).

[10] The Seventh Circuit does not require that *all* members of a proposed class show injury at the certification stage. *See Kleen*, 831 F.3d at 927 ("While we have no quarrel with the proposition that each and every class member would need to make . . . a showing [of injury] in order ultimately to recover, we have not insisted on this level of proof at the class certification stage."); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D. Ill. 2009) , *aff'd* 606 F.3d 391 (7th Cir. 2010) ("class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action[.]"). "A class will often include persons who have not been injured . . . Such a possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).

[11] *See, e.g.*, *Messner*, 669 F.3d at 825 (class definition issues "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); Fed. R. Civ. P. 23(c)(1)(C) (allowing class certification order to be amended any time prior to final judgment). Defendants' cases involving overbroad class definitions are distinguishable. *See Hacker v. Dart*, 2019 WL 1239706, at *5 (N.D. Ill. Mar. 18, 2019) (inmates alleged ADA noncompliant facilities; whether accommodations were reasonable deemed inherently subjective); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (class included all Coke purchasers, but deceptive advertising violation turned on individual reliance); *Clark v. Bumbo Int'l Trust*, 2017 WL 3704825, at *4 (N.D. Ill. Aug. 28, 2017) (same result where class included all who visited website and were allegedly deceived).

3

***Identifying Class Members Is Administratively Feasible.*** Defendants also assert that EPPs' proposed classes are not ascertainable because of subjective issues that require individualized inquiries. Opp. at 14-15. This argument lacks merit for several reasons. *First*, class member identification, including by affidavit,[12] is not a Rule 23 consideration; it is an allocation issue that only arises after a judgment in favor of the class has been entered and monies need to be distributed to class members.[13]

*Second*, Defendants greatly overstate the difficulty of identifying class members. Available data allows ascertainment of class members in a manageable and administratively feasible way. As accompanying declarations from leading PBMs and the Rebuttal Expert Report of Laura R. Craft (Ex. B ("Craft Rep.")) demonstrate: "Prescription drug transactions are well documented and TPPs have the capability to retrieve information about the drugs they have purchased, the date on which they purchased, and the price paid for the drugs."[14] Data also exists to determine whether a TPP or consumer is otherwise excluded—*e.g.*, a government entity or fully-insured health plan, Brand Loyalists, or Generic Only Copay Consumers.[15] These include PBM records, pharmacy records, and the consumer's own purchase records.[16]

---

[12] Contrary to Defendants' contention (Opp. at 12), such affidavits will not require class members to say what they *would* have purchased in the but-for world. Consistent with *Mullins*, the affidavits will identify, *e.g.*, (a) whether a class member bought brand or generic Opana ER, (b) the amount paid, and (c) the dates of purchase—all *objective* inquiries.

[13] *See Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004); *Boundas v. Abercrombie & Fitch Stores, Inc*., 280 F.R.D. 408, 417-18 (N.D. Ill. 2012); *In re Nexium Antitrust Litig*., 777 F.3d at 24 ("At the class certification stage, the court [is] satisfied that, prior to judgment, *it will be possible* to establish a mechanism for distinguishing the injured from the uninjured class members.").

[14] *Loestrin,* 2019 WL 5406077, at *28 (citing Ms. Craft's report in that case); Ex. C (Caremark Decl.); Ex. D (OptumRx Decl.); Ex. E (ESI Decl.); Ex. F (Prime Decl.).

[15] *See Loestrin*, 2019 WL 5406077, at *30 (citing Ms. Craft's report and describing data available to identify plans excluded from class definition).

[16] *See* Craft Rep. ¶ 26 (███████████████████████████████████████████ ██████████████████████).

Moreover, to the extent that there is uncertainty about who would have switched to generic Opana ER in the but-for world, Defendants cannot credibly "complain of an uncertainty created by [their] own wrongdoing."[17] In antitrust cases, courts are willing to accept a level of uncertainty about the extent of injury because the "vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation."[18] Here, Defendants designed the Endo Credit—which resulted in Endo paying Impax $102 million— ████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████[19] Because the "hop" to Reformulated Opana ER was part and parcel of Defendants' anticompetitive agreement, Defendants cannot use to their benefit any uncertainty that the hop purportedly created in identifying injured consumers.

*Third*, potential administrative inconvenience in identifying class members is not a reason to disregard the well-settled presumption that manageability concerns should not derail class certification.[20] *Moreno v. Napolitano*, is instructive. There, the court held that, because it was administratively feasible, "the fact that Defendants may need to conduct a manual review [of tens of thousands of forms] to determine the composition of the class is not sufficient grounds for denying class certification," even if it is slow and burdensome.[21]

---

[17] *Jay Edwards, Inc. v. New England Toyota Distrib. Inc.*, 708 F.2d 814, 821 (1st Cir. 1983) (quoting *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*, 533 F.2d 510, 517 (10th Cir. 1976)).

[18] *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981).

[19] Ex. G (A. Koch June, 21, 2018 Dep. 160-161; Ex. H (C. Mengler Aug. 1, 2018 Dep. 272-78).

