# EXHIBIT 38

WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, New Jersey 07102
(973) 848-7676
James S. Richter
Keiyana B. Fordham

*Attorneys for Defendant and Counterclaimant*
*Impax Laboratories, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENDO PHARMACEUTICALS INC., | Honorable Jose L. Linares, U.S.D.J. |
| Plaintiff, | Civil Action No.: 2:16-CV-2526-JLL-JAD |
| v. | **IMPAX LABORATORIES, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT** |
| IMPAX LABORATORIES, INC., | |
| Defendant. | |

Defendant, Impax Laboratories, Inc. ("Impax") by and through its counsel, answers the Amended Complaint of Plaintiff, Endo Pharmaceuticals, Inc. ("Endo"), as follows:

1.  Impax denies the allegations of paragraph 1.

2.  Impax admits that Plaintiff Endo is a Delaware Corporation headquartered in Malvern, Pennsylvania that is engaged in the research, development, sale and manufacturing of prescription pharmaceuticals. Impax denies the remaining allegations of paragraph 2.

3.  Impax admits that Impax is a Delaware Corporation headquartered in Hayward, California and is a pharmaceutical company engaged in the research, development, manufacture,

Impax_Opana_PartIII_0000545
IMPAX-OPANA00227814

sale and marketing of generic and brand prescription pharmaceuticals for sale and use throughout the United States. Impax further admits that it makes and sells oxymorphone hydrochloride tablets, approved by the FDA as generic to a version of OPANA® ER that was formerly made and distributed by Endo.

4.    Impax admits that Endo purports to bring this action for breach of contract and the implied duty of good faith and fair dealing under New Jersey common law. Impax denies the remaining allegations of paragraph 4.

5.    Impax admits that Endo purports to bring this action for patent infringement under the patent laws of the United States and the Declaratory Judgment Act. Impax denies the remaining allegations of paragraph 5.

6.    Impax admits that this Court has subject matter jurisdiction over the patent claims. Impax denies the remaining allegations of paragraph 6.

7.    Impax admits that venue is proper in this District. Impax denies the remaining allegations of paragraph 7.

8.    Impax admits that the Court has personal jurisdiction over Impax. Impax denies the remaining allegations of paragraph 8.

9.    Paragraph 9 contains legal conclusions regarding the New Drug Application process to the FDA to which no response is required.

10.   Paragraph 10 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

11.   Paragraph 11 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

Confidential Material per Jan. 24, 2017 Protective Order                                        Impax_Opana_PartIII_0000546
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER                                          IMPAX-OPANA00227815

12.     Paragraph 12 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

13.     Impax admits that on June 22, 2006 the FDA approved Endo's NDA No. 21-610 for OPANA® ER.   Further answering, Impax states that NDA No. 21-610 and any communication by the FDA approving that application speak for themselves.   Impax denies the remaining allegations of paragraph 13.

14.     Impax admits the allegations of paragraph 14.

15.     Impax admits that the FDA determined that the Original OPANA® ER tablets were safe and effective when used properly and according to the indications on their label. Impax denies the remaining allegations of paragraph 15.

16.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 16, and therefore denies the same.

17.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 17, and therefore denies the same.

18.     Impax admits that Endo submitted NDA No. 201655 for OPANA® ER CRF on July 7, 2010 and that the FDA approved that NDA on December 9, 2011.   Impax denies the remaining allegations of paragraph 18.

19.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 19, and therefore denies the same.

20.     Impax admits the allegations of paragraph 20.

21.     Impax admits the allegations of paragraph 21.

22.     Impax admits that there was prior litigation regarding Impax ANDA No. 79-087 that was pending in the District of Delaware and the District of New Jersey and states that the

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000547
IMPAX-OPANA00227816

dockets in those proceedings speak for themselves. Impax denies the remaining allegations of paragraph 22.

23.     Impax admits the allegations of paragraph 23.

24.     Impax admits the allegations of paragraph 24. Further answering, Impax avers that the Stipulation of Dismissal and Order only incorporates select terms of the Settlement and License Agreement.

25.     Impax admits that Endo has sued other generics for infringement of the '933 patent and/or '456 patent and has reached settlements in those actions. Impax lacks knowledge or information sufficient to admit or deny whether Endo threatened suit against other generics and therefore denies the same. Impax denies the remaining allegations of paragraph 25.

26.     Impax admits the allegations of paragraph 26. Further answering, Impax avers that the contingent royalty never became due.

27.     Impax admits that at the time of trial and settlement in June 2010 the parties were aware of Endo's pending patent applications and that, if issued, such patents could be argued to cover Impax's generic version of Opana ER and would remain in effect until at least 2023. Impax denies the remaining allegations of paragraph 27.

28.     Impax denies the allegations of paragraph 28.

29.     Impax denies that it was aware of the alleged fact that the right to seek license fees for patents issuing on pending applications was a highly material term of Endo's settlement with Impax. Impax lacks knowledge or information sufficient to admit or deny the allegations regarding prior settlement negotiations between Endo and other third party generic pharmaceutical companies and/or whether the right to assert or seek license fees for pending

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000548
IMPAX-OPANA00227817

applications was a highly material term in Endo's settlements with other generics, and therefore denies the same. Impax denies the remaining allegations of paragraph 29.

30.     Impax admits that certain patent applications pending at the time of the June 2010 settlement resulted in the issuance of certain patents. Impax lacks knowledge or information sufficient to admit or deny allegations regarding the proceedings between the PTO and the Board of Patent Appeals, and therefore denies the same. Impax denies the remaining allegations of paragraph 30.

31.     Impax denies the allegations of paragraph 31.

32.     Impax denies the allegations of paragraph 32.

33.     Impax denies the allegations of paragraph 33.

34.     Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 34.

35.     Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 35.

36.     Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 36.

37.     Impax denies the allegations of paragraph 37.

38.     Impax admits that Endo is listed as the assignee on the face of the '122 Patent, and that November 13, 2012 is listed as the date of patent issuance. Impax admits that Application No. 11/680,432 is listed on the face of the '122 Patent, and February 28, 2007 is listed as the filed date. Impax admits that the '122 Patent is attached as Exhibit B to Plaintiff's Amended Complaint. Impax denies the remaining allegations of paragraph 38.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000549
IMPAX-OPANA00227818

39.     Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and therefore denies the same.

40.     Impax admits that Endo is listed as the assignee on the face of the '216 Patent, and that December 11, 2012 is listed as the date of patent issuance. Impax admits that Application No. 11/427,438 is listed on the face of the '216 Patent, and June 29, 2006 is listed as the filed date. Impax admits that the '216 Patent is attached as Exhibit C to Plaintiff's Amended Complaint. Impax denies the remaining allegations of paragraph 40.

41.     Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and therefore denies the same.

42.     Endo's claim for alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016. Accordingly, no response to paragraph 42 is required. To the extent an Answer is required, Impax admits that Endo is listed as the assignee on the face of the '737 Patent, and that August 19, 2014 is listed as the date of patent issuance. Impax admits that Application No. 12/716,973 is listed on the face of the '737 Patent, and March 3, 2010 is listed as the filed date. Impax admits that the '737 Patent is attached as Exhibit D to Plaintiff's Amended Complaint. Impax denies the remaining allegations of paragraph 42.

43.     Endo's claim for alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016. Accordingly, no response to paragraph 43 is required. To the extent an Answer is required, Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 and therefore denies the same.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000550
IMPAX-OPANA00227819

44.     Impax admits that since January 2013 Impax has sold its generic oxymorphone ER product while Endo has sold its OPANA® ER CRF product.  Impax lacks knowledge or information sufficient to admit or deny whether its product has a "much lower breaking strength" relative to Endo's product and therefore denies the same.  Impax denies all remaining allegations of paragraph 44.

45.     Impax admits that in 2012 it filed ANDA No. 20-4211 with the FDA, and developed the product described in that ANDA.  Impax denies all remaining allegations of paragraph 45.

46.     Impax admits that the OPANA® ER CRF litigation against Impax and other generic manufacturers was tried in April and May 2015 before the Honorable Thomas P. Griesa in the Southern District of New York.  Impax denies that Endo filed suit against Impax in United States District Court for the Southern District of New York asserting that its generic version of OPANA® ER infringed or would infringe the '122 and '216 patents.  Impax further answers that Impax has a license under the June 2010 Settlement and License Agreement to these patents with respect to its generic version of OPANA® ER.  Impax denies the remaining allegations of paragraph 46.

47.     Impax admits that various proceedings in the New York Litigation occurred and the record in that matter speaks for itself.  Impax further answers that it has appealed from the order and decision dated August 14, 2015 that was issued in the New York Litigation to the U.S. Court of Appeals for the Federal Circuit, and that its appeal is pending.

48.     Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself.  Further answering, Impax avers that it has appealed this decision and may be

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000551
IMPAX-OPANA00227820

permitted to challenge the validity of the '122 and '216 Patents if its appeal is granted. Impax denies the remaining allegations of paragraph 48.

49. Impax admits that it has a license to future issued patents with respect to its generic version of OPANA® ER. Impax further admits that Endo did not sue Impax for infringement of the '122 or '216 Patents as part of the New York Litigation with respect to Impax's Generic Oxymorphone ER Tablets. Impax denies the remaining allegations of paragraph 49.

50. Impax admits that the record in the New York Litigation speaks for itself. Impax denies the remaining allegations of Paragraph 50.

51. Impax denies the allegations of paragraph 51.

52. Impax admits that but for the license contained in the Settlement Agreement, it is likely that Endo would have sued Impax in the New York litigation with respect to Impax's generic version of Opana ER. Impax admits that it was free to launch its generic version of Opana ER. Impax denies the remaining allegations of paragraph 52.

53. Impax denies the allegations of paragraph 53.

54. Impax denies the allegations of paragraph 54.

55. Impax denies the allegations of paragraph 55.

56. Impax denies the allegations of paragraph 56. Further answering, Impax avers that it indicated to Endo that negotiations for a contract amendment require a proposed exchange of consideration and that, were Impax to give up its royalty free license under the parties' agreement, Endo must offer some consideration flowing to Impax in return.

57. Impax admits that Endo sent an email to Impax on April 19, 2016, which email speaks for itself. Impax denies the remaining allegations of paragraph 57.

8

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

58.     Impax denies the allegations of paragraph 58.  Further answering, Impax avers that Endo filed suit only two weeks after its April 19, 2016 correspondence on May 4, 2016, before Impax had the opportunity to respond to that correspondence.  Impax further answers that after the lawsuit was filed, Endo and Impax exchanged letters on October 31, November 2, November 4, and November 15, 2016 regarding continued negotiations.

59.     Impax denies the allegations of paragraph 59.

60.     Impax denies the allegations of paragraph 60.

61.     Impax denies the allegations of paragraph 61.

62.     Impax denies the allegations of paragraph 62.

63.     Impax denies the allegations of paragraph 63.

## AS TO THE FIRST COUNT
### (Breach of Contract)

64.     Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 63 as if fully set forth herein.

65.     Impax denies the allegations of paragraph 65.

66.     Impax denies the allegations of paragraph 66.

67.     Impax denies the allegations of paragraph 67.

68.     Impax denies the allegations of paragraph 68.

69.     Impax denies the allegations of paragraph 69.

## AS TO THE SECOND COUNT
### (Breach of Implied Duty of Good Faith and Fair Dealing)

70.     Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 69 as if fully set forth herein.

71.     Impax denies the allegations of paragraph 71.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000553
IMPAX-OPANA00227822

72.      Impax denies the allegations of paragraph 72.

73.      Impax denies the allegations of paragraph 73.

74.      Impax denies the allegations of paragraph 74.

75.      Impax denies the allegations of paragraph 75.

76.      Impax denies the allegations of paragraph 76.

77.      Impax denies the allegations of paragraph 77.

78.      Impax denies the allegations of paragraph 78.

79.      Impax denies the allegations of paragraph 79.

### AS TO THE THIRD COUNT
### (Infringement of '122 Patent)

80.      Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 79 as if fully set forth herein.

81.      Impax admits that it became aware of the Complaint in the New York Litigation asserting the '122 patent on or about January 18, 2013. Further answering, Impax avers that it has a license to the '122 Patent. Impax denies the remaining allegations of paragraph 81.

82.      Impax denies the allegations of paragraph 82. Further answering, Impax avers that it has a license to the '122 Patent. Impax further states that it does not understand the term "Generic non-Oxymorphone ER Tablets."

83.      Impax denies the allegations of paragraph 83. Further answering, Impax avers that it has a license to the '122 Patent.

84.      Impax denies the allegations of paragraph 84. Further answering, Impax avers that it has a license to the '122 Patent.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000554
IMPAX-OPANA00227823

85. Impax admits that it sells and will continue to sell Generic Oxymorphone ER tablets in the United States. Impax denies any infringement. Further answering, Impax avers that it has a license to the '122 Patent.

86. Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself. Impax states that it has appealed this decision. Impax denies the remaining allegations of paragraph 86. Further answering, Impax avers that it has a license to the '122 Patent.

87. Impax admits that Endo has covenanted not to sue Impax for infringement of the '122 patent in regard to its Generic Oxymorphone ER tablets. Impax denies that this covenant not to sue is found at Section 4.1(c) of the Settlement and License Agreement. Impax denies all remaining allegations of paragraph 87. Impax further states that Endo's covenant not to sue Impax remains in full force and effect.

88. Impax denies the allegations of paragraph 88.

### AS TO THE FOURTH COUNT
### (Infringement of '216 Patent)

89. Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 88 as if fully set forth herein.

90. Impax admits that it became aware of the Complaint in the New York Litigation asserting the '216 patent on or about January 18, 2013. Further answering, Impax avers that it has a license to the '216 Patent. Impax denies the remaining allegations of paragraph 90.

91. Impax admits that the Impax Generic Oxymorphone ER Tablets are covered by the '216 patent. Impax denies the remaining allegations of paragraph 91. Further answering, Impax avers that it has a license to the '216 Patent.

11

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000555
IMPAX-OPANA00227824

92.    Impax denies the allegations of paragraph 92.  Further answering, Impax avers that it has a license to the '216 Patent.

93.    Impax denies the allegations of paragraph 93.  Further answering, Impax avers that it has a license to the '216 Patent.

94.    Impax admits that it sells and will continue to sell Generic Oxymorphone ER tablets in the United States.  Impax denies any infringement.  Further answering, Impax avers that it has a license to the '216 Patent.

95.    Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself.  Impax states that it has appealed this decision.  Impax denies the remaining allegations of paragraph 95.  Further answering, Impax avers that it has a license to the '216 Patent.

96.    Impax admits that Endo has covenanted not to sue Impax for infringement of the '216 patent in regard to its Generic Oxymorphone ER tablets.  Impax denies that this covenant not to sue is found at Section 4.1(c) of the Settlement and License Agreement.  Impax denies all remaining allegations of paragraph 96.  Impax further states that Endo's covenant not to sue Impax remains in full force and effect.

97.    Impax denies the allegations of paragraph 97.

### AS TO THE FIFTH COUNT
### (Infringement of '737 Patent)

Count V of the Amended Complaint regarding alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016.  Accordingly, no response to paragraphs 98 through 106 of the Amended Complaint is required.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000556
IMPAX-OPANA00227825

## AS TO THE SIXTH COUNT
### (Unjust Enrichment)

107.    Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 97 as if fully set forth herein.

108.    Impax denies the allegations of paragraph 108.

109.    Impax denies the allegations of paragraph 109.

110.    Impax denies the allegations of paragraph 110.

111.    Impax denies the allegations of paragraph 111.

## AS TO THE PRAYER FOR RELIEF

Impax denies that Endo is entitled to any relief from the Court.  Impax further states that Endo should take nothing by reason of its complaint and award attorneys' fees, costs and expenses against Endo.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Impax has a license to the '122 and '216 Patents and therefore Endo's Amended Complaint fails to state a claim for infringement of those patents and Impax cannot be liable for patent infringement as a matter of law.

## SECOND AFFIRMATIVE DEFENSE

The Amended Complaint fails to state any claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which an award of attorney's fees and/or costs can be granted.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000557
IMPAX-OPANA00227826

## FOURTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo breached or failed to perform its obligations under the Settlement and License Agreement.

## FIFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrines of equitable and/or judicial estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of ratification.

## NINTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of acquiescence.

## TENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, under the doctrine of unjust enrichment.

## ELEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of privilege.

## THIRTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo violated the duty of good faith and fair dealing under New Jersey law.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000558
IMPAX-OPANA00227827

## FOURTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part because the contract provision on which Endo relies is so vague and/or indefinite that it is not enforceable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Impax acted at all pertinent times in good faith and without bad faith, malice or intent to injure Endo.

## SIXTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the parol evidence rule and/or the doctrine of merger.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the provisions of the Settlement and License Agreement upon which it relies are severable from the remaining terms of the Settlement and License Agreement.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Impax was legally justified in its actions.

## NINETEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, due to Endo's anticipatory breaches of contract.

## TWENTIETH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the alleged breach by Impax was not material.

15

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000559
IMPAX-OPANA00227828

## TWENTY FIRST AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo did not provide proper notice of breach.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Impax has fully performed all obligations that it owes under the Settlement and License Agreement.

## TWENTY THIRD AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by Endo's prevention and frustration of performance under the Settlement and License Agreement.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo by its conduct and by this action seeks to unfairly compete in the market, to improperly extend a patent monopoly and to restrain trade.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, as contrary to public policy.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo has not suffered any cognizable injury, harm, or loss.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the damages allegedly suffered by Endo are speculative.

## TWENTY EIGHTH AFFIRMATIVE DEFENSE

Endo is barred from recovering damages from Impax by reason of its failure to mitigate damages.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000560
IMPAX-OPANA00227829

## TWENTY NINTH AFFIRMATIVE DEFENSE

Any damages allegedly suffered by Endo resulted from the breach of contract or other legal duty owed by Endo.

## THIRTIETH AFFIRMATIVE DEFENSE

Any damages suffered by Endo for alleged breach of a contractual agreement to negotiate are limited to the reasonable amount expended by Endo in unsuccessful negotiations.

