**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All Actions | **FILED UNDER SEAL** |
| | **PUBLIC VERSION** |

**DEFENDANTS' JOINT LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 56.1, Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Penwest Pharmaceuticals Co. (collectively, "Endo") and Impax Laboratories, Inc. ("Impax," and together with Endo, "Defendants") submit this statement of material facts regarding which there is no genuine issue in support of their motions for summary judgment.

1

I.     DESCRIPTION OF THE PARTIES .......................................................................... 3
   A.   Plaintiffs .......................................................................................................... 3
   B.   Defendants ........................................................................................................ 4
II.    JURISDICTION AND VENUE ............................................................................... 4
III.   BACKGROUND ON HATCH-WAXMAN AND PHARMACEUTICAL PATENT
       LITIGATION ........................................................................................................... 5
IV.    BACKGROUND ON OPANA ER ........................................................................... 6
V.     ENDO-IMPAX D.N.J. PATENT LITIGATION ...................................................... 7
   A.   The '456 and '933 Patents ............................................................................... 7
   B.   Endo-Impax Patent Litigation Involving '456 and '933 Patents ..................... 7
   C.   The Endo-Impax Settlement and License Agreement (SLA) ........................... 10
       1.   *Terms of the SLA* ................................................................................. 10
       2.   *Negotiations over Impax's Entry Date* ............................................... 11
       3.   *Impax Negotiates the Broad License* .................................................. 14
VI.    SUBSEQUENT PATENT LITIGATION ............................................................... 16
   A.   Endo Acquires Additional Patents Covering Original Opana ER and Reformulated Opana
       ER  16
   B.   Endo Successfully Asserts the '122 and '216 Patents in the SDNY Proceedings ........... 17
       1.   *Endo Secures Injunctions in SDNY Proceedings* ................................ 17
       2.   *The SDNY Injunctions are Affirmed on Appeal* ................................. 20
       3.   *But-for the Broad License, Impax's Original Opana ER Product Would Have Been
            Enjoined in the SDNY Proceedings* ...................................................... 20
   C.   Endo Successfully Asserts the '779 Patent in the District of Delaware ......................... 20
       1.   *Endo Secures Injunctions in Delaware Proceedings* ........................... 20
       2.   *The Delaware Injunctions are Affirmed on Appeal* ............................ 22
       3.   *But-for the Broad License, Impax's Original Opana ER Product Would Have Been
            Enjoined in the Delaware Proceedings* ................................................. 23
   D.   Because of the Broad License and Subsequent Patent Litigation Described Above, Impax
       Is the Only Company Able to Lawfully Sell a Generic Version of Original Opana ER Prior to
       November 2029 ........................................................................................................ 23

## I.    DESCRIPTION OF THE PARTIES

### A.    Plaintiffs

1.    The named plaintiffs on behalf of the direct purchaser class ("DPPs") are: (1) Value Drug Company (a Pennsylvania corporation with principal place of business in Altoona, Pennsylvania); (2) Meijer, Inc. (a Michigan corporation with principal place of business in Grand Rapids, Michigan); and (3) Meijer Distribution, Inc. (a Michigan corporations with principal place of business in Grand Rapids, Michigan).  *See* ECF No. 101 (DPP Compl.) ¶¶ 17–18.

2.    The named plaintiffs on behalf of the end payor class ("EPPs") are: (1) Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund (located in Springfield, Missouri); (2) Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana (located in Baton Rouge, Louisiana); (3) Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund (located in Miami, Florida); (4) Wisconsin Masons' Health Care Fund (located in Madison, Wisconsin); (5) Pennsylvania Employees Benefit Trust Fund (located in Harrisburg, Pennsylvania); and (6) International Union of Operating Engineers, Local 138 Welfare Fund (located in Farmingdale, New York).  *See* ECF No. 164 (EPP Compl.) ¶¶ 13–18.

3.    The "Retailer Plaintiffs" are: (1) Walgreen Co. (an Illinois corporation with principal place of business in Deerfield, Illinois); (2) The Kroger Co. (an Ohio corporation with principal place of business in Cincinnati, Ohio); (3) Safeway Inc. (a Delaware corporation with principal place of business in Pleasanton, California); (4) HEB Grocery Company L.P. (a Texas limited partnership with principal place of business in San Antonio, Texas); (5) Albertson's LLC (a Delaware limited liability company with principal place of business in Boise, Idaho); (6) Rite Aid Corporation (a Delaware corporation with principal place of business in Camp Hill, Pennsylvania); (7) Rite Aid Hdqtrs. Corp. (a Delaware corporation with principal place of business in Camp Hill, Pennsylvania); and (8) CVS Pharmacy, Inc. (a Rhode Island corporation with its

principal place of business in Woonsocket, Rhode Island). *See* ECF No. 168 (Walgreens Compl.) ¶¶ 15–19; ECF No. 169 (Rite-Aid Compl.) ¶ 15; ECF No. 170 (CVS Compl.) ¶ 15.

      **B.**    **Defendants**

    4.    Defendants Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. are subsidiaries of Endo International plc. *See* Ex. 1 (Endo International plc 2018 10-K Annual Report) at 228 (Exhibit 21.1). Endo International plc is an Ireland-domiciled, global specialty pharmaceutical company focused on generic and branded pharmaceuticals. *See id.* at 1. The U.S. headquarters for Endo International plc is located in Malvern, Pennsylvania. *See id.* Endo Pharmaceuticals Inc. acquired Defendant Penwest Pharmaceuticals Co., and Penwest Pharmacueticals Co. no longer exists as a separate company. Ex. 2, September 28, 2018 Deposition of Guy Donatiello 112:7-19.

