# EXHIBIT 50

WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, New Jersey 07102
(973) 848-7676
James S. Richter
Keiyana B. Fordham

*Attorneys for Defendant and Counterclaimant*
*Impax Laboratories, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ENDO PHARMACEUTICALS INC., <br><br> Plaintiff, <br><br> v. <br><br><br> IMPAX LABORATORIES, INC., <br><br> Defendant. | Honorable Jose L. Linares, U.S.D.J. <br><br> Civil Action No.: 2:16-CV-2526-JLL-JAD <br><br> **IMPAX LABORATORIES, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT** |

Defendant, Impax Laboratories, Inc. ("Impax") by and through its counsel, answers the Amended Complaint of Plaintiff, Endo Pharmaceuticals, Inc. ("Endo"), as follows:

1.    Impax denies the allegations of paragraph 1.

2.    Impax admits that Plaintiff Endo is a Delaware Corporation headquartered in Malvern, Pennsylvania that is engaged in the research, development, sale and manufacturing of prescription pharmaceuticals. Impax denies the remaining allegations of paragraph 2.

3.    Impax admits that Impax is a Delaware Corporation headquartered in Hayward, California and is a pharmaceutical company engaged in the research, development, manufacture,

sale and marketing of generic and brand prescription pharmaceuticals for sale and use throughout the United States.  Impax further admits that it makes and sells oxymorphone hydrochloride tablets, approved by the FDA as generic to a version of OPANA® ER that was formerly made and distributed by Endo.

4.     Impax admits that Endo purports to bring this action for breach of contract and the implied duty of good faith and fair dealing under New Jersey common law.  Impax denies the remaining allegations of paragraph 4.

5.     Impax admits that Endo purports to bring this action for patent infringement under the patent laws of the United States and the Declaratory Judgment Act.  Impax denies the remaining allegations of paragraph 5.

6.     Impax admits that this Court has subject matter jurisdiction over the patent claims.  Impax denies the remaining allegations of paragraph 6.

7.     Impax admits that venue is proper in this District.  Impax denies the remaining allegations of paragraph 7.

8.     Impax admits that the Court has personal jurisdiction over Impax.  Impax denies the remaining allegations of paragraph 8.

9.     Paragraph 9 contains legal conclusions regarding the New Drug Application process to the FDA to which no response is required.

10.     Paragraph 10 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

11.     Paragraph 11 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

12.     Paragraph 12 contains legal conclusions regarding the Abbreviated New Drug Application process to the FDA to which no response is required.

13.     Impax admits that on June 22, 2006 the FDA approved Endo's NDA No. 21-610 for OPANA® ER.  Further answering, Impax states that NDA No. 21-610 and any communication by the FDA approving that application speak for themselves.  Impax denies the remaining allegations of paragraph 13.

14.     Impax admits the allegations of paragraph 14.

15.     Impax admits that the FDA determined that the Original OPANA® ER tablets were safe and effective when used properly and according to the indications on their label. Impax denies the remaining allegations of paragraph 15.

16.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 16, and therefore denies the same.

17.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 17, and therefore denies the same.

18.     Impax admits that Endo submitted NDA No. 201655 for OPANA® ER CRF on July 7, 2010 and that the FDA approved that NDA on December 9, 2011.  Impax denies the remaining allegations of paragraph 18.

19.     Impax lacks knowledge or information sufficient to admit or deny the allegations of paragraph 19, and therefore denies the same.

20.     Impax admits the allegations of paragraph 20.

21.     Impax admits the allegations of paragraph 21.

22.     Impax admits that there was prior litigation regarding Impax ANDA No. 79-087 that was pending in the District of Delaware and the District of New Jersey and states that the

dockets in those proceedings speak for themselves. Impax denies the remaining allegations of paragraph 22.

23.     Impax admits the allegations of paragraph 23.

24.     Impax admits the allegations of paragraph 24. Further answering, Impax avers that the Stipulation of Dismissal and Order only incorporates select terms of the Settlement and License Agreement.

25.     Impax admits that Endo has sued other generics for infringement of the '933 patent and/or '456 patent and has reached settlements in those actions. Impax lacks knowledge or information sufficient to admit or deny whether Endo threatened suit against other generics and therefore denies the same. Impax denies the remaining allegations of paragraph 25.

26.     Impax admits the allegations of paragraph 26. Further answering, Impax avers that the contingent royalty never became due.

27.     Impax admits that at the time of trial and settlement in June 2010 the parties were aware of Endo's pending patent applications and that, if issued, such patents could be argued to cover Impax's generic version of Opana ER and would remain in effect until at least 2023. Impax denies the remaining allegations of paragraph 27.

28.     Impax denies the allegations of paragraph 28.

29.     Impax denies that it was aware of the alleged fact that the right to seek license fees for patents issuing on pending applications was a highly material term of Endo's settlement with Impax. Impax lacks knowledge or information sufficient to admit or deny the allegations regarding prior settlement negotiations between Endo and other third party generic pharmaceutical companies and/or whether the right to assert or seek license fees for pending

applications was a highly material term in Endo's settlements with other generics, and therefore denies the same. Impax denies the remaining allegations of paragraph 29.

30.    Impax admits that certain patent applications pending at the time of the June 2010 settlement resulted in the issuance of certain patents. Impax lacks knowledge or information sufficient to admit or deny allegations regarding the proceedings between the PTO and the Board of Patent Appeals, and therefore denies the same. Impax denies the remaining allegations of paragraph 30.

31.    Impax denies the allegations of paragraph 31.

32.    Impax denies the allegations of paragraph 32.

33.    Impax denies the allegations of paragraph 33.

34.    Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 34.

35.    Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 35.

36.    Impax avers that the Settlement and License Agreement speaks for itself. Impax denies the remaining allegations of paragraph 36.

