# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All Actions | |
| | **PUBLIC VERSION** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROPOSED TESTIMONY OF LUIS A. MOLINA

Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Penwest Pharmaceuticals Co. (collectively "Endo") and Impax Laboratories, Inc. ("Impax") submit this Memorandum of Law in support of Defendants' Motion to Exclude the Opinions and Proposed Testimony of Luis A. Molina pursuant to Federal Rule of Evidence 702 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## PRELIMINARY STATEMENT

This antitrust action involves Opana ER—both Original Opana ER, a long-acting opioid medication launched by Endo in 2006, and Reformulated Opana ER, which was designed to be crush resistant. In the actual world, Endo withdrew Original Opana ER from the market upon launching Reformulated Opana ER, and never launched an authorized generic ("AG") version of Original Opana ER. Plaintiffs' expert Luis A. Molina[1] opines that Endo would have made different decisions in Plaintiffs' assumed but-for world, in which Endo and Impax did not enter the challenged Settlement and License Agreement ("SLA"). He opines that, ███████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████—in direct contradiction to what it did in reality.

Mr. Molina's opinions should be excluded under the standards set forth by Rule 702 and *Daubert*. First, Mr. Molina neither has the necessary experience, nor has he done the necessary analysis, to opine regarding what a company in Endo's position would have been financially incentivized to do in Plaintiffs' but-for world. Second, Mr. Molina's testimony would not be helpful to the jury because his opinion consists of nothing but a bare recitation of record evidence

---

[1] Mr. Molina offers testimony on behalf of Direct Purchaser Plaintiffs, End Payor Plaintiffs, and Retailer Plaintiffs. *See* Molina Rep. ¶ 2 n.1.

1

that should be left for the jurors to evaluate. Third, Mr. Molina impermissibly speculates about Endo's subjective intent and motivations.

## BACKGROUND

Endo began developing Reformulated Opana ER in 2007 in response to concerns about opioid abuse and misuse in the United States. *See* Ex. 1, ENDO-OPANA-000009311, at *312. In July 2010, after more than three years of investment in research and development, Endo submitted a New Drug Application ("NDA") for Reformulated Opana ER to the United States Food and Drug Administration ("FDA"). *See* Ex. 2, EPI001691550. The FDA approved Reformulated Opana ER on December 9, 2011. *See* Ex. 3, END00315523. Reformulated Opana ER was approved for the same indication as Original Opana ER. *See* Ex. 4, EPI001312978.

Endo launched Reformulated Opana ER in March 2012—and at the same time, withdrew Original Opana ER from the market ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Endo did not sell Original Opana ER after launching its reformulated version. On May 31, 2012, Endo notified the FDA that it was formally discontinuing Original Opana ER for reasons of safety. *See* Ex. 7, EPI000027305.

On August 13, 2012, Endo filed a Citizen Petition asking the FDA to determine that Original Opana ER had been discontinued for safety reasons. *See* Ex. 1, ENDO-OPANA-00009311, at *324. Had the Citizen Petition succeeded—and it did not—no generic manufacturer (including Impax) would have been permitted to launch a generic version of Original Opana ER, and Endo's Reformulated Opana ER would have been the only extended release oxymorphone product on the market. *See id.*; Ex. 4, EPI001312978. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 8, EPI002267578. Pharmaceutical manufacturer Purdue

Pharma had successfully executed a Citizen Petition strategy when reformulating its own long-acting opioid, Oxycontin, in 2010. Ex. 9.

Endo never launched its own AG version of any Opana ER. . But Endo never did.

.

Endo was also free to launch an AG of Original Opana ER for the 7.5mg and 15mg dosage strengths at any time after Actavis launched its generic of those strengths in July 2011. Ex. 11, EPI0977725. But Endo never launched an AG of Original Opana ER in these or any other dosage strengths. *See id*. Contemporaneous documents show that the reason Endo chose not to launch an AG of *Original* Opana ER was *Id*.

