# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| *Walgreen Co., et al.* (15-cv-02563)<br>*Rite Aid Corporation, et al.* (15-cv-03579)<br>*CVS Pharmacy, Inc.* (16-cv-01832) | **PUBLIC VERSION** |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO PARTIALLY EXCLUDE
# OPINIONS AND PROPOSED TESTIMONY OF DR. KEITH LEFFLER

Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Penwest Pharmaceuticals Co. (collectively, "Endo") and Impax Laboratories, Inc. ("Impax," and together with Endo, "Defendants") submit this Reply Memorandum in further support of Defendants' Motion to Exclude Certain Opinions and Testimony of Dr. Keith Leffler (ECF No. 552) and accompanying Memorandum of Law (ECF No. 555, "Opening Br.").

## I. DR. LEFFLER'S ANALYSIS IS INCAPABLE OF PROVING RETAILER PLAINTIFFS' ALTERNATIVE SETTLEMENT THEORY.

Retailer Plaintiffs rely on Dr. Leffler to support their claim that, absent the challenged 2010 Settlement and License Agreement ("SLA"), Endo and Impax would have entered into a hypothetical "alternative settlement" that would have retained all of the competitive benefits of the SLA, including a license to Endo's later-acquired patents for Opana ER (the "Broad License"), while allowing Impax to begin selling generic Opana ER ▮▮▮▮▮▮▮▮▮▮ instead of January 1, 2013 pursuant to the SLA. Retailer Plaintiffs rely on this hypothetical scenario to claim antitrust injury and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In their Opposition (ECF No. 593, "Opp. Br."), however, Retailer Plaintiffs make a striking concession: they acknowledge that Dr. Leffler did not conduct any analysis to determine whether the hypothetical alternative settlement would have included the Broad License. *See* Opp. Br. at 4-5. Instead, he merely assumed the existence of the Broad License and relied on Retailer Plaintiffs to prove that this assumption is true. *See* Opp. Br. at 4-5. As discussed in Defendants' summary judgment briefing, however, Retailer Plaintiffs have no such proof.

Dr. Leffler further fails to offer a reliable basis for his purported opinion that Endo and Impax would have agreed ▮▮▮▮▮▮▮▮▮▮ generic entry date in a hypothetical alternative settlement. Dr. Leffler's model was not *designed* to identify the entry date that would have been

1

included in an alternative settlement and, even if it were, Dr. Leffler failed to *reliably calculate* such a date.

      **A.**      **There Is No Support for Dr. Leffler's Critical Assumption That a Hypothetical Alternative Settlement Would Contain a Broad License.**

Dr. Leffler's opinions about a hypothetical alternative settlement, his associated damages calculations, and even his merits opinions about the competitive effects of the SLA all require that the hypothetical alternative settlement contain *both* an earlier generic entry date *and* the Broad License.[1] Dr. Leffler offers no opinions about, and Retailer Plaintiffs offer no theory of injury based on, a hypothetical alternative settlement with an earlier generic entry date but no Broad License.

Dr. Leffler's alternative settlement opinions are thus relevant only if there is proof that the parties to the SLA would have entered into a hypothetical alternative settlement with an earlier generic entry date *and* a Broad License. In their Opposition, however, Retailer Plaintiffs concede that Dr. Leffler's inclusion of the Broad License is not based on any expert analysis. Rather, he merely *assumed* that a hypothetical alternative settlement would include the Broad License and left it to Retailer Plaintiffs to provide proof supporting that assumption. *See* Opp. Br. at 4-5. The problem is that neither Retailer Plaintiffs nor any other Plaintiffs have any such proof. *See* ECF 558, Defendants' Memorandum of Law in Support of Causation/Damages Motion for Summary Judgment, at 17-22; ECF 668, Defendants' Reply Brief in Support of Causation/Damages Motion for Summary Judgment, at 10; Opening Br. at 5-6. Dr. Leffler, therefore, has no support for an assumption essential to his alternative settlement opinions. For this reason alone, his opinions about an alternative settlement should be excluded.

---

[1]     *See, e.g.*, Ex. 1, Leffler Rebuttal Rep. ¶ 54. Exhibits 1 through 9 were filed with Defendants' Opening Brief.

