**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL No. 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All End-Payor Actions | |

**END-PAYOR PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

End-Payor Class Plaintiffs ("EPPs") respectfully submit this Notice of Supplemental Authority regarding *In re Ranbaxy Generic Drug Application Antitrust Litigation*, 2021 WL 1947982 (D. Mass. May 14, 2021) (attached as Ex. A), in support of their pending motion for class certification.

In *Ranbaxy*, plaintiffs alleged that "Ranbaxy violated RICO, federal and state antitrust laws and state consumer protection laws by submitting multiple ANDAs with missing, incorrect or fraudulent information, thereby wrongfully acquiring exclusivity periods and delaying the market entry of generic Diovan, Nexium, and Valcyte." *Id.* at *2. The district court ultimately certified three direct purchaser classes and three end-payor classes consisting of third-party payors ("TPPs").

In certifying the classes, the court addressed the following issues regarding predominance under Rule 23(b) and ascertainability:

***The use of average or aggregate prices.*** The court credited the impact models offered by Dr. Meredith Rosenthal (EPPs' expert here) and Dr. Rena Conti. Dr. Rosenthal's model "compare[d] the monthly average prices of the at-issue drugs with the hypothetical average prices for those same drugs in a world without the alleged anti-competitive conduct ('but-for

world')." *Id.* at *6. Dr. Conti used a yardstick methodology that similarly relied on "average prices, average copayments and average rebates to measure injury." *Id.* at *9.

As to Dr. Rosenthal's model, the court held that "[d]efendants' attack on the use of averages by Dr. Rosenthal is misguided" for two reasons. *First*, the use of averages "is 'common practice . . . to determine whether class members suffered a common antitrust injury'" and "[a]ny potential variation among class members in the actual prices paid for drug is more relevant to assessing the extent of the injury than to determining the existence of an injury at all." *Id.* at *7 (citations omitted).

*Second*, rejecting the defendants' contention that Dr. Rosenthal had failed to account for individualized negotiations, chargebacks and other credits, the court concluded that her "methodology does not obscure a significant number of uninjured class members" because the "antitrust injury 'occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset.'" *Id.* (quoting *In re Nexium Antitrust Litigation*, 777 F.3d 9, 27 (1st Cir. 2015)). The court further held that "[b]y using monthly average prices, Dr. Rosenthal's model necessarily incorporates the variation across class members in the actual and but-for prices of each drug to come to a reasonable conclusion that class members suffered a common injury." *Id.* (citing *In re Loestrin 24 Fe Antitrust Litig.*, 2019 U.S. Dist. LEXIS 1188308, at *46 (D.R.I. July 2, 2019)).

As to Dr. Conti's methodology, the court held that the defendants' critique was "virtually identical to the one asserted against" Dr. Rosenthal. *Id.* at *9. The court then concluded that "offsets such as consumer contributions and manufacturer rebates are more relevant to the extent of damages than to the incurrence of injury." *Id.* at *10.

2

*Brand-loyal TPPs*. The court rejected the defendants' claim that Dr. Conti ignored potential brand-loyal TPPs that "would not have purchased generics under any circumstance," crediting evidence that such brand loyalty was "doubtful among TPPs." *Id*. (citing *In re Loestrin 24 Fe Antitrust Litig*., 410 F. Supp. 3d 352, 404 (D.R.I. 2019)).

*Medicare Part D plans and TPPs paying higher generic prices*. The defendants further argued "that TPPs which manage Medicare D plans are unlikely to be injured because other parties such as the federal government and consumers cover a high percentage of the costs for the at-issue drugs" and that "there are still more uninjured TPPs because they paid a higher price for generics than the brand drugs for which they received higher copayments and rebates." *Id.* The court held that "[b]oth arguments can be easily rebutted because, as noted several times before, antitrust injury occurs at the moment of the overcharge regardless of later rebates or other offsets. That some TPPs may have ultimately paid more for generics is relevant to the amount of damages incurred but not for determining antitrust impact." *Id.*

*Variations in state laws*. The court also rejected the defendants' arguments that purported variations in 21 state antitrust and 11 consumer protection laws asserted by end payors precluded a predominance finding. *Id.* at *10-11 ("The variety of state laws applicable to the EPPs' claims does not overwhelm predominance . . . . Any minor differences in the relevant state laws can be accommodated through the use of special jury instructions and verdict forms, as suggested by the EPPs.").

*Ascertainbility of end payor classes*. As to the ascertainability requirement, the court held that "[a]t the certification stage, it is unnecessary to identify every class member." *Id.* at *11. The court further determined that the end payor classes were in fact ascertainable, crediting analyses from Laura Craft (EPPs' expert here) showing that (1) pharmacy benefit managers

3

("PBMs") possess highly detailed data covering substantially all retail prescriptions and (2) PBM data can be used to identify eligible class member and apply class exclusions. *Id.* at *11-13.

Dated: May 18, 2021             Respectfully submitted,

| | |
|---|---|
| */s/ Gregory S. Asciolla* | */s/ Robert J. Wozniak* |
| Gregory S. Asciolla | Michael J. Freed |
| Karin E. Garvey | Robert J. Wozniak |
| Matthew J. Perez | Brian M. Hogan |
| LABATON SUCHAROW LLP | FREED KANNER LONDON & MILLEN LLC |
| 140 Broadway | 2201 Waukegan Road, Suite 130 |
| New York, NY 10005 | Bannockburn, IL 60015 |
| (212) 907-0700 | (224) 632-4500 |
| gasciolla@labaton.com | mfreed@fklmlaw.com |
| kgarvey@labaton.com | rwozniak@fklmlaw.com |
| mperez@labaton.com | bhogan@fklmlaw.com |

*Interim Co-lead Counsel for the End-Payor Classes*