UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2580<br><br>Lead Case No. 14-cv-10150<br><br>Hon. Harry D. Leinenweber |

**RETAILER PLAINTIFFS' MOTION FOR CLARIFICATION OR RECONSIDERATION OF THE COURT'S JUNE 4, 2021 MEMORANDUM OPINION AND ORDER (ECF NO. 725) AND JUNE 22, 2021 MINUTE ORDER (ECF NO. 728)**

Retailer Plaintiffs[1] respectfully move for clarification or reconsideration of the Court's June 4, 2021 Memorandum Opinion and Order (ECF No. 725) (the "June 4 Order") and its June 22, 2021 minute order (ECF No. 728) (the "June 22 Order").

In its June 22 Order, the Court granted Defendants' motion for clarification of the June 4 Order to the extent that the Court clarified that "Plaintiffs may not include generic products that were later found to be patent protected in Federal Court as a part of any of their damages models," but "otherwise denied" the motion. ECF No. 728. However, the parties identified two different ways to address the sales of Actavis ultimately found to be infringing. In this motion, Retailer Plaintiffs ask the Court to clarify which of the two approaches it intended. In addition, Retailer Plaintiffs request that the Court reconsider and reverse its conclusion that their experts improperly treated Actavis' sales in their damage calculations.

---

[1] Retailer Plaintiffs are the individual plaintiffs CVS Pharmacy, Inc, Rite Aid Corp., Rite Aid Hdqtrs. Corp., Albertson's LLC, HEB Grocery Company LP, The Kroger Co., Safeway, Inc., and Walgreen Co.

In the briefing that led to the June 4 Order, the parties disagreed not only about whether any adjustment of Plaintiffs' damage calculations was necessary to account for Actavis' sales of generic Opana ER, but also what adjustment was necessary. The DPP class argued that, *if* any adjustment were necessary to address Actavis' sales, the DPPs' economic expert, Dr. Jeffrey Leitzinger, could eliminate the overcharges that he calculated on Actavis' sales to members of the DPP class. All Plaintiffs believe that this approach is consistent with the Court's statements in the June 4 Order. Indeed, the Court referred approvingly to Dr. Leitzinger's proposed approach. ECF No. 725 at 29-30.

Alternatively, Defendants asserted that Plaintiffs' economists must reconstruct the but-for world to remove Actavis from the market beginning November 2012 (ECF No. 531 at 14), even though Actavis' presence in the market was independent of the antitrust violation that Plaintiffs allege, and Defendants did not contend that a reasonable jury could conclude that Actavis would have left the market in the but-for world any earlier than April 2016 when it actually left the market.

To implement DPPs' approach, Plaintiffs' economists would leave Actavis on the market as a competitor in the but-for world through April 2016, but would omit overcharge damages on generic sales made by Actavis. To implement Defendants' approach, Plaintiffs' economists would hypothetically remove Actavis from the market in November 2012 when Endo obtained the later acquired patents, even though Actavis remained on the market post-November 2012 in the actual world.

Both of these approaches fall within the language of the Court's orders that Plaintiffs eliminate Actavis' sales from their "damage model." However, Plaintiffs believe that the first is more consistent with the concerns that the Court expressed in its June 4 Order and fundamental

principles of antitrust damages. Retailer Plaintiffs request that the Court clarify which approach the Court believes to be appropriate.

