**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: OPANA ER ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All Direct Purchaser Class Actions** | **MDL DOCKET NO. 2580**<br>**Case No. 1:14-cv-10150 (HDL)** |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED**
**SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE**
**CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

      A.    Plaintiffs' Claims and Procedural Background ........................................ 3

      B.    Settlement Negotiations and the Proposed Settlement ........................... 5

III.  THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
      APPROVAL ....................................................................................................... 6

      A.    The Strength of Plaintiffs' Case Compared to the Terms of the Settlement .......... 7

      B.    The Complexity, Length and Expense of Continued Litigation ............................ 8

      C.    The Amount of Opposition to the Settlement ........................................ 8

      D.    The Opinion of Competent Counsel ...................................................... 9

      E.    The Stage of the Proceedings ............................................................. 10

      F.    The Plan of Allocation Is Fair, Reasonable, and Adequate ................................ 10

      G.    The Proposed Form and Manner of Notice Are Appropriate ............................. 14

            1.    Form of Notice ........................................................................ 14

            2.    Manner of Notice .................................................................... 16

            3.    An Additional Opt-Out Period Is Unnecessary ....................................... 16

      H.    RG/2 Is an Appropriate Settlement Administrator ................................ 17

      I.    First State Trust Company Is an Appropriate Escrow Agent .............................. 18

      J.    The Proposed Schedule Is Fair and Should Be Approved .................................. 18

IV.   CONCLUSION .................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Beneli v. BCA Fin. Servs., Inc.*,
    324 F.R.D. 89 (D.N.J. 2018) ............................................................................... 11

*Cent. States Grp. v. AIG Glob. Inv. Corp. (In re Healthsouth Corp. Sec. Litig.),*
    334 F. App'x 248 (11th Cir. 2009) .................................................................... 17

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ............................................................................... 17

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) ............................................................................... 6

*Guzman v. Nat'l Packaging Servs. Corp.,*
    2022 U.S. Dist. LEXIS 37362 (E.D. Wis. Mar. 3, 2022) ................................. 7

*Heekin v. Anthem, Inc.*,
    2012 WL 5472087 (S.D. Ind. Nov. 9, 2012) ................................................... 10

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................... 14

*In re Auto. Parts Antitrust Litig.*,
    2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) .............................................. 14

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    1996 WL 167347 (N.D. Ill. Apr. 4, 1996) ....................................................... 16

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    1999 WL 639173 (N.D. Ill. Aug.17, 1999) ..................................................... 12

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ............................................................... 12

*In re: Herff Jones Data Breach Litig.,*
    2017 U.S. Dist. LEXIS 236459 (S.D. Ind. Jan. 12, 2017) .............................. 16

*In re High-Tech Emp. Antitrust Litig.*,
    2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .................................................. 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ............................................................. 12

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ................................................................. 6

In *re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704 (N.D. Ill. 2016) .......................................................... 3

*In re Opana ER Antitrust Litig.*,
   2021 WL 2291067 (N.D. Ill. June 4, 2021) ................................................. 4

*In re Opana ER Antitrust Litig.*,
   2021 WL 3627733 (N.D. Ill. June 4, 2021) ................................................. 4

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ............................................. 11

*In re Packaged Ice Antitrust Litig.*,
   2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................... 11

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................................ 12

*In re Tiktok, Inc., Consumer Privacy Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) .............................................. 6, 7, 9

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................... 6

*Kaufman v. Am. Express Travel Related Servs. Co.*,
   877 F.3d 276 (7th Cir. 2017) ...................................................................... 7

*Lechuga v. Elite Eng'g, Inc.*,
   559 F.Supp.3d 736 (N.D. Ill. 2021) ........................................................... 6

*Lucas v. Vee Pak, Inc.*,
   2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) .................................... passim

*Meijer, Inc. v. 3M*,
   2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ........................................... 11

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................................... 14

*Officers For Justice v. Civil Service Com'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................................... 16

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........................................... 10

*Shah v. Zimmer Biomet Holdings, Inc.,*
    2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ........................................................ 14

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) ........................................................................................ 11

*Summers v. UAL Corp. ESOP Comm.,*
    2005 WL 3159450 (N.D. Ill. Nov.22, 2005) ................................................ 10, 11

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ........................................................................................ 7

Statutes

28 U.S.C. § 1715 .................................................................................................................... 19

Rules

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 14

Fed. R. Civ. P.23(e) ........................................................................................ 6, 9, 16

Other Authorities

3 Newberg on Class Actions, § 8:45 (4th ed. 2011) .................................................... 11

4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 12.35, at 350 (4th ed. 2002) .. 11

Direct Purchaser Class Plaintiffs Value Drug Company ("Value Drug") and Meijer, Inc. and Meijer Distribution, Inc. ("Meijer") (collectively "Plaintiffs"), have reached an agreement on their own behalf and on behalf of the certified direct purchaser class[1] with Defendant Impax Laboratories, Inc. ("Impax") to settle the Direct Purchaser Class's claims in this litigation against Impax. Plaintiffs respectfully submit this Memorandum of Law in Support of their Motion for Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class and Proposed Schedule for a Fairness Hearing.