[20] *Mullins*, 795 F.3d at 664 (even if identifying particular class members is challenging, "a district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors"); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (noting that failure to certify a class under Rule 23(b)(3) solely on manageability grounds is generally disfavored), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006).

[21] 2014 WL 4911938, at *6-7 (N.D. Ill. Sept. 30, 2014). EPPs' trial plan creates no Seventh Amendment or Due Process concerns because Defendants will have the opportunity to challenge damages

*Finally*, Defendants' reliance on *Asacol* is misplaced. That decision is not binding, and the Seventh Circuit has not imposed a similar standard. Notwithstanding the fact that it is not binding, though, it is worth noting that, consistent with *Nexium*, 777 F.3d 9, 19 (1st Cir. 2015), *Asacol* recognized that the presence of uninjured class members does *not* preclude certification.[22] Here, as in other cases where classes have been certified, EPPs and their experts propose a common aggregate damages calculation that excludes uninjured class members (Rosenthal Rep. ¶¶ 52, 70, 73, 80-81)—that is, a "mechanism for eventually culling out the uninjured," *Asacol*, 907 F.3d at 57—as well as a two-phase trial plan that provides a process for identifying and excluding any uninjured persons, a procedure endorsed by the Seventh Circuit.[23] Accordingly, the ascertainability requirement is satisfied.

### B. Common Issues Predominate

Defendants do not dispute that liability in this case can be proven by evidence common to the class.[24] But in arguing that common issues do not predominate, Defendants repeat the mistake identified by the Seventh Circuit in *Butler*—they assume that predominance is about

---

after liability has been established. Freed Decl. Ex. 15. *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299-1300 (7th Cir. 1995), a mass tort case Defendants cite, is distinguishable because, unlike here, (1) plaintiffs sought certification of disparate negligence claims under 50 states' laws, and (2) defendants had won 93% of tried cases, sowing doubt about their liability in the first place.

[22] *In re Asacol Antitrust Litig*, 907 F.3d 42, 52 (1st Cir. 2018).

[23] *Butler*, 727 F.3d at 800 ("a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogenous groups of class members is permitted by Rule 23(c)(4) and will often be the sensible way to proceed"). *See also, e.g., In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *19 (N.D. Cal. Feb. 21, 2017) ("there are a number of ways that Brand Loyalists can be identified and excluded from the damages distribution process").

[24] Br. at 14-21 (listing evidence common to EPPs' claims). *See also Saltzman v. Pella Corp.*, 257 F.R.D. at 484 ("A finding of commonality will likely satisfy a finding of predominance . . . where there exists a common nucleus of operative facts."); 7 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1781 at 228 (3d ed. 2005) (conspiracy "is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite in Rule 23(b)(3)").

"counting noses."[25] Indeed, "Rule 23 does not demand that every issue be common; classes are routinely certified under Rule 23(b)(3) where common questions exist and predominate, even though other individual issues will remain after the class phase.[26]

### 1. Defendants Misstate EPPs' Burden at Class Certification

Defendants misstate EPPs' burden for establishing antitrust impact and damages and cite no controlling case law to support their flawed position. At class certification, EPPs are *not* required to: (i) establish antitrust injury or damages to individual class members; (ii) "test" their models on an individual level; or (iii) show that individual damages can be calculated and uninjured class members (or non-members) identified. *See, e.g.*, Opp. at 16, 21. Indeed, the Seventh Circuit has explicitly held that plaintiffs need "only to demonstrate that the element of antitrust impact *is capable of proof at trial* through evidence that is common to the class."[27] As explained below, EPPs' model *can* be applied to individual class members and *will* show that all or nearly all class members are injured.

### 2. Courts May Certify Classes that Include Uninjured Members

The inclusion of uninjured persons within the class does not preclude EPPs from demonstrating impact through common proof.[28] In fact, as Defendants' own authority demonstrates, a class "may be certified" even where it "includes a significant number of people

---

[25] *Butler*, 727 F.3d at 801.

[26] *Kleen*, 831 F.3d at 922.

[27] *Messner*, 669 F.3d at 818; *Kleen*, 831 F.3d at 929 ("Plaintiffs are not obliged to drill down and estimate each individual class member's damages."); *Kleen*, 306 F.R.D. at 595 ("[A] plaintiff can demonstrate antitrust impact by showing that the conspiracy caused an increase to the standard market price of the product at issue.").

[28] *See* Br. at 22-23; *Messner*, 669 F.3d at 823 ("even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct"); *Kohen*, 571 F.3d at 677 (same). *See also*, *Nexium*, 777 F.3d at 24-25 (upholding certification of class that included uninjured members); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254 (10th Cir. 2014) (same).

who could have been injured, but were not."[29] Dr. Rosenthal's analysis, however, demonstrates that classwide overcharges apply to most, if not all, EPPs. *See* R.R. ¶¶ 58-118, 120-142. And here, as in other cases certifying classes, EPPs propose a common aggregate damages calculation that excludes uninjured class members (Rosenthal Rep. ¶¶ 52, 70, 73, 80, 81) and a two-phase trial plan that provides a process for identifying and excluding any uninjured persons.[30]

In sum, antitrust class actions do not require that all, or even nearly all, class members show injury to satisfy Rule 23. Rather, classes are regularly certified in the Seventh Circuit (and elsewhere) even when uninjured class members are identified at the class certification stage. And as shown below, only a small fraction of the classes here are uninjured, thereby establishing that Defendants' conduct caused widespread impact.