## THIRTY FIRST AFFIRMATIVE DEFENSE

Any alleged damages suffered by Endo were not caused in fact or proximately caused by the alleged conduct of Impax.

## THIRTY SECOND AFFIRMATIVE DEFENSE

To the extent Endo seeks punitive or exemplary damages, the Amended Complaint violates Impax's right to due process under the Fifth and Fourteenth Amendments of the United States Constitution and the right to protection against excessive fines under the Eighth Amendment of the United States Constitution.

## THIRTY THIRD AFFIRMATIVE DEFENSE

Impax has a royalty free license to the '122 and '216 Patents and therefore cannot infringe these patents. Endo, however, now contends that such license has been terminated. Impax has asserted a counterclaim for declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated. Nevertheless, if and to the extent that the Court later determines the License has been validly terminated by Endo, Impax alleges that the claims of the '122 and '216 Patents are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, and that the manufacture, use, sale, offer for sale, and/or importation

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000561
IMPAX-OPANA00227830

into the United States of the products described in Impax's ANDA would not infringe any claim of the '122 and '216 Patents that is determined to be valid.

## RESERVATION OF RIGHTS

Impax has insufficient information available upon which to form a belief as to whether it has available additional, as yet unstated, affirmative defenses. Impax specifically reserves all affirmative or other defenses as may become available or appear upon further developments in this case.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000562
IMPAX-OPANA00227831

## IMPAX LABORATORIES, INC.'S COUNTERCLAIMS
## FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

Defendant and Counterclaimant Impax Laboratories, Inc. ("Impax") brings the following counterclaims against Plaintiff and Counterclaim-Respondent Endo Pharmaceuticals Inc. ("Endo"):

### NATURE OF THE ACTION

1.      This is an action by Impax for: (1) declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated; and (2) for breach of Endo's covenant not to sue Impax under the express terms of the Settlement and License Agreement.

### PARTIES

2.      Defendant and Counterclaimant Impax is a Delaware corporation headquartered in Hayward, California.  Impax develops, manufactures and distributes both generic and brand-name prescription drugs.   Since January 2013, Impax has manufactured and sold the pain medication Oxymorphone Hydrochloride Extended Release Tablet (the "Impax ER Tablet"), a generic version of the branded drug "OPANA® ER."

3.      Plaintiff and Counterclaim-Respondent Endo is a Delaware corporation headquartered in Malvern, Pennsylvania.  Endo previously manufactured and sold OPANA® ER, but, beginning in February 2012, replaced it with a "harder, reformulated" version that Endo refers to as "OPANA® ER CRF."  Since May 2012, Endo has sold only the version it refers to as OPANA® ER CRF and ceased the manufacture or sale of OPANA® ER.

19

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000563
IMPAX-OPANA00227832

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over Impax's counterclaim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* This Court has subject matter jurisdiction over Impax's counterclaim for breach of contract pursuant to 28 U.S.C. § 1367 because this counterclaim is compulsory in nature and arises out of the same transaction or occurrence as Endo's claims.

5.    This Court has personal jurisdiction over Endo, which initiated this lawsuit in this Court and submitted itself to the Court's jurisdiction.

6.    Venue is proper in the District of New Jersey because a substantial part of the events giving rise to these counterclaims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### SETTLEMENT OF THE PARTIES' PRIOR PATENT LITIGATION

7.    This action concerns the Settlement and License Agreement, dated June 8, 2010, that resolved and disposed of a patent trial in this Court involving Impax, Endo, and Penwest Pharmaceuticals, Co. ("Penwest").[1]   A true and correct copy of the Settlement and License Agreement will be filed under seal with an accompanying motion to seal.  A true and correct redacted copy of the Settlement and License Agreement as filed with the U.S. Securities and Exchange Commission is attached as **Exhibit A**.

8.    Before a pharmaceutical company can market a generic form of prescription drug, it must submit and receive approval of an Abbreviated New Drug Application ("ANDA") from the U.S. Food and Drug Administration ("FDA").  If approved, the applicant may then bring the

---

[1] Endo subsequently merged with Penwest in August 2010.  Endo and Penwest are collectively referred to as "Endo."

20

generic medication to market, thereby increasing competition and lowering the prices paid for that prescription medication by patients, insurance companies, and healthcare providers.

9.      In June 2007, Impax submitted ANDA No. 79-087 to the FDA seeking approval to manufacture and sell a generic version of OPANA® ER.  Impax was the "first-to-file" an ANDA relating to OPANA® ER for multiple strengths of the generic pain medication which together represented approximately 80-90% of the potential market.

10.     In November 2007, Endo sued Impax for patent infringement in connection with Impax's filing of ANDA No. 79-087.  Impax asserted counterclaims for declaratory judgment of non-infringement and invalidity of the asserted patents.

11.     The suit was originally filed in the United States District Court for the District of Delaware but was subsequently transferred in February 2009 to this Court and assigned to the Honorable Katharine S. Hayden, Case No. 09–cv–831.

12.     The Court scheduled a bench trial of Endo's claims and Impax's counterclaims to take place on the following days:  June 3; June 8-11; and June 17, 2010.  The trial of Endo's claims and Impax's counterclaims began as scheduled on June 3, 2010.

13.     In the long weekend between Thursday, June 3 and Monday, June 7, 2010, while the trial stood in recess, the parties negotiated the terms of the settlement of Endo's claims and Impax's counterclaims.

14.     On June 8, 2010, the parties executed the Settlement and License Agreement.  By that agreement, Endo granted Impax a royalty-free license to intellectual property that it owned (the then-issued patents and then-pending applications) and a covenant not to sue on any other patent it could conceivably enforce against Impax and/or its suppliers, distributors, wholesalers or customers with respect to Impax's generic to OPANA® ER.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000565
IMPAX-OPANA00227834

15.    This agreement provided Impax with the certainty it negotiated – complete freedom from a patent infringement lawsuit by Endo upon the license effective date. The license granted to Impax was expressly royalty-free regarding all patents, whether or not such patents existed at that time or later issued from pending applications.

16.    Section 4.1(a) of the Settlement and License Agreement grants to Impax: "a non-transferable (except in accordance with Section 9.6), non-sublicenseable and royalty-free (except as set forth in <u>Section 4.3</u>) license (the "<u>License</u>"), under the Opana® ER Patents, any continuations, continuations in part, or divisionals thereof, and any patents and patent applications owned by Endo or Penwest (or their respective Affiliates) to the extent that Endo and/or Penwest has the right to grant a sublicense to such patents and applications that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA (the issued patents being the "<u>Existing Patents</u>" and the patent applications (and any patents issued thereunder) being the "<u>Pending Applications</u>" and the Existing Patents and Pending Applications being collectively the "<u>Licensed Patents</u>"), during the License Term, to make, have made, offer to sell, sell, have sold, market, distribute, import and use the Impax Products solely in or for the Territory."

17.    This broad, non-exclusive and royalty-free license gave Impax the freedom to operate in the market for its Impax ER Tablet after the license effective date of January 1, 2013. Impax bargained for the ability to market its product without paying any royalties to Endo regardless of whether or not other patents issued that might cover the Impax ER Tablet. In the absence of such freedom to operate, Impax would not have entered into the Settlement and License Agreement.

Confidential Material per Jan. 24, 2017 Protective Order          Impax_Opana_PartIII_0000566
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER         IMPAX-OPANA00227835

18.     The sole exception to the royalty-free license of Section 4.1(a) is found at Section 4.3 which imposed a royalty during the exclusivity period that was contingent upon certain specifically-defined events that never occurred.

19.     Section 4.1(b) of the Settlement and License Agreement states that Endo and Penwest "will not sue or assert any claim against, or otherwise participate in any action or proceeding against Impax or its Affiliates or their successors and permitted assigns or any of Impax's suppliers, distributors, wholesalers or customers (collectively, the "Impax Parties"), or cause or authorize any person or entity to do any of the foregoing, in each case claiming or otherwise asserting that the manufacture, use, sale, offer for sale, importation, marketing or distribution of Impax Products in or for the Territory on or after the applicable Commencement Date […] by or on behalf of Impax, infringes the Licensed Patents or any patents or patent applications licensed to Endo or Penwest (or their respective affiliates) that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA, so long as Impax is in compliance with the terms of this Agreement (the "Covenant Not to Sue")."

20.     In addition to the royalty-free License, the Covenant Not to Sue gave Impax further assurance of its freedom to operate in the market for its Impax ER Tablet after January 1, 2013.  The Covenant Not to Sue applied to all Licensed Patents (including then-existing and future patents issuing from then-pending applications) and also to patents or patent applications licensed to Endo that covered or could potentially cover the Impax ER Tablet.

21.     Section 4.1(d) of the Settlement and License Agreement is a severable mutual commitment that provides that:  "Impax, Endo and Penwest each agrees to negotiate in good

23

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000567
IMPAX-OPANA00227836

faith an amendment to the terms of the License to any patents which issue from any Pending Applications for the time period following the Exclusivity Period."

22.     Section 8.2 of the Settlement and License Agreement states the conditions under which the agreement can be terminated:  "Endo and Penwest each may terminate this Agreement upon written notice effective immediately if (i) Impax or any of its Affiliates breaches the first sentence of <u>Section 3.2</u>, (ii) Impax or any of its Affiliates challenges the validity or enforceability of the Licensed Patents with respect to any product that is the subject of the Impax ANDA, or the infringement of the Licensed Patents by any product that is the subject of the Impax ANDA, or if Impax or any of its Affiliates participates in or supports, directly or indirectly, any such challenges with respect to any Opana® ER Generic Product by any Third Party, except Impax shall be permitted to maintain the Paragraph IV Certifications contained in the Impax ANDA, or (iii) Impax or any of its Affiliates makes, has made, uses, offers for sale, sells or imports in the Territory, directly or indirectly, any Opana® ER Generic Product or assists or authorizes any Third Party to do any of the foregoing prior to the Commencement Date, subject to Impax' allowed pre-Commencement Date activities outlined in <u>Section 3.2</u> and except for any such activities relating to products that are the subject of the Impax ANDA that were engaged in by Impax or its Affiliates prior to the Effective Date and that would have given rise to a claim of infringement of the Licensed Patents..."

23.     Thus, the Settlement and License Agreement may only be terminated if Impax enters the market before the Commencement Date or challenges, directly or indirectly, the validity or enforceability of the patents with respect to the product that is the subject of the Impax ANDA.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000568
IMPAX-OPANA00227837

24.     On June 14, 2010, the FDA approved Impax's ANDA No. 79-087.  This final approval followed the FDA's tentative approval on May 13, 2010.

25.     On June 15, 2010, Judge Hayden dismissed the prior patent litigation with prejudice.

### EVENTS FOLLOWING THE JUNE 2010 SETTLEMENT

26.     Patent applications that were pending at the time of the Impax and Endo's June 2010 settlement were later granted by the U.S. Patent and Trademark Office.  To the extent that these patents cover, or could be claimed to cover, the Impax ER Tablet, these patents are "Pending Applications" licensed to Impax under Section 4.1(a) of the Settlement and License Agreement.

27.     On November 13, 2012, U.S. Patent No. 8,309,122 ("the '122 Patent") issued from U.S. Application No. 11/680,432 filed on February 28, 2007.

28.     Endo knew no later than November 2012 that the '122 Patent had issued.  In the weeks and months following the issuance of the '122 Patent in November 2012, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under the 2010 Settlement and License Agreement.  In fact, Endo did not first raise the issue until 2015.

29.     On December 11, 2012, U.S. Patent No. 8,329,216 ("the '216 Patent") issued from U.S. Application No. 11/427,438 filed on June 29, 2006.

30.     Endo knew no later than December 2012 that the '216 Patent had issued.  In the weeks and months following the issuance of the '216 Patent in December 2012, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under

25

Impax_Opana_PartIII_0000569
IMPAX-OPANA00227838

the 2010 Settlement and License Agreement. In fact, Endo did not first raise this issue until 2015.

31. On or around January 1, 2013, Impax started marketing the Impax ER Tablet.

32. Prior to Impax's launch in January 2013, the preconditions set forth by Section 4.3 of the Settlement and License Agreement did not occur and thus that section's contingent royalty was not triggered. Therefore, Endo does not now and has never claimed an entitlement to payment of royalties under Section 4.3.

33. In and around November 2012, Endo brought suit against Impax and several other generic manufacturers in the Southern District of New York regarding ANDAs for generics to OPANA® ER CRF. Endo also sued certain other generics—but not Impax—for infringement of the '122 and '216 Patents as covering those companies' generics to OPANA® ER. Endo did not sue Impax on the '122 and '216 Patents regarding the Impax ER Tablet because Impax's product was licensed under the Settlement and License Agreement.

34. On August 19, 2014, U.S. Patent No. 8,808,737 ("the '737 Patent") issued from U.S. Application No. 12/716,973 filed on March 3, 2010.

35. Endo knew no later than August 2014 that the '737 Patent had issued. In the weeks and months following the issuance of the '737 Patent, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under the 2010 Settlement and License Agreement. In fact, Endo did not first raise this issue until 2015.

**IMPAX'S GOOD FAITH NEGOTIATIONS**

36. Impax has at all relevant times fully performed all of its obligations as required by the Settlement and License Agreement. Specifically, Impax dismissed its patent counterclaims against Endo, Impax did not enter the market prior to its license effective date of January 1,

26

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000570
IMPAX-OPANA00227839

2013, and Impax has not challenged the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA.

37.     In January 2015, having obtained all of the benefits of the Settlement and License Agreement including the dismissal of Impax's challenges to the validity of Endo's patents and avoided any further such challenges for the remaining life of the patents by Impax, Endo first invoked Section 4.1(d) and proposed that negotiations take place.  The issue was discussed on a phone call between Endo and Impax.  Impax expressed its willingness to consider any modification of the deal that provided consideration to Impax.  Impax stated that modifying the deal to resolve then-pending litigation in the Southern District of New York involving Impax's ANDA for an additional product—the generic to OPANA ER® CRF—seemed to be the most obvious way to structure a deal that benefitted both Endo and Impax.  In addition, Impax was open to considering other alternatives from Endo but stated that the only unacceptable concept was one where Impax received no consideration at all in exchange for modifying its royalty-free license.

38.     Endo fell silent and did not seek to resume negotiations for over eight months between January and October 2015.

39.     On August 14, 2015, the Honorable Thomas P. Griesa, U.S. District Judge for the Southern District of New York, entered an order in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.* (S.D.N.Y., Civ. No. 13-435-TPG-GWG) which Endo would later cite for the proposition that generic competition to its OPANA® products had been enjoined.  An appeal from that order is currently pending before the U.S. Court of Appeals for the Federal Circuit.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000571
IMPAX-OPANA00227840

40.     On October 1, 2015, Endo sent Impax a "term sheet" for the payment of royalties on Impax's royalty-free license.   A true and correct copy of Endo's correspondence dated October 1, 2015 is attached hereto as **Exhibit B**.

41.     In its October 1, 2015 proposal, Endo proposed that it would capture 85% of Impax's profits on the Impax ER Tablet going back to mid-2013 and require Impax to pay an 85% royalty on future profits.   This amount was more than three times greater than the contingent royalty set out in Section 4.3 of the Settlement and License Agreement for sales during the Exclusivity Period.   Endo offered no consideration whatsoever in exchange for this demand for a royalty payment.   Nor did Endo explain how its position, that Impax now owed royalties, could be consistent with the express royalty-free license of Section 4.1(a) which applied to "Pending Applications."   Endo admitted in its term sheet that the '122, '216 and '737 Patents were Pending Applications under the Settlement and License Agreement.   While Endo labeled this term sheet as a "confidential settlement communication" under Federal Rule of Evidence 408, that document is fully admissible in this case because it forms the basis of Endo's claims against Impax and was not an offer to compromise a disputed claim but rather a demand letter offering no consideration to Impax.

42.     On October 16, 2015, Impax responded to Endo.   A true and correct copy of Impax's correspondence dated October 16, 2015 is attached hereto as **Exhibit C**.

43.     In its October 16, 2015 response, Impax first corrected Endo's false statement that Section 4.1(d) requires the parties to "to negotiate a license fee."   That language never appears in Section 4.1(d) or anywhere else in the Settlement and License Agreement and such an interpretation of Section 4.1(d)'s actual language directly contravenes the royalty-free license granted by Section 4.1(a).   Second, Impax noted that the draft amendment proposed by Endo was

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000572
IMPAX-OPANA00227841

one-sided, only benefitting Endo to the detriment of Impax. Third, Impax offered to continue discussions and negotiations over a mutually beneficial proposal, stating that if Endo had a mutually beneficial proposal, Impax "stand[s] ready to discuss and consider those terms. Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them."

44.     On October 20, 2015, Endo responded to Impax. A true and correct copy of Endo's correspondence dated October 20, 2015 is attached hereto as **Exhibit D**.

45.     In its October 20, 2015 correspondence, Endo again failed to offer any consideration to Impax in return for Endo's proposal that Impax give up its royalty-free license. Endo contended that the injunction granted in the Southern District of New York Litigation regarding a different product—the proposed Impax generic to OPANA® ER CRF—somehow "would apply with equal force to the Impax non-CRF tablets that are subject of the License." Therefore Endo said that a negotiation of a royalty would be mutually-beneficial in that Impax "will be allowed to continue to sell its infringing tablets." This statement was false. The sale of the Impax ER Tablet did not and could not infringe the '122, '216 and '737 Patents because the Impax product was licensed under the Endo patents.

46.     On November 2, 2015, Impax responded. A true and correct copy of Impax's correspondence dated November 2, 2015 is attached hereto as **Exhibit E**.

47.     In its November 2, 2015 response, Impax again stated that it was willing to negotiate a mutually beneficial amendment. Impax corrected Endo's false assertion that Impax was infringing: "Contrary to Endo's recent characterization, Impax's product is not 'infringing;' it is licensed." In light of Section 4.1(a)'s royalty-free license, Impax stated that Section 4.1(d) does not invite a negotiation for Endo to take back the royalty-free license. First, if Section

29

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000573
IMPAX-OPANA00227842

4.1(d) were intended to require the good faith negotiation of royalties, it would have said so. Second, the language granting the license in Section 4.1(a) would have stated that the license is royalty-free except as provided by Section 4.3 *and 4.1(d)*.  It does not.  As an example of a negotiation that would involve consideration to both sides, Impax again said that, in exchange for its payment of a royalty, Endo could agree to grant Impax rights to market a generic version of OPANA® ER CRF.