    5.    Defendant Impax Laboratories, Inc. is a subsidiary of Amneal Pharmaceuticals, Inc. Amneal Pharmaceuticals, Inc. is a global pharmaceutical company that develops, licenses, manufactures, markets and distributes generic and specialty pharmaceutical products in a variety of dosage forms and therapeutic categories. *See* Ex. 3 (Amneal Pharmaceuticals, Inc. 2019 10-K Annual Report) at 4. Prior to being acquired by Amneal, Impax marketed branded and generic pharmaceutical drug products. *See id.*

**II.**    **JURISDICTION AND VENUE**

    6.    The DPP Complaint and Retailer Plaintiff Complaints present claims arising under Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1–2. This Court has jurisdiction to hear those claims under 28 U.S.C. §§ 1331, 1337, 1407, and 15 U.S.C. §§ 15(a) and 26. The EPP Complaint presents claims under various state laws. This Court has jurisdiction to hear those claims under 28 U.S.C. § 1332(d). Venue is appropriate within this district under Section 12 of the Clayton Act, 15 U.S.C. § 22, as well as 28 U.S.C. §1391(b) and (c) and 28 U.S.C. § 1407(a).

### III. BACKGROUND ON HATCH-WAXMAN AND PHARMACEUTICAL PATENT LITIGATION

7.      The U.S. Food and Drug Administration ("FDA") publishes the *Approved Drug Products with Therapeutic Equivalents* (the "Orange Book"), which lists the patents for which a branded pharmaceutical company reasonably believes a claim of infringement could be asserted against an unlicensed manufacturer or seller of its drug before expiration of the listed patents.  *See* 21 U.S.C. § 355(b)(1).

8.      When a generic applicant files an Abbreviated New Drug Application ("ANDA") for approval of a generic version of a branded pharmaceutical, it must make one of four certifications to the FDA related to any patents listed in the Orange Book: (i) that there are no patents listed in the Orange Book that cover the branded pharmaceutical; (ii) that any listed patents have expired; (iii) that the generic is not seeking approval before the expiration of any listed patents; or (iv) that any listed patents are not infringed, are invalid, and/or are unenforceable (a so-called "Paragraph IV certification").  *See* 21 U.S.C. § 355(j)(2)(A)(vii)).  The filing of a Paragraph IV certification is, by statute, an act of infringement, allowing the patent holder to file infringement litigation, if appropriate.  *See* 35 U.S.C. § 271(e)(2).

9.      If the brand manufacturer initiates a patent infringement action against the generic filer within forty-five days of receiving notification of the Paragraph IV certification, the FDA will not grant final approval to the ANDA until the earlier of (1) the passage of 30 months, or (2) the issuance of a decision by a court that the patent is invalid or not infringed by the generic manufacturer's ANDA.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).

10.      The first generic manufacturer who files an ANDA with a Paragraph IV certification is granted a 180-day period to market the generic version of the drug, during which

time the FDA may not grant final approval to any other generic manufacturer's ANDA for the

same brand drug. *See* 21 U.S.C. § 355(j)(5)(B)(iv) and 21 U.S.C. § 355(j)(5)(D).

## IV. BACKGROUND ON OPANA ER

11.     Opana ER (extended-release oxymorphone hydrochloride tablets) was first

approved in 2006 for the management of moderate-to-severe pain when a continuous, around-the-

clock opioid analgesic is needed for an extended period of time. *See* Ex. 4 (FDA "Regulatory

History of Opana ER") at 6.  Between 2006 and 2017, Endo sold two different formulations of

Opana ER.  Endo sold the original version of Opana ER from 2006 until May 2012 (hereafter,

"Original Opana ER").  *Id.* at 8–10.  Endo sold Original Opana ER in 5 mg, 7.5 mg, 10 mg, 15

mg, 20 mg, 30 mg, and 40 mg dosage strengths. *Id.* at 8.  In 2010, Endo applied for approval of

reformulated version of Opana designed to be crush-resistant to deter a form of abuse by which

abusers were crushing and snorting the tablet to override the extended-release mechanism

(hereafter, "Reformulated Opana ER").  *Id.* at 9; Ex. 5, October 26, 2018 30(b)(6) Deposition of

Brian Lortie 230:12-19 ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████.  In late 2011, the FDA granted approval, and from early 2012 to 2017, Endo sold

Reformulated Opana ER.  Ex. 4 (FDA "Regulatory History of Opana ER") at 10; *see also* Ex. 6

(FDA "Oxymorphone (marketed as Opana ER) Information").[1]

---

[1]     Both products were sold as "Opana ER," but the terms "Original Opana ER" and "Reformulated Opana ER" are used for clarity throughout Defendants' briefing to refer to Endo's two formulations of Opana ER.  Where the distinction is relevant, corresponding generic versions of Opana ER are referred to as "Generic Original Opana ER" and "Generic Reformulated Opana ER."