37.    Impax denies the allegations of paragraph 37.

38.    Impax admits that Endo is listed as the assignee on the face of the '122 Patent, and that November 13, 2012 is listed as the date of patent issuance. Impax admits that Application No. 11/680,432 is listed on the face of the '122 Patent, and February 28, 2007 is listed as the filed date. Impax admits that the '122 Patent is attached as Exhibit B to Plaintiff's Amended Complaint. Impax denies the remaining allegations of paragraph 38.

39.     Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and therefore denies the same.

40.     Impax admits that Endo is listed as the assignee on the face of the '216 Patent, and that December 11, 2012 is listed as the date of patent issuance.  Impax admits that Application No. 11/427,438 is listed on the face of the '216 Patent, and June 29, 2006 is listed as the filed date.  Impax admits that the '216 Patent is attached as Exhibit C to Plaintiff's Amended Complaint.  Impax denies the remaining allegations of paragraph 40.

41.     Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and therefore denies the same.

42.      Endo's claim for alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016.  Accordingly, no response to paragraph 42 is required. To the extent an Answer is required, Impax admits that Endo is listed as the assignee on the face of the '737 Patent, and that August 19, 2014 is listed as the date of patent issuance.  Impax admits that Application No. 12/716,973 is listed on the face of the '737 Patent, and March 3, 2010 is listed as the filed date.  Impax admits that the '737 Patent is attached as Exhibit D to Plaintiff's Amended Complaint.   Impax denies the remaining allegations of paragraph 42.

43.      Endo's claim for alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016.  Accordingly, no response to paragraph 43 is required. To the extent an Answer is required, Impax lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 and therefore denies the same.

44. Impax admits that since January 2013 Impax has sold its generic oxymorphone ER product while Endo has sold its OPANA® ER CRF product. Impax lacks knowledge or information sufficient to admit or deny whether its product has a "much lower breaking strength" relative to Endo's product and therefore denies the same. Impax denies all remaining allegations of paragraph 44.

45. Impax admits that in 2012 it filed ANDA No. 20-4211 with the FDA, and developed the product described in that ANDA. Impax denies all remaining allegations of paragraph 45.

46. Impax admits that the OPANA® ER CRF litigation against Impax and other generic manufacturers was tried in April and May 2015 before the Honorable Thomas P. Griesa in the Southern District of New York. Impax denies that Endo filed suit against Impax in United States District Court for the Southern District of New York asserting that its generic version of OPANA® ER infringed or would infringe the '122 and '216 patents. Impax further answers that Impax has a license under the June 2010 Settlement and License Agreement to these patents with respect to its generic version of OPANA® ER. Impax denies the remaining allegations of paragraph 46.

47. Impax admits that various proceedings in the New York Litigation occurred and the record in that matter speaks for itself. Impax further answers that it has appealed from the order and decision dated August 14, 2015 that was issued in the New York Litigation to the U.S. Court of Appeals for the Federal Circuit, and that its appeal is pending.

48. Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself. Further answering, Impax avers that it has appealed this decision and may be

permitted to challenge the validity of the '122 and '216 Patents if its appeal is granted. Impax denies the remaining allegations of paragraph 48.

49.     Impax admits that it has a license to future issued patents with respect to its generic version of OPANA® ER. Impax further admits that Endo did not sue Impax for infringement of the '122 or '216 Patents as part of the New York Litigation with respect to Impax's Generic Oxymorphone ER Tablets. Impax denies the remaining allegations of paragraph 49.

50.     Impax admits that the record in the New York Litigation speaks for itself. Impax denies the remaining allegations of Paragraph 50.

51.     Impax denies the allegations of paragraph 51.

52.     Impax admits that but for the license contained in the Settlement Agreement, it is likely that Endo would have sued Impax in the New York litigation with respect to Impax's generic version of Opana ER. Impax admits that it was free to launch its generic version of Opana ER. Impax denies the remaining allegations of paragraph 52.

53.     Impax denies the allegations of paragraph 53.

54.     Impax denies the allegations of paragraph 54.

55.     Impax denies the allegations of paragraph 55.

56.     Impax denies the allegations of paragraph 56. Further answering, Impax avers that it indicated to Endo that negotiations for a contract amendment require a proposed exchange of consideration and that, were Impax to give up its royalty free license under the parties' agreement, Endo must offer some consideration flowing to Impax in return.

57.     Impax admits that Endo sent an email to Impax on April 19, 2016, which email speaks for itself. Impax denies the remaining allegations of paragraph 57.

58.     Impax denies the allegations of paragraph 58.  Further answering, Impax avers that Endo filed suit only two weeks after its April 19, 2016 correspondence on May 4, 2016, before Impax had the opportunity to respond to that correspondence.  Impax further answers that after the lawsuit was filed, Endo and Impax exchanged letters on October 31, November 2, November 4, and November 15, 2016 regarding continued negotiations.

59.     Impax denies the allegations of paragraph 59.

60.     Impax denies the allegations of paragraph 60.

61.     Impax denies the allegations of paragraph 61.

62.     Impax denies the allegations of paragraph 62.

63.     Impax denies the allegations of paragraph 63.

## AS TO THE FIRST COUNT
### (Breach of Contract)

64.     Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 63 as if fully set forth herein.

65.     Impax denies the allegations of paragraph 65.

66.     Impax denies the allegations of paragraph 66.

67.     Impax denies the allegations of paragraph 67.

68.     Impax denies the allegations of paragraph 68.

69.     Impax denies the allegations of paragraph 69.

## AS TO THE SECOND COUNT
### (Breach of Implied Duty of Good Faith and Fair Dealing)

70.     Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 69 as if fully set forth herein.