Here, Plaintiffs allege that Endo would have made the *opposite* choices absent the SLA. According to Plaintiffs, Endo would have not only launched an AG version of Original Opana ER, but kept both that AG *and* its branded version of Original Opana ER on the market after launching Reformulated Opana ER. This assumption is a critical foundation for the models Plaintiffs' experts use to claim that they suffered damages as a result of the SLA. In support of this assumption, all three groups of Plaintiffs rely entirely on the proffered expert opinions of Mr. Molina, who offers the following four opinions:

x;

3



Ex. 12, March 25, 2019 Expert Report of Luis Molina [hereafter "Molina Rep."] ¶ 11.

As explained below, each of Mr. Molina's opinions should be excluded.

## ARGUMENT

**I.  LEGAL STANDARD**.

A trial court is obligated to serve as "gatekeeper, screening proposed expert testimony for relevance and reliability." *Ashtari v. GFS Marketplace, LLC*, No. 09-7746, 2011 WL 3348063, at *3 (N.D. Ill. Aug. 2, 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. Carmichael*, 526 U.S. 137, 147 (1993)). Rule 702 and *Daubert* govern this gatekeeping, and Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. When a court tests whether a proffered expert meets the requirements of Rule 702 and *Daubert*, the key considerations are "whether the expert is *qualified* in the relevant field,

4

and whether the ***reasoning or methodology is valid***." *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 319–20 (N.D. Ill. 2008) (citations omitted). The proponents of the expert evidence must show by a preponderance of the evidence that the expert meets the qualification requirements of Rule 702. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

"The admission of expert testimony from technical fields is governed by the same concerns and criteria as the admission of scientific expert testimony." *United States v. Brumley*, 217 F.3d 905, 911 (7th Cir. 2000) (citations omitted). While courts may apply flexible standards for experts who rely on their "extensive and specialized experience" in offering opinions, where an expert's testimony is based on his experience, the trial court must limit the expert's testimony to "only those areas in which the expert has extensive experience and training." *Miller UK Ltd. v. Caterpillar, Inc.*, No. 10-3770, 2015 WL 10818831, at *3 (N.D. Ill. Nov. 1, 2015) (internal citations and quotations omitted). And while a proper methodology may include *reliance* on experience, "[t]alking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919, 924 (7th Cir. 2000).

## II. MR. MOLINA'S OPINIONS 2 AND 4 SHOULD BE EXCLUDED BECAUSE HE IS NOT QUALIFIED TO OFFER SUCH OPINIONS AND APPLIED NO RELIABLE METHODOLOGY.

### A. Mr. Molina is not qualified to offer opinions about a company in "Endo's position."

To be qualified to testify under Rule 702, an expert witness must have "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire*, 526 U.S. at 156 (internal quotation marks omitted). "The question [to] ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation [to] answer a specific question." *Myers v. Ill. Cntr. R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010) (internal citations and quotations omitted). In other words, not all expertise is equal—it must be tailored to

5

the actual issues on which an expert seeks to opine. *See Ancho v. Pentek Corp.*, 157 F.3d 512, 518–19 (7th Cir. 1998) ("Just as a qualified and board certified heart surgeon does not possess sufficient knowledge of orthopaedic medicine to render an expert opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer such as [plaintiff's expert] lacks qualifications to give expert testimony about plant reconfiguration.").

"Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Bakov v. Consol. World Travel, Inc.*, No. 15-2980, 2019 WL 1294659, at *9, 10 (N.D. Ill. Mar. 21, 2019) (quoting *Carrol v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). For testimony to be admissible, the expert must have specialized knowledge—not just a general understanding—of the subject matter at hand. *See Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127, 1131–34 (N.D. Ill. 2014) (excluding expert with "impressive" pedigree who nonetheless lacked experience sufficiently related to his opinions); *see also Sports Arena Mgmt., Inc. v. K&K Ins. Grp., Inc.*, No. 06-6290, 2008 WL 4877452, at *2–3 (N.D. Ill. June 26, 2008) (excluding opinion from insurance claims expert testifying on underwriting practices because his "experience in the insurance industry was in claims, not underwriting"); *Vigortone AG Prod., Inc. v. PM AG Prod., Inc.*, No. 99-7049, 2004 WL 783075, at *2–4 (N.D. Ill. Jan. 15, 2004) (Leinenweber, J.) (excluding expert who lacked experience or training in subset of particular industry).[2]