**B.     Dr. Leffler's Analysis is Incapable of Proving that the Parties Would Have Selected July 15, 2011 as the Entry Date in an Alternative Settlement.**

In their Opposition, Retailer Plaintiffs claim that, through expert analysis, Dr. Leffler determined that ▮▮▮▮▮▮ would be the "most likely" generic entry date in an alternative settlement. Opp. Br. at 6. That mischaracterizes Dr. Leffler's work in this case. By his own admission, Dr. Leffler did *not* engage in any economic analysis to determine which generic entry date would have been included in Retailer Plaintiffs' hypothetical alternative settlement. Ex. 3, June 2019 Leffler Dep. 109:12-110:6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added)). Indeed, Dr. Leffler's analysis is not capable of showing that Endo and Impax would have agreed to an *earlier* entry date than the one in the SLA, much less the *specific* date ▮▮▮▮▮▮ on which Retailer Plaintiffs rely.

Instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* ECF No. 558-10, Guerin-Calvert Rep. ¶¶ 119–20.[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

Dr. Leffler's "process" for picking his "most likely" generic entry date is not grounded in economics and has no empirical basis. Instead, Retailer Plaintiffs argue that Dr. Leffler selected ▮▮▮▮▮▮▮▮ because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But Dr. Leffler can offer no analytical basis to choose this date over the actual date in the SLA or any other date that his model determines is more profitable than litigation for both parties.

In essence, Dr. Leffler selected an alternative date with *no analysis* and then ran it through a model designed to say "yes" to almost every question. This falls short of the scientific analysis required in the field of economics. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993) ("Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified . . . ." (internal marks and citation omitted)) (citing Hempel, Philosophy of Natural Science 49 (1966) ("[T]he statements constituting a scientific explanation must be capable of empirical test")); *see also id.* ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability" (quoting K. Popper, Conjectures and Refutations: The Growth of Scientific Knowledge 37 (5th ed. 1989))).

Retailer Plaintiffs attempt to dodge Dr. Leffler's lack of analysis by arguing that his testimony has been accepted by courts in *other cases*. *See* Opp. Br. at 2, 5, 7. However, Dr. Leffler's alternative settlement "analysis" here bears no relationship to the methodology he applied—and courts accepted—in *Loestrin*, *Solodyn*, and *Lidoderm*. In all of those cases, Dr. Leffler used an economic model to determine his alternative settlement date—an approach he did not use in this case. *See* Ex. 3, June 2019 Leffler Dep. 109:12-110:6.

In *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, Dr. Leffler evaluated the "expected profits from litigation as compared to that from a no-payment alternative settlement"

4

and through that *analysis* determined what "*range*" of potential generic entry dates would be acceptable to the parties in an alternative settlement. *See* No. 14-MD-02503, 2018 WL 563144, at *22 (D. Mass. Jan. 25, 2018). In *In re Loestrin 24 Fe Antitrust Litigation*, Dr. Leffler again used a model to determine the generic entry date—not to confirm a pre-selected date. 433 F. Supp. 3d 274, 325 (D.R.I. 2019). And in *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, Dr. Leffler used a model to identify a range of "entry dates by valuing the parties' expectation of profits from an early-entry only settlement as opposed to continued litigation . . . ." 296 F. Supp. 3d 1142, 1163, 1190 (N.D. Cal. 2017). In each of these cases Dr. Leffler used an economic model to determine a range of alleged alternative entry dates. He did no such thing here. Retailer Plaintiffs have not cited to, and Defendants are not aware of, a single case in which a court has accepted the pick-a-date-and-check-it methodology Dr. Leffler employs here.

In short, Dr. Leffler's methodology is flawed in its design, not based on an accepted methodology, and incapable of determining the "most likely" no-payment entry date in an alternative settlement. The Court should exclude Dr. Leffler's opinion that an alternative settlement would contain a ███████ generic entry date.

### C. Dr. Leffler's Alternative Settlement Calculations are Not Reliable.

Dr. Leffler's alternative-settlement opinions should be excluded for an independent reason: his modeling is so flawed that it fails *Daubert*'s reliability requirement.

#### 1. Fundamental errors prevent Dr. Leffler from reliably modeling Endo's expected profits from winning the litigation.

Retailer Plaintiffs admit that there are errors in Dr. Leffler's analysis, but argue that they are not a basis for exclusion because: (1) ███████████████████████████████
███████████████████████████████████████████████████████████████

5

███████████████; and (2) his errors are fodder for cross examination. Neither argument justifies allowing Dr. Leffler to present his unreliable analysis to a jury.

First, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████, ████████

████████████████████████████████████████████████████████

████████████████ These errors are not just differences in opinion on variable selection. They are foundational errors of the type that Dr. Leffler recognized in his December 2019 deposition, Ex. 4 at 57:20-62:1, and that Defendants described to the Court in their Opening Brief. *See* Opening Br. at 11.

Second, these errors should not be presented to a jury because they go to the heart of Dr. Leffler's opinion. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████ ██████████████████████████████████████████

---

3 ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████

4 ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

6



. Such a lack of ▓▓▓▓▓▓▓ goes directly to the question of reliability under Rule 702. And the value to the jury of being presented with admittedly erroneous expert calculations is low, and substantially outweighed by the risk of confusing or misleading the jury. *See* Fed. R. Evid. 403; *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (describing "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations").

### 2. Dr. Leffler's failure to model the impact of the Broad License on the parties' expected profits makes his opinion unreliable.

Dr. Leffler's opinion must also reliably reflect the economic realities and "fit" the facts of the case. *See Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018). Dr. Leffler's opinion fails that test: His model does not account for the risk that, without a Broad License, even a trial victory for Impax might have been short-lived because Impax's sales would infringe Endo's later acquired patents. This risk would have made settlement with a Broad License more attractive to Impax relative to litigation, and less attractive to Endo relative to litigation. Dr. Leffler thus failed to model a critical incentive of the parties in considering the profitability of settling versus litigating, and his model is not reliable, as Defendants explained in their Opening Brief. *See* Opening Br. at 5-6. Retailer Plaintiffs' only response, that "[t]here is no evidence that the parties put any significant value on the potential issuance of additional patents or that any such value would have materially affected a no-payment alternative entry date," Opp. Br. at 2, is contradicted

7

by their own argument that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. Br. at 4.

## II.   RETAILER PLAINTIFFS ARE NOT ENTITLED TO WINDFALL DAMAGES.

Dr. Leffler's damages model for the continued-litigation scenarios sets forth a hybrid but-for world in which Retailer Plaintiffs receive all the benefits of an Impax litigation "win" prior to November 2012 without accounting for the benefits Retailer Plaintiffs realized in the actual world after November 2012 only because of the SLA.[5] Dr. Leffler's approach thus runs afoul of the rule that "[a]n antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986). Neither of Retailer Plaintiffs' attempts to dodge this rule have merit.

*First*, Retailer Plaintiffs rely on cases that explicitly fall *outside* the *Los Angeles Memorial Coliseum* rule applicable here.[6] For example, in *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2002887, *5 (E.D. Tenn. May 15, 2015), the court recognized the *Los Angeles Coliseum* holding but found that it did not apply in that case because the benefits that the defendants cited did not accrue "because of" the challenged agreements; rather, they flowed from an independent

---

[5]   In their "continued litigation" scenarios (i.e., Scenarios 1 and 2), Retailer Plaintiffs claim that Impax would *not* have settled, and would have won the litigation and launched earlier. Retailer Plaintiffs claim the benefits of this hypothesized earlier generic entry, but also want to keep all the benefits of the challenged SLA and Broad License, which would not have existed if the parties litigated instead of settling.

[6]   *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 n.14 (1972) (state recoups losses through higher taxes); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 487–88 (1968) (rejecting the "passing-on" defense); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) (plaintiffs participated in the conspiracy); *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 884–85 (10th Cir. 1997) (passing-on defense); *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 369 (D. Mass 2004) (generic bypass theory).

8

decision by the branded company to launch an authorized generic. *See also* Ex. 10, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-cv-83, Motion to Exclude Testimony of Daniel Rubinfeld (ECF No. 584) at 13–14 (E.D. Tenn. April 18, 2014) (explaining the origin of the cited benefits).[7] *Skelaxin* is irrelevant here, where the benefits to competition accrued to Retailer Plaintiffs only "because of" the SLA and the Broad License, which would not have existed if the parties had continued litigating.