In addition, Retailer Plaintiffs request that the Court reconsider its June 4 Order that Plaintiffs remove Actavis' sales from their damage models and hold that no modification of their damage models to account for Actavis' sales is necessary. If the Court intended to adopt Defendants' approach, it is contrary to the fundamental principle that an antitrust damage model must isolate the effects of the antitrust violation by removing *only* conduct that would have changed absent the alleged violation from the but-for world. *See* ABA SECTION OF ANTITRUST LAW, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES 54-55 (2010) ("To isolate the effect of the violation[,] . . . it is important to modify the *defendant's* conduct in the but-for world *only* to the extent necessary to comply with [antitrust] law.") (emphasis added). Defendants do not contend that Actavis would have left the market in 2012 absent Endo's reverse payment. The fact that Endo paid Impax to delay its entry had no effect at all on Actavis' decision to stay on the market until Endo secured a judgment in April 2016 that Actavis infringed the later acquired patents. As a result, a damage model that excluded Actavis from the but-for world beginning November 2012 would not isolate the effects of Defendants' antitrust violation, but would instead quantify the *combined* effects of the antitrust violation and Actavis' unrelated patent infringement.

The alternative approach that only excludes damages on generic purchases from Actavis avoids this flaw, but is contrary to settled Seventh Circuit law permitting "umbrella" damages caused by the violation.

To the extent necessary, Plaintiffs propose to provide supplemental damage calculations within 30 days of the Court's order resolving this Motion.

**ARGUMENT**

**I.      THE COURT SHOULD CLARIFY ITS LEGAL RULING REGARDING THE TREATMENT OF ACTAVIS' SALES.**

Retailer Plaintiffs ask the Court to clarify that its Orders only require Plaintiffs' experts to exclude overcharges on purchases of generic Opana ER from their damage calculations and do *not* require the experts to eliminate Actavis entirely from the but-for world beginning November 2012.

While either adjustment could be interpreted as excluding "generic products that were later found to be patent protected in Federal Court," eliminating overcharges on generic purchases from Actavis is more consistent with the rationale that the Court articulated in its June 4 Order. For instance, in reaching its decision, the Court emphasized the overcharge on Actavis' sales. It pointed out that "Plaintiffs have included the difference between *Actavis' generic actual price* and the projected downward price of *Actavis' generic Opana ER* in their calculations for damages." ECF No. 725 at 28 (emphasis added); *see also id.* (explaining that, in Dr. Leitzinger's model, "the entry of Impax's generic Opana ER pushes downward not only the price of Endo's branded Opana ER, but also Actavis' generic Opana ER, which was on the market with its limited settlement agreement from 2011 to 2012, and then sold from 2012 to 2016 'at risk' while the litigation was pending in federal court").

In addition, the Court referred approvingly to Dr. Leitzinger's statement about how he could revise his damage calculation. *Id.* at 29-30. Dr. Leitzinger proposed excluding only overcharges on Actavis' sales to DPP class members. As he explained the proposed revision, "Actavis's sales to Class members account for less than 4 percent of the overcharge value" and "those volumes readily could be excluded from the overcharge model." Leitzinger Rebuttal Rpt. ¶ 82 n.125 (ECF No. 609-3).

Finally, the elimination of overcharges on Actavis' sales of generic Opana ER would address Defendants' argument in opposition to DPPs' motion for class certification that "proposed class members cannot have suffered antitrust injury because they may not recover 'umbrella' overcharge damages for purchases they did not make from defendants." ECF No. 450 at 24.

In contrast, under Defendants' proposal, Plaintiffs' economists would revise the but-for world beginning in November 2012 when Endo obtained the later acquired patents. Even though Actavis actually began selling its full generic Opana ER product line 180 days after Impax launched and continued on the market until April 2016, Defendants' approach would require Plaintiffs' economists to revise their estimates of the but-for generic price of the Impax generic and Endo's authorized generic based on an assumption that Actavis would leave the market in November 2012, almost four years earlier than it did in the actual world. Defendants' expert, Margaret E. Guerin-Calvert, purports to make such an adjustment in her expert report. Guerin-Calvert Report ¶¶ 122, 156 (ECF No. 558-10). However, she testified that she had no opinion on why Actavis' decision to remain on the market would have changed as a result of Impax's earlier entry date under a no-payment settlement. *See* Guerin-Calvert Dep. at 75 (ECF No. 609-10).