## I. INTRODUCTION

Under the terms of a settlement agreement dated July 15, 2022 (the "Settlement Agreement"), Impax has agreed to make aggregate cash payments of $145,000,000 to Plaintiffs,[2] in exchange for Plaintiffs' agreement to dismiss their claims (on their own behalf and on behalf of the Class) against Impax with prejudice and to provide certain releases. *See* Settlement Agreement, Exhibit 1 to the Declaration of Bruce E. Gerstein ("Gerstein Decl."). This settlement represents an outstanding result for Plaintiffs and the Class and preliminary approval is therefore appropriate.

---

[1] The Court has certified the following class ("Direct Purchaser Class" or "Class"):

All persons or entities in the United States and its territories, including Puerto Rico, who purchased brand or generic Opana ER 5, 10, 20, 30, and/or 40 mg tablets directly from Defendants at any time during the period from April 1, 2011 until August 31, 2017 (the "Class").

Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities. Also excluded are all Retailer Plaintiffs that opted out of the Class and brought their own claims, including: CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co., Albertsons LLC, Safeway Inc. and H-E-B L.P (the "Retailer Plaintiffs").

[2] Under the terms of the Settlement Agreement, Impax will pay Plaintiffs $145,000,000 plus interest in three installments as follows: fifty-eight million dollars ($58,000,000) was paid on June 22, 2022; fifty-eight million dollars ($58,000,000) plus interest to be paid no later than January 17, 2023; and twenty-nine million dollars ($29,000,000) plus interest to be paid no later than January 17, 2024. Settlement Agreement, ¶ 8.

Plaintiffs and Impax entered into the Settlement Agreement after approximately eight years of intense, fully developed litigation and as trial was beginning. Counsel for both sides are highly experienced in pharmaceutical antitrust litigation and were well-positioned to assess the risks and merits of the case. Plaintiffs were prepared to go to trial against Impax but concluded that the proposed all-cash settlement for $145 million was in the best interests of the Class, since, if finally approved, the settlement assures Class members of receiving substantial cash settlement payments while putting the litigation against Impax to rest and avoiding the inherent risks of jury trial (as demonstrated by the verdict in favor of Endo) and potential appeals. For these reasons, and as further detailed below, the settlement easily satisfies the requirements for preliminary approval.

Accordingly, Plaintiffs respectfully request that the Court enter a proposed order (in the form of Exhibit A to the Settlement Agreement) which provides for the following:

1.  Preliminary approval of the proposed Settlement Agreement and the documents necessary to effectuate the Settlement, including a proposed form of notice to the Class (in the form of Exhibit B to the Settlement Agreement) and a proposed plan of distribution for settlement funds as described in the proposed form of notice and as set forth in Exhibits 2 and 3 to the Gerstein Decl.;

2.  Appointment of RG/2 Claims Administration LLC as Claims Administrator;

3.  Appointment of First State Trust Company as escrow agent for the settlement funds as set forth in Exhibit D to the Settlement Agreement; and

4.  A proposed settlement schedule, including the scheduling of a Fairness Hearing during which the Court will consider: (a) Plaintiffs' request for final approval of the settlement and entry of a proposed order and final judgment (Exhibit C to the Settlement Agreement); (b) Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and service awards to the named class plaintiffs; and (c) Plaintiffs' request for dismissal of this action against Impax with prejudice.

## II.     BACKGROUND

### A.     Plaintiffs' Claims and Procedural Background

On June 6, 2014, the first direct purchaser complaint alleging that Defendants violated the antitrust laws with respect to Opana ER was filed in the Eastern District of Pennsylvania. *See Rochester Drug Co-Operative, Inc. v. Endo Health Solutions, Inc.*, No. 14-cv-03185 (E.D. Pa.).  Shortly thereafter, Value Drug and Meijer filed substantially similar complaints in this district, and on December 12, 2014, the United States Judicial Panel on Multidistrict Litigation centralized all six then-pending actions (three direct purchaser and three indirect purchaser) in this District and assigned them to this Court.  *See* MDL No. 2580, Doc. 54 (Transfer Order).  On April 16, 2016, the Court consolidated all direct purchaser class actions, and appointed Garwin Gerstein & Fisher LLP and Berger Montague PC as co-lead counsel for the direct purchaser class and Kaplan Fox & Kilsheimer as interim liaison counsel for same.  *See* ECF No. 86 (CMO No. 1).