### 3. Classwide Antitrust Impact Exists, Despite Defendants' Erroneous Suggestions Otherwise

Just as the factual and legal issues at the heart of this case will be determined by common proof, so too will the issue of classwide impact. Defendants do not meaningfully dispute that their conduct had the capacity to impact Opana ER prices generally by affecting wholesale acquisition costs—the benchmark for retail prices—and that the inflated price would be passed down to end payors. Defendants instead, through their economist Dr. James Hughes, challenge

---

[29] *Riffey v. Rauner*, 2016 WL 3165725, at *4 (N.D. Ill. June 7, 2016), *aff'd*, 873 F.3d 558 (7th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 2708 (2018), and *aff'd*, 910 F.3d 314 (7th Cir. 2018). *Cf. Butler*, 727 F.3d at 799 (even if most class members were not injured "that [is] an argument not for refusing to certify the class but for entering judgment that would largely exonerate [defendant]"). Defendants' other authorities are distinguishable. Opp. at 12. *Riffey* involved union fee deductions where plaintiffs did not rebut evidence suggesting that a majority did not object to the fees. 2016 WL 3165725, at *4. Here, EPPs demonstrate that had Impax launched its generic earlier, Reformulated Opana ER conversion rates—and thus brand loyalist numbers—would be significantly lower. R.R., ¶¶ 26-51, 66-95. *In re Yasmin & Yaz Mkt'g, Sales Prac. & Prods. Liability Litig.*, 2012 WL 865041, at *15-16 (S.D. Ill. Mar. 13, 2012) and in *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *59 (N.D. Ill. Mar. 31, 2017), there were individualized issues on causation and reliance that are not present here.

[30] Br. at 29; Freed Decl. Ex. 15.

EPPs' ability to demonstrate classwide impact through common proof, with an incorrect claim that more than half of all class members are uninjured. *See* Hughes Rep. ¶¶ 19-32. Dr. Hughes's estimates, though, are based on numerous errors.

First, Dr. Hughes incorrectly presumes that antitrust injury can only be established by showing overcharges on every transaction. Antitrust injury is shown when there is an overcharge *on single transaction*. Br. at 22 (citing *Nexium*, 777 F.3d at 27). He also uses ███████████ ████████████████████████████████████████████████ ████████████████████████ (*see* Ex. I (Hughes Dep.) at 113-114; 158-159; 220)[31]—and then, ████████████████████████████████ For example, Dr. Hughes:

- ████████████████████████████████████████ ████████████████████████████████████████████ R.R. ¶¶ 128-29.

- ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ *Id.* ¶¶ 130-31.[32]

- ████████████████████████████████████████████ ████████████████████████████████████████ Hughes Rep. ¶ 72, 74, 81-87.

---

[31] In a similar *case* involving the launch of a follow-on product during a delayed generic entry, the Court accepted plaintiffs' expert's position, that "the conversion ratio" of the branded drug to the generic drug "is not a useful benchmark . . . due to the product hop" as there were "very few" branded drug sales "once generic entry occurred". *Loestrin*, 2019 WL 5406077, at *20. Dr. Rosenthal, consistent with *Loestrin*, uses Defendants' own data to forecast generic penetration in the but-for world. *See also Lidoderm*, 2017 WL 679367, at *23 (crediting EPP expert's use of defendants' forecasts to show classwide impact).

[32] *See also Loestrin*, 2019 WL 5406077, at *34 (antitrust injury established when "all but one" of the OptumHealth plans had "at least one transactions for which it paid more for brand Loestrin 24 or Minastrin than the but-for plan payment for generic Loestrin 24 in the corresponding year."); *Nexium*, 777 F.3d at 27 ("[a]ntitrust injury occurs the moment the purchaser incurs an overcharge").

- 

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████ *See* R.R. ¶¶ 67.

Defendants also attempt to manufacture individualized issues by arguing that Dr.

Rosenthal's ███████████████████████████████████████████████

████████████████████████████████ Opp. at 16-17.[33] Defendants and Dr.