48.      Endo did not respond to Impax's proposal for over five months.

49.      On April 19, 2016, after five months of silence, Endo wrote to Impax to again insist upon a royalty while offering nothing in return.  A true and correct copy of Endo's correspondence dated April 19, 2016 is attached hereto as **Exhibit F**.

50.      In its April 19, 2016 correspondence, Endo acknowledged that "this matter has been outstanding for some time."  Endo also acknowledged Impax's counteroffer—that the amended terms of the License include rights to an additional product—which Endo characterized as "spurious."  Thus rejecting Impax's counteroffer to negotiate a reasonable royalty on Section 4.1(a)'s royalty-free license in exchange for rights to market a generic form of OPANA® ER CRF, Endo made no counter-offer but only reasserted that the only term subject to negotiation was a royalty to Endo on a royalty-free license.

51.      Notwithstanding its prior five month silence on the issue, Endo did not await a response from Impax to its April 19 correspondence.  Instead, on May 4, 2016, fifteen days after writing to Impax, Endo cut off negotiations and filed its complaint against Impax in this Court.

52.      On October 31, 2016, Endo wrote again to Impax.  A true and correct copy of Endo's correspondence dated October 31, 2016 is attached hereto as **Exhibit G**.

30

53.     In its October 31, 2016 correspondence, Endo stated: "Endo hereby provides notice to Impax that the Agreement is terminated, effective immediately." Prior to this letter, Endo had not threatened termination of the Settlement and License Agreement in any communication to Impax and had not sought this relief in any judicial proceeding. The purported termination was made in bad faith in a further attempt to extract a royalty from Impax. Once more, Endo did not offer any consideration to Impax in exchange for the payment of royalties on a royalty-free license, nor did Endo suggest that the parties resume discussions regarding a mutually beneficial amendment.

54.     Endo's stated grounds for its attempted termination of the Settlement and License Agreement was Impax's alleged failure to negotiate in good faith under Section 4.1(d) of the Settlement and License Agreement.

55.     On November 2, 2016, Impax responded to Endo by a letter from its outside trial counsel. A true and correct copy of that correspondence dated November 2, 2016 is attached hereto as **Exhibit H**.

56.     Impax's attorney's November 2, 2016 correspondence first corrected Endo's false statements regarding the purported negotiating history of the Settlement and License Agreement in June 2010. Impax closed with yet another invitation to negotiate in good faith: "if you wish to have a meaningful dialogue regarding these issues rather than send Impax threatening letters or file frivolous pleadings, Impax is happy to meet with you to discuss them."

57.     On November 4, 2016, Endo responded to Impax. A true and correct copy of that correspondence dated November 4, 2016 is attached hereto as **Exhibit I**.

58.     In its November 4, 2016 correspondence, Endo repeated its version of the facts and summary of its positions. Once more, Endo again refused to negotiate in good faith with

31

Impax. Endo placed a precondition on its involvement any further negotiation; that Impax first offer a royalty rate on its royalty-free license: "please advise what royalty rate Impax is willing to pay for the non-CRF product. If it looks like there are grounds for a discussion, we would be happy to set up a meeting promptly."

59.     On November 15, 2016, Impax responded to Endo by a letter from its outside trial counsel. A true and correct copy of that correspondence dated November 14, 2016 is attached hereto as **Exhibit J**.

60.     In its November 15, 2016 correspondence, Impax closed with another invitation to negotiate in good faith: "Impax is happy to discuss reasonable business terms with you and simply awaits your willingness to talk."

61.     On November 17, 2016, Endo responded to Impax. A true and correct copy of that correspondence dated November 17, 2016 is attached hereto as **Exhibit K**.

62.     In its November 17, 2016 correspondence, Endo refused to meet or discuss with Impax any potential negotiation unless and until Impax first proposed that it would pay a royalty acceptable to Endo: "we need a proposal from Impax specifying what royalty rate it is willing to pay for its infringing tablets. Once we receive that, if it looks like there are grounds for a discussion, we would be very happy to schedule an opportunity for the two companies to talk further."

## COUNT I
### (For Declaratory Judgment)

63.     Impax hereby repeats and incorporates the allegations of paragraphs 1 through 62 above as though fully set forth herein.

64.     The Settlement and License Agreement dated June 8, 2010 is a valid and enforceable agreement between Endo and Impax.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000576
IMPAX-OPANA00227845

65.    Pursuant to Section 4.1(a) of the Settlement and License Agreement, Endo granted Impax a royalty-free license to patents that covered or could cover the product described in the Impax ANDA, which license included a license under the Pending Applications.

66.    Pursuant to the License granted by Section 4.1(a) of the Settlement and License Agreement, Impax has a royalty-free license to the '122, '216 and '737 Patents; each of these patents was a "Pending Application" as that term is defined by Section 4.1(a).

67.    Impax has at all relevant times performed all of its obligations under the Settlement and License Agreement including under Section 4.1(d). Since January 2015, when Endo first initiated discussions invoking that section, Impax has been willing to negotiate a mutually beneficial amendment to the terms of the Settlement and License Agreement. In good faith negotiations with Endo in January 2015, October 2015, November 2015, and November 2016, Impax expressed its willingness to negotiate an amendment to the terms of the license agreement.

68.    Section 8.2 of the Settlement and License Agreement clearly identifies the provisions for which a breach would be deemed sufficiently material to warrant termination of the contract: if Impax entered the market before the Commencement Date or challenged, directly or indirectly, the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA. An alleged breach of Section 4.1(d), an entirely severable provision of the Settlement and License Agreement, is not among the breaches identified as a basis for termination. Having accepted all of the material benefits of the Settlement and License Agreement, Endo cannot terminate the agreement based on Impax's alleged failure to perform under Section 4.1(d).

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000577
IMPAX-OPANA00227846

69.     Impax did not enter the market with its Oxymorphone Hydrochloride Extended Release Tablet prior to its license effective date of January 1, 2013.

70.     Impax has not directly or indirectly challenged the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA.

71.     An actual, immediate and substantial controversy exists between Impax and Endo regarding the continued effectiveness of the license contained in the Settlement Agreement. By the Settlement and License Agreement, Endo granted Impax a license to patents and applications that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA. Endo has now purported to terminate that license by its correspondence dated October 31, 2016. Impax disputes that its license has been terminated because Impax has fully performed all material terms of the Settlement and License Agreement. This real controversy warrants the issuance of declaratory judgment.

72.     Impax is entitled to a declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated.

## COUNT II
### (Breach of Contract – Covenant Not To Sue)

73.     Impax hereby repeats and incorporates the allegations of paragraphs 1 through 72 above as though fully set forth herein.

74.     At Section 4.1(b) of the Settlement and License Agreement, Endo covenanted not to sue Impax for patent infringement regarding all Licensed Patents.

75.     Licensed Patents has the meaning set forth in Section 4.1(a) which includes any patents that later issued from "Pending Applications" at the time of the Settlement and License

34

Agreement in June 2010. Therefore Endo covenanted not to sue Impax for infringement regarding the '122, '216 and '737 Patents.

76.     In its complaint filed May 4, 2016 and amended complaint filed August 1, 2016, Endo sued Impax for infringement of the '122, '216 and '737 Patents. In doing so, Endo materially breached Section 4.1(b) of the Settlement and License Agreement.

77.     Impax has been damaged by Endo's breaches, including damages incurred in the defense of Endo's meritless claims against Impax and Impax's prosecution of these counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Impax respectfully requests the following relief:

A.     A declaration by this Court that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated;

B.     An award of compensatory damages according to proof arising out of Endo's breaches of the Settlement and License Agreement;

C.     For an award of attorneys' fees and costs incurred;

D.     For such further and other relief as the Court deems just and proper.


WINSTON & STRAWN LLP
*Attorneys for Defendant and Counterclaimant*
*Impax Laboratories, Inc.*


By:     *s/ Keiyana B. Fordham*
        Keiyana B. Fordham
        kfordham@winston.com

Confidential Material per Jan. 24, 2017 Protective Order          Impax_Opana_PartIII_0000579
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER          IMPAX-OPANA00227848

Dated: November 22, 2016

**OF COUNSEL**
Timothy T. Scott
Geoffrey M. Ezgar
Samuel R. Diamant
KING & SPALDING LLP
601 South California Avenue, Suite 100
Palo Alto, California 94304
(650) 422-6700

Maureen L. Rurka
Kevin E. Warner
Kevin F. Wolff
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000580
IMPAX-OPANA00227849

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 AND 40.1

Pursuant to Local Civil Rules 11.2 and 40.1, Impax, by its undersigned counsel, certifies

that the matter in controversy is not the subject of any other action or proceeding.

*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com

Dated: November 22, 2016

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000581
IMPAX-OPANA00227850

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 201.1

Pursuant to Local Civil Rule 201.1, Impax, by its undersigned counsel, certifies that as a result of the nature of Plaintiff's causes of actions and Impax's causes of action, as asserted in its counterclaims, this action is not appropriate for compulsory arbitration.

*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com

Dated: November 22, 2016

38

## CERTIFICATION OF SERVICE

I certify that on this 22nd day of November, 2016, the foregoing Answer, Affirmative Defenses, and Counterclaims were electronically filed and served upon counsel for Plaintiff and Counterclaim-Respondent by notice of electronic filing.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com

Dated: November 22, 2016

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000583
IMPAX-OPANA00227852

# EXHIBIT A

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000584
IMPAX-OPANA00227853

CONFIDENTIAL
EXECUTION VERSION

## SETTLEMENT AND LICENSE AGREEMENT

This SETTLEMENT AND LICENSE AGREEMENT ("Agreement"), effective as of the Effective Date (as defined below), is made by and among Endo Pharmaceuticals Inc., a Delaware corporation having its principal place of business at 100 Endo Boulevard, Chadds Ford, PA 19317 ("Endo"), Penwest Pharmaceuticals Co., a Washington corporation having its principal place of business at 2981 Route 22, Suite 2, Patterson, NY 12563 ("Penwest"), and Impax Laboratories, Inc., a Delaware corporation having its principal place of business at 30831 Huntwood Avenue, Hayward, California 94544 ("Impax"). Endo, Penwest and Impax are hereinafter collectively referred to as the "Parties", and each individually as a "Party".

## RECITALS

WHEREAS, Endo, Penwest and Impax are parties to patent infringement litigations in the United States District Court for the District of New Jersey (as further defined below, the "New Jersey Actions"); and

WHEREAS, the Parties seek to resolve the New Jersey Actions without further litigation.

NOW, THEREFORE, in consideration of the covenants, conditions and obligations expressed herein, and intending to be legally bound thereby, the Parties hereto agree as follows:

## ARTICLE I.
## DEFINITIONS

Section 1.1.    Definitions.  The following terms will have the meanings provided below:

"Affiliate" means any person, corporation, company, partnership, joint venture or other entity controlling, controlled by or under common control with the applicable party. For such purpose, the term "control" means the holding of fifty percent (50%) or more of the common voting stock or ordinary shares in, or the right to appoint fifty percent (50%) or more of the directors of, or otherwise possessing the power to direct or cause the direction of the management and policies of the said corporation, company, partnership, joint venture or entity.

"Agreement" has the meaning specified in the introductory paragraph hereof.

"ANDA" means an Abbreviated New Drug Application, as defined in 21 U.S.C. 355(j) et seq., and the regulations promulgated thereunder.

"Commencement Date" means:

(a) with respect to the 5mg, 10mg, 20mg, 30mg and 40mg dosage strengths of the Impax Product and any future dosage strengths of the Impax Product under the Impax

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000585
IMPAX-OPANA00227854

ANDA for which Impax obtains first applicant status as described in Section 505(j)(5)(B)(iv) of the FD&C Act, the date that is the earliest of:

        (i)    January 1, 2013;

        (ii)    thirty (30) days after the date of a final federal court decision that is no longer subject to appeal (other than by a petition for writ of certiorari) holding all asserted and adjudicated claims of the Opana® ER Patents to be (A) invalid or unenforceable in any lawsuit or (B) non-infringed in a lawsuit involving Endo and/or Penwest in response to a filing by a Third Party under Section 505(j) of the FD&C Act referencing the Opana® ER Product; and

        (iii)    the date that the patent information submitted under Section 505(b) of the FD&C Act is withdrawn by Endo and/or Penwest (21 U.S.C. § 355(j)(5)(D)(i)(I)); and

    (b)    with respect to the 7.5mg and 15mg dosage strengths of the Impax Product and any future dosage strengths of the Impax Product under the Impax ANDA for which Impax does not obtain first applicant status as described in Section 505(j)(5)(B)(iv) of the FD&C Act, the date that is the earliest of:

        (i)    January 1, 2013;

        (ii)    the date of a final federal court decision that is no longer subject to appeal (other than by a petition for writ of certiorari) holding all asserted and adjudicated claims of the Opana® ER Patents to be (A) invalid or unenforceable in any lawsuit or (B) non-infringed in a lawsuit involving Endo and/or Penwest in response to a filing by a Third Party under Section 505(j) of the FD&C Act referencing the Opana® ER Product; and

        (iii)    the date on which a Third Party commences commercial sale of an FDA approved generic extended release oxymorphone product that is AB rated to Opana® ER Product, provided that if such commercial sale is made at risk, and Endo and/or Penwest are successful in causing such commercial sale to halt, then the Commencement Date will be deemed not to have occurred and Impax will not launch or continue selling the Impax Product as a result of such commercial sale.

"Covenant Not To Sue" has the meaning specified in Section 4.1(b).

"Dismissal Date" means the date on which the Stipulation of Dismissal and Order attached hereto as Appendix A is approved and entered as an order of the court by the court in the New Jersey Actions.

"DOJ" has the meaning specified in Section 2.1.

"Effective Date" means June 8, 2010.

"Endo" has the meaning specified in the introductory paragraph hereof.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000586
IMPAX-OPANA00227855

"Endo Credit" means an amount equal to the product obtained by multiplying (i) the difference between the ███████████ and the ███████████ by (ii) the ███████████████████ For the sake of clarity, if the difference reflected in clause (i) were ████████████████████████████, then clause (i) would be equal to ████████, and not ██████████████.

"Endo Net Sales" means the gross amounts invoiced by Endo for the sale of Endo Products by Endo to Third Parties, less deductions customarily deducted by Endo in the ordinary course in accordance with U.S. generally accepted accounting principles, consistently applied, throughout the period beginning July 1, 2010 and ending on the day before the Commencement Date.

"Endo Product" means the Opana® ER Products for which Impax has obtained first applicant status, as described in Section 505(j)(5)(B)(iv) of the FD&C Act.

"Exclusivity Period" has the meaning specified in Section 4.1(c).

"Existing Patents" has the meaning specified in Section 4.1(a).

"FDA" means the United States Food and Drug Administration and any successor agency or authority thereto.

"FD&C Act" means the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq.

"FDB Data" means data maintained by First DataBank, Incorporated relating to the sale of pharmaceutical drug products in the Territory.

"FTC" has the meaning specified in Section 2.1.

"Impax" has the meaning specified in the introductory paragraph hereof.

"Impax ANDA" means ANDA No. 79-087, and any amendments or supplements thereto.

"Impax Parties" has the meaning specified in Section 4.1(b).

"Impax Product" means any product that (i) is the subject of the Impax ANDA as of the Effective Date, or (ii) is the subject of the Impax ANDA and which is substantially equivalent to those products that are the subject of the Impax ANDA as of the Effective Date, including any future dosage strengths of the product that is the subject of the Impax ANDA as of the Effective Date. For clarity, a product will be considered "substantially equivalent" to those products that are the subject of the Impax ANDA as of the Effective Date if regulatory approval of such product by the FDA would not require the performance of any additional bioequivalence studies (other than bioequivalence studies required by the FDA for new dosage strengths of or new reference listed drug descriptions for the product that is the subject of the Impax ANDA as of the Effective Date or any other changes that do not substantially change the formulation of the

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000587
IMPAX-OPANA00227856

products subject to the Impax ANDA), and if its formulation is substantially the same formulation as the products that are the subject of the Impax ANDA as of the Effective Date.

"IMS Data" means data maintained by IMS Health Incorporated relating to the sale of pharmaceutical drug products in the Territory.

"License" has the meaning specified in Section 4.1(a).

"License Term" has the meaning specified in Section 4.2(a).

"Licensed Patents" has the meaning specified in Section 4.1(a).

"Market Share Profit Factor" means the factor obtained by multiplying ███████ (generic substitution rate) by ███████



"Market Share Profit Value" means the factor obtained by multiplying ███████

"NDA" means a New Drug Application, as defined in 21 U.S.C. 355(b) *et seq.*, and the regulations promulgated thereunder.

"Net Sales" means the gross amount invoiced by or on behalf of Impax for the sale of Impax Products to Third Parties, less deductions for: (i) normal and customary trade, cash and quantity discounts actually given, credits, price adjustments or allowances for damaged Impax Products, returns or rejections of Impax Products, free goods valued at transfer price provided in lieu of discounts or rebates; (ii) chargeback payments and rebates (or the equivalent thereof) granted to group purchasing organizations, managed health care organizations or to federal, state/provincial, local and other governments, including their agencies, or to trade customers and other price reduction programs customary to the trade or required by law; (iii) freight, shipping insurance and other transportation expenses directly related to the sale (if actually borne by Impax without reimbursement from any Third Party); (iv) required sales and distribution commissions/fees payable to any Third Party providing sales or distribution services to Impax; (v) sales, value-added and excise taxes, tariffs and duties, surcharges and other taxes and government charges directly related to the sale, to the extent such items are included in the gross invoice price and actually borne by Impax without reimbursement from any Third Party (but not including taxes assessed against the income derived from such sale); (vi) administrative fees, marketing fees and other similar fees, payments or credits paid to unaffiliated Third Parties customary to the trade or required by law to the

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000588
IMPAX-OPANA00227857

extent such fees, payments and credits are customarily deducted from gross sales, and (vii) commercially reasonable write-offs for doubtful accounts for Impax Product sold by or on behalf of Impax. Net Sales shall be determined in all cases in accordance with U.S. generally accepted accounting principles.