## V.    ENDO-IMPAX D.N.J. PATENT LITIGATION

### A.    The '456 and '933 Patents

12.    U.S. Patent No. 5,662,933 (the '933 patent) issued on September 2, 1997.  *See* Ex. 7 ('933 patent).  U.S. Patent No. 5,958,456 (the '456 patent) issued on September 28, 1999.  *See* Ex. 8 ('456 patent).  Both patents were later assigned to Penwest Pharmaceuticals Co., who thereafter exclusively licensed them to Endo.  *See* Ex. 9 (Final Pretrial Order) at 7, 14.  Endo listed both the '933 patent and the '456 patent in the FDA Orange Book in October 2007.  *Id.* at 8.  The '933 and '456 patents each expired on September 9, 2013.  *See* Ex. 10 (Historic Opana ER Orange Book Entry) at 78.

13.    Broadly speaking, the '933 patent and '456 patents claimed innovations related to gel matrix-based controlled release delivery systems that allow oral tablets to release the active ingredient over an extended period of time, and thereby reduce the frequency with which a patient has to take the medication (*e.g.*, to enable once or twice daily dosing, rather than dosing every 4 or 6 hours).  *See* Ex. 11 (Endo Trial Brief) at 1–2.

### B.    Endo-Impax Patent Litigation Involving '456 and '933 Patents

14.    In 2007, Impax filed Abbreviated New Drug Application ("ANDA") 79-087 seeking FDA approval to market certain strengths of generic Original Opana ER prior to the expiration of Endos' patents.  *See* Ex. 9 (Final Pretrial Order) at 9.  Impax included with its ANDA a Paragraph IV certification claiming that the '933 patent and '456 patent were invalid, unenforceable, or would not be infringed by the manufacture, use, or sale of Impax's generic Original Opana ER product.  *Id.*  Impax was the first ANDA filer with a Paragraph IV certification on the 5mg, 10mg, 20mg, 30mg, and 40mg strengths of Opana ER, but not the first to file on the 7.5mg and 15mg strengths of Opana ER (Actavis was first to file for those strengths).  *See* Ex. 12, May 11, 2018 Deposition of Ted Smolenski 51:13-19; Ex. 13, April 25, 2018 Deposition of David

Myers 79:25–80:12. For the five strengths where Impax was the first filer, Impax was entitled to 180 days of marketing exclusivity, meaning the FDA would not grant final approval to other companies' ANDAs for Opana ER in those strengths prior to expiration of that exclusivity period. *See* Ex. 14, December 20, 2018 30(b)(6) Deposition of Margaret Snowden at 101:2–102:1; Ex. 15, June 14, 2018 Deposition of Todd Engle 54:8–55:1; *see also* 21 U.S.C. § 355(j)(5)(B)(iv) and 21 U.S.C. § 355(j)(5)(D).

15.     Endo asserted the '933 and '456 patents against Impax's generic Original Opana ER product in a number of cases in the U.S. District Court for the District of New Jersey (the "Patent Litigation"), the first of which was filed in November 2007. Ex. 16 (Complaint).[2] That litigation triggered a 30-month stay of the FDA's power to approve Impax's ANDA. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

16.     Impax contended during the Patent Litigation that its generic Original Opana ER Product did not infringe the asserted claims of the '933 and '456 patents and that those claims were invalid. *See* Ex. 17 (Impax Trial Brief) at 1.

17.     Prior to trial against Impax, the court issued a *Markman* claim construction order. *See* Ex. 18 (*Markman* Order); Ex. 19 (Amended *Markman* Order). The court adopted the claim constructions for "hydrophobic material" and "sustained release" proposed by Endo. Ex. 20, March 25, 2019 Expert Report of Glen P. Belvis [hereafter "Belvis Rep."] ¶¶ 115-17, 119-21. Among other things, the court construed the term "hydrophobic material" to mean "a material which is effective to slow the hydration of the gelling agent without disrupting the hydrophilic matrix" and the term a "sustained release" to mean that "the active medicament is released at a

---

[2]     The cases were originally filed in U.S. District Court for the District of Delaware, but were subsequently transferred to the District of New Jersey. *See* Ex. 9 (Final Pretrial Order) at 9–10 (recounting procedural history).

controlled rate such that therapeutically beneficial blood levels of the medicament are maintained over a period of at least 12 hours." *See* Ex. 19 (Amended *Markman* Order) at 3; *see also* Ex. 21 (*Markman* Opinion Transcript) at 10-20, 29–55.

18.     Following the *Markman* ruling, the Patent Litigation proceeded to trial. The court issued a pretrial order describing the disputed facts, issues, witnesses and evidence to be tried. *See* Ex. 9 (Final Pretrial Order) at 101-04, 106, 111. After more than two years of vigorously litigating the case, Endo and Impax commenced trial on June 3, 2010. *See* ECF No. 244, No. 09-0831 (D.N.J.) (minute entry reflecting trial proceedings held on June 3, 2010). The parties settled the case during the second day of trial. *See* ECF No. 247, No. 09-cv-0831 (D.N.J.) (minute entry reflecting trial proceedings held on June 7, 2010); Belvis Rep. ¶ 102. Endo and Impax executed a Settlement and License Agreement on June 8, 2010. *See* Ex. 22 (SLA).