71.     Impax denies the allegations of paragraph 71.

72. Impax denies the allegations of paragraph 72.

73. Impax denies the allegations of paragraph 73.

74. Impax denies the allegations of paragraph 74.

75. Impax denies the allegations of paragraph 75.

76. Impax denies the allegations of paragraph 76.

77. Impax denies the allegations of paragraph 77.

78. Impax denies the allegations of paragraph 78.

79. Impax denies the allegations of paragraph 79.

## AS TO THE THIRD COUNT
### (Infringement of '122 Patent)

80. Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 79 as if fully set forth herein.

81. Impax admits that it became aware of the Complaint in the New York Litigation asserting the '122 patent on or about January 18, 2013. Further answering, Impax avers that it has a license to the '122 Patent. Impax denies the remaining allegations of paragraph 81.

82. Impax denies the allegations of paragraph 82. Further answering, Impax avers that it has a license to the '122 Patent. Impax further states that it does not understand the term "Generic non-Oxymorphone ER Tablets."

83. Impax denies the allegations of paragraph 83. Further answering, Impax avers that it has a license to the '122 Patent.

84. Impax denies the allegations of paragraph 84. Further answering, Impax avers that it has a license to the '122 Patent.

85.     Impax admits that it sells and will continue to sell Generic Oxymorphone ER tablets in the United States. Impax denies any infringement. Further answering, Impax avers that it has a license to the '122 Patent.

86.     Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself. Impax states that it has appealed this decision. Impax denies the remaining allegations of paragraph 86. Further answering, Impax avers that it has a license to the '122 Patent.

87.     Impax admits that Endo has covenanted not to sue Impax for infringement of the '122 patent in regard to its Generic Oxymorphone ER tablets. Impax denies that this covenant not to sue is found at Section 4.1(c) of the Settlement and License Agreement. Impax denies all remaining allegations of paragraph 87. Impax further states that Endo's covenant not to sue Impax remains in full force and effect.

88.     Impax denies the allegations of paragraph 88.

### AS TO THE FOURTH COUNT
### (Infringement of '216 Patent)

89.     Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 88 as if fully set forth herein.

90.     Impax admits that it became aware of the Complaint in the New York Litigation asserting the '216 patent on or about January 18, 2013. Further answering, Impax avers that it has a license to the '216 Patent. Impax denies the remaining allegations of paragraph 90.

91.     Impax admits that the Impax Generic Oxymorphone ER Tablets are covered by the '216 patent. Impax denies the remaining allegations of paragraph 91. Further answering, Impax avers that it has a license to the '216 Patent.

92.     Impax denies the allegations of paragraph 92.  Further answering, Impax avers that it has a license to the '216 Patent.

93.     Impax denies the allegations of paragraph 93.  Further answering, Impax avers that it has a license to the '216 Patent.

94.     Impax admits that it sells and will continue to sell Generic Oxymorphone ER tablets in the United States.  Impax denies any infringement.  Further answering, Impax avers that it has a license to the '216 Patent.

95.     Impax admits that the court in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.*, 13-cv-435-TPG-GWG (S.D.N.Y.) issued a decision on August 14, 2015, which decision speaks for itself.  Impax states that it has appealed this decision.  Impax denies the remaining allegations of paragraph 95.  Further answering, Impax avers that it has a license to the '216 Patent.

96.     Impax admits that Endo has covenanted not to sue Impax for infringement of the '216 patent in regard to its Generic Oxymorphone ER tablets.  Impax denies that this covenant not to sue is found at Section 4.1(c) of the Settlement and License Agreement.  Impax denies all remaining allegations of paragraph 96.  Impax further states that Endo's covenant not to sue Impax remains in full force and effect.

97.     Impax denies the allegations of paragraph 97.

### AS TO THE FIFTH COUNT
### (Infringement of '737 Patent)

Count V of the Amended Complaint regarding alleged infringement of the '737 patent has been dismissed in its entirety by order of the Court entered October 25, 2016.  Accordingly, no response to paragraphs 98 through 106 of the Amended Complaint is required.

**AS TO THE SIXTH COUNT**
(**Unjust Enrichment**)

107.    Impax repeats and incorporates by reference each of its responses to paragraphs 1 through 97 as if fully set forth herein.

108.    Impax denies the allegations of paragraph 108.

109.    Impax denies the allegations of paragraph 109.

110.    Impax denies the allegations of paragraph 110.

111.    Impax denies the allegations of paragraph 111.

**AS TO THE PRAYER FOR RELIEF**

Impax denies that Endo is entitled to any relief from the Court.  Impax further states that Endo should take nothing by reason of its complaint and award attorneys' fees, costs and expenses against Endo.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Impax has a license to the '122 and '216 Patents and therefore Endo's Amended Complaint fails to state a claim for infringement of those patents and Impax cannot be liable for patent infringement as a matter of law.

**SECOND AFFIRMATIVE DEFENSE**

The Amended Complaint fails to state any claim upon which relief can be granted.

**THIRD AFFIRMATIVE DEFENSE**

The Amended Complaint fails to state a claim upon which an award of attorney's fees and/or costs can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo breached or failed to perform its obligations under the Settlement and License Agreement.

### FIFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of laches.

### SEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrines of equitable and/or judicial estoppel.

### EIGHTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of ratification.

### NINTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of acquiescence.

### TENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, under the doctrine of unjust enrichment.

### ELEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of unclean hands.

### TWELFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the doctrine of privilege.

### THIRTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo violated the duty of good faith and fair dealing under New Jersey law.

### FOURTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part because the contract provision on which Endo relies is so vague and/or indefinite that it is not enforceable.

### FIFTEENTH AFFIRMATIVE DEFENSE

Impax acted at all pertinent times in good faith and without bad faith, malice or intent to injure Endo.

### SIXTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by the parol evidence rule and/or the doctrine of merger.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the provisions of the Settlement and License Agreement upon which it relies are severable from the remaining terms of the Settlement and License Agreement.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Impax was legally justified in its actions.

### NINETEENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, due to Endo's anticipatory breaches of contract.

### TWENTIETH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the alleged breach by Impax was not material.

### TWENTY FIRST AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo did not provide proper notice of breach.

### TWENTY SECOND AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Impax has fully performed all obligations that it owes under the Settlement and License Agreement.

### TWENTY THIRD AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, by Endo's prevention and frustration of performance under the Settlement and License Agreement.

### TWENTY FOURTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo by its conduct and by this action seeks to unfairly compete in the market, to improperly extend a patent monopoly and to restrain trade.

### TWENTY FIFTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, as contrary to public policy.

### TWENTY SIXTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because Endo has not suffered any cognizable injury, harm, or loss.

### TWENTY SEVENTH AFFIRMATIVE DEFENSE

Endo's claims are barred, in whole or in part, because the damages allegedly suffered by Endo are speculative.

### TWENTY EIGHTH AFFIRMATIVE DEFENSE

Endo is barred from recovering damages from Impax by reason of its failure to mitigate damages.

## TWENTY NINTH AFFIRMATIVE DEFENSE

Any damages allegedly suffered by Endo resulted from the breach of contract or other legal duty owed by Endo.

## THIRTIETH AFFIRMATIVE DEFENSE

Any damages suffered by Endo for alleged breach of a contractual agreement to negotiate are limited to the reasonable amount expended by Endo in unsuccessful negotiations.

## THIRTY FIRST AFFIRMATIVE DEFENSE

Any alleged damages suffered by Endo were not caused in fact or proximately caused by the alleged conduct of Impax.

## THIRTY SECOND AFFIRMATIVE DEFENSE

To the extent Endo seeks punitive or exemplary damages, the Amended Complaint violates Impax's right to due process under the Fifth and Fourteenth Amendments of the United States Constitution and the right to protection against excessive fines under the Eighth Amendment of the United States Constitution.

## THIRTY THIRD AFFIRMATIVE DEFENSE

Impax has a royalty free license to the '122 and '216 Patents and therefore cannot infringe these patents. Endo, however, now contends that such license has been terminated. Impax has asserted a counterclaim for declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated. Nevertheless, if and to the extent that the Court later determines the License has been validly terminated by Endo, Impax alleges that the claims of the '122 and '216 Patents are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112, and that the manufacture, use, sale, offer for sale, and/or importation

into the United States of the products described in Impax's ANDA would not infringe any claim of the '122 and '216 Patents that is determined to be valid.

## <u>RESERVATION OF RIGHTS</u>

Impax has insufficient information available upon which to form a belief as to whether it has available additional, as yet unstated, affirmative defenses.  Impax specifically reserves all affirmative or other defenses as may become available or appear upon further developments in this case.

## IMPAX LABORATORIES, INC.'S COUNTERCLAIMS
## FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

Defendant and Counterclaimant Impax Laboratories, Inc. ("Impax") brings the following counterclaims against Plaintiff and Counterclaim-Respondent Endo Pharmaceuticals Inc. ("Endo"):

## NATURE OF THE ACTION

1.      This is an action by Impax for: (1) declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated; and (2) for breach of Endo's covenant not to sue Impax under the express terms of the Settlement and License Agreement.

## PARTIES

2.      Defendant and Counterclaimant Impax is a Delaware corporation headquartered in Hayward, California.  Impax develops, manufactures and distributes both generic and brand-name prescription drugs.  Since January 2013, Impax has manufactured and sold the pain medication Oxymorphone Hydrochloride Extended Release Tablet (the "Impax ER Tablet"), a generic version of the branded drug "OPANA® ER."

3.      Plaintiff and Counterclaim-Respondent Endo is a Delaware corporation headquartered in Malvern, Pennsylvania.  Endo previously manufactured and sold OPANA® ER, but, beginning in February 2012, replaced it with a "harder, reformulated" version that Endo refers to as "OPANA® ER CRF."  Since May 2012, Endo has sold only the version it refers to as OPANA® ER CRF and ceased the manufacture or sale of OPANA® ER.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Impax's counterclaim for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.  This Court has subject matter jurisdiction over Impax's counterclaim for breach of contract pursuant to 28 U.S.C. § 1367 because this counterclaim is compulsory in nature and arises out of the same transaction or occurrence as Endo's claims.

5.      This Court has personal jurisdiction over Endo, which initiated this lawsuit in this Court and submitted itself to the Court's jurisdiction.

6.      Venue is proper in the District of New Jersey because a substantial part of the events giving rise to these counterclaims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### SETTLEMENT OF THE PARTIES' PRIOR PATENT LITIGATION

7.      This action concerns the Settlement and License Agreement, dated June 8, 2010, that resolved and disposed of a patent trial in this Court involving Impax, Endo, and Penwest Pharmaceuticals, Co. ("Penwest").[1]  A true and correct copy of the Settlement and License Agreement will be filed under seal with an accompanying motion to seal.  A true and correct redacted copy of the Settlement and License Agreement as filed with the U.S. Securities and Exchange Commission is attached as **Exhibit A**.

8.      Before a pharmaceutical company can market a generic form of prescription drug, it must submit and receive approval of an Abbreviated New Drug Application ("ANDA") from the U.S. Food and Drug Administration ("FDA").  If approved, the applicant may then bring the

---

[1] Endo subsequently merged with Penwest in August 2010.  Endo and Penwest are collectively referred to as "Endo."

generic medication to market, thereby increasing competition and lowering the prices paid for that prescription medication by patients, insurance companies, and healthcare providers.

9.     In June 2007, Impax submitted ANDA No. 79-087 to the FDA seeking approval to manufacture and sell a generic version of OPANA® ER.  Impax was the "first-to-file" an ANDA relating to OPANA® ER for multiple strengths of the generic pain medication which together represented approximately 80-90% of the potential market.

10.     In November 2007, Endo sued Impax for patent infringement in connection with Impax's filing of ANDA No. 79-087.  Impax asserted counterclaims for declaratory judgment of non-infringement and invalidity of the asserted patents.