---

[2] *See also Kingsbury v. U.S. Greenfiber, LLC.*, No. 08-151, 2013 WL 7018657, at *2 (C.D. Cal. Nov. 5, 2013) (excluding real estate agent with industry experience who had no specific experience with the particular disclosure at issue); *Previto v. Ryobi N. Am.*, 766 F. Supp. 2d 759, 765–66 (S.D. Miss. 2010) (excluding proposed expert who lacked relevant experience with the specific factual issues in the case); *Moltner v. Starbucks Coffee Co.*, No. 08-9257, 2009 WL 3573190 at *7 (S.D.N.Y. Oct. 23, 2009) *aff'd*, 624 F.3d 34 (2d Cir. 2010) (finding industry expert who had general experience in food service not qualified to testify regarding the standard of care

Mr. Molina contends that his *experience* qualifies him to offer expert opinions in this case. *See* Molina Rep. ¶¶ 4–6, 11; Ex. 13, June 11, 2019 Deposition of Luis Molina 59:5-61:4. But a comparison of Mr. Molina's *experience* with the *subject matter* of his Opinions 2 and 4—what decisions a rational company "in Endo's position" would make with respect to product launches and product discontinuations—reveals a sharp disconnect.

Put simply, Mr. Molina has no experience with, and has never been in, "Endo's position," which was unique in material ways. The factual record in this case is clear: (1) Endo spent years investing in developing a reformulated version of Opana ER that was designed to be crush resistant as a means of addressing "[m]ounting evidence of the public health crisis caused by abuse and misuse of prescription opioid pain relievers," Ex. 14, EPI000754087; (2) Endo simultaneously engaged in efforts to obtain DEA quota, FDA approval, and physician acceptance of Reformulated Opana ER, (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮ Any decisions by Endo regarding whether to launch an AG of Original Opana ER or to keep Original Opana ER on the market after launching Reformulated Opana ER would have been made in the context of these undisputed facts.

---

in the take-out coffee industry); *White v. Gerardot*, No. 05-382, 2008 WL 4238959, at *7 (N.D. Ind. Sept. 10, 2008) (finding that expert was not qualified to offer testimony regarding police procedure when his expertise was as a firearms examiner and forensic scientist); *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, No. 00-3235, 2003 WL 21108232, at *2–3 (S.D.N.Y. May 14, 2003) (witness with general expertise in the construction industry not qualified to testify regarding building codes and building deterioration); *Trumps v. Toastmaster, Inc.*, 969 F. Supp. 247, 251-52 (S.D.N.Y. 1997) (mechanical engineering expert not qualified to testify about electrical engineering where his research was not focused on electrical engineering specifically).

7

Mr. Molina, however, has never—not in his work at Pfizer, not in his work as a consultant—had experience with anything like these circumstances. He has never been involved in a reformulation of a product to address safety concerns. *See* Ex. 15, November 19, 2019 Deposition of Luis Molina 28:18-31:14. He has never been involved in any decision to launch an AG (or to continue to market a branded product) when any product, let alone an opioid product, has been reformulated for reasons of safety—nor can he even cite an "awareness" of such a situation happening in his experience. *Id.*[3] And Mr. Molina has never been involved in the filing—or even the consideration of *whether to file*—a Citizen Petition. *See id.* 45:5-46:13.[4] Indeed, no role Mr. Molina ever held would have positioned him to be involved in, or prepared him to make, such decisions.

But Endo's decisions with respect to Opana ER did not occur in a vacuum—they occurred in a very specific context. Mr. Molina, therefore, is without any expertise that would allow him to tell a jury what would have been "rational" for a company in Endo's position to do under the circumstances outline above.