*Second*, Retailer Plaintiffs attempt to avoid *Los Angeles Memorial Coliseum* by arguing that they are challenging only the payments and not the entire SLA; they assume "a license to later-issued patents would have been part of any settlement between Endo and Impax." Opp. Br. at 12. This argument makes no sense. Retailer Plaintiffs' "continued litigation" scenarios are ones in which there is *no settlement,* not ones in which there is an alternative settlement with the Broad License. And their own arguments undermine their position. As they put it, the "but-for world is a hypothetical world that is identical to the actual world *except* for eliminating the antitrust violation itself." Opp. Br. at 13. Retailer Plaintiffs cannot eliminate the entire settlement agreement while arguing certain benefits of the settlement should still accrue to them. This is exactly the type of "overcompensation" the antitrust laws forbid:

> It must be emphasized that the antitrust plaintiff is entitled to recover only its *net* harm. As the Ninth Circuit put it, "[a]n antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it **because of** an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct." The sense of this is fairly obvious as it reduces the chances of overcompensation.

IIA P. Areeda et al., ANTITRUST LAW (2014) (quoting *Los Angeles Mem'l Coliseum Comm'n*, 791 F.2d at 1367). The Court should exclude Dr. Leffler's windfall damages opinion.

---

[7] Exhibits 1 through 10 were filed with Defendants' Opening Brief. Exhibit 11 is attached to this filing.

## III. RETAILER PLAINTIFFS INFLATE THEIR DAMAGES BY ASSUMING MORE ILLEGAL SALES IN THEIR BUT-FOR WORLD.

As previously explained, Dr. Leffler improperly accounted for Actavis's unlawful, infringing sales in modeling damages. Opening Br. at 13–14. Retailer Plaintiffs respond that "[t]here is absolutely no reason to believe that Actavis would have acted differently" in the but-for world. Opp. Br. at 12. But Retailer Plaintiffs ignore the fact that Dr. Leffler did assume that Actavis would have acted differently. He assumed Actavis would have launched its generic Opana ER products *earlier* than it did in the actual world, and would have infringed Endo's patents beginning in November 2012 as compared to September 2013 in the actual world. Even if Plaintiffs were entitled to hold Actavis's real word infringing sales constant in their but-for worlds (and they are not)[8], there is no basis for Retailer Plaintiffs to inflate their damages by expanding a third party's unlawful activity in the but-for world.

## IV. DR. LEFFLER'S USE OF THE LERNER INDEX IS NOT RELIABLE

Retailer Plaintiffs' Opposition fails to address the fact that Dr. Leffler offers no way to determine whether Endo's margins were indicative of monopoly power because he never determined what the "competitive margin" would be in this particular pharmaceutical industry. There is consequently no way to assess whether Endo's margins were supracompetitive or whether his observed margins were indicative of monopoly power. *See* Opening Br. at 14-15; *see also* ECF No. 531, Leitzinger Mot. to Exclude at 9-13.

## V. CONCLUSION

For the reasons set forth herein and in Defendants' Opening Brief, Defendants respectfully request that the Court partially exclude the opinions and proposed testimony of Dr. Leffler.

---

[8] *See* Opening Br. at 14; *see also* ECF No. 653 (Leitzinger *Daubert* Reply) at 7–8.

Dated: August 4, 2020

/s/ George G. Gordon
George G. Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
Thomas J. Miller (admitted *pro hac vice*)
John P. McClam (admitted *pro hac vice*)
Sharon K. Gagliardi (admitted *pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
thomas.miller@dechert.com
john.mcclam@dechert.com
sharon.gagliardi@dechert.com

Craig Falls (admitted *pro hac vice*)
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
craig.falls@dechert.com

Robert D. Rhoad (admitted *pro hac vice*)
**DECHERT LLP**
502 Carnegie Center, Suite 104
Princeton, NJ 08540
Tel.: (609) 955-3269
Fax.: (609) 873-9142
robert.rhoad@dechert.com

Angela Liu
**DECHERT LLP**
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Tel.: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com

*Counsel for Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co.*

Respectfully submitted,

/s/ Devora W. Allon
Devora W. Allon, P.C. (admitted *pro hac vice*)
Jay P. Lefkowitz, P.C. (admitted *pro hac vice*)
Evelyn Blacklock (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
devora.allon@kirkland.com
lefkowitz@kirkland.com
evelyn.blacklock@kirkland.com

James R.P. Hileman
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Tel.: (312) 862-7090
jhileman@kirkland.com

*Counsel for Defendant Impax Laboratories, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2020, I caused to be filed the foregoing document with the United States District Court for the Northern District of Illinois using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing and by emailing a copy of the moving papers to counsel for Plaintiffs.

/s/ Angela Liu
**DECHERT LLP**
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Tel.: (312) 646-5800
Fax: (312) 646-5858
angela.liu@dechert.com