Accordingly, Retailer Plaintiffs request that the Court clarify how Plaintiffs' economists should implement the Court's June 4 and June 22 Orders. If the Court's intent was to eliminate any claims for damages on generic purchases from Actavis, as Plaintiffs believe, the Court should clarify its June 4 Order to provide that Plaintiffs' experts must not calculate any overcharges on purchases of Actavis' generic Opana ER from November 2012 when Endo obtained the later acquired patents. However, if the Court's intent was to eliminate all of the competitive effects of Actavis' sales of generic Opana ER, as Defendants argued, it should

clarify its June 4 Order to provide that Plaintiffs eliminate Actavis from the but-for world beginning November 2012.

## II. THE COURT SHOULD RECONSIDER ITS ORDER REQUIRING PLAINTIFFS TO REMOVE ACTAVIS FROM THEIR DAMAGE MODELS.

"[D]istrict judges always retain discretion to revisit their interlocutory rulings." *Parker v. Four Seasons Hotels, Ltd.*, 791 F. App'x 600, 600-01 (7th Cir. 2020); *see also* Fed. Civ. P. 54(b) (order adjudicating "fewer than all" claims "may be revised at any time" before the entry of final judgment). "[M]otions for reconsideration can serve a valuable function by helping, under appropriate circumstances, to ensure judicial accuracy," *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 913 (N.D. Ill. 2006), including where "the initial decision was 'clearly erroneous and would work a manifest injustice,'" *Duminie v. Ne. Reg'l Commuter R.R. Corp.*, 2020 WL 4505831, at *2 (N.D. Ill. Aug. 5, 2020) (quoting *Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008)). Here, reconsideration would "ensure judicial accuracy," correct clear error, and avoid "manifest injustice."

To the extent the Court intended to adopt Defendants' approach and require Plaintiffs' experts to remove Actavis from the market entirely after November 2012, its decision would be inconsistent with settled law that the Court did not address in its June 4 Order. Under fundamental principles of antitrust damages, the but-for world must be identical to the actual world *except* that the but-for world must exclude the antitrust violation and its subsequent effects. *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (antitrust damages are measured "by comparison of profits, prices and values as affected by the conspiracy, with what they would have been in its absence"); *Nat'l Farmers' Org. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1306 (8th Cir. 1988) ("[A]n antitrust plaintiff's damages should reflect the difference between its performance in a hypothetical market free of all antitrust violations and its

-6-

actual performance in the market infected by the anticompetitive conduct."), *cert. denied*, 489 U.S. 1081 (1989); ABA SECTION OF ANTITRUST LAW, PROVING ANTITRUST DAMAGES: LEGAL AND ECONOMIC ISSUES 54-55 (2010) ("To isolate the effect of the violation[,] . . . it is important to modify the *defendant's* conduct in the but-for world *only* to the extent necessary to comply with [antitrust] law.") (emphasis added). *See also Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1739 (2020) ("[A] but-for test directs us to change one thing at a time and see if the outcome changes."). The point of a damage model is to "isolate the effect of the *antitrust* violation." IIA P. AREEDA ET AL., ANTITRUST LAW ¶ 392b at 379 (2014) (emphasis added). Eliminating Actavis from the but-for world as proposed by Defendants would not "isolate the effect of [Endo's and Impax's] antitrust violation" because damages caused to Endo *by Actavis' infringing sales* would partly offset the *antitrust* damages caused by *Endo's reverse payment* to delay Impax's entry. Endo's remedy for Actavis' infringement was to recover infringement damages from Actavis, not reduce Plaintiffs' overcharge damages from Defendants' anticompetitive conduct.[2]

Moreover, the Court's assertion that the finding that the later acquired patents were valid means that the patents were also valid while Actavis was selling its product at-risk is based on a misconception of patent rights inconsistent with the Supreme Court's opinion in *Actavis*. As the Supreme Court recognized, *until* a court resolves a patent dispute, the patent "may or may not be valid, and may or may not be infringed." *FTC v. Actavis, Inc.*, 570 U.S. 136, 147 (2013). Making the resolution of the patent dispute retroactive to the date that Endo obtained the later acquired patents improperly converts uncertain patent rights that were insufficient to prevent

---

[2] Defendants marshal no factual support for the notion that Actavis would have exited the market any earlier in the but-for world than in the actual world, and Defendants' own damages expert had no opinion on that issue. Moreover, Endo never sued any of the Plaintiffs or proposed class members for patent infringement arising out of the purchase of generic Opana ER from Actavis.