For the next seven years, the case was extensively litigated.  From July through November 2015, the parties engaged in motion to dismiss briefing, with Defendants advancing both liability and causation arguments.  On February 10, 2016, the Court rejected Defendants' arguments and denied Defendants' motion to dismiss.  *See* ECF No. 151 (*In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016)).[3]  Shortly thereafter, the parties began fact discovery.  In prosecuting this case, Plaintiffs secured the production of approximately 4.5 million pages of documents from Defendants and another 20,000 documents from third parties, took 23 fact depositions and defended 14 plaintiff-witness depositions.  The parties also engaged

---

[3] Shortly after this Court denied Defendants' motion to dismiss, the Federal Trade Commission filed an antitrust case against Defendants in the Eastern District of Pennsylvania making similar allegations as those raised in Plaintiffs' complaint.  *See FTC v. Endo Pharmaceuticals, Inc. et al.*, No. 2:16-cv-01140-PD (E.D. Pa.).

in extensive motion practice concerning numerous discovery disputes. Subsequently, the parties completed expert discovery (with a total of 23 experts on both sides submitting reports relevant to Plaintiffs' claims) and class certification briefing. In February 2020, the Court set a schedule for *Daubert*/summary judgment motions and a trial date of March 15, 2021. *See* ECF No. 501. Defendants filed two summary judgment motions, and the parties collectively filed twenty-one *Daubert* motions, with briefing largely concluding in August 2020 amidst the COVID-19 pandemic, due to which trial was rescheduled for November 2021. *See* ECF No. 712.

On June 4, 2021, the Court issued an 83-page opinion ruling on the parties' *Daubert* motions and denying Defendants' summary judgment motions, and a separate opinion granting Plaintiffs' motion for class certification. *See* ECF Nos. 725[4], 726[5], respectively. On July 29, 2021, the Court rescheduled trial for June 2022. *See* ECF No. 744.

On September 23, 2021, the Court granted Plaintiffs' motion to approve providing notice to the Class, notice that explained, *inter alia*, that the Class had been certified, what the litigation was about, and that Class members could elect to opt out if they wished. ECF No. 751. Individual notice was then provided to all Class members via First Class Mail on October 7, 2021. ECF No. 768 at ¶ 5; ECF No. 768-1 (copy of mailed notice). All Class members were told that the deadline to opt-out of the Class was November 22, 2021. *Id.* ¶ 7. The only entities that opted out were the Retailer Plaintiffs who brought their own individual claims. *Id.* ¶ 9.

On May 24, 2022, the parties filed the Joint Final Pretrial Order, which included, *inter alia*, witness lists, exhibit lists, deposition designations (including counter and rebuttal

---

[4] *In re Opana ER Antitrust Litig.,* 2021 WL 2291067 (N.D. Ill. June 4, 2021) (*Daubert* and summary judgment).

[5] *In re Opana ER Antitrust Litig.,* 2021 WL 3627733 (N.D. Ill. June 4, 2021) (class certification).

designations), and proposed jury instructions and verdict forms.  *See* ECF No. 895.  The parties also filed a total of 24 motions *in limine*.

On June 2, 2022, the Court held a final pretrial conference, and on June 6, 2022 the Court ruled on motions *in limine*.  See ECF Nos. 921, 937, respectively.  Ultimately, Plaintiffs and Impax reached an agreement-in-principle on June 8, 2022, just as trial was going to start, that became final a few days later, and then resulted in the Settlement Agreement.[6]

### B.    Settlement Negotiations and the Proposed Settlement

The parties attempted to resolve the case through a full day mediation in May 2022.  The parties engaged Jonathan Marks, one of the preeminent mediators in the nation.  That mediation included multiple individual sessions, as well as one joint session with Mr. Marks.  The parties failed to reach a resolution, but those sessions laid the groundwork for the parties' ultimate settlement, reached as trial was about to begin.

In agreeing on the settlement, Plaintiffs' Counsel assessed the merits of Plaintiffs' claims against Impax, Impax's defenses, and the risks of trial.  Under the Settlement Agreement, Impax will pay $145,000,000 (one hundred and forty-five million dollars) in cash for the benefit of all Class members in exchange for dismissal of the litigation between Plaintiffs and Impax with prejudice and certain releases.

Plaintiffs have proposed the form and manner of providing notice of the proposed Settlement Agreement to the Class, and the procedures by which: (a) Class members may receive their share of settlement funds; (b) Class members may object to the proposed Settlement Agreement; and (c) Class members may object to Plaintiffs' Counsel's application for attorney's

---

[6] Plaintiffs' claims against Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Penwest Pharmaceuticals Co. (collectively, "Endo") proceeded to trial, which commenced on June 9, 2022.  That trial ended with a verdict for Endo.  Post-trial motions have not yet been filed.

fees, reimbursement of reasonable expenses incurred in prosecuting this action, and service awards to the two class representatives, Value Drug and Meijer, for their efforts on behalf of the Class.