Hughes, however, impose a burden not present in the Seventh Circuit. *First*, as explained above,

it is not EPPs' burden to show at class certification that an individual class member was in fact

injured or suffered a specific overcharge. *Second*, stripping out Defendants' quibbles about

assumptions made[34]—all of which are supported by the record—Dr. Rosenthal's model

███████████████████████████████████████████████

███████████████████████ Rosenthal Rep. ¶ 49. *Third*, common impact can be

demonstrated without conducting an individualized analysis of all class members. All class

members are impacted in the same way by Impax's delayed generic entry, and economic

incentives in the pharmaceutical market support the conclusion that the price of the generic is

lower than the price of the brand for all class members.[35]

---

[33] Defendants' hailstorm analogy (Opp. at 17) misses the mark because: (1) EPPs' Amended Class Definitions exclude many of those not likely to have been injured; (2) Dr. Rosenthal's model accounts for and can remove these class members from her damages estimates (Rosenthal Rep. ¶¶ 52, 70, 73, 80-81; *See, e.g.*, R.R. ¶¶ 88, 96-98, 105-08, 111-12, 154-55, 156-61; and (3) to the extent any end payor did not suffer damages, those individuals can (if necessary) be identified during the allocation process through self-identification via affidavits, which the Seventh Circuit has endorsed. *See Mullins*, 795 F.3d at 662.

[34] Criticisms of "the reliability of the underlying data and assumptions used [by an expert] go the weight of the evidence and are better left to the adversarial process to be determined by the fact finder." *Chaudhry v. Provident Life & Accident Ins. Co*., 2015 WL 1980253, at *7 (N.D. Ill. May 1, 2015) (citing *Manpower Inc. v. Ins. Co. of Penn*., 732 F.3d 796, 808 (7th Cir. 2013)). At this stage, the court need not decide, *e.g.*, how "many generics would have entered and when" or how successful Reformulated Opana ER would have been had Impax launched in 2011. *Loestrin*, 2019 WL 5406077 at *22.

[35] R.R. ¶¶ 58, 63, 138. To the extent the *Sheet Metal Workers* (2010 WL 3855552, at *10) case cited by Defendants purports to require identification of uninjured class members using common evidence, the

10

Defendants raise purported individualized inquiries, ███████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████ Opp. at 17-18.[36] Again, Defendants are "counting noses" rather than focusing on the key inquiries: whether Defendants' anticompetitive conduct allowed them to harm all or nearly all class members and whether the evidence that both parties rely on to answer that question is common to the class.[37] Moreover, the purported "individualized inquiries" are often speculative. For example, Defendants do not offer one example of a TPP raising its premium in response to an annual price increase for Opana ER. Moreover, details of individual purchases, purchasers, or plans may be relevant to calculating individual damages at the allocation stage, but not to whether a class can be certified.[38]

Lastly, contrary to Defendants' contention, neither *Asacol* nor *Vista Healthplan* require denial of class certification here.[39] Consistent with *Asacol*, EPPs "offer a reasonable and workable plan" that provides Defendants an opportunity to challenge allegations of injury "and

---

Seventh Circuit has consistently rejected such a requirement. *See, e.g.*, *Kleen*, 831 F.3d at 927; *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("[i]f the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong").

[36] Dr. Hughes ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ *See, e.g.*, *In re Restasis Antitrust Litig.*, 2018 WL 5094090, at *2-3 (E.D.N.Y. Oct. 18, 2018) (collecting cases and holding that "insurance premiums are not a 'pass-on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past").

[37] *See Kleen*, 306 F.R.D. at 596.

[38] *Lidoderm*, 2017 WL 679367, at *23 n.33. Two of the cases cited by Defendants are inapposite. In *Gordon v. Caribbean Cruise Line, Inc.*, the Court determined that whether each class member provided express consent to receive text messages required individualized inquiries. 2019 WL 498937, at *1, *10 (N.D. Ill. Feb. 8, 2019). And in *Dvorak v. St. Clair Cnty., Ill.*, the Court determined there was no method to determine whether bids at tax sales were significantly higher than in the years preceding and following 2018 WL 514326, at *8 (S.D. Ill. Jan. 23, 2018).

[39] *Asacol*, 907 F.3d 42; *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005 (E.D. Pa. June 10, 2015).

does not cause individual inquiries to overwhelm common issues."[40] And *Vista*'s predominance standard is simply inconsistent with Seventh Circuit law.[41]

Stripped of the flaws noted above, Dr. Hughes's analyses ████████████████



████████████████████ *See, e.g.*, R.R. ¶¶ 58-118, 120-42. Further, as detailed in EPPs' opening brief (Br. at 24-27), Dr. Rosenthal's methodologies have been approved in other similar pay-for-delay cases as a plausible way to demonstrate classwide harm to end payors.[42]

### 4.    The Number of Uninjured Class Members Is *De Minimis*

Defendants' attempt to artificially boost the number of uninjured class members, by noting different categories of class members (described below), suffers from a variety of errors:[43]

- **Brand Loyalists:** *First*, Dr. Hughes ████████████████████ ████████████████████ ████████████ R.R. ¶ 67. *Second*, EPPs' Amended Exclusions now explicitly exclude Brand Loyalists from the classes. *Third*, as shown by Dr. Rosenthal in her analysis of the ████████████████████ R.R. ¶¶ 67, 88.[44]

---

[40] *Asacol*, 907 F.3d at 58; Freed Decl. Exs. 15-16 (proposed trial plan and verdict sheet).

[41] *See, e.g.*, *Kleen*, 831 F.3d at 927; *Suchanek*, 764 F.3d at 757.