"New Jersey Actions" means *Endo Pharmaceuticals Inc. and Penwest Pharmaceuticals Co. v. Impax*, Civil Action Nos. 09-831, 09-832 and 09-833 (KSH-PS).

"Opana® ER Generic Product" means any generic version of an Opana® ER Product that is the subject of an application filed under Section 505(b)(2) or Section 505(j) of the FD&C Act.

"Opana® ER Patents" means U.S. Patents 5,662,933, 5,958,456 and 7,276,250, and any U.S. patents resulting from any reissue or reexamination thereof.

"Opana® ER Product" means any product marketed and/or sold under the Opana® NDA.

"Opana® NDA" means NDA No. 21-610 and any amendments or supplements thereto.

"Orange Book" means the FDA publication *Approved Drug Products with Therapeutic Equivalence Evaluations*.

"Paragraph IV Certification" means a paragraph IV certification under Section 505(j)(2)(A)(vii)(IV) of the FD&C Act (21 U.S.C. § 355(j)(2)(A)(vii)(IV)).

"Party" and "Parties" have the meanings specified in the introductory paragraph hereof.

"Pending Applications" has the meaning specified in Section 4.1(a).

"Penwest" has the meaning specified in the introductory paragraph hereof.

"Person" means any person, corporation, partnership, joint venture, association, joint-stock company, trust or unincorporated organization.

"Pre-Impax Amount" means, expressed as a percentage, ███████████████████ ████████████████████████████████████████ or (ii) if the Commencement Date is earlier than January 1, 2013 pursuant to the terms hereof, the ███████████████████████ ██████████████████████████████, divided by the ███████████████.

"Prescription Sales" means for any month, the sum of, for each strength of the Endo Product, (i) ███████████████████████████████████████Data multiplied by (ii) ███████████████████████████████████████████.

"Quarterly Peak" means the highest Prescription Sales of the Endo Product during

Page 5

any calendar quarter period from July 1, 2010 through September 30, 2012, or the last day of the full calendar quarter described in clause (ii) of the defined term Pre-Impax Amount.

"Territory" means the United States of America, its territories, districts, possessions and commonwealths, including the Commonwealth of Puerto Rico.

"Third Party" means any Person other than Impax, Endo, Penwest and their respective Affiliates.

"Trigger Threshold" means ▆▆ percent (▆▆%).

## ARTICLE II.
## SUBMISSION TO U.S. GOVERNMENT

Section 2.1.     Submission To U.S. Government.  The Parties will submit this Agreement and any ancillary and other related agreements thereto to the Antitrust Division of the United States Department of Justice ("DOJ") and the Federal Trade Commission ("FTC") for review as promptly as practical after the Effective Date, and in any event within the period prescribed by the Medicare Prescription Drug, Improvement and Modernization Act of 2003 and other applicable law.  Each of the Parties will use its respective reasonable best efforts to fully cooperate with any investigation that may ensue as a result of such submission.  If any government investigation or litigation is instituted, each Party will use its respective reasonable efforts to defend this Agreement and any ancillary and other related agreements thereto in any such investigation or litigation, and to resist and contest any proposals or efforts to materially alter the terms thereof so as to permit the Parties to fulfill their obligations under and to obtain the full benefits contemplated by this Agreement and any ancillary and other related agreements thereto, including using their reasonable efforts to promptly meet in good faith to renegotiate and modify this Agreement, provided that such modifications do not materially change the economic value of the transactions contemplated hereby.  Each Party reserves the right to communicate with the FTC or DOJ regarding such filings as it believes appropriate.  Each Party shall keep the other Parties reasonably informed of such communications and shall not disclose any confidential information of the other Parties without such other Parties' consent, which will not be unreasonably withheld or delayed.

Section 2.2.     No Prejudice.  If at any time this Agreement or any ancillary or other related agreements thereto is rendered null and void with respect to the Territory or any portion thereof by the actions of a Third Party or government entity, it is the intent of the Parties that (i) no Party will be in any way prejudiced with respect to its claims, causes of action, defenses and counterclaims in the New Jersey Actions in such jurisdiction or otherwise, (ii) no consent judgment, order or dismissal entered by a Party pursuant to this Agreement in the Territory or portion thereof, as applicable, will be deemed an admission on the part of such Party, (iii) the Parties will be free to assert any and all claims and defenses with respect to the reinstated portion of the New Jersey Actions in any future litigation, and (iv) the provisions of Section 8.3 shall apply.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000590
IMPAX-OPANA00227859

SETTLEMENT AND LICENSE AGREEMENT

## ARTICLE III.
## SETTLEMENT; DISMISSAL OF ACTION

Section 3.1.    Required Filings.  No later than three (3) days after the Effective Date, Impax, Endo and Penwest will execute and deliver to the other Parties, or cause their respective attorneys of record in the New Jersey Actions to execute and deliver to the other Parties, the Stipulation of Dismissal and Order attached hereto as Appendix A, pursuant to which the New Jersey Actions will be dismissed with prejudice and without costs, and the attorneys for Endo and Penwest shall submit such executed Stipulation of Dismissal and Order to the court in the New Jersey Actions.  If for any reason the court in the New Jersey Actions does not approve the Stipulation of Dismissal and Order and enter it as an order of the court, the Parties agree to confer promptly in good faith in an effort to modify the Stipulation of Dismissal and Order and this Agreement or take such other action as is required to overcome the court's objections.

Section 3.2.    Impax Sale Commencement Date.  Subject to this Section 3.2, Impax agrees, on behalf of itself and its Affiliates, not to, prior to the applicable Commencement Date, directly or indirectly market, offer to sell, sell, import, manufacture or have manufactured in or for the Territory any Opana® ER Generic Product, or directly or indirectly assist or authorize any Third Party to do any of the foregoing.  Impax shall have the right to make commercially reasonable preparations prior to the Commencement Date as set forth below.  Nothing in this Agreement shall preclude Impax or its Affiliates from manufacturing, having manufactured, importing or marketing the Impax Products in or for the Territory for a reasonable period of time, as set forth below, prior to the applicable Commencement Date solely for the purpose of allowing Impax and its Affiliates to prepare for the commercial sale of such Impax Products for delivery in the Territory for sale only on and after the Commencement Date pursuant to Section 4.1 or for purposes of conducting activities protected under 35 U.S.C. § 271(e)(1).  A reasonable period of time for purposes of the foregoing sentence shall be no more than            days prior to the anticipated applicable Commencement Date for the marketing of and offers to sell the Impax Products and a commercially reasonable period of time prior to the anticipated applicable Commencement Date for the manufacturing and importing of the Impax Products.  Impax will provide notice to Endo and Penwest as soon as practicable, and in any event prior to launch of the Impax Product, if it believes that the Commencement Date will be earlier than January 1, 2013.  Impax acknowledges and agrees that Endo and Penwest would be irreparably harmed should Impax breach the first sentence of this Section 3.2.  Nothing in the Agreement shall prohibit or preclude Impax from exercising its rights under 35 U.S.C. § 271(e)(1).

Section 3.3.    No Challenge to Opana® ER Patents.  From and after the Effective Date, Impax agrees, on behalf of itself and its Affiliates, not to, directly or indirectly, challenge the validity or enforceability of the Licensed Patents with respect to any product that is the subject of the Impax ANDA or the infringement of the Licensed Patents by the manufacture, use and sale of any product that is the subject of the Impax ANDA, including by suing, directly or indirectly, Endo, Penwest or any of their respective Affiliates in any action in any forum seeking an order or decision that any of the Licensed Patents is invalid or unenforceable with respect to any product that is the

Page 7

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000591
IMPAX-OPANA00227860

subject of the Impax ANDA or that the manufacture, use or sale of any product that is the subject of the Impax ANDA does not infringe the Licensed Patents. Further, Impax will not, and will cause its Affiliates to not, directly or indirectly, participate in or support any such challenges relating to any Opana® ER Generic Product by any Person. Notwithstanding the foregoing, nothing herein shall prevent Impax from (a) maintaining the Paragraph IV Certifications contained in the Impax ANDA, (b) amending the Impax ANDA, such as to include future Opana® ER Product dosages, or a Paragraph IV Certification to any patents that may be listed in the Orange Book for the Opana® ER Product, or (c) challenging the Licensed Patents with respect to any product that is not the subject of the Impax ANDA.

Section 3.4.    Costs; Dismissals. All dismissals of all claims and counterclaims specified in Section 3.1 will be without costs to any Party and will include an irrevocable release by each Party, on behalf of itself and its Affiliates, of all claims for attorneys' fees. Each Party will bear its own costs in connection with entering into this Agreement and the negotiation and submission of the dismissals specified in Section 3.1.

Section 3.5.    No Implied Consents. Nothing herein will be deemed to be Endo's or Penwest's consent to or approval of any ANDA or similar application or filing by Impax or any of its Affiliates in any foreign jurisdiction, or to permit Impax or any of its Affiliates the right to reference or cross-reference any Endo NDA, Penwest NDA or similar application or filing.

Section 3.6.    Releases. (a) Except for the obligations created under this Agreement, and unless this Agreement is terminated pursuant to Section 8.2, Impax, on behalf of itself and its Affiliates, predecessors, successors and assigns, and all other Persons claiming by, through and under them, does hereby fully, finally release and forever discharge, relinquish and acquit, effective on the Dismissal Date, Endo and Penwest and their respective past and present Affiliates and their respective, predecessors, successors, assigns and their respective past and present Affiliates, shareholders, predecessors, successors, assigns, employees, officers, directors, principals, agents, attorneys, accountants, representatives, insurers, manufacturers, suppliers, importers, distributors and customers from any and all claims, rights, causes of action, counterclaims, defenses and liabilities whatsoever that, in each case accrued prior to the Effective Date, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known or unknown, (i) that in any way arise out of, or are related to, any cause of action asserted in the New Jersey Actions; (ii) that relate to the Impax Products and could have been asserted in the New Jersey Actions now or upon the approval of the Impax Products; or (iii) that in any way arise out of, or are related to, the marketing or sale of Opana® ER Products, or the acquisition, listing in the FDA's Orange Book or enforcement of the Opana® ER Patents, including without limitation any antitrust or unfair competition claims. Nothing in this release shall preclude Impax from asserting the invalidity, unenforceability or non-infringement of the Opana® ER Patents, any continuations, continuations-in-part, or divisionals thereof, and any patents and patent applications owned or controlled by, or licensed to, Endo or Penwest (or their respective Affiliates) in any future litigation concerning any product that is not the subject of the Impax ANDA.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000592
IMPAX-OPANA00227861

SETTLEMENT AND LICENSE AGREEMENT

(b)     Except for the obligations created under this Agreement, and unless this Agreement is terminated pursuant to Section 8.2, Endo and Penwest, on behalf of themselves and their respective Affiliates, predecessors, successors and assigns, and all other Persons claiming by, through and under them, do hereby fully, finally release and forever discharge, relinquish and acquit effective on the Dismissal Date, Impax and its predecessors, successors, assigns and their respective past and present Affiliates, shareholders, predecessors, successors, assigns, employees, officers, directors, principals, agents, attorneys, accountants, representatives, insurers, manufacturers, suppliers, importers, distributors and customers from any and all claims, rights, causes of action, counterclaims, defenses and liabilities whatsoever that, in each case accrued prior the Effective Date, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether known or unknown, (i) that in any way arise out of, or are related to, any cause of action asserted in the New Jersey Actions; (ii) that relate to the Impax Products and could have been asserted in the New Jersey Actions now or upon the approval of the Impax Products, including without limitation any antitrust or unfair competition claims relating thereto; or (iii) that relate to any activities in respect of the products that are the subject of the Impax ANDA that were engaged in by Impax or its Affiliates prior to the Effective Date and that would have given rise to a claim of infringement of the Licensed Patents. Nothing in this release shall preclude Endo or Penwest from asserting the Opana® ER Patents, any continuations, continuations-in-part, or divisionals thereof, and any patents and patent applications owned or controlled by, or licensed to, Endo or Penwest (or their respective Affiliates) in any future litigation concerning any product that is not the subject of the Impax ANDA.

ARTICLE IV.
LICENSE AND COVENANT NOT TO SUE

Section 4.1.    License; Covenant Not To Sue. (a) Subject to the terms and conditions herein, each of Endo and Penwest, on behalf of itself and its respective Affiliates, hereby grants to Impax and its Affiliates, effective only on and after the applicable Commencement Date (subject to Impax's permitted pre-Commencement Date activities set forth in Section 3.2), and Impax hereby accepts (on behalf of itself and its Affiliates), a non-transferable (except in accordance with Section 9.6), non-sublicensable and royalty-free (except as set forth in Section 4.3) license (the "License"), under the Opana® ER Patents, any continuations, continuations in part, or divisionals thereof, and any patents and patent applications owned by Endo or Penwest (or their respective Affiliates) to the extent that Endo and/or Penwest has the right to grant a sublicense to such patents and applications that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA (the issued patents being the "Existing Patents" and the patent applications (and any patents issued thereunder) being the "Pending Applications" and the Existing Patents and Pending Applications being collectively the "Licensed Patents"), during the License Term, to make, have made, offer to sell, sell, have sold, market, distribute, import and use the Impax Products solely in or for the Territory.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000593
IMPAX-OPANA00227862

(b)      Each of Endo and Penwest, on behalf of itself and its Affiliates and its officers and directors, covenants that it will not sue or assert any claim against, or otherwise participate in any action or proceeding against Impax or its Affiliates or their successors and permitted assigns or any of Impax's suppliers, distributors, wholesalers or customers (collectively, the "Impax Parties"), or cause or authorize any person or entity to do any of the foregoing, in each case claiming or otherwise asserting that the manufacture, use, sale, offer for sale, importation, marketing or distribution of Impax Products in or for the Territory on or after the applicable Commencement Date (subject to Impax's or its Affiliates' permitted pre-Commencement Date activities set forth in Section 3.2 and except for any activities in respect of the products that are the subject of the Impax ANDA that were engaged in by Impax or its Affiliates prior to the Effective Date and that would have given rise to a claim of infringement of the Licensed Patents) by or on behalf of Impax, infringes the Licensed Patents or any patents or patent applications licensed to Endo or Penwest (or their respective Affiliates) that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA, so long as Impax is in compliance with the terms of this Agreement (the "Covenant Not to Sue").

(c)      The License granted in this Agreement to Impax is non-exclusive, except as provided in this Section 4.1(c). Endo and Penwest agree that, for the Exclusivity Period (as defined below), the License granted to Impax covering the 5mg, 10mg, 20mg, 30mg and 40mg dosage strengths of the Impax Product, and any future dosage strengths of the Impax Product under the Impax ANDA for which Impax obtains first applicant status as described in Section 505(j)(5)(B)(iv) of the FD&C Act, shall be exclusive as to all but (i) the Opana ER® Product and any Opana ER®-branded products that are not sold as generic products and (ii) generic products covered by agreements executed by Endo and/or Penwest and a Third Party that holds an ANDA referencing the Opana® ER Product as of or prior to the Effective Date. The "Exclusivity Period" for each such dosage strength of the Impax Product is defined as starting on the Commencement Date and ending on the earlier of (x) 12:01 A.M. EST on the day after the 180-day period described in 21 U.S.C. § 355(j)(5)(B)(iv) for such dosage strength; and (y) 12:01 A.M. EST on the day after the FDA determines that the 180-day period described in 21 U.S.C. § 355(j)(5)(B)(iv) for such dosage strength has been forfeited by the occurrence of any event, including those described in 21 U.S.C. § 355(j)(5)(D)(i)(I)-(IV). Prior to the expiration of the Exclusivity Period, neither Endo nor Penwest nor any of their respective Affiliates shall (A) sell, offer to sell, import, or distribute any generic version of products that are the subject of the Opana® NDA, (B) license or authorize any Third Party to sell, offer to sell, import or distribute any generic version of products that are the subject of the Opana® NDA, and/or (C) sell or license or authorize under the Opana® ER Patents any Third Party to sell an Opana® ER Generic Product in or for the Territory, except as provided for herein. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Endo or Penwest from entering into bona fide settlements with Third Parties relating to ANDAs filed by such Third Parties in relation to the Opana® ER Product, which settlements may include licenses and covenants not to sue under the Opana® ER Patents; provided, however, that such settlement or any other agreement entered into by Endo or Penwest with any such Third Party shall not grant any right or

Page 10

license authorizing such Third Party to make, have made, use, sell, offer to sell, import or distribute products that are the subject of the Opana® NDA. Following the expiration of the Exclusivity Period with respect to the dosage strengths referenced above, and at all times with respect to the 7.5mg and 15mg dosage strengths of the Impax Product and any other dosage strengths of the Impax Product under the Impax ANDA for which Impax does not obtain first applicant status as described in Section 505(j)(5)(B)(iv) of the FD&C Act, the License granted to Impax shall be non-exclusive.

(d)     Impax, Endo and Penwest each agrees to negotiate in good faith an amendment to the terms of the License to any patents which issue from any Pending Applications for the time period following the Exclusivity Period.

(e)     For avoidance of doubt, and notwithstanding anything to the contrary in this Agreement, the License and Covenant Not To Sue do not grant to Impax any rights or immunities, or impose on Impax any restrictions, with respect to any products other than the Impax Products, including any combination products.

(f)     In the event that the Commencement Date has occurred and the License has become effective due to an at-risk launch by a Third Party of an FDA-approved generic extended release oxymorphone product that is AB-rated to Opana® ER, and Endo and Penwest are successful in stopping such Third Party that engaged in such at-risk launch from selling such generic extended release oxymorphone product in the Territory, Endo and Penwest may, at their discretion, suspend the Commencement Date upon written notice to Impax, in which case Impax immediately shall, subject to Section 3.2, cease making, using, shipping, distributing, selling and/or offering to sell the Impax Products until such time as the License becomes effective again due to the triggering of the Commencement Date, provided that any activities conducted by Impax or any of its Affiliates prior to such suspension shall remain subject to the License and Covenant Not to Sue.