19.     In addition to filing patent litigation against Impax, Endo also brought patent suits asserting the '933 and/or '456 patents against other manufacturers that sought to market generic Original Opana ER. Specifically, Endo sued Barr/Teva (Case Nos. 09-cv-838, 09-cv-3224), Watson (Case No. 10-cv-1242), Actavis (Case Nos. 08-cv-1563, 08-cv-3482), Sandoz (Case Nos. 09-cv-836, 09-cv-839), and Roxane (Case Nos. 10-cv-534, 10-cv-1964) on one or both of the '933 and '456 patents. Endo settled each of those lawsuits. *See* Ex. 23 (Endo's February 20, 2009 Settlement Agreement with Actavis); Ex. 24 (Endo's April 13, 2010 Settlement Agreement with Barr/Teva); Ex. 40 (Endo's June 7, 2010 Settlement Agreement with Sandoz); Ex. 25 (Endo's October 4, 2010 Settlement Agreement with Watson); Ex. 26 (Endo's May 4, 2011 Settlement Agreement with Roxane).

C.    **The Endo-Impax Settlement and License Agreement (SLA)**

    1.    ***Terms of the SLA***

20.    On June 8, 2010, Endo and Impax entered into the Endo-Impax Settlement and License Agreement ("SLA") settling the Patent Litigation. *See* Ex. 22 (SLA). The SLA granted Impax a license to sell its generic version of Original Opana ER (for all strengths except 7.5mg and 15mg) beginning on January 1, 2013, or earlier upon one of two events: (i) a final federal court decision holding all asserted and adjudicated claims of the patents at issue to be invalid, unenforceable, or not infringed by a generic version of Opana ER; or (ii) the withdrawal of the patents at issue from the Orange Book. *See* Ex. 22 (SLA) § 1.1 (definition of "Commencement Date").[3]

21.    The SLA (Ex. 22) also provided that: (1) Endo would not market (or authorize a third-party to market) a generic version of Original Opana ER during Impax's 180-day exclusivity period (SLA § 4.1(c)); (2) Impax would pay Endo a 28.5% royalty on the net sales of Impax's generic Opana ER during its 180-day exclusivity period if Endo's sales in the last quarter before Impax's launch exceeded a certain threshold (SLA § 4.3); and (3) Endo would pay Impax an "Endo Credit" if the net sales of Original Opana ER in the last quarter before Impax's launch fell below 50 percent of the highest quarterly sales achieved by Original Opana ER in any quarter during the period between the settlement and Impax's entry (SLA § 4.4).[4]

---

[3]    The Endo-Actavis settlement agreement contained an entry date of July 15, 2011. *See* Ex. 23 (Endo-Actavis Settlement Agreement) § 1, definition of "Commencement Date." Actavis launched its 7.5 mg and 15 mg generic Opana ER products—for which it possessed first-to-file exclusivity—in July 2011. *See* Ex. 13, April 2018 Myers Dep. 16:13–17:3.

[4]    The day before Endo and Impax executed the Settlement and License Agreement, they entered into a Development and Co-Promotion Agreement for a Parkinson's product that Impax was developing. *See* Ex. 31 (Development and Co-Promotion Agreement).

22.     Section 4.1(a) of the SLA grants Impax a license both to the "Opana ER Patents" (including the '933 and '456 patents) and to "any patents and patent applications owned by Endo or Penwest . . . that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products . . . that are the subject of the Impax ANDA . . . ." *See* Ex. 22, (SLA) § 4.1.  The broad patent license and accompanying covenant not to sue (the "Broad License") ensured that Impax could launch its generic Opana ER product free from patent risk, so long as it remained in compliance with its obligations under the SLA.  *See* Ex. 27 June 21, 2018 Deposition of Art Koch 311:22-312:6; Ex. 28, August 1, 2018 Chris Mengler Deposition 183:12–184:11.

          2.     ***Negotiations over Impax's Entry Date***

             a)     **Endo and Impax Agreed Early in Negotiations to a 2013 Entry Date**

23.     Impax and Endo began the settlement discussions that resulted in the SLA in May 2010.  Ex. 29, December 19, 2018 Deposition of Margaret Snowden 131:13-18.  Impax's top priority in its settlement negotiations with Endo was ███████████████████████████ ████████████████████████████████.  *See* Ex. 28, August 2018 Mengler Dep. 244: 23-245:5 ██████████████████████████████████████ ████████████████████████  Ex. 30 (10/25/2017 Snowden FTC Trial Testimony) at 430:6-12.  ███████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

24.     On May 26, 2010, Endo sent the first term sheet to Impax regarding a potential settlement.  In the May 26 term sheet, Endo proposed a March 10, 2013 entry date.  *See* Ex. 32 (Term Sheet) at *479.  The same term sheet included a provision limiting Endo's ability to launch

an authorized generic version of Opana ER. *See id.* at *479–80; *see also* Ex. 14, December 20, 2018 Snowden 30(b)(6) Dep. 154:24–155:4 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .

25.     On May 27, 2010, Impax responded to Endo's May 26 term sheet, proposing what became the agreed-upon entry date of January 1, 2013, which was more than two months earlier than Endo's proposed entry date. *See* Ex. 33 (May 27, 2010 email from Mengler to Levin).  In other words, after Endo proposed limitations on its ability to launch an authorized generic version of Original Opana ER, the entry date moved earlier in time, not later.  In addition, Impax proposed the eventually agreed-upon January 2013 entry date before the parties had even raised, let alone negotiated, the terms of what became the "Endo Credit," and before they negotiated the terms of the DCA.[5]   The final agreed-upon entry date remained January 1, 2013 despite the later negotiations of the Endo Credit and the DCA.