11.     The suit was originally filed in the United States District Court for the District of Delaware but was subsequently transferred in February 2009 to this Court and assigned to the Honorable Katharine S. Hayden, Case No. 09–cv–831.

12.     The Court scheduled a bench trial of Endo's claims and Impax's counterclaims to take place on the following days:  June 3; June 8-11; and June 17, 2010.  The trial of Endo's claims and Impax's counterclaims began as scheduled on June 3, 2010.

13.     In the long weekend between Thursday, June 3 and Monday, June 7, 2010, while the trial stood in recess, the parties negotiated the terms of the settlement of Endo's claims and Impax's counterclaims.

14.     On June 8, 2010, the parties executed the Settlement and License Agreement.  By that agreement, Endo granted Impax a royalty-free license to intellectual property that it owned (the then-issued patents and then-pending applications) and a covenant not to sue on any other patent it could conceivably enforce against Impax and/or its suppliers, distributors, wholesalers or customers with respect to Impax's generic to OPANA® ER.

15. This agreement provided Impax with the certainty it negotiated – complete freedom from a patent infringement lawsuit by Endo upon the license effective date. The license granted to Impax was expressly royalty-free regarding all patents, whether or not such patents existed at that time or later issued from pending applications.

16. Section 4.1(a) of the Settlement and License Agreement grants to Impax: "a non-transferable (except in accordance with Section 9.6), non-sublicenseable and royalty-free (except as set forth in <u>Section 4.3</u>) license (the "<u>License</u>"), under the Opana® ER Patents, any continuations, continuations in part, or divisionals thereof, and any patents and patent applications owned by Endo or Penwest (or their respective Affiliates) to the extent that Endo and/or Penwest has the right to grant a sublicense to such patents and applications that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA (the issued patents being the "<u>Existing Patents</u>" and the patent applications (and any patents issued thereunder) being the "<u>Pending Applications</u>" and the Existing Patents and Pending Applications being collectively the "<u>Licensed Patents</u>"), during the License Term, to make, have made, offer to sell, sell, have sold, market, distribute, import and use the Impax Products solely in or for the Territory."

17. This broad, non-exclusive and royalty-free license gave Impax the freedom to operate in the market for its Impax ER Tablet after the license effective date of January 1, 2013. Impax bargained for the ability to market its product without paying any royalties to Endo regardless of whether or not other patents issued that might cover the Impax ER Tablet. In the absence of such freedom to operate, Impax would not have entered into the Settlement and License Agreement.

18. The sole exception to the royalty-free license of Section 4.1(a) is found at Section 4.3 which imposed a royalty during the exclusivity period that was contingent upon certain specifically-defined events that never occurred.

19. Section 4.1(b) of the Settlement and License Agreement states that Endo and Penwest "will not sue or assert any claim against, or otherwise participate in any action or proceeding against Impax or its Affiliates or their successors and permitted assigns or any of Impax's suppliers, distributors, wholesalers or customers (collectively, the "Impax Parties"), or cause or authorize any person or entity to do any of the foregoing, in each case claiming or otherwise asserting that the manufacture, use, sale, offer for sale, importation, marketing or distribution of Impax Products in or for the Territory on or after the applicable Commencement Date [...] by or on behalf of Impax, infringes the Licensed Patents or any patents or patent applications licensed to Endo or Penwest (or their respective affiliates) that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA, so long as Impax is in compliance with the terms of this Agreement (the "Covenant Not to Sue")."

20. In addition to the royalty-free License, the Covenant Not to Sue gave Impax further assurance of its freedom to operate in the market for its Impax ER Tablet after January 1, 2013. The Covenant Not to Sue applied to all Licensed Patents (including then-existing and future patents issuing from then-pending applications) and also to patents or patent applications licensed to Endo that covered or could potentially cover the Impax ER Tablet.

21. Section 4.1(d) of the Settlement and License Agreement is a severable mutual commitment that provides that: "Impax, Endo and Penwest each agrees to negotiate in good

faith an amendment to the terms of the License to any patents which issue from any Pending Applications for the time period following the Exclusivity Period."

22.     Section 8.2 of the Settlement and License Agreement states the conditions under which the agreement can be terminated:  "Endo and Penwest each may terminate this Agreement upon written notice effective immediately if (i) Impax or any of its Affiliates breaches the first sentence of Section 3.2, (ii) Impax or any of its Affiliates challenges the validity or enforceability of the Licensed Patents with respect to any product that is the subject of the Impax ANDA, or the infringement of the Licensed Patents by any product that is the subject of the Impax ANDA, or if Impax or any of its Affiliates participates in or supports, directly or indirectly, any such challenges with respect to any Opana® ER Generic Product by any Third Party, except Impax shall be permitted to maintain the Paragraph IV Certifications contained in the Impax ANDA, or (iii) Impax or any of its Affiliates makes, has made, uses, offers for sale, sells or imports in the Territory, directly or indirectly, any Opana® ER Generic Product or assists or authorizes any Third Party to do any of the foregoing prior to the Commencement Date, subject to Impax' allowed pre-Commencement Date activities outlined in Section 3.2 and except for any such activities relating to products that are the subject of the Impax ANDA that were engaged in by Impax or its Affiliates prior to the Effective Date and that would have given rise to a claim of infringement of the Licensed Patents..."

23.     Thus, the Settlement and License Agreement may only be terminated if Impax enters the market before the Commencement Date or challenges, directly or indirectly, the validity or enforceability of the patents with respect to the product that is the subject of the Impax ANDA.

24.     On June 14, 2010, the FDA approved Impax's ANDA No. 79-087. This final approval followed the FDA's tentative approval on May 13, 2010.