---

[3] Nor was Mr. Molina ever actually involved in the decision to launch an AG following *any* product reformulation during his time at Pfizer; at best, he can cite "awareness" of Pfizer launching an AG for its "blockbuster antiepileptic drug" (the gabapentin product Neurontin) when also launching a follow-on product that was not a reformulation of the prior product (the pregabalin product Lyrica). Ex. 16, November 5, 2019 Rebuttal Report of Luis Molina [hereafter "Molina Rebuttal Rep."] Rep. ¶ 9. Mr. Molina was not, however, involved in making the decision to launch the Neurontin AG. *See* Nov. 2019 Molina Dep. 35:4 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Awareness is neither experience nor expertise.

[4] Mr. Molina's involvement with AGs was instead relegated to providing ▇▇▇ to the decision makers. *See* June 2019 Molina Dep. 167:21-173:21.

8

Accordingly, based on his lack of expertise alone, Mr. Molina's Opinions 2 and 4 should be excluded. Even if Mr. Molina had the requisite expertise, however, these opinions should be excluded because they are not the product of any valid, reliable methodology.

> **B.  Mr. Molina failed to apply a valid, reliable methodology in reaching Opinions 2 and 4**.

"Expertise is a *necessary* but *not a sufficient* condition of admissibility under Rule 702." *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (emphasis added). A qualified expert must still employ a reliable methodology to apply his or her specialized knowledge or skills to the analysis at hand. *See id*. Even if he were qualified to do so—and he is not—Mr. Molina has applied no reliable, testable analysis in forming his opinions. Mr. Molina claims his opinion is grounded in economics, but he identifies no economic analysis supporting these opinions, instead pointing only to his own "business acumen." Rule 702 and *Daubert* prohibit this *ipse dixit* opinion.

*Daubert* provides a framework for testing the reliability of an expert's methodology, including whether the expert's "'theory or technique . . . can be (and has been) tested,' whether it 'has been subjected to peer review and publication,' whether there is a high 'known or potential rate of error,' whether there are 'standards controlling the technique's operation,'" and whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *White v. Fin. Credit Corp.*, No. 99-4023, 2001 WL 1665386, at *2 (N.D. Ill. Dec. 27, 2001) (Leinenweber, J.) (quoting *Daubert,* 509 U.S. at 593-94). Ultimately, "[a]n expert's opinion must be reasoned and founded on data. It must also utilize the methods of the relevant discipline . . . ." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011); *see also Lang*, 217 F.3d at 924 ("[E]xperts' work is admissible only to the extent it is reasoned, uses methods of the discipline and is founded on data.").

9

By contrast, "[a] witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Reliance on "industry expertise," a "curriculum vitae" and related "intuition . . . won't do." *Id.* Such testimony amounts to nothing more than impermissible "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

Mr. Molina here opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Molina Rep. ¶¶ 90-94. According to Mr. Molina, the basis for his opinions is ▓▓▓▓▓▓▓▓ *See id.* ¶¶ 91; 92 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; Molina Rebuttal Rep. ¶¶ 12, 13. Specifically, he asserts that Endo's launch of Reformulated Opana ER ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ . . . ," Molina Rep. ¶ 92, and that Endo would have been ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to do so, *id.* ¶ 43. Mr. Molina further contends that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ¶¶ 20-21.

Mr. Molina, however, offers no ***analysis*** in support of his contentions. He makes no comparison of the economic benefits of Endo's real-world choices versus the benefits of the alternative path that Plaintiffs speculate Endo would have taken in the but-for world. He does not attempt to show that Endo's actual decisions would have been irrational in the but-for world, nor does he attempt to determine whether the decisions he claims Endo would have made in the but-

for world would have been more profitable than Endo's actual decisions. He opines that his proposed decisions are "more rational," but conducted no analysis to confirm this.

Indeed, Mr. Molina *admits* that he did not employ any analysis or methodology—in his words, he did not " ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████ June 2019 Molina Dep. 47:4-22; 48:18-49:6; *see also id.* 47:4-48:17; 290:20-291:18 (testifying that ███████████████████████████████████████.