Actavis from competing in the actual world into indisputable but-for patent rights absolutely precluding such competition. There is no basis for such a change to the but-for world.

Eliminating overcharges only on Actavis' generic sales comes closer to correctly calculating damages, but still is not consistent with binding law in this Circuit. In opposition to the DPPs' motion for class certification, Defendants claimed that overcharges on Actavis' sales caused by the delay of Impax's introduction of generic Opana ER were improper umbrella damages. The only case from this district that they cited for the proposition that umbrella damages are unrecoverable was *In re Folding Carton Antitrust Litigation*, 88 F.R.D. 211 (N.D. Ill. 1980). However, in the 40 years since *Folding Carton,* the Seventh Circuit has squarely held that umbrella damages caused by purchases from non-conspirators whose prices were elevated by the conspiracy *are* recoverable in this Circuit. *See U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003) ("A cartel cuts output, which elevates price throughout the market; customers of fringe firms (sellers that have not joined the cartel) pay this higher price, and thus suffer antitrust injury, just like customers of the cartel's members."); *In re Uranium Antitrust Litig*., 552 F. Supp. 518, 525 (N.D. Ill. 1982) (collecting cases and explaining why umbrella damages are recoverable).

Plaintiffs cited this case law before the Court entered its June 4 Order. *See* ECF No. 593 at 12-14 (citing case law about proper construction of but-for world); ECF No. 472 at 14-15 (citing authority in support of recovery of umbrella damages). However, none of it is addressed in the June 4 Order. Although the alternative of excluding overcharges on Actavis' sales comes closer to quantifying Plaintiffs' overcharges, it is still inconsistent with this Circuit's approach to umbrella damages. Accordingly, Retailer Plaintiffs request reconsideration of the Court's ruling with respect to Actavis and reversal of the holding that their experts' treatment of Actavis was

incorrect.

## CONCLUSION

For the reasons set forth above, Retailer Plaintiffs respectfully request that the Court clarify its June 4 and June 22 Orders to specify whether Plaintiffs' experts should exclude Actavis from their damage models by (1) excluding overcharges on sales of Actavis' generic Opana ER beginning November 2012; or (2) excluding Actavis from the but-for world beginning November 2012. In addition, the Court should reconsider its ruling requiring Actavis to be excluded in any respect because the damage calculations of Plaintiffs' experts were consistent with controlling law.

Dated: July 1, 2021

Respectfully submitted,

/s/ Lauren C. Ravkind
Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
Four Seasons Tower, Suite 1100
1441 Brickell Avenue
Miami, FL 33131
T: (305) 373-1000
F: (305) 372-1861
lcr@kennynachwalter.com
sep@kennynachwalter.com
aneill@kennynachwalter.com

*Counsel for Albertson's LLC, HEB Grocery Company LP, The Kroger Co., Safeway, Inc., and Walgreen Co.*

/s/ Barry L. Refsin
Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
T: (215) 568-6200
F: (215) 568-0300
brefsin@hangley.com

Monica L. Kiley
Eric L. Bloom
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
T: (717) 364-1030
F: (717) 364-1020
mkiley@hangley.com
ebloom@hangley.com

*Counsel for CVS Pharmacy, Inc., Rite Aid Corp., and Rite Aid Hdqtrs. Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2021, the foregoing was filed on the Court's ECF filing system where it is available for viewing and downloading by all counsel of record.

/s/Barry L. Refsin
Barry L. Refsin