## III.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

As the Seventh Circuit has recognized, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Settlement "minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Lechuga v. Elite Eng'g, Inc.*, 559 F.Supp.3d 736, 744 (N.D. Ill. 2021) (internal citations omitted).

Under Federal Rule of Civil Procedure 23(e), a class action settlement may be *finally* approved if it is "fair, reasonable and adequate" after analysis of the factors outlined in Rule 23(e)(2). At the *preliminary* approval stage, by contrast, a court need only assess whether the settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982). *See also In re Tiktok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (court need only "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing [and] not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards.") (internal citations and quotations omitted). Courts perform "a more summary version of the final fairness inquiry" at the preliminary approval stage. *Id. See also In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016) ("Balancing the fairness factors in a summary fashion [] is appropriate on preliminary approval"). Under this summary version, courts consider the following five factors: "the strength of plaintiff's case compared to the settlement amount, the complexity, length, and expense of the litigation, any opposition to settlement, the opinion of

6

competent counsel, and the stage of the proceedings (including the amount of discovery completed) at the time of the settlement." *Guzman v. Nat'l Packaging Servs. Corp.*, 2022 U.S. Dist. LEXIS 37362, at *4-5 (E.D. Wis. Mar. 3, 2022); *In re TikTok*, 565 F. Supp. 3d at 1083-84 (listing same factors). "The most important factor…is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id. See also Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *8 (N.D. Ill. Dec. 20, 2017) (acknowledging same).

As demonstrated below, consideration of the relevant factors supports preliminarily approving the Settlement Agreement and authorizing notice to the Class.

### A. The Strength of Plaintiffs' Case Compared to the Terms of the Settlement

The first factor asks courts to balance the strength of the class's claims on the merits against the value conferred by the proposed settlement. While district courts often "assess the net expected value of continued litigation" by quantifying the range of possible outcomes as part of this analysis, (*Lucas*, 2017 WL 6733688, at *8), the Seventh Circuit has held that courts need not engage in such quantification "where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *In re TikTok*, 565 F. Supp. 3d at 1087 (quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017)). Such reliable indicators are present where, *e.g.,* the settlement was reached through arms' length negotiations, highly experienced counsel negotiated the settlement, and substantial discovery has enabled the parties to analyze the strengths and weaknesses of the case. For example, in *In re TikTok*, because such factors were present, the court concluded that it "need not undertake [a] mechanical mathematical valuation" and instead recognized that the proposed settlement ensured meaningful value to the class members as compared to the risks of trial. *In re TikTok*, 565 F. Supp. 3d at 1088. *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (when there are no "suspicious circumstances" surrounding a settlement reached through arms'

length negotiations by experienced counsel after the parties have sufficiently explored the merits of the case, a court may preliminarily approve a settlement without quantifying the value of continued litigation).

The same reliable indicators that demonstrate that a settlement reasonably reflects the merits of the case are present here. As noted herein, given that the settlement was negotiated as trial was starting, there can be no question that the parties had amply explored the merits of the litigation before engaging in settlement negotiations. Moreover, those arms' length negotiations were engaged in by highly experienced counsel and no "suspicious circumstances" are present. Accordingly, this factor weighs in favor of preliminary approval.

**B.       The Complexity, Length and Expense of Continued Litigation**

When settlement enables the parties to avoid the costs and risks of litigating complex issues, this factor weighs in favor of preliminary approval. *Lucas*, 2017 WL 6733688, at *11. Although the parties were unable to avoid the expenses associated with prosecuting the case up until trial, the settlement did permit Plaintiffs and Impax to narrow the number of adversaries each faced at trial and avoid the risks of not settling with each other. Further, Impax's agreement to provide cooperation is a relevant factor, since it "serve[d] to minimize the costs and challenges" in Plaintiffs' case against Endo. *Id.* Accordingly, this factor weighs in favor of preliminary approval.

**C.       The Amount of Opposition to the Settlement**

While the reaction of the Class will be determined only after the distribution of notice, no Class member has thus far informed Plaintiffs' counsel that it is dissatisfied with the settlement. If, after notice, any objection(s) is filed, the Court can consider it in determining whether to grant final approval. *See Lucas*, 2017 WL 6733688, at *12. Accordingly, this factor weighs in favor of preliminary approval.

### D.     The Opinion of Competent Counsel

Courts often defer to the judgment of experienced counsel who have engaged in arm's-length negotiations, understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).  *See, e.g., In re TikTok*, 565 F. Supp. 3d at 1091 (plaintiffs' "well qualified" counsel attested to their belief that the settlement was fair, reasonable and adequate); *Lucas*, 2017 WL 6733688, at *12 (plaintiffs' counsel had "extensive experience" in subject matter of litigation and believed settlement to be in the best interest of the class).