[42] *See, e.g.*, *Nexium*, 777 F.3d at 26; *Lidoderm*, 2017 WL 679367 at *10. Defendants' attempt to distinguish this case from *Nexium* is without merit. Opp. at 20. That there was an Impax generic on the market but none in *Nexium* ignores that Endo's hop to Reformulated Opana ER corrupted actual generic penetration rates and thus can serve as no barometer for what those rates would have been absent Defendants' conduct. *Loestrin*, 2019 WL 5406077, at *20.

[43] Defendants' reliance on *Sheet Metal Workers*, 2010 WL 3855552, at *10, is misplaced because there a showing was made that *more than* a *de minimis* number of class members were uninjured.

[44] Defendants suggest ████████████████████████████████ But this ignores the fact that "an insurer with brand-loyal members is only uninjured if every one of its members would have been brand-loyal for all [branded Opana ER] purchases in each 'but-for' scenario . . . It is highly unlikely, therefore, that institutional payors were uninjured even if some of their members are brand-loyal []."



- **Generic-Only Copay Consumers:** Dr. Hughes ███████████
  ███████████████████████████
  ███████ Hughes Rep. ¶ 94. But this ignores that in this situation, ███
  █████████████████████████████
  ███████████████ R.R. ¶¶ 97-98.

- **Coupon-Using Consumers:** Dr. Hughes also ████████████████
  ████████████████████████████████
  █████████████████ R.R. ¶ 112.

- **Multi-Tier Flat Co-payers:** Defendants rely on Dr. Hughes's █████████
  ████████████████████████████
  ██████ *First*, Dr. Hughes ████████
  ████████████████████████████
  ███████████████████████████ *Id.* ¶
  104. *Second*, Dr. Hughes ████████
  ████████████████████████████

- **TPPs Receiving Large Rebates**: Defendants argue that TPPs receiving large rebates
  ████████████████████████████
  ██████████████████ Opp. at 9-10. Defendants are
  wrong on the facts and law. First, Dr. Rosenthal █████████████████
  ████████████████████ *Id.* ¶¶ 131, 133, 136-
  37. Second, Defendants ignore well-established precedent holding that antitrust injury
  occurs "the moment the purchaser incurs an overcharge, whether or not that injury is
  later offset," by, for example, a rebate.[45]

In any event, of course, the presence of uninjured class members does not preclude certification,

where—as here—their purchases are excluded from the aggregate damages calculation.

---



*Solodyn*, 2017 WL 4621777, at *18. As Dr. Rosenthal notes, █████████████████
████████████████████████████████
████████████████████████████ *Id.* at ¶ 131.

[45] *See Nexium*, 777 F.3d at 27 ("Paying an overcharge caused by the alleged anticompetitive conduct on
a single purchase suffices to show—as a legal and factual matter—impact or fact of damage.")*; Hawaii v.
Standard Oil Co.*, 405 U.S. 251, 254 n.14 (1972) ("[C]ourts will not go beyond the fact of this injury to
determine whether the victim of the overcharge has partially recouped its loss . . . ."); *Hanover Shoe, Inc.
v. United Shoe Mach. Corp.*, 392 U.S. 481, 490 (1968) ("A person whose property is diminished by a
payment of money wrongfully induced is injured in his property.") (internal quotes omitted).

### 5. Defendants Wrongly Argue that Damages Cannot Be Established on a Classwide Basis

Defendants attempt to conjure other individualized issues in challenging EPPs' aggregate damages calculation (Opp. at 20), but their arguments misconstrue Seventh Circuit law and the purpose of aggregate damages models. As noted above, while a plaintiff must produce a reliable method of measuring classwide damages based on common proof,[46] "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification."[47]

Moreover, contrary to Defendants' arguments, an aggregate damages model need not allocate damages among individual class members, prove that every class member suffered injury, or demonstrate that all class members paid the same price.[48] Individual issues as to the exact quantum of a class member's damages, whether a class member is entitled to multiplier on damages, or how damages are allocated between TPPs and consumers will be addressed later, after liability has been established.[49] Defendants also criticize Dr. Rosenthal's aggregate damages model for using average overcharges but ignore the body of law approving such models in indirect purchaser cases.[50]

---

[46] *See Kleen,* 306 F.R.D. at 601.

[47] *Messner,* 669 F.3d at 815 (citing *Wal-Mart,* 131 S. Ct. at 2558) (deeming it "clear that individualized monetary claims belong in Rule 23(b)(3)").

[48] *See, e.g.*, *Kleen*, 831 F.3d at 927, 929 ("at the class certification stage, plaintiffs are not obliged to drill down and estimate each individual class member's damages"). *See also Nexium*, 777 F.3d at 23; *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 232 (E.D. Pa. 2012).

[49] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1050 (2016) ("a challenge to the proposed method of allocation" is properly raised when case is ready "for disbursal of the award"); *Kleen*, 831 F.3d at 829; *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 182-83 (D. Mass. 2013) ("This is not the allocation stage of litigation. Apportioning damages ought to wait until liability is decided upon the merits."); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter accomplished pursuant to a court-approved plan of allocation."); *Flonase*, 284 F.R.D. at 233 (same).