(g)     Impax will have no right or immunity under the License or the Covenant Not To Sue to, market, offer to sell or sell the Impax Products to any Person outside of the Territory or to any Person that Impax knows, or should reasonably be expected to know, may, directly or indirectly, market, offer to sell, sell or use any of the Impax Products outside of the Territory. Notwithstanding the foregoing, nothing herein shall be construed as an admission or waiver as to any factual or legal matter by any Party or their Affiliates with respect to any products other than Impax Products, or to any jurisdiction outside of the Territory (including without limitation, with respect to any ex-U.S. equivalents of any generic oxymorphone products or any ex-U.S. patents or patent applications.)

Section 4.2.     License Term.  The term of the License ("License Term") will commence on the applicable Commencement Date for each Impax Product and will continue, unless earlier suspended or terminated pursuant to this Agreement, until the expiration of all claims of the Licensed Patents.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000595
IMPAX-OPANA00227864

SETTLEMENT AND LICENSE AGREEMENT

Section 4.3.  Royalties.  Impax agrees to pay to Endo a royalty on all Net Sales of Impax Products (for which dosage strengths Impax has obtained first applicant status, as described in Section 505(j)(5)(B)(iv) of the FD&C Act) sold by or on behalf of Impax during the Exclusivity Period.  Such royalties shall be calculated as follows:  if Endo Net Sales of Endo Products for the , then Impax shall pay to Endo a royalty of ▉▉▉▉▉▉▉▉▉▉▉▉▉ (▉▉▉%) on Net Sales of Impax Products (for which dosage strengths Impax has obtained first applicant status, as described in Section 505(j)(5)(B)(iv) of the FD&C Act) during the Exclusivity Period.  Otherwise, no royalty shall be due.  Such royalty shall be paid by Impax to Endo within ninety (90) days after the end of the Exclusivity Period by wire transfer to an account specified by Endo in writing to Impax, and shall be accompanied by a written report specifying in reasonable detail the amount of such Net Sales during the Exclusivity Period and the royalty payable therefor.

Section 4.4.  Endo Credit.  If the ▉▉▉▉▉▉▉▉▉▉ is less than the ▉▉▉▉▉▉▉ then ▉▉▉ shall pay to ▉▉▉▉ shall pay ▉▉▉▉ the amount under this Section 4.4, if any, within ninety (90) days after ▉▉▉▉▉▉▉ with written documentation of all of the amounts referenced in this Section 4.4.

Section 4.5.  Steering Committee.  Promptly after the Effective Date, the Parties will form a committee (the "Steering Committee"), equally represented by Endo and Impax, to meet within forty-five (45) days after the end of each quarter, beginning with the quarter ending June 30, 2010, to determine in good faith ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, if any.  In making such determination, the Steering Committee shall rely on ▉▉▉▉▉▉▉ or such other market data as may be determined by the Steering Committee, and shall agree on the methodology for calculating ▉▉▉▉▉▉▉.

Section 4.6.  Opana® ER Patents.  As among the Parties, Endo and/or Penwest will have the sole right, but not the obligation, to prosecute, maintain, enforce and defend the Opana® ER Patents in its sole discretion.  Impax will have no right to prosecute, maintain, enforce or defend the Opana® ER Patents.

Section 4.7.  No Implied Rights.  Except as expressly provided in Section 4.1, Endo and Penwest do not grant to Impax or any of its Affiliates or any other Person any license, right or immunity, whether by implication, estoppel or otherwise, other than as expressly granted herein.  Impax will not use the name, insignia or symbols of Endo, Penwest or any of their respective Affiliates for any purpose whatsoever without Endo's or Penwest's, as the case may be, prior written consent.  No rights are granted under this Agreement by Endo or Penwest to Impax to the use of any of Endo's, Penwest's or their respective Affiliates' trademarks, or any other trademark confusingly similar thereto, and all rights to those trademarks are expressly reserved by Endo and Penwest, as the case

Page 12

may be. Nothing herein will be deemed to require Endo or Penwest to provide any know-how or other Confidential Information to Impax.

Section 4.8. Governmental Approvals. Endo and Penwest make no representation that, as of the Commencement Date, Impax will be able to launch any Impax Products. Impax agrees that, notwithstanding anything to the contrary herein, it will not sell any Impax Products prior to obtaining FDA approval to sell the Impax Products. Impax will be solely responsible for, and will bear all costs involved in, the registration and approval of the Impax Products with any governmental regulatory agencies.

Section 4.9. Transfers. To the extent Endo, Penwest or any of their respective Affiliates assign, license, sublicense or otherwise transfer any right, title or interest in or to the Opana® NDA or the Opana® ER Patents, or any other patents or patent applications or regulatory exclusivities subject to same, to any Third Party, Endo and Penwest, on behalf of themselves and their respective Affiliates, will make such assignment, license, sublicense or other transfer subject to any restrictions or limitations under the License, waivers and Covenant Not To Sue granted herein.

Section 4.10. FDA Cooperation. (a) Within five (5) business days of Impax's request, Endo shall provide the FDA with written confirmation of the Commencement Date and the license, covenants and waivers herein, including, where applicable, written confirmation that the Commencement Date is before January 1, 2013, and including, where applicable, written confirmation that the restriction specified in the Stipulation of Dismissal and Order does not bar entry by Impax on a date prior to January 1, 2013. Concurrently with such request, Impax shall provide to Endo the desired form of written confirmation to be provided to the FDA.

(b) Endo and/or Penwest shall waive any period of regulatory exclusivity to the extent such exclusivity would preclude or impede the launch of the Impax Product as of the Commencement Date. Endo and/or Penwest shall provide reasonable cooperation to Impax in connection with such waiver, including by (i) submitting a mutually agreeable notice to FDA of the existence of such waiver and (ii) not opposing the approval of Impax Product effective as of the Commencement Date based on any applicable regulatory exclusivity in force at the time. Such notice will be delivered by Endo to FDA within five (5) business days of receipt of written request from Impax, provided that the form of such notice has been agreed to as set forth above, such agreement not to be unreasonably withheld, delayed or conditioned. For purposes of clarity, nothing in this Section 4.10(b) is intended to or does accelerate the Commencement Date.

Section 4.11. NDC. Endo shall at all times during the term of this Agreement maintain (or otherwise not change the status of) the National Drug Code(s) in respect of the Opana® ER Product until the end of the Exclusivity Period, unless otherwise directed by the FDA.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000597
IMPAX-OPANA00227866

SETTLEMENT AND LICENSE AGREEMENT

## ARTICLE V.
## CONFIDENTIALITY

Section 5.1.    Publicity.  No Party or any of its Affiliates or representatives may make any press release or public announcement concerning the existence or terms of this Agreement without the other Parties' prior written consent, except for subsequent disclosure of information which is substantially similar to publicly available information that has previously been disclosed as permitted by this Section 5.1 or by Section 5.2.  The terms of this Agreement, and all confidential information exchanged by the Parties during the course of the negotiations of the transactions contemplated hereby ("Confidential Information"), will remain strictly confidential, and neither the contents of this Agreement, the subject matter hereof or the Confidential Information will be, directly or indirectly, discussed with or disclosed to any Third Party, other than those employees, officers, directors and advisors of each Party who need to know such information for the sole purpose of effecting the intent of this Agreement and who agree to keep such information confidential and who agree to be bound by the terms of this Article V to the same extent as if they were parties hereto, provided that this Agreement may be disclosed to governmental authorities as contemplated by Section 2.1, and this Agreement and the Confidential Information may be disclosed as permitted by Section 5.2 and in connection with pending litigation over the Opana® ER Product and/or Opana® ER Patents.  If a Party is contacted by any media outlets or press regarding the New Jersey Action, such Party may confirm that the New Jersey Actions have been settled without disclosing any terms of this Agreement or the terms of this settlement except to the extent permitted under this Section 5.1.

Section 5.2.    Required Disclosure.  If a Party concludes in good faith that it is required by applicable law, FDA rule or requirement, rules or regulations promulgated by the U.S. Securities and Exchange Commission or any other governmental authority, regulatory agency or self-regulatory body, or legal proceeding or order by a court of competent jurisdiction to disclose the terms of this Agreement, the Party required to make such disclosure will (a) endeavor to obtain confidential treatment of the terms of this Agreement; and (b) include in such disclosure only the information that, after consultation with counsel, such Party believes is required to be disclosed.

## ARTICLE VI.
## REPRESENTATIONS AND WARRANTIES

Section 6.1.    Representations as to Endo and Penwest.  Each of Endo and Penwest hereby represents and warrants to Impax as of the Effective Date as follows:

(a)    it has the corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery and performance of this Agreement has been duly and validly authorized by it.  Upon execution and delivery of this Agreement by it, this Agreement will constitute a legal, valid and binding agreement, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000598
IMPAX-OPANA00227867

enforceability of creditors' rights generally and other general equitable principles which may limit the right to obtain certain remedies;

(b)     neither the execution and delivery of this Agreement, nor consummation of the transactions contemplated herein requires it to obtain any permits, authorizations or consents from any governmental body or from any other person, firm or corporation other than such permits, authorizations or consents as it has already obtained;

(c)     it has the right to grant to Impax the License and the Covenant Not To Sue;

(d)     it has not assigned or otherwise transferred to any Person any of its claims, rights, causes of action, counterclaims or defenses that are covered by the release granted under Section 3.6(b); and

(e)     it has not licensed or authorized any Third Party or Affiliate to sell, offer to sell, import or distribute any generic version of products that are the subject of the Opana® NDA.

Section 6.2.     Representations as to Impax.  Impax represents and warrants to Endo and Penwest as of the Effective Date as follows:

(a)     Impax has the corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery and performance of this Agreement has been duly and validly authorized by Impax.  Upon execution and delivery of this Agreement by Impax, this Agreement will constitute a legal, valid and binding agreement of Impax, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforceability of creditors' rights generally and other general equitable principles which may limit the right to obtain certain remedies;

(b)     neither the execution and delivery of this Agreement nor consummation of the transactions contemplated herein requires Impax to obtain any permits, authorizations or consents from any governmental body or from any other person, firm or corporation;

(c)     to its knowledge, Impax has produced to Endo and Penwest in the New Jersey Actions a full and complete copy of the Impax ANDA, including all amendments and supplements thereto, as of the Effective Date; and

(d)     Impax has not assigned or otherwise transferred to any Person any of its claims, rights, causes of action, counterclaims or defenses that are covered by the release granted under Section 3.6(a).

Section 6.3.     Disclaimer.  ENDO AND PENWEST ARE LICENSING THE LICENSED PATENTS TO IMPAX ON AN "AS IS" BASIS.  ENDO AND PENWEST MAKE NO WARRANTIES EITHER EXPRESS OR IMPLIED OF ANY KIND, AND HEREBY EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS OR

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000599
IMPAX-OPANA00227868

GUARANTEES OF ANY KIND AS TO THE LICENSED PATENTS AND THE SUBJECT OF ANY LICENSE OR COVENANT NOT TO SUE HEREUNDER, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, FITNESS, ADEQUACY OR SUITABILITY FOR A PARTICULAR PURPOSE, USE OR RESULT, AND ANY WARRANTIES OF FREEDOM OF INFRINGEMENT OF ANY PATENTS, COPYRIGHTS, TRADE SECRETS OR OTHER PROPRIETARY RIGHTS. NEITHER ENDO, PENWEST, NOR ANY EMPLOYEE OR AGENT OF EITHER OF THEM, SHALL HAVE ANY LIABILITY TO IMPAX, OR ITS AFFILIATES, OR ANY OTHER PERSON ARISING OUT OF THE USE OF THE LICENSED PATENTS, INCLUDING TO THE LACK OF MERCHANTABILITY, INADEQUACY OR UNSUITABILITY OF THE LICENSED PATENTS FOR ANY PARTICULAR PURPOSE OR TO PRODUCE ANY PARTICULAR RESULT, OR FOR ANY LATENT DEFECTS THEREIN. ENDO AND PENWEST AND THEIR AFFILIATES, EMPLOYEES, AGENTS, OFFICERS AND DIRECTORS SHALL NOT BE LIABLE IN ANY WAY WHATSOEVER FOR ANY INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES SUFFERED BY IMPAX OR ANY THIRD PARTY IN CONNECTION WITH THIS AGREEMENT, INCLUDING LOST PROFITS OR BUSINESS REVENUE OR OTHER ECONOMIC LOSS OF ANY KIND WHATSOEVER, WHETHER OR NOT SUCH DAMAGES ARE FORESEEABLE OR ENDO, PENWEST OR THEIR AFFILIATES, EMPLOYEES, AGENTS, OFFICERS OR DIRECTORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

ARTICLE VII.
INDEMNITY

Indemnification. Impax will indemnify and defend Endo, Penwest and their respective Affiliates and the directors, officers and employees of Endo, Penwest and any such Affiliates, and hold each of them harmless from and against any and all claims, suits, losses, liabilities, damages and expenses (including reasonable attorneys' fees and costs and the costs of enforcing this indemnity) incurred by any of them arising from or occurring as a result of any claims, demands, actions and other proceedings of a Third Party, whether for any actual or alleged product defect, product liability or other related claims, relating to any Impax Product. Any indemnitee that intends to claim indemnification under this Article VII promptly will notify Impax in writing of each claim in respect of which the indemnitee or any of its Affiliates, or their directors, officers or employees intend to claim such indemnification, provided that the failure to provide such notice shall not release Impax from its obligations under this Article VII except to the extent that Impax is actually and materially prejudiced thereby. The indemnitee under this Section and its Affiliates, officers, directors, employees and agents will reasonably cooperate with Impax and its legal representatives, at Impax's expense, in the investigation and defense of any claim or loss covered by this indemnification.

ARTICLE VIII.
TERMINATION

Page 16

Section 8.1.   Term.  The term of this Agreement will commence on the Effective Date and, unless terminated in accordance with this Agreement, will continue through the License Term.

Section 8.2.   Termination.  Endo and Penwest each may terminate this Agreement upon written notice effective immediately if (i) Impax or any of its Affiliates breaches the first sentence of Section 3.2, (ii) Impax or any of its Affiliates challenges the validity or enforceability of the Licensed Patents with respect to any product that is the subject of the Impax ANDA, or the infringement of the Licensed Patents by any product that is the subject of the Impax ANDA, or if Impax or any of its Affiliates participates in or supports, directly or indirectly, any such challenges with respect to any Opana® ER Generic Product by any Third Party, except Impax shall be permitted to maintain the Paragraph IV Certifications contained in the Impax ANDA, or (iii) Impax or any of its Affiliates makes, has made, uses, offers for sale, sells or imports in the Territory, directly or indirectly, any Opana® ER Generic Product or assists or authorizes any Third Party to do any of the foregoing prior to the Commencement Date, subject to Impax' allowed pre-Commencement Date activities outlined in Section 3.2 and except for any such activities relating to products that are the subject of the Impax ANDA that were engaged in by Impax or its Affiliates prior to the Effective Date and that would have given rise to a claim of infringement of the Licensed Patents.  For the sake of clarity, nothing in this Section 8.2(b) shall permit termination if Impax asserts the invalidity, unenforceability or non-infringement of the Licensed Patents in any future litigation concerning any product that is not the subject of the Impax ANDA.

A termination of this Agreement by one Party shall be deemed to be a termination of this Agreement as to all Parties.

Section 8.3.   Effect of Termination.  If this Agreement is terminated pursuant to Section 8.2, (a) Endo and Penwest will have the right to recommence or refile the New Jersey Actions; (b) each Party consents, with respect to any such refiled New Jersey Actions, to (i) the exclusive jurisdiction of the United States District Court for the District of New Jersey, and irrevocably and unconditionally waives any objection to the laying of venue in such court or that the New Jersey Actions has been brought in an inconvenient forum, and (ii) waive any statute of limitations defenses in connection with such recommenced or refiled New Jersey Actions; (c) the License and Covenant Not To Sue automatically and immediately will terminate; and (d) Impax would have the right to defend itself on any basis, including challenging the validity and enforceability of the Opana® ER Patents or the non-infringement thereof.  Termination or expiration of this Agreement shall not release any Party from liability (in an action at law or otherwise) for any obligations, liabilities or damages incurred prior to such termination and arising out of a breach of any of its representations, warranties, covenants or agreements set forth in this Agreement.

Section 8.4.   Survival.  Sections 2.2, 3.4, 3.5, 3.6, 6.1, 6.2, 6.3, 8.3, 8.4 and Articles I, V and VII will survive the expiration or termination of this Agreement.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000601
IMPAX-OPANA00227870

## ARTICLE IX.
## MISCELLANEOUS

Section 9.1.    Governing Law; Jurisdiction. The validity and interpretation of this Agreement and the legal relations of the Parties to it will be governed exclusively by the internal laws, and not the law of conflicts, of the State of New Jersey.

Section 9.2.    Notices.  All notices, requests and other communications hereunder will be in writing, will be addressed to the receiving Party's address set forth below or to such other address as a Party may designate by notice hereunder, and will be either (a) delivered by hand, (b) made by facsimile transmission (to be followed with written confirmation by the delivering Party), (c) sent by private courier service providing evidence of receipt, or (d) sent by registered or certified mail, return receipt requested, postage prepaid.  The addresses and other contact information for the Parties are as follows:

For Impax:

Impax Laboratories, Inc.
121 New Britain Blvd.
Chalfont, PA  18914
Facsimile No.: (215) 933-0333
Attn:  Chris Mengler, President, Generic Division

with a copy
(which shall not
constitute notice) to:

Impax Laboratories, Inc.
30831 Huntwood Avenue
Hayward, CA  94544
Facsimile No.: (510) 471-3200
Attn: Margaret Snowden,
         Vice President, Intellectual Property

For Endo:

Endo Pharmaceuticals Inc.
100 Endo Boulevard
Chadds Ford, PA 19317
Facsimile No.: (610) 558-9682
Attn: President

with a copy to:

Endo Pharmaceuticals Inc.
100 Endo Boulevard
Chadds Ford, PA 19317
Facsimile No.: (610) 558-9684
Attn:  Chief Legal Officer

For Penwest:

Penwest Pharmaceuticals Co.
2981 Route 22
Suite 2

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000602
IMPAX-OPANA00227871

Patterson, NY 12563
Attn: President & CEO

or to such other addresses as will have been subsequently furnished by written notice to the other Parties.