26.     The first full-blown draft of the SLA, sent by Endo to Impax on June 4, 2010, likewise included an entry date of January 1, 2013. *See* Ex. 34 (Email from Donatiello to Snowden) at *954.  On June 5, 2010, Impax responded with comments on Endo's draft SLA, still proposing a January 1, 2013 entry date. *See* Ex. 35 (Email enclosing Impax's edits to draft SLA) at *056–57.  Subsequent negotiations by email on June 6, 2010 show that the parties remained firm on a January 1, 2013 entry date for Impax. *See, e.g.*, Ex. 36 (Email exchange between Koch and Levin regarding SLA terms); Ex. 37, September 20, 2018 Deposition of Alan Levin 276:21-

---

[5]     Although Endo had sent a term sheet for a DCA on May 26, the DCA that the parties eventually negotiated was a fundamentally different agreement than what Endo proposed on May 26.

25 ███████████████████████████████████████████████████████

███████████████████████████████████████.

> **b)** **Impax's Request for a 2011 Entry Date was Flatly Rejected**

27.     The evidence also shows that Endo consistently rejected a settlement in which Impax could enter before 2013.   Late in the settlement negotiations with Endo, Impax orally proposed ███████████████████.   *See* Ex. 29, December 19, 2018 Snowden Dep. 196:24–197:15.   Endo immediately and firmly refused the proposal on the same call in which it was offered.   *See id.* at 197:19–198:10, 213:5-12.   The parties did not discuss other terms of the SLA in that call because ███████████████████████████████████████  *See* Snowden December 20, 2018 30(b)(6) Dep. 147:10–148:9.

28.     █████████████████████████████████████

█████████████████████████████████████  *See* Ex. 28, August 2018

Mengler Dep. 327:19–328:8 ██████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████

29.     █████████████████████████████████████

*See* Ex. 28, August 2018 Mengler Dep. 329:5-9 ████████████████████

█████████████████████████████████████████████████████

███████████████████████████████  *See* Ex. 14, December 20, 2018

Snowden 30(b)(6) Dep.) at 137:18-21 ██████████████████████████████

██████████████████████████████████████████████.

        3.    ***Impax Negotiates the Broad License***

30.    ███████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████

31.    Endo's initial term sheet offered Impax a license only to current patents and any extensions thereof. *See* Ex. 32 (Initial SLA Term Sheet) at \*476, \*479–80 (defining "Opana ER Patents" to include then patents-in-suit but none of the later-issued patents). ███████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████



).

32.     Endo refused to include a Broad License in any settlement agreements with other generic ANDA filers, and those agreements granted only a license to the patents in suit (*i.e.*, the '456 and '933 patents) and other already-issued patents, but not a license to Endo's subsequently-acquired patents.

*See* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 42:13–43:1.

33.

Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 43:6-44:11.

---

[6]     The Sandoz settlement did not include a license to Endo's subsequently-acquired patents, but did include an option to license and pay Endo a royalty for the use of additional patents covering original Opana ER.

[7]     Both Roxane and Actavis later claimed that they had a license to Endo's subsequently-acquired patents, but the Federal Circuit disagreed. *See Endo Pharm. Inc. v. Actavis, Inc.*, 746 F.3d 1371 at 1380 (Fed. Cir. 2014).



34.     Impax launched its generic Original Opana ER product in January 2013.  *See* Ex. 15, June 2018 Engle Dep. 95:8-12.  By that point, Endo had acquired new patents covering Opana ER and had begun to enforce those patents against all other generic ANDA-filers, although Endo did not assert those patents against Impax's generic Original Opana ER because of the Broad License.  *See infra* Section VI.  Actavis did not launch its 5, 10, 20, 30, or 40 mg generic Opana ER products until September 2013, several months after the expiration of Impax's first-to-file exclusivity.  *See* Ex. 13, April 2018 Myers Dep. 22:11-21; 30:8-11,

## VI.     SUBSEQUENT PATENT LITIGATION

### A.     Endo Acquires Additional Patents Covering Original Opana ER and Reformulated Opana ER

35.     Following the execution of the Endo-Impax SLA, Endo either acquired or licensed a number of new patents covering Opana ER, including:

- **'122 Patent.**  On November 13, 2012, the U.S. Patent and Trademark Office (PTO) issued U.S. patent number 8,309,122 (the '122 patent) to Endo as assignee.  *See* Ex. 43 (the '122 patent).  The '122 patent expires on February 4, 2023.  *See* Ex. 44 (FDA Orange Book: Opana ER).

- **'216 Patent.**  On December 11, 2012, the PTO issued U.S. patent number 8,329,216 (the '216 patent) to Endo as assignee.  *See* Ex. 45 ('216 patent).  The '216 patent expires on February 4, 2023.  *See* Ex. 44 (FDA Orange Book: Opana ER).

- **'779 Patent.** On October 28, 2014, the PTO issued U.S. patent number 8,871,779 (the '779 patent) to Mallinckrodt. *See* Ex. 46 ('779 patent). Endo is the exclusive licensee of the '779 patent. *See Endo Pharm. Inc. v. Amneal Pharm., LLC*, 224 F. Supp. 3d 368, 384 (D. Del. 2016). The '779 patent expires on November 22, 2029. *See* Ex. 44 (FDA Orange Book: Opana ER).