25.     On June 15, 2010, Judge Hayden dismissed the prior patent litigation with prejudice.

### EVENTS FOLLOWING THE JUNE 2010 SETTLEMENT

26.     Patent applications that were pending at the time of the Impax and Endo's June 2010 settlement were later granted by the U.S. Patent and Trademark Office. To the extent that these patents cover, or could be claimed to cover, the Impax ER Tablet, these patents are "Pending Applications" licensed to Impax under Section 4.1(a) of the Settlement and License Agreement.

27.     On November 13, 2012, U.S. Patent No. 8,309,122 ("the '122 Patent") issued from U.S. Application No. 11/680,432 filed on February 28, 2007.

28.     Endo knew no later than November 2012 that the '122 Patent had issued. In the weeks and months following the issuance of the '122 Patent in November 2012, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under the 2010 Settlement and License Agreement. In fact, Endo did not first raise the issue until 2015.

29.     On December 11, 2012, U.S. Patent No. 8,329,216 ("the '216 Patent") issued from U.S. Application No. 11/427,438 filed on June 29, 2006.

30.     Endo knew no later than December 2012 that the '216 Patent had issued. In the weeks and months following the issuance of the '216 Patent in December 2012, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under

the 2010 Settlement and License Agreement.  In fact, Endo did not first raise this issue until 2015.

31.     On or around January 1, 2013, Impax started marketing the Impax ER Tablet.

32.     Prior to Impax's launch in January 2013, the preconditions set forth by Section 4.3 of the Settlement and License Agreement did not occur and thus that section's contingent royalty was not triggered.  Therefore, Endo does not now and has never claimed an entitlement to payment of royalties under Section 4.3.

33.     In and around November 2012, Endo brought suit against Impax and several other generic manufacturers in the Southern District of New York regarding ANDAs for generics to OPANA® ER CRF.  Endo also sued certain other generics—but not Impax—for infringement of the '122 and '216 Patents as covering those companies' generics to OPANA® ER.  Endo did not sue Impax on the '122 and '216 Patents regarding the Impax ER Tablet because Impax's product was licensed under the Settlement and License Agreement.

34.     On August 19, 2014, U.S. Patent No. 8,808,737 ("the '737 Patent") issued from U.S. Application No. 12/716,973 filed on March 3, 2010.

35.     Endo knew no later than August 2014 that the '737 Patent had issued.  In the weeks and months following the issuance of the '737 Patent, Endo did not approach Impax to negotiate an amendment to the terms of the License granted to Impax under the 2010 Settlement and License Agreement.  In fact, Endo did not first raise this issue until 2015.

### IMPAX'S GOOD FAITH NEGOTIATIONS

36.     Impax has at all relevant times fully performed all of its obligations as required by the Settlement and License Agreement.  Specifically, Impax dismissed its patent counterclaims against Endo, Impax did not enter the market prior to its license effective date of January 1,

2013, and Impax has not challenged the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA.

37.     In January 2015, having obtained all of the benefits of the Settlement and License Agreement including the dismissal of Impax's challenges to the validity of Endo's patents and avoided any further such challenges for the remaining life of the patents by Impax, Endo first invoked Section 4.1(d) and proposed that negotiations take place.  The issue was discussed on a phone call between Endo and Impax.  Impax expressed its willingness to consider any modification of the deal that provided consideration to Impax.  Impax stated that modifying the deal to resolve then-pending litigation in the Southern District of New York involving Impax's ANDA for an additional product—the generic to OPANA ER® CRF—seemed to be the most obvious way to structure a deal that benefitted both Endo and Impax.  In addition, Impax was open to considering other alternatives from Endo but stated that the only unacceptable concept was one where Impax received no consideration at all in exchange for modifying its royalty-free license.

38.     Endo fell silent and did not seek to resume negotiations for over eight months between January and October 2015.

39.     On August 14, 2015, the Honorable Thomas P. Griesa, U.S. District Judge for the Southern District of New York, entered an order in *Endo Pharmaceuticals Inc. v. Impax Laboratories, Inc.* (S.D.N.Y., Civ. No. 13-435-TPG-GWG) which Endo would later cite for the proposition that generic competition to its OPANA® products had been enjoined.  An appeal from that order is currently pending before the U.S. Court of Appeals for the Federal Circuit.

40.     On October 1, 2015, Endo sent Impax a "term sheet" for the payment of royalties on Impax's royalty-free license.   A true and correct copy of Endo's correspondence dated October 1, 2015 is attached hereto as **Exhibit B**.

41.     In its October 1, 2015 proposal, Endo proposed that it would capture 85% of Impax's profits on the Impax ER Tablet going back to mid-2013 and require Impax to pay an 85% royalty on future profits.   This amount was more than three times greater than the contingent royalty set out in Section 4.3 of the Settlement and License Agreement for sales during the Exclusivity Period.   Endo offered no consideration whatsoever in exchange for this demand for a royalty payment.   Nor did Endo explain how its position, that Impax now owed royalties, could be consistent with the express royalty-free license of Section 4.1(a) which applied to "Pending Applications."   Endo admitted in its term sheet that the '122, '216 and '737 Patents were Pending Applications under the Settlement and License Agreement.   While Endo labeled this term sheet as a "confidential settlement communication" under Federal Rule of Evidence 408, that document is fully admissible in this case because it forms the basis of Endo's claims against Impax and was not an offer to compromise a disputed claim but rather a demand letter offering no consideration to Impax.

42.     On October 16, 2015, Impax responded to Endo.   A true and correct copy of Impax's correspondence dated October 16, 2015 is attached hereto as **Exhibit C**.

43.     In its October 16, 2015 response, Impax first corrected Endo's false statement that Section 4.1(d) requires the parties to "to negotiate a license fee."   That language never appears in Section 4.1(d) or anywhere else in the Settlement and License Agreement and such an interpretation of Section 4.1(d)'s actual language directly contravenes the royalty-free license granted by Section 4.1(a).   Second, Impax noted that the draft amendment proposed by Endo was

one-sided, only benefitting Endo to the detriment of Impax.  Third, Impax offered to continue discussions and negotiations over a mutually beneficial proposal, stating that if Endo had a mutually beneficial proposal, Impax "stand[s] ready to discuss and consider those terms.  Let us know if you intend to make such a proposal and, if so, some times that would be convenient to discuss them."