Specifically:

- ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████

- ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

- ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

In short, Mr. Molina purports to offer opinions as to what it would be economically ████████ for Endo to do, but he has done no economic analysis in support of those opinions and has applied no methodology or analyses to test his assertions. The basis for his opinion can be summed up in his flippant assessment that, ███████████████████████████████

███████████████████████████████████████████████████████████████

11

June 2019 Molina Dep. 138:14-18. Indeed, Mr. Molina has no background nor training in economics that would allow him to engage in any more substantive economic analysis. *See* Molina Rep. Ex. A. Instead, Mr. Molina simply asks the Court and a jury to accept his subjective say-so, pointing only to his personal ███████████████████████████ as the methodology employed in reaching his opinions in this matter. *See* Nov. 2019 Molina Dep. 16:12-17-3. He simply concludes that from a ████████████ his opinions ████████ *Id.* 43:15-21.[5]

Ultimately, Mr. Molina offers nothing beyond the untestable "bottom line" opinions routinely excluded by courts. *See Mid–State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir.1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *see also Huey*, 165 F.3d at 1087; *White*, 2001 WL 1665386, at *3. Intoning "economics" with no supporting analysis is not the stuff of expert opinion. *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 993 (C.D. Cal. 2012) (excluding expert where he failed to conduct "*economic analysis* (be it quantitative or qualitative) tying [evidence] . . . to [his] ultimate conclusions."). An expert who "merely state[s] a fact and then provide[s] a conclusion, without providing any analysis as to how [they] reached such a conclusion" fails to satisfy Rule 702 and *Daubert*. *Dixon ex rel. Dixon v. Cook Cty.*, No. 09-6976, 2012 WL 4464460, at *3 (N.D. Ill. Sept. 25, 2012); *see also Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (excluding expert where "[expert] did not gather any data on the subject, survey the published literature, or do any of the other things that a genuine expert does before forming an

---

[5] Mr. Molina's conclusory recitation of documents in the record, *see, e.g.*, June 2019 Molina Dep. 69:13-17, Molina Rep. ¶ 92, is not an adequate substitute for analysis, as explained in Section III, *supra*. If anything, Mr. Molina's pure reliance on parroting documents selected by counsel serves to further emphasize the lack of any independent analysis supporting his opinions.

opinion[.]. . . [A]n expert's report that does nothing to substantiate this opinion is worthless, and therefore inadmissible.").

**III.    EACH OF MR. MOLINA'S FOUR OPINIONS FAIL BECAUSE HE MERELY RECITES DOCUMENTS UNDER THE GUISE OF EXPERT OPINION.**

Expert testimony that "simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge—taken on its own—is inadmissible." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-03587, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015) (internal quotations omitted); *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12-07528, 2014 WL 3558690, at *5 (N.D. Ill. July 17, 2014) (excluding expert who "simply reads and interprets documents"); *In re Lyondell Chemical Co.*, 558 B.R. 661, 667-68 (Bankr. S.D.N.Y. 2016) (excluding expert's factual narrative based on "cherry-picked examples from the discovery record"); *In re Traysol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1345-47 (S.D. Fla. 2010). Experts cannot usurp the role of the factfinder in interpreting evidence by providing "factual narratives and interpretations of conduct." *In re Rezulin Prods. Liability Litig.*, 309 F.Supp.2d 531, 549-51 (S.D.N.Y. 2004); *see also, e.g.*, *Aponte v. City of Chicago*, No. 09-CV-8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) (rejecting expert who "essentially summarize[d]" record evidence and "leap[t] to a conclusion that does not rely on specialized knowledge").

Each of Mr. Molina's four opinions run afoul of this principle. His "analysis" consists of offering his own narrative of the record, and speculating as to Endo's ▮▮▮▮▮▮▮▮" and ▮▮▮▮▮▮▮▮ based on his review of documents about which he has no personal knowledge. *See, e.g.*, Molina Rebuttal Rep. ¶¶ 11-12. For example, much of Mr. Molina's opinion that Endo was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ amounts to little more than narrating his own version of the record based on a selection of documents. *See, e.g.*, Molina Rep. ¶¶ 57-68. Similarly, Mr. Molina simply summarizes certain

13

documents in purporting to offer an opinion as to how the SLA impacted Endo's decision-making with respect to an AG launch. *Id.* ¶ 93-94. Finally, as explained above, Mr. Molina's review of documents cannot substitute for his failure to conduct any economic analysis in support of his opinions as to what it would be economically "rational" for Endo to do.