Here, Plaintiffs' Counsel believe that the settlement with Impax is fair and in the best interests of the Class.  Plaintiffs' Counsel collectively have more experience with generic-delay cases such as this than any other firm or group of firms, having pioneered such cases in the late 1990s.[7]  Plaintiffs' Counsel applied their well-honed litigation and trial preparation skills, along with their twenty-four years of experience handling these types of cases, during settlement negotiations and believe that the settlement represents an excellent result for the Class, which belief is corroborated when juxtaposed with the jury verdict for Endo.  Accordingly, this factor weighs in favor of preliminary approval.

---

[7] The following is a partial list of generic-delay and impeded generic market access cases that some or all of Plaintiffs' Counsel have previously handled and successfully resolved on behalf of similar classes of direct purchasers: *In re Provigil Antitrust Litig.*, No. 06-1797 (E.D. Pa.); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.); *In re Buspirone Antitrust Litig.*, No. 01-7951 (S.D.N.Y.); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J.); *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.); *In re Lidoderm Antitrust Litig.*, No. 14-02521 (N.D. Cal.); *In re Aggrenox Antitrust Litig.*, No. 14-2516 (D. Conn.); *In re Cardizem Antitrust Litig.*, No. 99-1278 (E.D. Mich.); *In re Prograf Antitrust Litig.*, No. 11-2242 (D. Mass.); *In re Remeron Antitrust Litig.*, No. 02-02007 (D.N.J.); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317 (S.D. Fla.); *In re K-Dur Antitrust Litig.*, No. 01-1652 (D.N.J.); *Meijer, Inc. v. Abbott Labs.*, No. 07-5985 (N.D. Cal.); *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*, No. 07-0142 (D. Del.); *In re OxyContin Antitrust Litig.*, MDL No. 04-1603 (S.D.N.Y); and *In re Asacol Antitrust Litig.*, No. 15 –12730 (D. Mass.).

### E.    The Stage of the Proceedings

The importance of this factor relates to whether the litigation has been fully developed enough for counsel and the Court to be able to evaluate the merits, with the "pertinent inquiry" being whether sufficient facts and information have been provided.  *Lucas*, 2021 WL 6733688 at *12.  Here, because Plaintiffs and Impax reached the proposed settlement literally as trial was starting, the litigation was necessarily fully developed and the parties had a voluminous record that allowed each side to scrutinize the strengths and weaknesses of the claims and defenses at issue and make an informed decision concerning settlement.  Accordingly, this factor weighs in favor of preliminary approval.

### F.    The Plan of Allocation Is Fair, Reasonable, and Adequate

The proposed Plan of Allocation, filed herewith as Exhibit 2 to the Gerstein Decl., would allocate the Net Settlement Fund on a *pro rata* basis based on Class members' weighted share of combined unit purchases of brand and generic Opana ER during the relevant time period.  The proposed Plan of Allocation is fair, reasonable, and efficient.  Similar plans of allocation have been repeatedly approved, and the proposed Plan of Allocation here should be approved as well.

 "The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."  *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001).[8]  "Federal courts have held that an allocation

---

[8] *See also Heekin v. Anthem, Inc*., 2012 WL 5472087, at *3 (S.D. Ind. Nov. 9, 2012) ("As with the approval of a settlement, courts must determine whether the plan for allocation of settlement funds is fair, reasonable, and adequate.") (citing *Summers v. UAL Corp. ESOP Comm*., 2005 WL 3159450, at *2 (N.D. Ill. Nov.22, 2005)).

plan that reimburses class members based on the extent of their injuries is generally reasonable." *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *13 (N.D. Ill. Dec. 20, 2017) (collecting cases).[9]

As set forth in the proposed Plan of Allocation and in the accompanying Declaration of Dr. Leitzinger, Exhibit 3 to the Gerstein Decl., the Net Settlement Fund will be distributed to Class members on a *pro rata* basis, calculated from each Claimant's weighted share of combined unit purchases of branded and generic Opana ER (extended-release oxymorphone hydrochloride) in 5, 10, 20, 30, and/or 40 mg tablets purchased directly from Endo or Impax.  *See* Plan of Allocation § 2.1; Leitzinger Allocation Decl. ¶ 5.[10]  Plans of allocation like this one that distribute settlement funds based on a *pro rata* share of purchases are routinely approved because they reflect the amount of relative damage allegedly sustained by each Class member.[11]

---

[9] See also *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.") (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.") (citing *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *17 (E.D. Pa. Aug. 14, 2006)); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (same) (internal quotation omitted).

[10] The purchase "unit" refers to a milligram (mg) of Opana ER.  So, for example, a 5mg branded Opana ER pill is 5 units and a 10mg pill is 10 units.