[50] *See, e.g.*, *Nexium*, 297 F.R.D. at 179, *aff'd sub nom.*, 777 F.3d 9; *In re Solodyn Antitrust Litig.*, 2017 WL 4621777 (D. Mass. 2017); *Flonase.*, 284 F.R.D. at 232-33; *Lidoderm*, 2017 WL 679367, at *16; *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 348-50 (E.D. Mich. 2001); *Terazosin*, 220 F.R.D. at 699; *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 490 (E.D. Pa. 2009). *See also, e.g., Kleen*, 831 F.3d

Lastly, Defendants wrongly assert that Dr. Rosenthal's yardstick approach—one regularly approved in reverse payment and other antitrust cases[51]—does not properly deduct damages attributable to certain categories of class members, *e.g.*, Medicare Part D consumers, Brand Loyalists and PBMs. Opp. at 21. This is a classic straw man: the "uninjured" are expressly *excluded* from the classes and/or Dr. Rosenthal's damages calculation. For example, consumers who paid nothing are not in the classes, thus they need not be identified and excluded. R.R. ¶¶ 105-108. Defendants also state that Dr. Rosenthal ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████[52] Finally, as described by Ms. Craft, ████ ████████████████████████████████████████████████████████ ████████████████████████████████"[53]

---

at 929 (approving use of average overcharge model to calculate aggregate damages in direct purchaser action).

[51] *Nexium*, 297 F.R.D. at 176-78 (crediting Dr. Rosenthal's yardstick methodology for calculating impact and damages to end payors); *Loestrin*, 2019 WL 5406077, at *20 (yardstick methodology "generally accepted") (citing *Costal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp*., 175 F.3d 18, 24 n.3 (1st Cir. 1999)). *See also Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 592 (7th Cir. 1998) (use of "the so-called 'yardstick method . . . was not improper").

[52] R.R. ¶ 151 ("██████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████). Further, even assuming Dr. Hughes ████████████████ ████████████████████████████████████ As shown by Dr. Rosenthal, Opana ER and Reformulated Opana ER ████████████████████████ ████████████████████████████████

[53] *Loestrin*, 2019 WL 5406077, at *18, 34; Craft Rep. ¶ 52 (██████████████ ████████████████████████████████████████████████████████ ██████████████████); *Id.* ¶¶ 55-57 (██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

In short, consistent with many other class certification decisions in this district[54] and elsewhere—including those involving reverse payment claims—EPPs present a valid method for determining classwide damages using record evidence common to class members.[55]

### C. Differences Among Applicable State Laws Are Immaterial or Nonexistent

Defendants falsely contend that EPPs fail to sufficiently address supposed "material differences" among the state laws at issue. Opp. at 21-26. To the contrary, EPPs (1) directly assessed any perceived variations—and in many cases none actually exist—and (2) seek to certify an Antitrust/Consumer Protection Class and separate Unjust Enrichment Subclasses that take into account any differences that might arguably create manageability issues.[56]

Defendants do not meaningfully dispute that the core elements of EPPs' state law claims are nearly identical and interpreted in accordance with federal antitrust law but baldly assert that EPPs rely on cases that "do nothing" to support class certification. Opp. at 24. To the contrary, EPPs cite numerous pay-for-delay cases where courts found that any differences among

---

). *See also* Exs. C-E (
).

[54] *See, e.g.*, *Fox v. Riverview Realty Partners*, 2014 WL 1613022, at *6 (N.D. Ill. Apr. 22, 2014) (finding that a "formalized damages calculation methodology" is not "a prerequisite to a finding of predominance"); *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, *aff'd* 831 F.3d 919 (7th Cir. 2016).

[55] Defendants' reliance on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), is misplaced because EPPs' damages model flows from one theory of liability—Defendants' unlawful agreement delaying generic competition. Moreover, Defendants' argument that *Comcast* held that variations in damages among class members defeat predominance has been largely rejected by the Seventh and other Circuits. *See, e.g.*, *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (distinguishing *Comcast* because of disconnect between liability theory and damages); *Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification"); *Nexium*, 777 F.3d at 18-19, 23 (limiting *Comcast* to the principle that theory of impact must match damages models); *Lidoderm*, 2017 WL 679367, at *24 (rejecting *Comcast*'s applicability).

[56] Br. at 16-17; Freed Decl., Exs. 12-14 (analyzing state laws). As the Seventh Circuit held in *Mullins*, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." 795 F.3d at 663.