Section 9.3.     <u>Entire Agreement; Waiver</u>.  This Agreement, including the Appendix attached hereto, together with the Development Agreement between Endo and Impax, dated as of the date hereof, contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior drafts or understandings.  No change, modification, amendment or waiver of any obligation, term or provision contained herein will be valid or enforceable unless the same is reduced to writing and signed by a duly authorized representative of each of the Parties to be bound hereby.  The waiver by a Party to this Agreement of a breach of any provision set forth herein or of any right contained herein will not operate as or be construed as a continuing waiver or a waiver of any subsequent breach or right granted herein.

Section 9.4.     <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which will be deemed be an original, but all of which together will constitute one agreement.

Section 9.5.     <u>No Third Party Beneficiaries</u>.  Except as expressly provided herein, nothing is intended or will be construed to confer upon any person or entity other than the Parties hereto and their successors or assigns, any rights or remedies under or by reason of this Agreement.

Section 9.6.     <u>Assignment</u>.  This Agreement will be binding upon and inure to the benefit of the Parties and their permitted successors and assigns. This Agreement and the rights granted herein may not be assigned or transferred (whether by contract, operation of law or otherwise) by any Party without the prior written consent of the other Parties, <u>provided</u> that this Agreement shall be assignable by a Party (a) to an Affiliate or (b) in connection with the sale of all or substantially all of the assets of the business of such Party to which this Agreement relates, and <u>provided</u> <u>further</u> that (i) the Party whose assets are being sold notifies the other Parties of any such assignment of this Agreement in writing (including the identity of the assignee) and (ii) the purchaser of those assets provides written confirmation that it agrees to assume all of the assigning Party's obligations hereunder.  The covenants, rights and obligations of each Party under this Agreement shall remain binding upon such Party notwithstanding any assignment or transfer of this Agreement by such Party as permitted by this <u>Section 9.6</u>, and also shall inure to the benefit of and be binding upon any permitted assignee or transferee of this Agreement.

Section 9.7.     <u>Irreparable Harm</u>.  Each Party acknowledges and agrees that, in the event of any threatened or actual breach by it of the first sentence of <u>Section 3.2</u>, <u>Section 3.3</u> or <u>Article V</u>, the other Parties will suffer immediate and irreparable injury not fully compensable by monetary damages and for which the other Parties may not have an adequate remedy at law.  Accordingly, each Party agrees that if one of the other Parties

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000603
IMPAX-OPANA00227872

institutes an action or proceeding to enforce any provisions of this Agreement, such other Party or Parties will be entitled to seek injunctive or other equitable relief as may be necessary or appropriate to enjoin, prevent or curtail any such breach or threatened breach. The foregoing will be in addition to and without prejudice to such other rights as each Party may have under this Agreement, at law or in equity.

Section 9.8. <u>Expenses</u>. Each Party will pay its own expenses incurred in connection with its negotiation of this Agreement and the consummation of the transactions contemplated hereby.

Section 9.9. <u>Headings</u>. The headings contained in this Agreement are for convenience of reference only and will not affect the meaning or interpretation of this Agreement.

Section 9.10. <u>Construction</u>. References to any NDA or ANDA in this Agreement include, unless expressly indicated otherwise, all replacements and successors and all amendments and supplements to the foregoing. The term "including" means "including, without limitation," and "herein", "hereof", and "hereunder" refer to this Agreement as a whole.

[Remainder of page left blank]

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000604
IMPAX-OPANA00227873

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

ENDO PHARMACEUTICALS INC.

By: _____

Name and Title: *David Holveck, President & CEO*

Date: *June 7, 2010*


PENWEST PHARMACEUTICALS CO.

By: _____

Name and Title: _____

Date: _____


IMPAX LABORATORIES, INC.

By: _____

Name and Title: _____

Date: _____

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

ENDO PHARMACEUTICALS INC.

By: _____

Name and Title: _____

Date: _____


PENWEST PHARMACEUTICALS CO.

By: *Jennifer R Novel*

Name and Title: *Jennifer Good, President & CEO*

Date: *June 7, 2010*


IMPAX LABORATORIES, INC.

By: _____

Name and Title: _____

Date: _____

13812675.2.LITIGATION

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

ENDO PHARMACEUTICALS INC.

By: _____

Name and Title: _____

Date: _____


PENWEST PHARMACEUTICALS CO.

By: _____

Name and Title: _____

Date: _____


IMPAX LABORATORIES, INC.

By: _____

Name and Title: ARTHUR A. KOCH, JR

Date: _____

13812675.2 LITIGATION

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000607
IMPAX-OPANA00227876

## APPENDIX A

## STIPULATION OF DISMISSAL AND ORDER

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ENDO PHARMACEUTICALS INC. and PENWEST PHARMACEUTICALS CO., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 09-831-KSH-PS |
| v. | ) ) | C.A. No. 09-832-KSH-PS C.A. No. 09-833-KSH-PS |
| IMPAX LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) ) | |

WHEREAS, plaintiffs allege that Penwest Pharmaceuticals Co. ("Penwest") is the assignee and owner of U.S. Patents 5,662,933, 5,958,456 and 7,276,250 (the "Asserted Patents"), and that Endo Pharmaceuticals Inc. ("Endo") is an exclusive licensee of the Asserted Patents in the relevant field of use pursuant to a strategic alliance agreement with Penwest;

WHEREAS, defendant Impax Laboratories, Inc. ("Impax") has submitted to the U.S. Food and Drug Administration Abbreviated New Drug Application No. 79-087 ("Impax ANDA") for approval to market and sell generic oxymorphone HCl extended-release tablets; and

WHEREAS, Endo, Penwest and Impax have entered into a Settlement and License Agreement, dated as of June 8, 2010 ("Settlement and License Agreement"), pursuant to which the parties have resolved the above-referenced action and Plaintiffs have granted to Impax a license under the Asserted Patents in the United States.

NOW, THEREFORE, Endo, Penwest and Impax stipulate that:

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

1. Impax, its Affiliates and their respective officers, agents, servants, employees and attorneys will not, until the applicable Commencement Date (as defined in the Settlement and License Agreement), engage in the manufacture, use, marketing, offer for sale, or sale in the United States, or importation into the United States, of any generic version of the Opana® ER product, except that (a) Impax shall be permitted to manufacture and market (but not use or sell) such products for a reasonable period of time prior to the applicable Commencement Date solely for the purpose of selling such products only on or after the Commencement Date, as set forth in the Settlement and License Agreement, and (b) Impax may conduct, directly or indirectly, any activities protected under 35 U.S.C. § 271(e)(1). The foregoing shall terminate automatically upon the applicable Commencement Date for each product as defined in the Settlement and License Agreement.

2. Pursuant to Rules 41(a)(1) and 41(c) of the Federal Rules of Civil Procedure, plaintiffs, Endo, Penwest and Impax hereby stipulate and agree that the above actions C.A. Nos. 09-831, 09-832 and 09-833 -KSH-PS, including all claims, counterclaims and affirmative defenses between Plaintiffs and Impax, are dismissed with prejudice, except as provided for in sections 2.2 and 8.3 of the Settlement and License Agreement.

3. Each party shall bear its own costs, expenses and attorneys' fees in connection with the above-referenced actions.

4. The parties waive any right of appeal from this Stipulation of Dismissal and Order.

5. The Court retains jurisdiction over this Stipulation of Dismissal and Order, and the interpretation of the Settlement and License Agreement as it pertains to this Stipulation of Dismissal and Order, in the event of any dispute concerning it.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

IT IS SO ORDERED, this _____ day of _____, 2010.

_____
Hon. Katharine S. Hayden, U.S.D.J.

Stipulated as to form and entry:

**DECHERT LLP**
Attorneys for Plaintiffs Endo
Pharmaceuticals, Inc. and Penwest
Pharmaceuticals, Co.

By:     /s/  Robert D. Rhoad
Robert D. Rhoad
902 Carnegie Center
Suite 500
Princeton, NJ 08540
Telephone: (609) 955-3200

Martin J. Black
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-4000

_____
Attorneys for Defendant and Counterclaim
Plaintiff Impax Laboratories, Inc.

By:

# EXHIBIT B

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000611
IMPAX-OPANA00227880

**From:** "Donatiello, Guy" <Donatiello.Guy@Endo.com>
**Date:** October 1, 2015 at 1:13:08 PM CDT
**To:** Meg Snowden <msnowden@impaxlabs.com>
**Subject: Impax License Agreement**

Meg,

I hope all is well.

Under Section 4.1(d) of the Settlement and License Agreement between Endo and Impax, dated June 8, 2010, the parties need to negotiate a license fee for licensed patents that issued following execution of the agreement. We would like to move those negotiations forward, and I am attaching a term sheet for Impax's consideration.

We would appreciate your response within 10 days.

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275
Fax Number: 610-561-3085
donatiello.guy@endo.com

1

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (484) 216-0000 and permanently delete the original and any copy of any e-mail and any printout thereof.

This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual(s) or entity(ies) named in the e-mail address. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please delete the message from your system. Thank you.

(Virus Scanned by Mimecast)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000613
IMPAX-OPANA00227882

CONFIDENTIAL
SETTLEMENT COMMUNICATION
GOVERNED BY F.R.E. 408
DRAFT – 10/01/2015

## Non-Binding Term Sheet

WHEREAS Endo Pharmaceuticals Inc. ("Endo"), Penwest Pharmaceuticals Co. ("Penwest"), and Impax Laboratories, Inc. ("Impax") entered into a Settlement and License Agreement effective as of June 8, 2010 (the "Settlement and License Agreement"), pursuant to which Endo and Penwest granted Impax a License under the Licensed Patents (as those terms are defined therein and subject to the terms and conditions thereof);

WHEREAS pursuant to Section 4.1(d) of the Settlement and License Agreement, the parties agreed to negotiate in good faith an amendment to the terms of the License with respect to any Licensed Patents which issue from any Pending Applications for the period following the Exclusivity Period (as those terms are defined therein and subject to the terms and conditions thereof);

WHEREAS U.S Patent Nos. 8,309,122, 8,329,216, 8,871,779 and 8,808,737 (collectively, the "Additional Patents") are patents that issued from such Pending Applications and as such fall within the scope of Section 4.1(d); and

WHEREAS the Exclusivity Period for each dosage strength of the Impax Products, as defined in the Settlement and License Agreement, expired no later than July 3, 2013;

In furtherance of Section 4.1(d) and the obligation to negotiate in good faith therein, this is a non-binding term sheet, for discussion purposes only, which sets forth the basic principles of a proposed amendment to the terms of the License with respect to the Additional Patents for the period following the Exclusivity Period (the "Amendment") between Endo and Impax (together the "Parties," and each a "Party"). No legally binding obligations will be created until the Amendment is executed and delivered by the Parties.

The following principal terms and conditions are intended by the Parties to be included in the Amendment:

1.    Definitions:

(a)    For avoidance of doubt, the Additional Patents are Licensed Patents as defined in the Settlement and License Agreement.

(b)    All capitalized terms not otherwise defined herein shall be defined as in the Settlement and License Agreement.

(c)    "Royalty Period" shall mean the period commencing on July 4, 2013 and continuing, unless earlier suspended or terminated pursuant to the Settlement License Agreement, until the expiration of the last to expire of the Additional Patents.

15454734.4.LITIGATION

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000614
IMPAX-OPANA00227883

CONFIDENTIAL
SETTLEMENT COMMUNICATION
GOVERNED BY F.R.E. 408

2.   Royalties.

(a)   Impax agrees to pay to Endo a royalty of 85% of Gross Profits generated from the sales of Impax Products for all dosage strengths sold by or on behalf of Impax or its Affiliates during the Royalty Period.

(b)   Gross Profits shall be defined in the Amendment as "Net Sales" less "Cost of Goods Sold".

(c)   The royalty covering the period from the commencement of the Royalty Period until the effective date of the Amendment will be paid by Impax to Endo on the effective date of the Amendment, and all royalties for Gross Profits of Impax Products after the effective date of the Amendment will be paid by Impax to Endo within thirty (30) days after the end of each calendar quarter during the Royalty Period by wire transfer to an account specified by Endo in writing to Impax. Each royalty payment will be accompanied by a written report specifying in reasonable detail the amount of such Gross Profits and the royalty payable therefor. The royalty payments due under the Amendment shall, if overdue, bear interest until full payment is made at a per annum rate equal to 3% above the prime rate in effect on the applicable due date, not to exceed the maximum permitted by law (the "Interest Rate").

(d)   During the Royalty Period and for seven (7) years after, Impax shall maintain accurate records regarding the manufacture and sale of the Impax Products. Upon reasonable prior written notice, Endo will have the right to audit these records during normal business hours. If Endo's audit discloses an underpayment, Impax shall immediately pay the amount due and owing plus interest at a rate equal to the Interest Rate. In the event of an underpayment, Impax shall also reimburse Endo for the costs of the audit.

3.   Representations and Warranties; Indemnification.

(a)   The Additional Patents will be licensed on an "AS IS" basis.

(b)   For the avoidance of doubt, and without limitation, all indemnification obligations set forth in the Settlement and License Agreement shall remain in effect.

4.   Except as expressly modified by the Agreement, all other terms of the Settlement and License Agreement shall remain in full force and effect.

Confidential Material per Jan. 24, 2017 Protective Order                    Impax_Opana_PartIII_0000615
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER                    IMPAX-OPANA00227884

# EXHIBIT C

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000616
IMPAX-OPANA00227885

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Friday, October 16, 2015 4:34 PM
**To:** Donatiello, Guy
**Subject:** EXTERNAL: RE: Impax License Agreement

Hello Guy,

2

We received your note and proposed amendment to our Settlement and License Agreement and have reviewed them. Initially please note that the statement in your cover note that Section 4.1(d) of the Settlement and License Agreement requires the parties "to negotiate a license fee," is inaccurate as such a provision is not in that section or elsewhere in the License Agreement and is inconsistent with the royalty-free license granted to Impax. In any case, the draft amendment was one sided, only benefitting Endo to the detriment of Impax and its shareholders.

That being said if you have a proposal that is mutually beneficial, we stand ready to discuss and consider those terms. Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them.

Regards,

Meg Snowden

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Thursday, October 01, 2015 11:13 AM
**To:** Meg Snowden
**Subject:** Impax License Agreement

Meg,

I hope all is well.

Under Section 4.1(d) of the Settlement and License Agreement between Endo and Impax, dated June 8, 2010, the parties need to negotiate a license fee for licensed patents that issued following execution of the agreement. We would like to move those negotiations forward, and I am attaching a term sheet for Impax's consideration.

We would appreciate your response within 10 days.

3

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000618
IMPAX-OPANA00227887

Guy


Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.

1400 Atwater Drive

Malvern, PA 19355

Phone Number: 484-216-4275

Fax Number: 610-561-3085

donatiello.guy@endo.com

---

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (484) 216-0000 and permanently delete the original and any copy of any e-mail and any printout thereof.

---

This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual(s) or entity(ies) named in the e-mail address. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please delete the message from your system. Thank you.

(Virus Scanned by Mimecast)

**********************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
**********************************************************************

4

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

# EXHIBIT D

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000620
IMPAX-OPANA00227889

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Tuesday, October 20, 2015 3:05 PM
**To:** Meg Snowden
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Meg:

Thank you for getting back to me. I am confused by your assertion that the draft amendment is "one sided" and your request that Endo bid against itself by making a revised proposal that is supposed to be "mutually beneficial."

Impax litigated and lost its challenge to the validity of the Additional Patents (as defined in the term sheet), and the court's decision that the Impax CRF tablets infringe those patents would apply with equal force to the Impax non-CRF tablets that are the subject of the License. Thus, negotiating an amendment regarding a royalty for the right to sell products covered by the Additional Patents, in accordance with Section 4.1(d), is both appropriate and mutually beneficial, as Impax will be allowed to continue to sell its infringing tablets, while other generic manufacturers are enjoined from doing so. In essence, the License puts Impax in a position analogous to an authorized generic, and the royalty rate that Endo proposes is the standard royalty rate in the industry that is paid for such rights.

Are you saying that Impax is willing to negotiate an appropriate royalty to be paid to Endo for the license under the Additional Patents, but that you believe the royalty rate proposed by Endo is too high or that the terms and conditions associated with the royalty are too onerous? If so, please send me a proposed alternative royalty structure and/or revised terms and conditions so that we may consider Impax's position.

1

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000621
IMPAX-OPANA00227890

Alternatively, if Impax is unwilling to negotiate a royalty for the Additional Patents, then please explain how Impax's position comports with the good faith requirement of the Agreement. Please be advised that Endo would consider any refusal by Impax to negotiate in good faith as required by Section 4.1(d) of the Agreement to be a material breach of the Agreement, and Endo reserves all of its rights and remedies in the event of such a breach, including its right to terminate the Agreement.

We look forward to your timely response,

Regards,

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.

1400 Atwater Drive

Malvern, PA  19355

Phone Number: 484-216-4275

Fax Number: 610-561-3085

donatiello.guy@endo.com

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Friday, October 16, 2015 4:34 PM
**To:** Donatiello, Guy
**Subject:** EXTERNAL: RE: Impax License Agreement

Hello Guy,

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000622
IMPAX-OPANA00227891

We received your note and proposed amendment to our Settlement and License Agreement and have reviewed them. Initially please note that the statement in your cover note that Section 4.1(d) of the Settlement and License Agreement requires the parties "to negotiate a license fee," is inaccurate as such a provision is not in that section or elsewhere in the License Agreement and is inconsistent with the royalty-free license granted to Impax. In any case, the draft amendment was one sided, only benefitting Endo to the detriment of Impax and its shareholders.

That being said if you have a proposal that is mutually beneficial, we stand ready to discuss and consider those terms. Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them.