B.    **Endo Successfully Asserts the '122 and '216 Patents in the SDNY Proceedings**

1.    *Endo Secures Injunctions in SDNY Proceedings*

36.    Following the issuance of the '122 and '216 patents, Endo filed a number of lawsuits in U.S. District Court for the Southern District of New York against all generic manufacturers who had filed ANDAs relating to either the original or reformulated versions of Opana ER (the "SDNY Proceedings"), specifically Amneal (No. 12-cv-8115); Sandoz (No. 12-cv-8318 & No. 13-cv-3287); Teva/Barr (No. 12-cv-8060 & No. 13-cv-3285); ThoRx (No. 12-cv-8317); Actavis (No. 12-cv-8985 & No. 13-cv-436); Par (No. 12-cv-9261 & No. 13-cv-3284); Impax (No. 13-cv-435); Mallinckrodt (No. 13-cv-3286); Roxane (13-cv-3288); Ranbaxy/Sun (No. 13-cv-4343 & No. 13-cv-8597).

37.    Endo settled its claims against Mallinckrodt in the SDNY Proceedings, ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. 47 (Agreement with Mallinckrodt); *see also* ECF No. 17, No. 13-cv-3286 (S.D.N.Y.) (Mallinckrodt dismissal). Endo also dismissed its claims as to those generic defendants that had withdrawn their ANDAs, converted their respective Paragraph IV certifications to a Paragraph III certification (meaning that they were no longer seeking FDA approval of their ANDA before Endo's patents expired), or which had otherwise committed not to enter before the expiration of Endo's patents. *See* ECF No. 114, 12-cv-8318 (S.D.N.Y.) (Sandoz dismissal, invovling Sandoz's ANDA to Reformulated Opana ER); ECF No. 27, No. 13-cv-8597 (S.D.N.Y.) (Sandoz dismissal, involving Sandoz's

ANDA to Original Opana ER); ECF No. 8, No. 13-cv-3285 (S.D.N.Y.) (Teva dismissal); ECF No. 93, No. 12-cv-9261 (S.D.N.Y.) (Par dismissal, involving Par's ANDA to Original Opana ER); ECF No. 65, No. 13-cv-3284 (S.D.N.Y.) (Par dismissal, involving Par's ANDA to Reformulated Opana ER); Ex. 51, August 29, 2019 Rebuttal Expert Report of Jonathan Singer [hereafter "Singer Rep."] ¶¶ 96-100, 239-41.

38. Endo proceeded to trial against all of the other remaining generic ANDA filers who continued to maintain their Paragraph IV certification (*i.e.*, who continued to seek FDA approval to launch their products prior to expiration of Endo's patents): Actavis/Watson (Original and Reformulated), Amneal (Reformulated), Roxane (Original), Sun Pharma (Original and Reformulated), Barr/Teva (Reformulated), ThoRx (Reformulated), and Impax (Reformulated) (the "SDNY defendants"). *See Endo Pharm. Inc. v. Amneal Pharm., LLC*, No. 12-8060, 2015 WL 9459823 (S.D.N.Y. Aug. 18, 2015); Ex. 51, Singer Rep. ¶¶ 101, 241.

39. In the SDNY Proceedings, Endo asserted the '122 and '216 patents against Impax with respect to the products described in in Impax's ANDA 204211 relating to Reformulated Opana ER (Impax's "Reformulated Opana ER Product"). *See* Ex. 48 (Impax SDNY Complaint), 13-cv-435 (S.D.N.Y). Endo did not, however, sue Impax for infringement of the '122 and '216 patents with regard to its Original ANDA Product because of the Broad License that Endo granted Impax in the SLA. *See* Ex. 49 (Complaint, *Endo Pharmaceuticals Inc. vs. Impax Laboratories, Inc.*, Case No. 16-2526 (D.N.J.)) at ¶ 52 ("But for the parties' compromise, Endo would have sued Impax in the New York Litigation with respect to [Impax's generic version of Original Opana ER] . . ."); Ex. 50 (Answer, *Endo Pharmaceuticals Inc. vs. Impax Laboratories, Inc.*, Case No. 16-2526 (D.N.J.)) at ¶ 52 ("Impax admits that but for the license contained in the [SLA], it is likely that Endo would have sued Impax in the [SDNY Proceedings] with respect to Impax's generic

version of [Original] Opana ER. "); *see also* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 46:18-24; 48:14-21; Ex. 51, Singer Rep. ¶¶ 239–40.

40.     In September 2013, while the SDNY Proceedings were pending, Actavis launched 5, 10, 20, 30 and 40 mg dosage strengths of its generic Original Opana ER product at-risk.  *See* Ex. 52, April 2018 Myers Dep. Exhibit 4 (September 2013 press release on Actavis launch).

41.     There was a five-week bench trial in the SDNY Proceedings in March-April 2015. Impax participated at trial with respect to its Reformulated Opana ER Product.  Following the trial, the court entered judgment finding that all but two (*i.e.*, 18 of 20) of the asserted claims of the '122 Patent and '216 patent were valid and infringed.  *See Endo Pharm. Inc. v. Amneal Pharm., LLC*, No. 12-cv-8060 (TPG), 2015 WL 9459823, at *65-66 (S.D.N.Y. Aug. 18, 2015).  In each case, the defendants were enjoined from selling their respective generic versions of Original Opana ER and/or Reformulated Opana ER until the expiration of the '122 and '216 patents in 2023.  *See id.*; *see also* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 45:19–49:5.  As part of its order, the Court also ordered Actavis to remove all dosage strengths of its generic Opana ER tablets from the market, and Actavis ultimately settled with Endo for $25 million in damages arising from these infringing sales.  *See* Ex. 53 (Endo 2017 10-K) at F-56; *see also* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 49:22–51:4.