44.    On October 20, 2015, Endo responded to Impax.  A true and correct copy of Endo's correspondence dated October 20, 2015 is attached hereto as **Exhibit D**.

45.    In its October 20, 2015 correspondence, Endo again failed to offer any consideration to Impax in return for Endo's proposal that Impax give up its royalty-free license.  Endo contended that the injunction granted in the Southern District of New York Litigation regarding a different product—the proposed Impax generic to OPANA® ER CRF—somehow "would apply with equal force to the Impax non-CRF tablets that are subject of the License."  Therefore Endo said that a negotiation of a royalty would be mutually-beneficial in that Impax "will be allowed to continue to sell its infringing tablets."  This statement was false.  The sale of the Impax ER Tablet did not and could not infringe the '122, '216 and '737 Patents because the Impax product was licensed under the Endo patents.

46.    On November 2, 2015, Impax responded.  A true and correct copy of Impax's correspondence dated November 2, 2015 is attached hereto as **Exhibit E**.

47.    In its November 2, 2015 response, Impax again stated that it was willing to negotiate a mutually beneficial amendment.  Impax corrected Endo's false assertion that Impax was infringing: "Contrary to Endo's recent characterization, Impax's product is not 'infringing;' it is licensed."  In light of Section 4.1(a)'s royalty-free license, Impax stated that Section 4.1(d) does not invite a negotiation for Endo to take back the royalty-free license.  First, if Section

4.1(d) were intended to require the good faith negotiation of royalties, it would have said so. Second, the language granting the license in Section 4.1(a) would have stated that the license is royalty-free except as provided by Section 4.3 *and 4.1(d)*. It does not. As an example of a negotiation that would involve consideration to both sides, Impax again said that, in exchange for its payment of a royalty, Endo could agree to grant Impax rights to market a generic version of OPANA® ER CRF.

48.    Endo did not respond to Impax's proposal for over five months.

49.    On April 19, 2016, after five months of silence, Endo wrote to Impax to again insist upon a royalty while offering nothing in return. A true and correct copy of Endo's correspondence dated April 19, 2016 is attached hereto as **Exhibit F**.

50.    In its April 19, 2016 correspondence, Endo acknowledged that "this matter has been outstanding for some time." Endo also acknowledged Impax's counteroffer—that the amended terms of the License include rights to an additional product—which Endo characterized as "spurious." Thus rejecting Impax's counteroffer to negotiate a reasonable royalty on Section 4.1(a)'s royalty-free license in exchange for rights to market a generic form of OPANA® ER CRF, Endo made no counter-offer but only reasserted that the only term subject to negotiation was a royalty to Endo on a royalty-free license.

51.    Notwithstanding its prior five month silence on the issue, Endo did not await a response from Impax to its April 19 correspondence. Instead, on May 4, 2016, fifteen days after writing to Impax, Endo cut off negotiations and filed its complaint against Impax in this Court.

52.    On October 31, 2016, Endo wrote again to Impax. A true and correct copy of Endo's correspondence dated October 31, 2016 is attached hereto as **Exhibit G**.

53.     In its October 31, 2016 correspondence, Endo stated: "Endo hereby provides notice to Impax that the Agreement is terminated, effective immediately." Prior to this letter, Endo had not threatened termination of the Settlement and License Agreement in any communication to Impax and had not sought this relief in any judicial proceeding. The purported termination was made in bad faith in a further attempt to extract a royalty from Impax. Once more, Endo did not offer any consideration to Impax in exchange for the payment of royalties on a royalty-free license, nor did Endo suggest that the parties resume discussions regarding a mutually beneficial amendment.

54.     Endo's stated grounds for its attempted termination of the Settlement and License Agreement was Impax's alleged failure to negotiate in good faith under Section 4.1(d) of the Settlement and License Agreement.

55.     On November 2, 2016, Impax responded to Endo by a letter from its outside trial counsel. A true and correct copy of that correspondence dated November 2, 2016 is attached hereto as **Exhibit H**.

56.     Impax's attorney's November 2, 2016 correspondence first corrected Endo's false statements regarding the purported negotiating history of the Settlement and License Agreement in June 2010. Impax closed with yet another invitation to negotiate in good faith: "if you wish to have a meaningful dialogue regarding these issues rather than send Impax threatening letters or file frivolous pleadings, Impax is happy to meet with you to discuss them."

57.     On November 4, 2016, Endo responded to Impax. A true and correct copy of that correspondence dated November 4, 2016 is attached hereto as **Exhibit I**.

58.     In its November 4, 2016 correspondence, Endo repeated its version of the facts and summary of its positions. Once more, Endo again refused to negotiate in good faith with

Impax.  Endo placed a precondition on its involvement any further negotiation; that Impax first offer a royalty rate on its royalty-free license:  "please advise what royalty rate Impax is willing to pay for the non-CRF product.  If it looks like there are grounds for a discussion, we would be happy to set up a meeting promptly."

59.     On November 15, 2016, Impax responded to Endo by a letter from its outside trial counsel.  A true and correct copy of that correspondence dated November 14, 2016 is attached hereto as **Exhibit J**.

60.     In its November 15, 2016 correspondence, Impax closed with another invitation to negotiate in good faith:  "Impax is happy to discuss reasonable business terms with you and simply awaits your willingness to talk."

61.     On November 17, 2016, Endo responded to Impax.  A true and correct copy of that correspondence dated November 17, 2016 is attached hereto as **Exhibit K**.