Such narrative is squarely outside the bounds of proper expert opinion, would not be helpful to the jury, and should be excluded.

### IV. MR. MOLINA SHOULD NOT BE PERMITTED TO OFFER OPINIONS REGARDING ENDO'S MOTIVATION AND INTENT.

Finally, this Court should exclude Mr. Molina's Opinions 2, 3, and 4—  —for an additional reason: They consist of speculation about Endo's motivations and intent and how they might have differed in the but-for world. Such speculation falls well outside the bounds of permissible expert testimony. *See Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 442 (E.D.N.Y. 2011) (explaining that expert testimony on "intent, motive, state of mind, or evidence by which such state of mind may be inferred" is inadmissible); *see also Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012); *Stanley v. Novartis Pharms. Corp.*, No. 11-3191, 2014 WL 12573393, at *3 (C.D. Cal. May 6, 2014); *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09-2227, 2015 WL 5003528, at *3 (S.D.N.Y. Aug. 20, 2015). Such testimony is inherently speculative. *See In re Flonase Antitrust Litig.*, 884 F. Supp. 2d 184, 193 (E.D. Pa. 2012); *Rezulin,* 309 F.Supp.2d at 545.

Ultimately, through Opinions 2-3, Mr. Molina seeks to tell a jury what Endo *would* have been motivated to do with Original and Reformulated Opana ER in Plaintiffs' but-for world without the SLA. *See* June 2019 Molina Dep. 286:12-287:11 (testifying as to █████ █████ Mr. Molina purports to opine as to what Endo █████ in launching

14

Reformulated Opana ER. *See id.* 210:8-211:7. And in opining that ███████████ ███████████████████████████████ Mr. Molina speaks to Endo's intent and claims that ███████████████████████████████████████ ███████████████████████████ *See* Molina Rebuttal Rep. ¶ 17; Nov. 2019 Molina Dep. 69:6-6 (characterizing ████████████████████████. Such attributions of Endo's motivation and intent infect each of Mr. Molina's Opinions 2, 3, and 4.

Along with his other shortcomings, Mr. Molina lacks expertise in mind-reading (and per his own admission is not an expert in Endo, *see* June 2019 Molina Dep. 60:7-15), and his attempt to ascribe motivation and intent to Endo's conduct is beyond the scope of permissible expert testimony. *See In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). Mr. Molina should be precluded from offering any testimony regarding Endo's intent or motivation or any testimony as to what Endo "would" have done in Plaintiffs' but-for world.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court exclude Mr. Molina's testimony.

15

Dated:  April 15, 2020

*/s/ George G. Gordon*
George G. Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
Thomas J. Miller (admitted *pro hac vice*)
John P. McClam (admitted *pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104
Tel.:  (215) 994 4000
Fax:  (215) 994-2222
george.gordon@dechert.com
thomas.miller@dechert.com

Craig Falls (admitted *pro hac vice*)
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.:  (202) 261-3300
Fax:  (202) 261-3333
craig.falls@dechert.com

Angela Liu
**DECHERT LLP**
35 West Wacker Drive, Suite 3400
Chicago, IL  60601
Tel.:  (312) 646-5800
Fax:  (312) 646-5858
angela.liu@dechert.com

*Counsel for Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co.*

Respectfully submitted,

*/s/ Devora Allon*
Jay P. Lefkowitz, P.C. (admitted *pro hac vice*)
Devora W. Allon, P.C. (admitted *pro hac vice*)
Evelyn Blacklock (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
evelyn.blacklock@kirkland.com

James R.P. Hileman
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-7090
jhileman@kirkland.com

*Counsel for Defendant Impax Laboratories, Inc.*