[11] 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 12.35, at 350 (4th ed. 2002) (noting that *pro-rata* allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"); *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) ("Given that the settlement funds in the instant action will be disbursed on a pro rata basis to all class members, we find that the allocation plan is reasonable and, thus, we grant Plaintiffs' motion for approval of the allocation plan."); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105-06 (D.N.J. 2018) ("In particular, *pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e] within a class based on the strength or weakness of the theories of recovery.") (citation and internal quotation marks omitted); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 ("Typically, a class recovery in antitrust or securities suits will divide the common fund on a *pro rata* basis among all who timely file eligible claims, thus leaving no unclaimed funds.") (quoting 3 Newberg on Class Actions, § 8:45 (4th ed. 2011)).

Settlements in antitrust cases, and pharmaceutical antitrust cases in particular, are commonly distributed to direct purchaser classes based on a purchaser's *pro rata* share.[12]

The Plan of Allocation ensures that each Claimant's *pro rata* share is proportionate to the overcharges they suffered. Leitzinger Allocation Decl. ¶ 8. According to Dr. Leitzinger's prior damages calculations served during the litigation for eventual use at trial, Class members suffered higher per-unit overcharges on branded Opana ER purchases than on generic Opana ER purchases.[13] Accordingly, the Plan of Allocation provides a method to ensure each type of purchase is given fair weight. Plan of Allocation § 2.3. According to Dr. Leitzinger's calculations, the average unit overcharge on generic Opana ER purchases is 40% of the average unit overcharge on brand Opana ER purchases. When calculating the weighted combined total of each Class member's (and Claimant's) brand and generic Opana ER unit purchases, a generic

---

[12] *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4883, ECF No. 1082 (N.D. Ill. Mar. 20, 2014) (ordering *pro rata* distribution of settlement funds); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666, ECF No. 703 (N.D. Ill. Apr. 16, 2014) (approving *pro rata* Plan of Allocation, as described in ECF No. 696, Ex. 1, ¶¶ 18-19); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 639173, at *4 (N.D. Ill. Aug.17, 1999) (approving *pro rata* distribution of funds in pharmaceutical antitrust settlement based on claimant's share of qualifying purchases of the drugs at issue); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 309 (S.D.N.Y. 2020) (same); *In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-02472, ECF No. 1462 (D.R.I. Sept. 1, 2020) (same); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, ECF No. 1179 (D. Mass. July 18, 2018) (same); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013) (same); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, ECF Nos. 1004-5, 1004-6, 1054 (N.D. Cal.) (same); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516, ECF Nos. 733-1, 739 (D. Conn.) (same); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*, No. 12-cv-3824, ECF Nos. 452-3, 665 (E.D. Pa.) (same); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340, ECF Nos. 536-1, 543 (D. Del.) (same); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *11 (D.N.J. Nov. 9, 2005) (same).

[13] This is because overcharges on brand purchases reflect the large difference between the price of the brand that was purchased and the much lower price of the generic that would have been purchased had the generic been available sooner, whereas overcharges on generic purchases reflect the smaller difference between the actual generic price and the lower but-for price of the generic had there been additional generic competition.

purchase unit is thus equivalent to .4 of a brand unit.[14]  Each Claimant's *pro rata* share of the Net Settlement Fund will then be determined by taking (a) each Claimant's weighted combined total net purchases of brand and generic Opana ER during the relevant period, (b) removing any purchases which the rights to damages have been assigned by agreement, and (c) dividing it by the weighted combined total purchases by all eligible Claimants.  Plan of Allocation § 2.4; Leitzinger Allocation Decl. ¶ 5.

The proposed Plan of Allocation is efficient and will ensure timely distribution of the settlement funds.  Using data produced by Defendants Endo and Impax in discovery, Dr. Leitzinger has already performed a preliminary computation of the percentage shares of the Net Settlement Fund due to each Class member.  Leitzinger Allocation Decl. ¶ 6.  Class members therefore will be provided pre-populated Claims Forms listing the amounts of their purchases of brand and generic Opana ER.  *Id.*  Under the proposed Plan of Allocation, the claims administrator, working with Dr. Leitzinger and his staff at Econ One Research, Inc. and with Plaintiffs' Counsel, will prepare and send these individualized claim forms to each member of the Class.  *Id.*  Claimants will have the option to submit their own purchase data, which will be reviewed by the claims administrator and Dr. Leitzinger before finalizing calculations to determine each Claimant's *pro rata* share.  *Id.* at ¶ 7.

Both Dr. Leitzinger and Plaintiffs' Counsel endorse the fairness of the Plan of Allocation. In Dr. Leitzinger's opinion, the proposed Plan of Allocation is fair, reasonable, and reflects the type and approximate extent of the injury alleged by Class members.  Leitzinger Allocation Decl. ¶ 8. ("[T]his method provides a fair and reasonable procedure, in my opinion, for distributing the Net Settlement Fund and reimbursing Claimants.  It reflects the type and approximate extent of

---

[14] Plan of Allocation § 2.3; Leitzinger Allocation Decl. ¶ 5.

their injury as alleged (according to my prior overcharge calculations) and does not

systematically favor recovery (relative to actual overcharges) on the part of potential Claimants

who purchased brand Opana ER or generic Opana ER.").  The Plan of Allocation was developed

in conjunction with Plaintiffs' Counsel and is highly recommended by Plaintiffs' Counsel, which

further supports approval.  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180

(S.D.N.Y. 2014) ("When evaluating the fairness of a Plan of Allocation, courts give weight to

the opinion of qualified counsel.").[15]

### G.    The Proposed Form and Manner of Notice Are Appropriate

#### 1.    Form of Notice

Under Rule 23(e), class members are entitled to reasonable notice of a proposed

settlement before it is finally approved by the Court, and to notice of the final Fairness Hearing.