16

applicable state laws were immaterial and presented no obstacle to class certification.[57]

Defendants further argue that consumer protection and antitrust statutes have different

requirements and cannot be tried together but fail to address authority holding to the contrary.[58]

      Here, as in *Lidoderm*, 2017 WL 679367, at \*27, "[t]he differences in the applicable state

laws identified by defendants do not appear to be material or even significant. But if they are,

those differences can be readily accommodated on a special verdict form or through other

mechanisms routinely employed in complex litigations like this one." EPPs' trial plan, modeled

on EPP plans in similar cases, allows for grouping of common elements and a special verdict

form to allow the jury to decide any state-specific issues, such as multiple damages or additional

defenses.[59] Accordingly, Defendants' effort to identify minor variations among state laws is

unconvincing. Indeed, the *Nexium* and *Lidoderm* courts rejected many similar arguments.[60]

Further, Defendants' opposition and state law exhibits demonstrate that the issues Defendants

identify are minor, irrelevant, or are easily managed.[61]

---

[57] Freed Decl. Ex. 11 (Appendix of EPP Certified Classes). *See also Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty. v. Momenta Pharm., Inc. & Sandoz Inc.*, 2019 WL 4573433, at \*18 (M.D. Tenn. Sept. 20, 2019) (finding that "contrary to Defendants' arguments, the differences [among varying state antitrust, consumer protection and unjust enrichment laws] are not material" and "the fundamental issues [] remain the same – proving that putative plaintiffs were forced to pay a higher price in the absence of generic [] competition.").

[58] *Id. See also Nexium*, 297 F.R.D. at 175 (recognizing that as to claims under "states' consumer protection laws (Florida, California, Massachusetts, and Vermont), courts have held that the violation of traditional antitrust elements constitutes a violation of the relevant consumer protection statute").]

[59] Br. at 29; Freed Decl., Ex. 15. *See also Overka v. Am.* Airlines*, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) (analyzing 34 state laws and concluding court would manage trial by presenting jury with core claim composed of elements common to all jurisdictions and special questions targeting any additional elements for individual jurisdictions).

[60] *See Nexium*, 297 F.R.D. at 175-76 (despite purported differences, traditional antitrust elements would establish violations of state laws); *Lidoderm*, 2017 WL 679367, at \*27 (variations in intrastate impact language, enhanced damages provisions and statutes of limitations did not preclude class certification).

[61] For example, Defendants' state law charts show that elements of EPPs' unjust enrichment claims are virtually identical across all the states, distilling to a core set of elements. *Cf.* Foley Decl., Exs. C-E. Further, many of the cases cited in those charts are simply not applicable. For example: (1) California's Cartwright Act may not allow a unilateral monopoly claim, but EPPs allege monopolization via *conspiracy*; (2) certain states may prohibits "duplicative damages," but Defendants do not define what

Defendants claim that EPPs' trial plan fails to adequately account for differences among applicable state laws. But EPPs need not provide detailed state-specific jury instructions at this stage. As the *Nexium*, *Lidoderm*, and *SRAM* courts explained, the instructions for claims brought under federal antitrust law will encompass the core elements of EPPs' state law claims.[62] The jury can likewise be instructed on any state-specific issues that require jury determination. The types of challenges Defendants identify "are ones that routinely arise in complex litigation, and they are insufficient to overcome the innumerable advantages that class treatment will afford."[63] Moreover, the allocation of damages among class members is largely an intra-class concern.[64]

In short, any minor variations among applicable state laws do not predominate over core elements of EPPs' claims, *i.e.*, whether Defendants engaged in anticompetitive conduct; whether that conduct caused class members to pay inflated prices; and the aggregate damages suffered by the Classes. Similarly, minor variation in state laws do not render a class action inferior to the alternatives. There can be little question that a centralized class action is a superior use of judicial resources than the alternatives: numerous individual lawsuits or multiple state actions.[65]

---

that means and, in any event, the DPPs in this case are entitled to recover the full amount of any overcharge (trebled), even if they passed on all of that overcharge—and EPPs may in turn recover under state law the full amount of any overcharge they incurred. *See Calif. v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) ("state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law."); (3) EPPs are defined as having purchased Opana ER "other than for resale" and cannot have "passed on" any overcharge themselves; and (4) there cannot be any question that Opana ER, a prescription drug, was purchased for individual or household use. Moreover, the Court previously addressed many of the minor variations among the state laws at issue in denying Defendants' motion to dismiss. *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704(N.D. Ill. 2016) and 2016 WL 4245516 (N.D. Ill. Aug. 11, 2016)].

[62] *Nexium,* 297 F.R.D. at 175-76; *Lidoderm*, 2017 WL 679367, at *27; *In re Static Random Access Memory (SRAM)* Antitrust *Litig.,* 264 F.R.D. 603, 612-15 (N.D. Cal. 2009).

[63] *Terazosin*, 220 F.R.D. at 701.

[64] *Id.* at 699.

[65] *See SRAM*, 264 F.R.D. at 615 ("What would be unmanageable is the institution of countless individual lawsuits with the same facts and legal issues.").