Regards,

Meg Snowden

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Thursday, October 01, 2015 11:13 AM
**To:** Meg Snowden
**Subject:** Impax License Agreement

Meg,

I hope all is well.

Under Section 4.1(d) of the Settlement and License Agreement between Endo and Impax, dated June 8, 2010, the parties need to negotiate a license fee for licensed patents that issued following execution of the agreement. We would like to move those negotiations forward, and I am attaching a term sheet for Impax's consideration.

We would appreciate your response within 10 days.

3

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Guy


Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.

1400 Atwater Drive

Malvern, PA 19355

Phone Number: 484-216-4275

Fax Number: 610-561-3085

donatiello.guy@endo.com

---

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (484) 216-0000 and permanently delete the original and any copy of any e-mail and any printout thereof.

---

This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual(s) or entity(ies) named in the e-mail address. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please delete the message from your system. Thank you.

(Virus Scanned by Mimecast)

*********************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*********************************************************************

4

# EXHIBIT E

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000625
IMPAX-OPANA00227894

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Monday, November 02, 2015 7:33 PM
**To:** Donatiello, Guy
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Dear Guy,

Since Endo has expressed confusion regarding my last message, let me be more clear about the existing Settlement and License Agreement (the "Agreement"), the negotiation clause and next steps.

First, under the explicit language of the Agreement, Impax already has a "royalty-free" license to "the Opana® ER patents, any continuations, continuations in part or divisionals thereof, and any patents and patent applications owned by Endo or Penwest...that cover or *could potentially cover* the...products (*or any components thereof*) that are the subject of the Impax ANDA." Agreement §4.1(a). The license includes, by definition, "the issued patents being the 'Existing Patents' and the patent applications (*and any patents issued thereunder*) being the 'Pending Applications' and the Existing Patents and Pending Applications being collectively the 'Licensed Patents.'" §4.1(a). (original underlining, italics added). Endo knows that the '122, the '216, the '779 and the '737 patents all issued from the Pending Applications, and, therefore are included in Impax's existing license regarding its ANDA for generic original Opana ER. This is clear by the language in the Agreement and by the fact that Endo did not assert any infringement claims against Impax's generic original Opana ER, even though Endo asserted such claims against every other defendant. Contrary to Endo's recent characterization, Impax's product is not "infringing;" it is licensed.

Second, we disagree with the suggestion that Section 4.1(d) invites a negotiation for Endo to take back the *royalty-free* license that is clearly granted to Impax under the terms of the Agreement. The Agreement does not provide for a "negotiation" regarding rights that have already been granted under the express terms of the existing provisions. Further, if Section 4.1(d) was intended to apply to the royalty, it would have said so, and the grant language would have a specific reference to that section like the reference to Section 4.3 in such paragraph. Instead, Section

2

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000626
IMPAX-OPANA00227895

4.1(d) is meant to address an entirely different situation, where a patent issues under Pending Applications (and therefore constituting a Licensed Patent) but encompasses a product that falls outside the existing terms of the license. Under those circumstances, Section 4.1(d) would contemplate negotiations regarding "an amendment to the terms of the License" which might include, for instance, broadening the definition of "Impax Products" to include additional products covered by the Licensed Patents. That appears to be the case with respect to Opana ER CRF.

Consistent with the provisions of Section 4.1(d), as a counter proposal we are willing to entertain amending the license to expand the definition of "Impax Products" to include Impax's generic to Opana ER CRF and would consider paying a royalty to Endo for that license. This is the kind of "mutually beneficial" amendment to which we alluded in our prior email as well as in our prior conversation.

Finally, unlike Endo, we will not make empty threats regarding terminating the Agreement in the event the negotiations do not result in an acceptable agreement. The Agreement expressly defines the breaches that give rise to a right of termination, and the failure to reach agreement after good faith negotiations regarding expanding the license is not one of them. Nevertheless, we look forward to your company's continued cooperation and anticipated good faith in our forthcoming discussions.

Regards,

Meg

---

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Tuesday, October 20, 2015 3:05 PM
**To:** Meg Snowden
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Meg:

Thank you for getting back to me. I am confused by your assertion that the draft amendment is "one sided" and your request that Endo bid against itself by making a revised proposal that is supposed to be "mutually beneficial."

Impax litigated and lost its challenge to the validity of the Additional Patents (as defined in the term sheet), and the court's decision that the Impax CRF tablets infringe those patents would apply with equal force to the Impax non-CRF tablets that are the subject of the License. Thus, negotiating an amendment regarding a royalty for the right to sell products covered by the Additional Patents, in accordance with Section 4.1(d), is both appropriate and mutually beneficial, as Impax will be allowed to continue to sell its infringing tablets, while other generic manufacturers are enjoined from doing so. In essence, the License puts Impax in a position analogous to an authorized generic, and the royalty rate that Endo proposes is the standard royalty rate in the industry that is paid for such rights.

Are you saying that Impax is willing to negotiate an appropriate royalty to be paid to Endo for the license under the Additional Patents, but that you believe the royalty rate proposed by Endo is too high or that the terms and conditions associated with the royalty are too onerous? If so, please send me a proposed alternative royalty structure and/or revised terms and conditions so that we may consider Impax's position.

Alternatively, if Impax is unwilling to negotiate a royalty for the Additional Patents, then please explain how Impax's position comports with the good faith requirement of the Agreement. Please be advised that Endo would consider any refusal by Impax to negotiate in good faith as required by Section 4.1(d) of the Agreement to be a material breach of the Agreement, and Endo reserves all of its rights and remedies in the event of such a breach, including its right to terminate the Agreement.

We look forward to your timely response,

Regards,

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000627
IMPAX-OPANA00227896

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275
Fax Number: 610-561-3085
donatiello.guy@endo.com

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Friday, October 16, 2015 4:34 PM
**To:** Donatiello, Guy
**Subject:** EXTERNAL: RE: Impax License Agreement

Hello Guy,

We received your note and proposed amendment to our Settlement and License Agreement and have reviewed them. Initially please note that the statement in your cover note that Section 4.1(d) of the Settlement and License Agreement requires the parties "to negotiate a license fee," is inaccurate as such a provision is not in that section or elsewhere in the License Agreement and is inconsistent with the royalty-free license granted to Impax. In any case, the draft amendment was one sided, only benefitting Endo to the detriment of Impax and its shareholders.
That being said if you have a proposal that is mutually beneficial, we stand ready to discuss and consider those terms. Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them.

Regards,

Meg Snowden

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Thursday, October 01, 2015 11:13 AM
**To:** Meg Snowden
**Subject:** Impax License Agreement

Meg,

I hope all is well.

Under Section 4.1(d) of the Settlement and License Agreement between Endo and Impax, dated June 8, 2010, the parties need to negotiate a license fee for licensed patents that issued following execution of the agreement. We would like to move those negotiations forward, and I am attaching a term sheet for Impax's consideration.

We would appreciate your response within 10 days.

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275

4

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000628
IMPAX-OPANA00227897

Fax Number: 610-561-3085
donatiello.guy@endo.com

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (484) 216-0000 and permanently delete the original and any copy of any e-mail and any printout thereof.

This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual(s) or entity(ies) named in the e-mail address. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please delete the message from your system. Thank you.

(Virus Scanned by Mimecast)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000629
IMPAX-OPANA00227898

# EXHIBIT F

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000630
IMPAX-OPANA00227899

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Tuesday, April 19, 2016 12:43 PM
**To:** Meg Snowden
**Cc:** george.gordon@dechert.com; Dubas, Jennifer; Maletta, Matthew; Martin Black (martin.black@dechert.com); EHassi@omm.com; Stern, Jonathan L.
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Dear Meg:

I am surprised and troubled by your email below, as it is inconsistent with both the history of negotiations between the parties and the express language of Section 4.1(d) of the Settlement and License Agreement, and in our view, reflects a failure by Impax to negotiate the required amendment to the License in good faith.

Section 4.1(d) was added to the Agreement as a compromise of the parties' ongoing dispute as to whether the License should include a license for the accused products under future patents that Endo might obtain. We were all aware of the pending patent applications, but no one knew whether the patents would issue or in what form. Impax insisted on a License for the Impax Product (as defined in the License) with respect to all patents that Endo may have, both existing and future patents. Endo refused to grant any rights to any patents it might obtain in the future, as it had refused to grant such rights to any of the generics with whom it had previously settled. Endo ultimately relented, but only on the condition that the parties agree to negotiate an amendment to the terms of the License in the event Endo actually succeed in obtaining additional relevant patents in the future. Thus, Impax obtained a license under Section 4.1(a) and freedom to operate, but incurred an obligation to negotiate an amendment to the License should the patent applications issue in the future. This was a sensible compromise that created commercial certainty, but left the price to be paid for the license to a future date when the value of the patents and the scope of Impax's use of the patented technology would be known. At no time did the parties discuss a possible license under any patents—present or future—for products other than the accused Impax Product.

Thus, the assertion in your email that the inclusion of Section 4.1(d) was "meant to address an entirely different situation, where a patent issues under Pending Applications (and therefore constituting a Licensed Patent) but encompasses a product that falls outside the existing terms of the license" is entirely counter-factual and cannot be made in good faith. There is simply no way to square that argument with the explicit product definition and other terms of the License Agreement or the negotiating history. As someone who was deeply involved in those negotiations, you know this to be false, and I am disappointed to see you posturing in this fashion.

Impax's position is at odds with the express language of the Agreement, which defines the scope of the license grant by reference to Impax's original ANDA and makes no provision for other products. Section 4.1(d) obligates the parties to negotiate in good faith for a license under future patents "for the time period following the Exclusivity Period." The

1

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000631
IMPAX-OPANA00227900

"Exclusivity Period" is defined in terms that apply only to the Impax Product. Thus, it would make no sense to refer to the "time period following the Exclusivity Period" in connection with any products other than the Impax Product.

This matter has been outstanding for some time. While we were content to wait for the outcome of the New York litigation, that has concluded, and we need to reach closure one way or the other. If Impax is willing, consistent with the parties' intent with respect to Section 4.1(d), to negotiate an amendment to the License for Impax's accused non-CRF tablets, including in particular, the amount of the royalty that Impax is willing to pay for the license under the '122, '216, '737 and '779 patents, please provide us with a counter-proposal to the proposed Term Sheet that I sent you on October 2, 2015. We are willing to be reasonable here, and the amount of the royalty and other terms relating to the Impax Product are negotiable, but we can't negotiate without a partner. Unless we receive Impax's unequivocal confirmation that it is dropping the spurious demand that we include additional products in the License by April 26, and a legitimate monetary offer to compensate Endo for its patent rights, we will assume that Impax has no intention of negotiating an amendment in good faith and proceed accordingly.

Regards,

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275
Fax Number: 610-561-3085
donatiello.guy@endo.com

---

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Monday, November 02, 2015 7:33 PM
**To:** Donatiello, Guy
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Dear Guy,

Since Endo has expressed confusion regarding my last message, let me be more clear about the existing Settlement and License Agreement (the "Agreement"), the negotiation clause and next steps.

First, under the explicit language of the Agreement, Impax already has a "royalty-free" license to "the Opana® ER patents, any continuations, continuations in part or divisionals thereof, and any patents and patent applications owned by Endo or Penwest…that cover or *could potentially cover* the…products (*or any components thereof*) that are the subject of the Impax ANDA." Agreement §4.1(a). The license includes, by definition, "the issued patents being the 'Existing Patents' and the patent applications (*and any patents issued thereunder*) being the 'Pending Applications' and the Existing Patents and Pending Applications being collectively the 'Licensed Patents.'" §4.1(a). (original underlining, italics added). Endo knows that the '122, the '216, the '779 and the '737 patents all issued from the Pending Applications, and, therefore are included in Impax's existing license regarding its ANDA for generic original Opana ER. This is clear by the language in the Agreement and by the fact that Endo did not assert any infringement claims against Impax's generic original Opana ER, even though Endo asserted such claims against every other defendant. Contrary to Endo's recent characterization, Impax's product is not "infringing;" it is licensed.

Second, we disagree with the suggestion that Section 4.1(d) invites a negotiation for Endo to take back the *royalty-free* license that is clearly granted to Impax under the terms of the Agreement. The Agreement does not provide for a "negotiation" regarding rights that have already been granted under the express terms of the existing provisions. Further, if Section 4.1(d) was intended to apply to the royalty, it would have said so, and the grant language would have a specific reference to that section like the reference to Section 4.3 in such paragraph. Instead, Section

2

4.1(d) is meant to address an entirely different situation, where a patent issues under Pending Applications (and therefore constituting a Licensed Patent) but encompasses a product that falls outside the existing terms of the license. Under those circumstances, Section 4.1(d) would contemplate negotiations regarding "an amendment to the terms of the License" which might include, for instance, broadening the definition of "Impax Products" to include additional products covered by the Licensed Patents. That appears to be the case with respect to Opana ER CRF.

Consistent with the provisions of Section 4.1(d), as a counter proposal we are willing to entertain amending the license to expand the definition of "Impax Products" to include Impax's generic to Opana ER CRF and would consider paying a royalty to Endo for that license. This is the kind of "mutually beneficial" amendment to which we alluded in our prior email as well as in our prior conversation.

Finally, unlike Endo, we will not make empty threats regarding terminating the Agreement in the event the negotiations do not result in an acceptable agreement. The Agreement expressly defines the breaches that give rise to a right of termination, and the failure to reach agreement after good faith negotiations regarding expanding the license is not one of them. Nevertheless, we look forward to your company's continued cooperation and anticipated good faith in our forthcoming discussions.

Regards,

Meg

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Tuesday, October 20, 2015 3:05 PM
**To:** Meg Snowden
**Subject:** RE: EXTERNAL: RE: Impax License Agreement

Meg:

Thank you for getting back to me. I am confused by your assertion that the draft amendment is "one sided" and your request that Endo bid against itself by making a revised proposal that is supposed to be "mutually beneficial."

Impax litigated and lost its challenge to the validity of the Additional Patents (as defined in the term sheet), and the court's decision that the Impax CRF tablets infringe those patents would apply with equal force to the Impax non-CRF tablets that are the subject of the License. Thus, negotiating an amendment regarding a royalty for the right to sell products covered by the Additional Patents, in accordance with Section 4.1(d), is both appropriate and mutually beneficial, as Impax will be allowed to continue to sell its infringing tablets, while other generic manufacturers are enjoined from doing so. In essence, the License puts Impax in a position analogous to an authorized generic, and the royalty rate that Endo proposes is the standard royalty rate in the industry that is paid for such rights.

Are you saying that Impax is willing to negotiate an appropriate royalty to be paid to Endo for the license under the Additional Patents, but that you believe the royalty rate proposed by Endo is too high or that the terms and conditions associated with the royalty are too onerous? If so, please send me a proposed alternative royalty structure and/or revised terms and conditions so that we may consider Impax's position.

Alternatively, if Impax is unwilling to negotiate a royalty for the Additional Patents, then please explain how Impax's position comports with the good faith requirement of the Agreement. Please be advised that Endo would consider any refusal by Impax to negotiate in good faith as required by Section 4.1(d) of the Agreement to be a material breach of the Agreement, and Endo reserves all of its rights and remedies in the event of such a breach, including its right to terminate the Agreement.

We look forward to your timely response,

Regards,

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000633
IMPAX-OPANA00227902

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275
Fax Number: 610-561-3085
donatiello.guy@endo.com

---

**From:** Meg Snowden [mailto:Meg.Snowden@impaxlabs.com]
**Sent:** Friday, October 16, 2015 4:34 PM
**To:** Donatiello, Guy
**Subject:** EXTERNAL: RE: Impax License Agreement

Hello Guy,

We received your note and proposed amendment to our Settlement and License Agreement and have reviewed them. Initially please note that the statement in your cover note that Section 4.1(d) of the Settlement and License Agreement requires the parties "to negotiate a license fee," is inaccurate as such a provision is not in that section or elsewhere in the License Agreement and is inconsistent with the royalty-free license granted to Impax. In any case, the draft amendment was one sided, only benefitting Endo to the detriment of Impax and its shareholders.
That being said if you have a proposal that is mutually beneficial, we stand ready to discuss and consider those terms. Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them.

Regards,

Meg Snowden

---

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Thursday, October 01, 2015 11:13 AM
**To:** Meg Snowden
**Subject:** Impax License Agreement

Meg,

I hope all is well.

Under Section 4.1(d) of the Settlement and License Agreement between Endo and Impax, dated June 8, 2010, the parties need to negotiate a license fee for licensed patents that issued following execution of the agreement. We would like to move those negotiations forward, and I am attaching a term sheet for Impax's consideration.

We would appreciate your response within 10 days.

Guy

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275

4

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000634
IMPAX-OPANA00227903

Fax Number: 610-561-3085
donatiello.guy@endo.com

This e-mail, and any attachments thereto, are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at (484) 216-0000 and permanently delete the original and any copy of any e-mail and any printout thereof.

This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual(s) or entity(ies) named in the e-mail address. If you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please delete the message from your system. Thank you.

(Virus Scanned by Mimecast)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000635
IMPAX-OPANA00227904

# EXHIBIT G

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000636
IMPAX-OPANA00227905

*Endo*
1400 Atwater Drive
Malvern, PA 19355
484.216.0000

endo.com

 *endo*

October 31, 2016

Impax Laboratories, Inc.                          Impax Laboratories, Inc.
121 New Britain Blvd.                             30831 Huntwood Ave.
Chalfont, PA  18914                               Hayward, CA  94544
Attn:  Chris Mengler                             Attn:  Margaret Snowden
       President, Generics Division                     Vice President, Intellectual Property

Dear Mr. Mengler and Ms. Snowden,

Reference is hereby made to the Settlement and License Agreement, dated as of June 8, 2010
(the "Agreement"), by and between Endo Pharmaceuticals ("Endo") and Impax Laboratories
("Impax").  As you know, Section 4.1(d) of the Agreement requires Impax to negotiate in good
faith the terms of the license to any patents that were subsequently issued to Endo from the
Pending Applications.