42.     On April 29, 2016, the district court issued an Omnibus Opinion enjoining Actavis and certain other moving SDNY defendants from making or selling its generic products prior to expiration of the '122 and '216 patents, and again ordered Actavis to remove its products from the market.  *Endo Pharm. Inc. v. Amneal Pharm. Inc., LLC*, No. 12-cv-8060 (TPG), 2016 WL 1732751, at *11 (S.D.N.Y. April 29, 2016).

2.     *The SDNY Injunctions are Affirmed on Appeal*

43.     In May 2018, the U.S. Court of Appeals for the Federal Circuit affirmed the district court's finding that the '122 and '216 patents were valid and infringed by manufacturers of generic Original Opana ER and Reformulated Opana ER, and affirmed the injunctive relief issued by the district court.  *See Endo Pharm. Inc. v. Teva Pharm. USA, Inc.*, 731 F. App'x 962, 964 (Fed. Cir. 2018); *see also* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 49:6-14.  There was no motion for *en banc* review by the Federal Circuit, and there was no petition for a writ of certiorari to the Supreme Court of the United States.  As a result of the Federal Circuit decision, all of the generics that litigated the '122 and '216 patents to judgment are enjoined from making or selling their proposed generic Original and Reformulated Opana ER products until after those patents expire in 2023.  *See Endo*, 731 F. App'x at 975 (affirming district court's permanent injunction until expirations of '122 and '216 patents).

3.     *But-for the Broad License, Impax's Original Opana ER Product Would Have Been Enjoined in the SDNY Proceedings*

44.     But-for the Broad License, Impax's Original Opana ER Product would also have been enjoined by the court in the SDNY Proceedings for the same reasons that all of the other accused ANDA tablets (including Impax's Reformulated ANDA tablets) were found to infringe. *See* Ex. 51, Singer Rep. ¶¶ 240–54; Ex. 54, August 29, 2019 Rebuttal Expert Report of Reza Fassihi [hereafter "Fassihi Rep."] ¶¶ 198–203.

C.     **Endo Successfully Asserts the '779 Patent in the District of Delaware**

1.     *Endo Secures Injunctions in Delaware Proceedings*

45.     Following Endo's acquisition of an exclusive license to the '779 patent from Mallinckrodt, Endo and Mallinckrodt jointly filed separate lawsuits in U.S. District Court for the District of Delaware against each of the generic manufacturers who had filed ANDAs relating to

20

either Original Opana ER or Reformulated Opana ER and were continuing to seek FDA approval to sell their product prior to expiration of Endo's patents (the "Delaware Proceedings"). *See* Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 51:17-25. Specifically, in the District of Delaware Endo asserted the '779 patents against Actavis (No. 14-cv-1381), Amneal (No. 14-cv-1382); Impax (No. 14-cv-1383); ThoRx (No. 14-cv-1384); Par (No. 14-cv-1385); Sun (No. 14-cv-1386); Roxane (No. 14-cv-1387); Sandoz (14-cv-1388); and Teva/Barr (No. 14-cv-1389) (collectively, the "Delaware Defendants). Endo subsequently dismissed its claims against Sandoz and Par after they took certain actions ensuring that they would not enter prior to the expiration of the patents at issue in the Delaware Proceedings. *See* Ex. 51, Singer Rep. ¶¶ 104-17, 246-50; ECF No. 19, No. 14-cv-1388 (Sandoz dismissal); ECF No. 16, No. 14-1385 (Par dismissal).

46. As with the SDNY Proceedings, Endo only asserted the '779 patent against Impax's Reformulated Opana ER product. Endo did not assert that patent against Impax's Original Opana ER product because of the Broad License Impax received in the SLA. *See* Ex. 51, Singer Rep. ¶ 247; Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 52:11-21.

47. Actavis, Amneal, Impax, ThoRx, Sun, Roxane, and Teva/Barr stipulated that their respective formulations of generic Original Opana ER and Reformulated Opana ER met all of the limitations of claims 1-6 of the '779 patent, as did Impax with respect to its Reformulated ANDA Product. *See* Ex. 51, Singer Rep. ¶ 248; ECF No. 120, 14-cv-1381 (Actavis); ECF No. 110, 14-cv-1382 (Amneal); Ex. 55, ECF No. 116, 14-cv-1383 (Impax/ThoRx); ECF No. 95, 14-cv-1386 (Sun/Ranbaxy); ECF No. 88, 14-cv-1387 (Roxane); ECF No. 118, 14-cv-1389 (Teva/Barr). Because of those stipulations, the Delaware Proceedings primarily pertained to whether the patents-in-suit were valid and enforceable.

48.     Endo's suits against Teva/Barr, Amneal and Actavis proceeded to trial before the remaining defendants, as those defendants (Impax, ThoRx, Sun, and Roxane) entered into stipulations that the judgments with respect to the other defendants would be binding on them.  *See id.*

49.     Following a trial against Amneal and Barr/Teva in the Delaware Proceedings, the court entered final judgment in October 2016 finding all claims of the '779 patent valid and enforceable and enjoining those defendants from making or selling their generic products before the expiration of the '779 patent in November 2029.  *See* ECF No. 157, 14-cv-1382 (D. Del.) (Judgment against Amneal); ECF No. 203, 14-cv-1389 (D. Del.) (Judgment against Teva/Barr)..