62.     In its November 17, 2016 correspondence, Endo refused to meet or discuss with Impax any potential negotiation unless and until Impax first proposed that it would pay a royalty acceptable to Endo:  "we need a proposal from Impax specifying what royalty rate it is willing to pay for its infringing tablets.  Once we receive that, if it looks like there are grounds for a discussion, we would be very happy to schedule an opportunity for the two companies to talk further."

## COUNT I
### (For Declaratory Judgment)

63.     Impax hereby repeats and incorporates the allegations of paragraphs 1 through 62 above as though fully set forth herein.

64.     The Settlement and License Agreement dated June 8, 2010 is a valid and enforceable agreement between Endo and Impax.

65. Pursuant to Section 4.1(a) of the Settlement and License Agreement, Endo granted Impax a royalty-free license to patents that covered or could cover the product described in the Impax ANDA, which license included a license under the Pending Applications.

66. Pursuant to the License granted by Section 4.1(a) of the Settlement and License Agreement, Impax has a royalty-free license to the '122, '216 and '737 Patents; each of these patents was a "Pending Application" as that term is defined by Section 4.1(a).

67. Impax has at all relevant times performed all of its obligations under the Settlement and License Agreement including under Section 4.1(d). Since January 2015, when Endo first initiated discussions invoking that section, Impax has been willing to negotiate a mutually beneficial amendment to the terms of the Settlement and License Agreement. In good faith negotiations with Endo in January 2015, October 2015, November 2015, and November 2016, Impax expressed its willingness to negotiate an amendment to the terms of the license agreement.

68. Section 8.2 of the Settlement and License Agreement clearly identifies the provisions for which a breach would be deemed sufficiently material to warrant termination of the contract: if Impax entered the market before the Commencement Date or challenged, directly or indirectly, the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA. An alleged breach of Section 4.1(d), an entirely severable provision of the Settlement and License Agreement, is not among the breaches identified as a basis for termination. Having accepted all of the material benefits of the Settlement and License Agreement, Endo cannot terminate the agreement based on Impax's alleged failure to perform under Section 4.1(d).

69.     Impax did not enter the market with its Oxymorphone Hydrochloride Extended Release Tablet prior to its license effective date of January 1, 2013.

70.     Impax has not directly or indirectly challenged the validity or enforceability of the patents with respect to the products that are subject of the Impax ANDA.

71.     An actual, immediate and substantial controversy exists between Impax and Endo regarding the continued effectiveness of the license contained in the Settlement Agreement.  By the Settlement and License Agreement, Endo granted Impax a license to patents and applications that cover or could potentially cover the manufacture, use, sale, offer for sale, importation, marketing or distribution of products (or any components thereof) that are the subject of the Impax ANDA.  Endo has now purported to terminate that license by its correspondence dated October 31, 2016.  Impax disputes that its license has been terminated because Impax has fully performed all material terms of the Settlement and License Agreement.  This real controversy warrants the issuance of declaratory judgment.

72.     Impax is entitled to a declaratory judgment that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated.

## COUNT II
### (Breach of Contract – Covenant Not To Sue)

73.     Impax hereby repeats and incorporates the allegations of paragraphs 1 through 72 above as though fully set forth herein.

74.     At Section 4.1(b) of the Settlement and License Agreement, Endo covenanted not to sue Impax for patent infringement regarding all Licensed Patents.

75.     Licensed Patents has the meaning set forth in Section 4.1(a) which includes any patents that later issued from "Pending Applications" at the time of the Settlement and License

Agreement in June 2010. Therefore Endo covenanted not to sue Impax for infringement regarding the '122, '216 and '737 Patents.

76.     In its complaint filed May 4, 2016 and amended complaint filed August 1, 2016, Endo sued Impax for infringement of the '122, '216 and '737 Patents. In doing so, Endo materially breached Section 4.1(b) of the Settlement and License Agreement.

77.     Impax has been damaged by Endo's breaches, including damages incurred in the defense of Endo's meritless claims against Impax and Impax's prosecution of these counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Impax respectfully requests the following relief:

A.     A declaration by this Court that the License granted to Impax by the Settlement and License Agreement dated June 8, 2010 is valid, in existence now and at all times relevant to this dispute, and has not been terminated;

B.     An award of compensatory damages according to proof arising out of Endo's breaches of the Settlement and License Agreement;

C.     For an award of attorneys' fees and costs incurred;

D.     For such further and other relief as the Court deems just and proper.

WINSTON & STRAWN LLP
*Attorneys for Defendant and Counterclaimant*
*Impax Laboratories, Inc.*

By: ___*s/ Keiyana B. Fordham*_____
       Keiyana B. Fordham
       kfordham@winston.com

Dated: November 22, 2016

**OF COUNSEL**
Timothy T. Scott
Geoffrey M. Ezgar
Samuel R. Diamant
KING & SPALDING LLP
601 South California Avenue, Suite 100
Palo Alto, California 94304
(650) 422-6700

Maureen L. Rurka
Kevin E. Warner
Kevin F. Wolff
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 AND 40.1

Pursuant to Local Civil Rules 11.2 and 40.1, Impax, by its undersigned counsel, certifies

that the matter in controversy is not the subject of any other action or proceeding.

*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com

Dated: November 22, 2016

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 201.1

Pursuant to Local Civil Rule 201.1, Impax, by its undersigned counsel, certifies that as a result of the nature of Plaintiff's causes of actions and Impax's causes of action, as asserted in its counterclaims, this action is not appropriate for compulsory arbitration.


*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com


Dated: November 22, 2016

**<u>CERTIFICATION OF SERVICE</u>**

I certify that on this 22nd day of November, 2016, the foregoing Answer, Affirmative Defenses, and Counterclaims were electronically filed and served upon counsel for Plaintiff and Counterclaim-Respondent by notice of electronic filing.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*s/ Keiyana B. Fordham*
Keiyana B. Fordham
kfordham@winston.com

Dated:  November 22, 2016