*See* MANUAL FOR COMPLEX LITIGATION, § §§ 21.312, 21.633 (4th ed. 2005) ("MANUAL").  For

23(b)(3) classes, the court must "direct to class members the best notice that is practical under

the circumstances, including individual notice to all members who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  There are two components of notice: (1) the

form of the notice; and (2) the manner in which notice is sent to class members.

The proposed form of notice is based on the notice previously approved by this Court

(advising Class members that the Class had been certified, their right and deadline to opt out,

etc., ECF No, 768-1), and notices approved by courts in similar cases.  *See, e.g.*, *In re Namenda*

---

[15] *See also Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) ("When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable") (citation and internal quotation marks omitted); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (collecting cases) (internal quotations omitted); *accord In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019).

*Direct Purchaser Antitrust Litig.,* No. 1:15-cv-07488-CM-RWL, ECF No. 920, ¶ 7 (S.D.N.Y.) (approving form of notice); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC, ECF No. 1094-1, at Ex. B (D. Mass.) (notice); *id.* at ECF No. 1095, ¶¶ 6-9 (approving the form and manner of notice); *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO, ECF No. 1004-7 (N.D. Cal.) (notice); *id.* at ECF No. 1018, ¶¶ 6-9 (approving the form and manner of notice); *In re K-Dur Antitrust Litig.*, No. 01-cv-1652(SRC)(CLW), ECF No. 1044-5, at Ex. B (D.N.J.) (notice); *id.* at ECF No. 1045, ¶ 5 (approving form and manner of notice).

The proposed notice is designed to alert Class members to the proposed settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed settlement, including the nature of the action; the definition of the Class certified; the identity of the settling defendant (Impax); the significant terms of the proposed settlement including the total amount Impax has agreed to pay to the Class; that a Class member may object to all or any part of the proposed settlement and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the settlement proceeds; the final approval process for the proposed settlement and Plaintiffs' Counsel's request for attorneys' fees of up to 40% of the settlement (net of Court-approved reimbursed costs and expenses and service awards), reimbursement of all litigation expenses, and service awards to the named plaintiffs; the schedule for completing the settlement approval process, including the submission of the motion for final approval of the settlement, and the submission of the motion for attorneys' fees, expenses, and service awards to the named plaintiffs; and the binding effect of a final judgment on members of the Class. *See generally* Exhibit B to the Settlement Agreement.  In addition, the proposed

notice prominently features Plaintiffs' Counsel's contact information and directions to the firm

websites for Plaintiffs' Counsel where the settlement documents, proposed Plan of Allocation,

and supplemental information will be provided, as well as contact information for the Claims

Administrator (RG/2).

### 2. Manner of Notice

Plaintiffs propose to send notice by first-class United States mail to each Class member,

all of which are business entities. This is the same method that was used previously to provide

notice to the Class. *See* ECF No. 768. The list of Class members was drawn from Defendants'

electronic transactional sales data and/or are otherwise known to Plaintiffs' Counsel. In

circumstances in which all class members can be identified, the best method of notice is

individual notice. *See* MANUAL, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual

notice in 23(b)(3) actions be given to class members who can be identified through reasonable

effort."). Individual notice by first class mail has been recognized by the courts as appropriate.

*See, e.g., Lucas,* 2017 WL 6733688 at *15 (approving direct notice by mail to individual class

members); *In re: Herff Jones Data Breach Litig.*, 2017 U.S. Dist. LEXIS 236459 at *13-14 (S.D.

Ind. Jan. 12, 2017) (same). As discussed above, courts have approved similar notice plans in

similar generic suppression cases brought by direct purchasers. *See* Section F.1, *supra* (citing

*Solodyn*, *Lidoderm*, and *K-Dur* orders approving similar notice plans).

### 3. An Additional Opt-Out Period Is Unnecessary

While the Court has discretion to give members of a previously-certified class a second

chance to opt out, *see* Rule 23(e)(4), there is no requirement that it do so, as numerous courts

have recognized. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* 1996 WL

167347 at *3 (N.D. Ill. Apr. 4, 1996) ("We have found no authority of any kind suggesting that

due process requires…a second chance to opt out") (quoting *Officers For Justice v. Civil Service*

*Com'n*, 688 F.2d 615, 634-35 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (courts are under "no obligation" to afford class members a second opportunity for exclusion).