### D.     The Named EPPs Satisfy the Adequacy and Typicality Requirements

Finally, Defendants incorrectly argue that the named EPPs cannot satisfy the typicality and adequacy requirements of Rule 23 because (1) no named EPP is an individual consumer and (2) named EPPs are not physically located, nor made purchases or reimbursements, in all jurisdictions within the proposed classes.[66] But "Rule 23(a)(4) does not impose a requirement that named plaintiffs represent each sector of the putative class equally. Rather, the Rule's focus is on uncovering 'conflicts of interest between named parties and the class they seek to represent.'"[67] The "alignment of incentives between the ten named [union plan sponsor] plaintiffs and the members of the class [was] supported by the fact that all payors in the putative class allegedly paid supracompetitive prices for a single product [] and suffered identical economic injuries."[68] "[P]otential issues with damages allocation [among TPPs and consumers] are but weak indicators of existing conflicts of interest."[69]

Thus, here, where all class members similarly paid supracompetitive prices for Opana ER due to Defendants' anticompetitive conduct, neither the absence of an individual plaintiff nor the absence of a named plaintiff from all affected jurisdictions is a bar to class certification.[70]

---

[66] Defendants also suggest that certain potential class members may have benefited from their pay-for-delay scheme (Opp. at 28-29), but there is nothing in the record to support this conjecture.

[67] *Nexium*, 297 F.R.D. at 172 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) and citing *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 326, 337 (E.D. Mich. 2001)).

[68] *Nexium*, 297 F.R.D. at 172.

[69] *Id*. at 173. *See also Momenta*, 2019 WL 4573433, at *17-18 (rejecting argument that plaintiffs lacked standing to bring claims in certain states; nature of class representatives' injuries provided "sufficient incentive to adequately litigate claims that are similar, but not identical, to those of absent class members.") (citing *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 423 (6th Cir. 1998); *Asacol*, 907 F.3d at 49; and *Langan v. Johnson & Johnson Consumer Cos*., 897 F.3d 88, 92-96 (2d Cir. 2018)).

[70] Defendants also wrongly contend that some class members benefited because of the SLA's "broad license." The broad license (1) was negotiated after Impax's entry date and payment was secured and (2) could have been included in an alternative settlement that provided Impax *earlier entry and no payment*. Freed Decl., Ex. 5 (Dr. McGuire Rep.), ¶¶ 146-47; Ex. J. (Dr. McGuire Rebuttal Rep.), ¶¶ 49-58.

19

## IV.    ALTERNATIVE CLASSES CAN BE CERTIFIED

While EPPs believe the proposed classes should be certified under Rule 23, alternatively, the Court may opt to certify EPPs' proposed TPP-Only Class/Subclasses, which remove any perceived complications arising from the inclusion of consumers—*e.g.*, the number of brand loyalists. In *Loestrin*, another delayed generic entry case alleging a "product hop," the Court certified a TPP-only class, dispensing with many of the arguments that Defendants offer here— *e.g.*, that TPPs paid less for the brand than they would have paid for the generic and that PBMs absorb a portion of TPPs' injury.[71] The *Loestrin* court's reasoning applies with equal force here.

At a minimum, the classes should be certified under Rule 23(c)(4). As noted above, Defendants have not challenged the existence of the common evidence necessary to prove the underlying anticompetitive conduct that forms the basis for EPPs' state law claims. The Seventh Circuit favors certification of issues classes even when individualized issues exist with respect to injury and damages and other recent antitrust cases have been certified when common issues pervade on the elements underlying plaintiffs' claims.[72]

## V.    CONCLUSION

For all the reasons set forth above, in their opening papers, and in their accompanying expert reports,[73] EPPs meet the requirements for class certification under Rule 23, and their motion should be granted. In the alternative, the Court should certify either the TPP-Only Classes or the Issues Class.

---

[71] *Loestrin*, 2019 WL 5406077, at *34-35.

[72] *Butler,* 727 F.3d at 800 ("a class action limited to determining liability on a class-wide basis . . . is permitted by Rule 23(c)(4) and will often be the sensible way to proceed"). *See also Suboxone*, 2019 WL 4735520, at *40-47 (certifying (c)(4) class); *FX*, 2019 WL 4171032, at *10 (same).

[73] EPPs also incorporate by reference those portions of the Rebuttal Report of Jeffrey J. Leitzinger, Ph.D. (ECF 468-2) that concern relevant market and market power, issues common to all class members.

Dated:  November 5, 2019     Respectfully submitted,

*/s/ Gregory S. Asciolla*       */s/ Michael J. Freed*
Gregory S. Asciolla        Michael J. Freed
Karin E. Garvey         Robert J. Wozniak
Matthew J. Perez         Brian M. Hogan
LABATON SUCHAROW LLP    FREED KANNER LONDON
140 Broadway           & MILLEN LLC
New York, NY  10005       2201 Waukegan Road, Suite 130
(212) 907-0700         Bannockburn, IL  60015
gasciolla@labaton.com      (224) 632-4500
kgarvey@labaton.com       mfreed@fklmlaw.com
mperez@labaton.com       rwozniak@fklmlaw.com
              bhogan@fklmlaw.com

*Interim Co-lead Counsel for the End Payor Classes*

## **CERTIFICATE OF SERVICE**

I, Brian M. Hogan, hereby certify that on November 5, 2019, a true copy of the foregoing

was filed under seal using the CM/ECF system and served on counsel of record via electronic mail.


/s/ *Brian M. Hogan*
 Brian M. Hogan