Unfortunately, notwithstanding the express terms of the Agreement, Impax has consistently
refused to enter into good faith negotiations.  On April 19, 2016, Endo notified Impax that its
refusal to negotiate in good faith violated the Agreement.  Endo again offered to negotiate all
terms associated with the license, including a royalty, and specifically invited Impax to respond
with a good faith proposal.  Impax ignored that invitation and failed even to respond to it.  As a
result, Endo was forced to file suit in federal court in New Jersey asserting, among other things,
that Impax materially breached Section 4.1(d) of the Agreement.  *See* Complaint, ECF #1, *Endo
Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, C.A. No. 16-2526-JLL.

Endo had hoped the lawsuit would prompt Impax to honor the promises it made to Endo and
come to the negotiation table.  However, rather than attempting to cure its material breach or
otherwise comply with its obligation to negotiate in good faith, Impax continued its bad faith
conduct.  By way of example, in its Motion to Dismiss Endo's Complaint, Impax misrepresented
the factual background and terms of the Agreement, even suggesting on repeated occasions that
Section 4.1(d) merely required Impax to "negotiate" an amendment to the license that simply
listed the numbers of the patents that had issued since the effective date of the Agreement.  The
Court has now denied Impax's motion to dismiss, summarily rejecting Impax's arguments and
finding that Endo's Complaint states valid claims for breach of the Agreement and infringement
of Endo's patents.

Endo has still heard nothing from Impax.  It is regrettable that Impax has chosen litigation over
negotiation, but Endo can no longer tolerate the use of its inventions without compensation or the
ongoing damages it is suffering as a result of Impax's material breach of the Agreement and bad
faith.  Accordingly, Endo hereby provides notice to Impax that the Agreement is terminated,
effective immediately.

Confidential Material per Jan. 24, 2017 Protective Order                Impax_Opana_PartIII_0000637
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER              IMPAX-OPANA00227906



Mr. Chris Mengler
Ms. Margaret Snowden
Page 2
October 31, 2016

As you know, Judge Griesa ruled in the New York litigation that Endo's patents are valid, and that Impax's other generic tablets infringe those patents. As a result, there is no legitimate dispute that Impax's current Opana ER generic tablets infringe Endo's patents. Impax should therefore honor Endo's patent rights and immediately cease all sales of those infringing tablets. Please confirm whether Impax will agree to do so no later than November 2, 2016.

Sincerely,

Guy T. Donatiello
Senior Vice President
Intellectual Property

GTD:lm
By Facsimile and UPS Next Day Air

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000638
IMPAX-OPANA00227907

# EXHIBIT H

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000639
IMPAX-OPANA00227908

# KING & SPALDING

King & Spalding LLP
601 South California Avenue
Palo Alto, CA 94304
Tel: +1 650 422 6700
Fax: +1 650 422 6800
www.kslaw.com

Timothy T. Scott
Managing Partner-SVO
Direct Dial: +1 650 422 6739
Direct Fax: +1 650 422 6800
tscott@kslaw.com

November 2, 2016

*Via Email*

Guy T. Donatiello
Senior Vice President
Intellectual Property
Endo
1400 Atwater Drive
Malvern, PA 19355

Dear Mr. Donatiello:

I am responding to your letter of October 31, 2016 to Ms. Snowden. Your letter seems to mistake a denial of a motion to dismiss with a victory on the merits of your claims. No such victory has been achieved, particularly in light of the Court's express recognition that it was not addressing many of the defenses raised by Impax in the litigation. See Order at 8 ("Defendant's arguments regarding its royalty-free license...are inapplicable *at this stage of the proceedings*.")

Your recitation of the purported facts underlying your misguided and bad faith attempt to terminate the Settlement Agreement that is the subject of the litigation is incorrect in many respects. First, Section 4.1(d) was never intended to require Impax to negotiate the terms of a license to the newly issued patents; as your pleadings recognize, Impax already has such a license, and it is royalty free. Rather, the genesis of Section 4.1(d) was as follows: An agreement in principle to settle the pending litigation was reached on Thursday, June 3, 2010 and the parties commenced drafting the implementing agreements. You insisted that the agreement be finalized before court proceedings resumed the following Tuesday, June 8, 2010 because, as you stated, you did not want to see your expert witness examined by Mr. Shulman, Impax's attorney. The parties exchanged drafts over the weekend, with Impax insisting upon a license to future patents in order to ensure its continued freedom to operate, the very purpose of the Settlement Agreement. Endo ultimately agreed that it would grant Impax a license to patents that it owned (the then-issued patents and then-pending applications) and a covenant not to sue on any other patent it could conceivably enforce against Impax.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Page 2

Having reached that agreement, Endo then proposed on that Sunday night a completely new and complicated structure that would completely change the negotiated terms and instead would involve some form of co-promotion agreement related to Opana ER. Impax was not willing to renegotiate and restructure the agreement at that late date, for many reasons, not least of which was the utter impracticality of trying to complete such a complicated arrangement in a very short time frame. Instead, Impax agreed to proceed with the deal on the table and, at the same time, agreed to your proposal to insert Section 4.1(d) to preserve your right to propose a different deal structure at some later time. While Impax was willing to consider your alternative proposals at a later time when they could be properly vetted and negotiated, Section 4.1(d) was never intended to require Impax to pay a royalty on any newly issued patents alone, without any other changes to the license terms.

Second, Impax has negotiated in good faith; it is Endo which has not. The first of the patents issued from the pending applications in 2012, yet no one from Endo claimed at that time or for the ensuing two years that Section 4.1(d) required any royalty negotiation. When you first proposed that Impax pay a royalty on the newly issued patents, in a phone call in early 2015, Impax expressed willingness to consider any modification of the deal that provided consideration to Impax in exchange for the royalty you sought. While Ms. Snowden stated that modifying the deal to resolve the ongoing litigation involving Impax's ANDA to Opana ER CRF seemed the most obvious way to structure a "win-win" deal for both companies, Impax was open to other alternatives from Endo, stating that the only concept that would be unacceptable was one where Impax received no consideration at all in exchange for modifying its royalty-free license into a royalty-bearing license. Instead of proposing any structure at all that could for the basis for a negotiation, on October 1, 2015, you sent a "term sheet," under which Endo would capture the lion's share of Impax's profits going back to mid-2013 as well as requiring Impax to pay an 85% royalty on future sales of generic Opana ER without offering any consideration whatsoever in exchange for this royalty payment. Two weeks later, Ms. Snowden wrote back to you reminding you that Impax was willing to discuss any proposal in which Impax received some consideration in exchange for paying a royalty, expressly stating that "if you have a proposal that is mutually beneficial, we stand ready to discuss and consider those terms." You replied a week later and insisted upon your right to charge royalties on the basis that Impax would have a right to sell Opana ER, a right it already has under the Settlement Agreement. Ms. Snowden responded twelve days later, on November 2, explaining the basis of her original response regarding the need for a mutually beneficial amendment and gave, as an example, the grant of rights to a generic version of Opana ER CRF. You did not respond for over five months. Then, after five months of silence, you wrote on April 19, 2016 to again insist upon a royalty and offering nothing in return. Without awaiting any response from Impax, you filed suit only 15 days later. Clearly, it was Endo, not Impax, that chose litigation over negotiation.

Third, Endo has no right to terminate the Settlement Agreement on the grounds of its baseless assertion that Impax has failed to negotiate in good faith. Section 8.2 specifies that the

Page 3

Settlement Agreement may only be terminated if Impax enters the market before the Commencement Date or challenges, directly or indirectly, the validity or enforceability of the patents with respect to the products that are the subject of the Impax ANDA. None of these circumstances has occurred. Rather, Impax has fully performed its obligations, having dismissed its affirmative defense and counterclaims, having waiting until January 2013 to enter the market and never having challenged the patents at any time prior their expiration. Having accepted all the material benefits of the Settlement Agreement, there is no provision of the Settlement Agreement that allows for termination for an alleged failure to negotiate a further amendment to that Agreement. The parties clearly identified those provisions for which a breach that would be deemed sufficiently material to warrant termination, and an alleged breach of Section 4.1(d) after full performance by Impax is not one of them. Impax's license is not terminated and Impax does not intend to cease marketing its generic version of Opana ER.

Finally, if you wish to have a meaningful dialogue regarding these issues rather than send Impax threatening letters or file frivolous pleadings, Impax is happy to meet with you to discuss them. Absent such a meeting, Impax intends to assert counterclaims in the pending litigation for Endo's bad faith conduct, including not only its failure to negotiate in good faith and its breach of the covenant not to sue, but also its brazen and anti-competitive attempt to terminate the Settlement Agreement.

Very truly yours,

Timothy T. Scott

TTS:js

cc. Robert D. Rhoad (via email)
    Brian M. Goldberg (via email)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

# EXHIBIT I

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000643
IMPAX-OPANA00227912

*Endo*
*1400 Atwater Drive*
*Malvern, PA 19355*
*484.216.0000*

*endo.com*



November 4, 2016

Timothy T. Scott, Esq.
Managing Partner-SVO
King & Spalding LLP
601 South California Avenue
Palo Alto, CA  94304

Dear Mr. Scott:

I write in response to your letter of November 2, 2016, which in turn responds to my letter to Ms. Snowden of October 31, 2016.

Obviously, we disagree with Impax's latest interpretation of Section 4.1(d) of the Settlement and License Agreement (the "Agreement"), just as we have disagreed with the prior two interpretations.  The negotiating history demonstrates that Impax repeatedly requested access to future Endo patents, a right which Endo was unwilling to provide without compensation.  The parties agreed to the language in Section 4.1(d), which bound both parties to negotiate in good faith over the compensation to be paid to Endo for any new patents, if and when they issued.

In 2012, the Patent Office granted Endo two new patents.  Impax refused to respect the patents, forcing Endo to sue Impax in the Southern District of New York.  Impax tried, but failed, to invalidate the patents, and on August 14, 2015, Judge Griesa issued an opinion rejecting Impax's invalidity position.  With the validity of the patents confirmed, Endo opened negotiations under Section 4.1(d).  Impax refused to negotiate a royalty, insisting that it owed nothing.  To this day, Impax has not offered to pay a dime for the use of Endo's new patents.  That is simply not good faith negotiation.

Indeed, Impax is now on its third "interpretation" of Section 4.1(d) of the Agreement:

Interpretation 1, provided by Ms. Snowden on October 16, 2015, and November 2, 2015, was that Section 4.1(d) grants Impax a free license on the original Impax product and required Endo to negotiate a license for Impax's copy of Endo's new CRF product.  This, of course, made no sense, because the agreement does not cover the CRF product.

Interpretation 2, provided in your motion to dismiss the case, was that Section 4.1(d) only obligates the parties to update the listed patents.  This was nonsense, and you seem to have abandoned that position now.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000644
IMPAX-OPANA00227913



Timothy T. Scott, Esq.
Page 2
November 4, 2016

Interpretation 3, provided in your letter of November 2, 2016, is that under Section 4.1(d), Endo can propose some sort of co-promote or "different deal structure". Not only is that inconsistent with the language of the agreement and the negotiating history, but the parties have been talking for a year, and this is the first time Impax has raised this theory.

We reject Impax interpretations 1, 2 and 3. The language of Section 4.1(d) is clear, and Impax was obligated to negotiate in good faith over a royalty for the new patents. Endo provided a term sheet using the market royalty rate for a single generic based on Endo's experience in similar agreements. If you believe that rate is too high or inconsistent with deals that Impax has done in the past, please advise. We have told Impax repeatedly that we were willing to negotiate the price term, but obviously, it takes two to negotiate, and offering us a 0% royalty is not in good faith. Endo provided a formal notice of termination to make clear to Impax that Endo will not stand by while Impax uses Endo's patents with impunity.[1] The Agreement has been terminated, and Impax is now exposed to a claim for Endo's lost profits, as well as trebling for willful infringement of patents on which it has no invalidity or non-infringement defense.

Notwithstanding the poor treatment Endo has suffered at the hands of Impax, if Impax is now interested in negotiating a new agreement, please advise what royalty rate Impax is willing to pay for the non-CRF product. If it looks like there are grounds for a discussion, we would be happy to set up a meeting promptly.

Sincerely,

Guy J. Donatiello
Senior Vice President
Intellectual Property

GD:lm
By UPS Next Day Air
cc: Robert D. Rhoad (via email)

---

[1] Endo was well within its rights in terminating the agreement. "It is black letter contract law that a material breach by either party to a bilateral contract excuses the other party from rendering any further contractual performance." *Magnet Res., Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 287–88, 723 A.2d 976, 982 (N.J. App. Div. 1998), citing *Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143 (1990); *Restatement *286 (Second) of Contracts* § 237 (1981). Moreover, pursuant to Section 4.1(b) of the Agreement, Endo's covenant not to sue applies only "so long as Impax is in compliance with the terms of the agreement." Impax has breached the agreement repeatedly, and as a result, Endo is entitled to enforce its patent rights against Impax.

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

# EXHIBIT J

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000646
IMPAX-OPANA00227915

# KING & SPALDING

King & Spalding LLP
601 South California Avenue
Palo Alto, CA 94304
Tel: +1 650 422 6700
Fax: +1 650 422 6800
www.kslaw.com

Timothy T. Scott
Managing Partner-SVO
Direct Dial: +1 650 422 6739
Direct Fax: +1 650 422 6800
tscott@kslaw.com

November 15, 2016

## *Via Email*

Guy T. Donatiello
Senior Vice President
Intellectual Property
Endo
1400 Atwater Drive
Malvern, PA 19355

Dear Mr. Donatiello:

Thank you for your letter of November 4, 2016. There is obviously a fundamental disagreement between the parties concerning the meaning of Section 4.1(d) of the Agreement. Your assertion, however, that Impax has proffered three different interpretations is untrue and ignores fundamental concepts of both pleading and procedure. As required by Federal Rule of Civil Procedure 12(b)(6), the motion to dismiss filed by Impax (what you now label as "interpretation 2") accepted "as true" the allegations of Endo's complaint. To be clear, Impax disputes those allegations, which are inconsistent with both the written record and the plain language of the Agreement. Our assertion in that motion to dismiss, that under the facts alleged by Endo, §4.1(d) would be satisfied by an amendment identifying the patents, was a legal argument addressing the insufficiency of Endo's factual allegations; it was not, as you suggest, an assertion regarding the negotiating history of that provision.

Your letter also misstates Impax's position with respect to your so-called "interpretation 1" and "interpretation 3," neither of which are actually interpretations of Section 4.1(d) at all. The correspondence on those points is clear, and clearly different from your misleading portrayal, and need not be further explained here. However, regarding the negotiation history of Section 4.1(d), since you were the one who proposed the "different deal structure," I doubt that the recitation of that history surprised you.

While we agree with you that the language of Section 4.1(d) is clear, we do not agree that it requires any negotiation of a royalty to Endo. Impax has repeatedly expressed that it is not opposed to paying a royalty as long as it receives some additional benefit in return. To resolve this issue, Impax remains willing to discuss reasonable business terms with Endo and would

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000647
IMPAX-OPANA00227916

Page 2

welcome an opportunity for business management to talk.  Please let us know when Endo
personnel would be available.

Very truly yours,

Timothy T. Scott

TTS:js

cc.  Robert D. Rhoad (via email)
    Brian M. Goldberg (via email)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000648
IMPAX-OPANA00227917

# EXHIBIT K

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000649
IMPAX-OPANA00227918

**From:** Donatiello, Guy [mailto:Donatiello.Guy@Endo.com]
**Sent:** Thursday, November 17, 2016 12:52 PM
**To:** Scott, Tim
**Cc:** robert.rhoad@dechert.com
**Subject:** RE: Impax (Endo)

Dear Mr. Scott:

I have received your letter of November 15, 2016.

As you know, over a year ago, I reached out to Ms. Snowden in an effort to prompt the negotiations required by Section 4.1(d) of the Agreement. I attached to the email I sent her a detailed Term Sheet that included Endo's proposal concerning the royalty rate to be paid by Impax for Endo's new patents. Despite my having given Ms. Snowden and Impax multiple opportunities to engage with me on that issue, including my telling her that the amount of the royalty and other terms relating to the Impax Product were negotiable, Impax never provided a counter-proposal. Accordingly, as set forth in my October 31 letter, Endo had no choice but to terminate the Agreement, such that Impax is presently willfully infringing Endo's judicially-approved patents without a license.

Despite all of that, as I said in my November 4 letter, Endo remains interested in avoiding further litigation and is willing to negotiate a new agreement, but we need a proposal from Impax specifying what royalty rate it is willing to pay for its infringing tablets. Once we receive that, if it looks like there are grounds for a discussion, we would be very happy to schedule an opportunity for the two companies to talk further.

Sincerely,
Guy Donatiello

Guy Donatiello
Senior Vice President, Intellectual Property
Endo Pharmaceuticals Inc.
1400 Atwater Drive
Malvern, PA 19355
Phone Number: 484-216-4275
Fax Number: 610-561-3085
donatiello.guy@endo.com

**From:** Scott, Tim [mailto:TScott@KSLAW.com]
**Sent:** Tuesday, November 15, 2016 4:18 PM
**To:** Donatiello, Guy
**Cc:** robert.rhoad@dechert.com; brian.goldberg@dechert.com
**Subject:** EXTERNAL: FW: Impax (Endo)

Dear Mr. Donatiello, please see the attached correspondence responding to yours of November 4, 2016.

1

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Timothy T. Scott
King & Spalding
601 S. California Ave.
Palo Alto, CA 94306
650-422-6739
tscott@kslaw.com

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

This e-mail transmission, including any attachments, is intended only for the individual(s) or entity(ies) named in the e-mail address and may contain confidential or proprietary information that may be subject to protections afforded to certain types of confidential and/or proprietary information, including attorney-client privilege. If you have any reason to believe that you are not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any review, use, disclosure, copying, distribution, or reliance upon the contents of this e-mail transmission, and any attachments thereto, is strictly prohibited. If you have received this e-mail transmission in error, please notify the sender immediately, so that Endo can arrange for proper delivery, and then please permanently delete the original and any copy of this e-mail transmission from your system and any printout thereof. Thank you.

(Virus Scanned by Mimecast)

Confidential Material per Jan. 24, 2017 Protective Order
HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Impax_Opana_PartIII_0000651
IMPAX-OPANA00227920