50.     Following a subsequent trial against Actavis in the Delaware Proceedings, the court entered final judgment in August 2017 finding all claims of the '779 patent valid and enforceable and enjoining Actavis from making or selling its generic Opana ER product prior to expiration of the '779 patent in November 2029.  *See* ECF No. 234, 14-cv-1381 (D. Del.) (Judgment against Actavis); *see also Endo Pharm. Inc. v. Actavis Inc.*, No. 14-1381, 2017 WL 3731001 (D. Del. Aug. 30, 2017) (Trial Opinion).

51.     While the Delaware Proceedings were pending, Impax withdrew its ANDAs for its Reformulated ANDA Products, and accordingly, Endo's claims against Impax with respect to those products were dismissed, with Impax remaining bound by the rulings as to the validity of the '779 patent in Endo's suits against Teva/Barr, Amneal and Actavis.  *See* Exs. 56 and 57 (ECF Nos. 122, 123, 14-cv-1383) (D. Del. Impax dismissal).

2.     ***The Delaware Injunctions are Affirmed on Appeal***

52.     Amneal and Teva appealed the district court's decision regarding the validity of the '779 patent to the Federal Circuit.  Ultimately, Teva and Amneal voluntarily dismissed their appeals regarding the validity of the '779 patent, thereby leaving the district court's final judgment

22

of validity in place. *See* ECF No. 169, 14-cv-1382 (D. Del.) (Amneal); ECF No. 214, 14-cv-1389 (D. Del.) (Teva/Barr). Actavis also appealed the district court's decision regarding the validity of the '779 patent following trial in the case. On May 3, 2019, the Federal Circuit affirmed the judgment entered by the district court in the Actavis appeal with respect to the validity of the '779 patent. *See Endo Pharm. Inc. v. Actavis LLC*, 922 F.3d 1365 (Fed. Cir. 2019).

53. As a result of the Federal Circuit decision, all of the generics that litigated the '779 patent to judgment, or agreed to be bound by the results in such cases, are enjoined from making or selling their proposed generic Original and Reformulated Opana ER products until after the '779 patent expires in 2029. *See* ECF No. 246, 14-cv-1381 (D. Del.) (Actavis and Teva); ECF No. 173, 14-cv-1382 (D. Del.) (Amneal); ECF No. 103, 14-cv-1387 (D. Del.) (West-Ward and Hikma); ECF No. 218, 14-cv-1389 (D. Del.) (Teva/Barr); Ex. 41, September 2018 Donatiello 30(b)(6) Dep. 51:17-52:10.

### 3. *But-for the Broad License, Impax's Original Opana ER Product Would Have Been Enjoined in the Delaware Proceedings*

54. But-for the broad patent license, Impax's Original Opana ER Product would have been found to infringe the valid and enforceable '779 patent, just like the Original Opana ER products of all of the other Delaware Defendants. *See* Ex. 51, Singer Rep. ¶¶ 240–54; *see* Ex. 54, Fassihi Rep. ¶¶ 198–203. Impax also stipulated that its generic Reformulated Opana ER Product would have infringed the '779 patent. *See* Ex. 55 (Impax/ThoRx D. Del. Stipulation).

### D. Because of the Broad License and Subsequent Patent Litigation Described Above, Impax Is the Only Company Able to Lawfully Sell a Generic Version of Original Opana ER Prior to November 2029

55. Because of the SLA and the Broad License, Impax is the only company able to lawfully sell generic Original Opana ER prior to November 2029. That conclusion flows from the following undisputed facts outlined above.

56.    *First*, the SLA included a right that Impax could not have secured through continued litigation: the Broad License which granted rights to Impax not only with respect to the patents in suit, but also with respect to later-acquired patents covering Opana ER.  *See supra* ¶¶ 22, 30–32.  Impax was the ***only*** generic filer to obtain from Endo such a Broad License covering future patents.  *See supra* ¶¶ 33–34.

*Second,* Endo later acquired and successfully enforced additional patents covering Opana ER.  *See supra* ¶¶ 36–54.  If not for the Broad License in the SLA, Impax would have suffered the same fate (as it, in fact, did with respect to its Reformulated ANDA Product).  *See supra* ¶¶ 45, 54.  Instead, Impax—***and Impax alone***—has been able to lawfully sell generic Opana ER since January 2013.  *See supra* ¶¶ 20, 22.  No company other than Impax is currently able to sell a generic version of Opana ER until November 2029 (*i.e.*, when the '779 patent expires).  *See supra* ¶¶ 49–54.

Dated: April 15, 2020

*/s/ George G. Gordon*
George G. Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
Thomas J. Miller (admitted *pro hac vice*)
John P. McClam (admitted *pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
thomas.miller@dechert.com

Craig Falls (admitted *pro hac vice*)
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
craig.falls@dechert.com

Angela Liu
**DECHERT LLP**
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Tel.: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*Counsel for Defendants Endo Health Solutions
Inc., Endo Pharmaceuticals Inc., and
Penwest Pharmaceuticals Co.*

Respectfully submitted,

*/s/ Devora Allon*
Jay P. Lefkowitz, P.C. (admitted *pro hac vice*)
Devora W. Allon, P.C. (admitted *pro hac vice*)
Evelyn Blacklock (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
evelyn.blacklock@kirkland.com

James R.P. Hileman
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-7090
jhileman@kirkland.com

*Counsel for Defendant Impax Laboratories, Inc.*