Because all Class members (all business entities) were informed about this case less than a year ago pursuant to Court-approved mailed individual notice, and were given the opportunity to opt out of the certified Class, and because all Class members will be provided the opportunity to object to the terms of the settlement and/or Plaintiffs' Counsel's request for attorneys' fees, expenses and service awards to the class representatives, Plaintiffs respectfully submit that no second opt-out period is necessary here. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, No. 1:15-cv-07488, ECF No. 920 (S.D.N.Y.), at ¶¶ 7-8 (no second opt out period necessary where class members previously had chance to opt out after class certified).[16]

### H. RG/2 Is an Appropriate Settlement Administrator

The Court previously appointed RG/2 as the Notice Administrator. ECF No. 751. Plaintiffs request that RG/2 now be appointed as the Claims Administrator. RG/2 will oversee the administration of the settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund in conjunction with Dr. Letizinger, and distributing Settlement proceeds.

---

[16] The Settlement Agreement includes a provision (sometimes referred to as a "blow provision") allowing Impax to terminate the Settlement Agreement if a second opt-out period is provided, and if Class members representing above a certain percentage of the total direct net unit purchases of brand and generic Opana ER purchases made during the Class period opt out. *See* Settlement Agreement, ¶ 4 (a). The agreed percentage is specified in a confidential supplemental agreement to the Settlement Agreement. The supplemental agreement is not being filed but Plaintiffs will submit it for *in camera* inspection should the Court wish to review it. *Cent. States Grp. v. AIG Glob. Inv. Corp. (In re Healthsouth Corp. Sec. Litig.)*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

## I. First State Trust Company Is an Appropriate Escrow Agent

Plaintiffs request that First State Trust Company serve as escrow agent, as it has done in prior class actions.  *See* Exhibit D to the Settlement Agreement (Escrow Agreement); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 1:15-cv-07488, ECF No. 920 (S.D.N.Y.), at ¶ 13 (appointing First State Trust Company as escrow agent).

## J. The Proposed Schedule Is Fair and Should Be Approved

Plaintiffs propose the following schedule for completing the settlement approval process:

- Within 10 days of filing of the Settlement Agreement and motion for preliminary approval, Impax shall serve notices pursuant to the Class Action Fairness Act of 2005 ("CAFA notices");

- Within 21 days from the date of preliminary approval, notice shall be mailed to each member of the Class;

- No later than 14 days before the expiration of the deadline for Class members to object to the settlement and/or attorneys' fees, expenses and service awards, Plaintiffs' Counsel will file all briefs and materials in support of the application for attorneys' fees, expenses and service awards;

- Within 45 days from the date that notice is mailed to each member of the Class, Class members may object to the settlement and/or attorneys' fees, expenses and incentive awards;

- No later than 21 days after the expiration of deadline for Class members to object to the settlement and/or attorneys' fees, expenses and service awards, Plaintiffs' Counsel will file all briefs and materials in support of final approval of the settlement; and

- On a date to be set by the Court no earlier than 90 days following Impax's service of the CAFA notices, and after the expiration of the deadline for Class members to file any objections, the Court will hold a final Fairness Hearing.

This schedule is fair to Class members since it provides ample time for consideration of the settlement and Plaintiffs' Counsel's request for fees, expenses and service awards before the deadline for submitting objections.  Specifically, Class members will have the notice for 45 days before the deadline to object to the settlement, and will have Plaintiffs' Counsel's request for

18

fees, expenses and incentive awards for two weeks before the deadline to object to Plaintiffs'

Counsel's request for fees, expenses and service awards.  In addition, the schedule allows the full

statutory period for Impax to serve its CAFA notices pursuant to 28 U.S.C. § 1715, and for

regulators to review the proposed Settlement and, if they choose, advise the Court of their view.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed

Order.


Dated:  July 19, 2022                          Respectfully Submitted:

/s/ *Andrew C. Curley*                           */s/ Bruce E. Gerstein*
David F. Sorensen                              Bruce E. Gerstein
Andrew C. Curley                               Jonathan M. Gerstein
BERGER MONTAGUE PC                             GARWIN GERSTEIN & FISHER, LLP
1818 Market Street, Suite 3600                 Wall Street Plaza
Philadelphia, PA  19103                        88 Pine Street, 10th Floor
T:  (215) 875-3000                             New York, NY  10005
F:  (215) 875-4604                             T:  (212) 398-0055
dsorensen@bm.net                               F:  (212) 764-6620
acurley@bm.net                                 bgerstein@garwingerstein.com
                                               jgerstein@garwingerstein.com

*Co-Lead Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2022, I caused the above to be filed by CM/ECF system.


Respectfully submitted,

/s/ *Bruce E. Gerstein*
Bruce E. Gerstein