# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION | MDL DOCKET NO. 2580<br>Lead Case No. 14-cv-10150 |
| This document relates to:<br>END-PAYOR ACTIONS | Hon. Harry D. Leinenweber |

**CLASS ACTION SETTLEMENT AGREEMENT BETWEEN**
**END-PAYOR PLAINTIFFS AND DEFENDANT IMPAX LABORATORIES, INC.**

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Effective Date, by and between Impax Laboratories, Inc. ("Impax" or "Settling Defendant") and Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund; Wisconsin Masons' Health Care Fund; Pennsylvania Employees Benefit Trust Fund; and International Union of Operating Engineers, Local 138 Welfare Fund, on behalf of themselves and on behalf of the certified End-Payor Classes (collectively "End-Payor Plaintiffs"), by and through their respective counsel.

## RECITALS

A. In the above-captioned lawsuit (hereinafter, the "Action"), End-Payor Plaintiffs alleged, among other things, that Impax, together with Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co. (collectively, "Endo"), entered into a contract, combination or conspiracy in restraint of trade, the purpose and effect of which was to

allocate and unreasonably restrain competition in the market for Opana ER and its AB-rated generic equivalents sold in the United States ("branded and generic versions of Opana ER") during the Class Period, in violation of various state antitrust, consumer protection, and unjust enrichment laws (the "Claims").

B. Impax denied and continues to deny all Claims alleged in the Action, or that could have been alleged in the Action, and asserted numerous defenses to those Claims.

C. This Settlement Agreement shall not be deemed or construed as an admission or evidence of a violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Impax or of the truth of any Claims or allegations, nor shall it be deemed or construed as an admission or evidence of Impax's defenses.

D. Co-Lead Counsel for the End-Payor Plaintiff Classes conducted a thorough investigation into the facts and law regarding the Action and the possible legal and factual defenses thereto and concluded that a settlement with Impax according to the terms set forth below is fair, reasonable, adequate, and in the best interests of the End-Payor Plaintiff Classes, given the uncertainties, risks, and costs of continued litigation.

E. Impax, despite its belief that it is not liable for, and has strong defenses to, End-Payor Plaintiffs' Claims, concluded that further litigation of the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and according to the terms and conditions set forth in this Agreement in order to avoid further expense, inconvenience, and disruption, and to dispose of the burden of litigation and trial, taking into account, among other things, the uncertainty and risks inherent in any litigation and trial, especially in a complex case such as this.

F. This Agreement is the result of vigorous and extensive arm's-length negotiations between End-Payor Plaintiffs' Co-Lead Counsel and Impax's Counsel.

G. The Parties to this Agreement desire to fully and finally settle all actual and potential Claims arising from or relating to the Action, and to avoid the costs and risks of protracted litigation and trial.

**NOW, THEREFORE, IT IS HEREBY AGREED**, by and among the undersigned on behalf of the Parties, that this Action and all Released Claims (as defined in Section I(18) below) are finally and fully settled and that this Action shall be dismissed entirely on the merits and with prejudice as to the Released Parties (as defined in Section I(19) below), and without costs to End-Payor Plaintiffs or Impax, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

## I. DEFINITIONS

1. "Classes" shall have the same meaning as the classes certified by the Court on June 4, 2021 (ECF No. 726), as amended by orders dated August 11, 2021 (ECF No. 746) and September 23, 2021 (ECF No. 752), which, for ease of reference, is defined herein as follows:

> **Antitrust/Consumer Protection Class:** All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018; and

> **Unjust Enrichment Subclasses:** All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the following states and commonwealths:

**Subclass 1**: Iowa, Michigan, Oregon, West Virginia

**Subclass 2**: Maine, New Mexico, Wisconsin

**Subclass 3**: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont

**Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah

**Subclass 5**: Arizona*, North Dakota

** With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all the purchase price of brand or generic Opana ER from June 4, 2011 through September 2018.*

**<u>Class/Subclass Exclusions</u>**:

(a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b) Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

(c) All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;

(d) All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;

(e) Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

(f) Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

(g) Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists");

(h) Consumers with copay insurance plans who purchased only generic versions of Opana ER (i.e., "generic-only copay consumers");

(i) Pharmacy Benefit Managers;

(j) All Counsel of Record; and

(k) The Court, Court personnel and any member of their immediate families.

2. "Class Member" means each member of the Classes that did not elect to be excluded from the Classes by December 6, 2021, in accordance with Fed. R. Civ. P. 23 and the Court's Order Granting End-Payor Plaintiffs' Motion to Appoint Notice Administrator and Approve Notice Plan (ECF No. 752).

3. "Class Notice" means the notice to the Classes that is approved by the Court, in accordance with Section II(D)(3) below.

4. "Co-Lead Counsel" means collectively DiCello Levitt Gutzler LLC and Freed Kanner London & Millen LLC.

5. "Court" or "District Court" means the United States District Court for the Northern District of Illinois and the Honorable Harry D. Leinenweber or his successor, or any other Court in which the Action is proceeding.

6. "Date the Settlement Becomes Final" means the date on which all rights of appeal expire after the Court enters an order granting final approval of this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(D)(6) below. If any appeal is taken from the Court's final approval of this Settlement Agreement, then the "Date the Settlement Becomes Final" means the date upon which any such appeal is resolved in favor of the Settlement Agreement and no further appellate rights exist.

7. "Defendant" or "Defendants" means any or all Defendants named in the Action, now or in the future.

8. "Effective Date" means the latest date on which this Settlement Agreement is executed by all Parties.

9. "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

10. "Escrow Agent" means Huntington National Bank into which the Settlement Fund was deposited and maintained as set forth in Section II(C) of this Agreement.

11. "Fairness Hearing" means a hearing held by the Court to determine whether the proposed settlement, as set forth in this Settlement Agreement, is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

12. "Named Plaintiffs" means the End-Payor Plaintiffs named in the Action, now or in the future.

13. "Net Settlement Fund" means the Settlement Fund, plus accrued interest, less any award of attorneys' fees, service awards for Named Plaintiffs, or reimbursement of expenses and less applicable taxes, tax preparation expenses, and costs of notice and administration, that may be awarded or approved by the Court.

14. "Order and Final Judgment" means the order and final judgment of the Court approving the Settlement Agreement, as described in Section II(D)(6) below.

15. "Parties" means Settling Defendant and the Settlement Classes, as represented by End-Payor Plaintiffs.

16. "Person(s)" includes an individual and an entity.

17. "Preliminary Approval Order" means the Court's order granting preliminary approval of this Settlement Agreement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as provided in Section II(D)(1) below.

18. "Released Claims" means any and all existing or potential causes of action, claims, suits, actions, contentions, allegations, assertions of wrongdoing, and demands, whether class, individual, or otherwise in nature and whether known or unknown, and any damages, liabilities, costs, losses, expenses, penalties, or fees of any kind and under any theory, whenever incurred and whether known or unknown, that directly or indirectly arise out of, relate to, or refer in any way to the conduct alleged in the Action, including, but not limited to, any and all claims that the Named Plaintiffs and each Class Member (on behalf of themselves and any person or entity claiming by or through them, including, without limitation, their respective predecessors, successors, assigns, and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their past, present, and future heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees) has, ever had, or may have against Impax or its predecessors, successors, assigns, and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and any and all of their past present, and future heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, or assignees that, whether directly or indirectly and whether known or unknown, arise from, relate to, or refer in any way to any act or omission alleged or that could

have been alleged in the Action, no matter when accrued (up to the date of the Settlement Agreement). This Settlement is not intended to release any claims: (1) arising in the ordinary course of business between Impax and the End-Payor Plaintiffs or members of the End-Payor Plaintiffs Classes arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; (2) arising out of or in any way relating to any alleged horizontal price-fixing, market allocation, or customer allocation agreement between or among manufacturers of generic pharmaceutical products, including but not limited to Impax, including claims alleged in *In re: Generic Pharmaceuticals Pricing Antitrust Litig.,* MDL No 2724, 16-MD-2724 (E.D. Pa.); and (3) of any sort that do not relate specifically to brand or generic Opana ER.

19. "Released Parties" means jointly and severally, individually and collectively, the Settling Defendant, its predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their past, present, and future heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners, members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

20. "Releasing Parties" means jointly and severally, individually and collectively, End-Payor Plaintiffs, the Classes, and each Class Member, on behalf of themselves and any person or entity claiming by or through them, including without limitation, their respective predecessors; successors; assigns; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments, and affiliates, and all of their past, present and future heirs, executors, devisees, administrators, officers, executives, directors, stockholders, partners,

members, agents, attorneys, advisors, auditors, accountants, contractors, servants, employees, representatives, insurers, and assignees.

21. "Settlement Amount" means the cash payment of $15,000,000.00 described in Section II(A)(1), below.

22. "Settlement Fund" means the funds described in Section II(A)(1) of this Settlement Agreement, plus earned interest pursuant to Section II(C)(5) of this Agreement, in the separate Escrow Account for the settlement contemplated by this Settlement Agreement established in accordance with Section II(C) below.

23. "Settling Defendant" means Impax.

24. "Settling Defendant's Counsel" means the law firm of Kirkland & Ellis LLP.

## II. SETTLEMENT

### A. Performance by Settling Defendant

1. **Settlement Payment**. Settling Defendant agreed to pay $15 million ($15,000,000.00) in United States dollars, all in cash, as the Settlement Amount in settlement of the Action, inclusive of Class recovery amounts, fees (including attorneys' fees, service awards for Named Plaintiffs, and any other fees), and costs, within fourteen (14) business days of June 15, 2022. This Settlement Amount was paid by Settling Defendant into the Escrow Account described herein on July 6, 2022. If the Court refuses to preliminarily approve the Settlement Agreement for any reason other than that the Settlement is not fair, reasonable or adequate, the Parties agree to confer in good faith to resolve the issue to the Parties' mutual agreement, and after such mutual agreement and the Court's preliminary approval of the Settlement Agreement as modified, implement the terms of this Settlement Agreement.

2. If the Court denies approval of the settlement, or approval is not upheld on appeal, in either case for any reason other than that the Settlement is not fair, reasonable or adequate, and the Parties are unable to resolve the issue to their mutual agreement, all funds in escrow (with accrued interest) shall be returned to Impax within fourteen (14) business days less any funds already incurred on settlement administration costs.

3. The payment described in Section II(A)(1) shall constitute the total Settlement Amount.

4. The Releasing Parties shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all Released Claims for which the Released Parties are released by the Releasing Parties pursuant to this Agreement.

**B. Release of Claims.**

1. **Release**. Upon the occurrence of the Date the Settlement Becomes Final, and in consideration of the valuable consideration set forth in this Agreement, the Releasing Parties shall be deemed to, and by operation of the Order and Final Judgment shall have, hereby fully, finally, and forever released, relinquished, and discharged the Released Parties of all Released Claims.

2. **Covenant Not to Sue.** The Releasing Parties covenant not to sue or otherwise seek to establish liability against the Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of or relating to the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Section shall not apply to any action to enforce this Settlement Agreement.

3. **Full Release.** The Parties to this Agreement expressly agree and confirm that the Released Claims as set forth in Section I(18) and the provisions of Section II(B) constitute a full and final release of the Released Parties by the Releasing Parties of the Released Claims.

4. **Waiver.** Upon the Date the Settlement Becomes Final, the Releasing Parties shall be deemed to have, and by operation of the Order and Final Judgment shall have, with respect to the subject matter of the Released Claims, waived the provisions, rights, and benefits of Section 1542 of the California Civil Code and which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties shall further be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived all similar provisions, statutes, regulations, rules, or principles of law or equity of any other state or applicable jurisdiction, or principle of common law. In connection with the waiver and relinquishment set forth in this Section II(B), the Releasing Parties release fully, finally, and forever all Released Claims against the Released Parties, and, upon the Date the Settlement Becomes Final, shall be deemed to have, and by operation of the Order and Final Judgment, shall have, fully, finally, and forever settled and released any and all Released Claims against the Released Parties. The Releasing Parties, by operation of the Order and Final Judgment, acknowledge that the foregoing waiver was separately bargained for and a key element of this Settlement Agreement.

**C. Settlement Fund Administration.** The Settlement Fund shall be administered pursuant to the provisions of this Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed, as follows:

1. The Settlement Fund has been established within an Escrow Account and administered by an Escrow Agent at Huntington National Bank.

2. Upon the Court's Preliminary Approval Order, Co-Lead Counsel may, without prior order of the Court, withdraw from the Settlement Fund up to $500,000 to pay for expenses associated with providing notice of the settlement to the Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in connection with taxation matters. For purposes of clarification, such costs, fees, and expenses related to providing notice to the Classes shall be paid exclusively from the Settlement Fund. Any expenses associated with providing notice of the settlement to the Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in connection with taxation matters paid or incurred shall be nonrefundable if, for any reason, the Settlement Agreement is not finally approved, is terminated, or otherwise fails to become effective.

3. Under no circumstances will Settling Defendant be required to pay more or less than the Settlement Amount pursuant to this Agreement and the settlement set forth herein, provided the Settlement Agreement is finally approved.

4. No other funds shall be paid, or disbursements made, from the Settlement Fund without an order of the Court.

5. All payments into the Escrow Account shall, at the direction of Co-Lead Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof,

including a U.S. Treasury Fund or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government. Any interest earned on any of the foregoing shall become part of the Settlement Fund. Impax shall have no responsibility for, or liability in connection with, the Settlement Fund or Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

6. The Parties agree that the Settlement Fund is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. Upon written request, Impax shall provide to Co-Lead Counsel the statement described in Treasury Regulation §1.468B-3(e). Co-Lead Counsel shall cause the administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3) to timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation §1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. The Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Settlement Fund in this manner. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Parties further agree that Co-Lead Counsel shall cause the timely and proper preparation and delivery of any necessary tax documentation for signature by all necessary parties and the timely filing of all tax returns and other tax reports required by law including the filing for the

"relation-back election" (as defined in Treas. Reg. § 1.468B l(j)). Co-Lead Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Section II(C)(7), and the expense of such assistance shall be paid from the Settlement Fund by the Escrow Agent at Co-Lead Counsel's direction. Neither the Settling Defendant nor the Settling Defendant's Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any Taxes (as defined below) with respect to the Settlement Fund or Escrow Account. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Settling Defendant. Settling Defendant shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

7. All (i) federal, state, or other taxes (including estimated taxes, interest or penalties) on the income of the Settlement Fund ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) shall timely be paid by the Escrow Agent out of the Settlement Fund. Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the Settlement Agreement provided herein. Settling Defendant shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay Taxes on any income earned by the Settlement Fund, or to pay any Taxes with respect thereto. For the avoidance of doubt, Settling Defendant shall have no responsibility for the payment of any Taxes or tax-related expenses. If, for any reason, for any period of time, Settling Defendant is required to pay Taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Settling Defendant with notice to Co-Lead Counsel, timely pay to Settling

Defendant sufficient monies from the Settlement Fund to enable it to pay all Taxes on income earned by the Settlement Fund.

8. After the Date the Settlement becomes Final, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from the Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Co-Lead Counsel. The plan of distribution is not a necessary term of the Settlement Agreement, and it is not a condition of the Settlement Agreement that any particular plan of distribution be approved by the Court. Settling Defendant shall not object in any way to the plan of distribution and have no responsibility therefor.

**D. Approval of Settlement Agreement and Dismissal of Claims.**

1. **Preliminary Approval**. End-Payor Plaintiffs shall submit to the District Court a motion requesting entry of an order preliminarily approving the Settlement Agreement substantially in the form attached as Exhibit A hereto ("Preliminary Approval Order"). Settling Defendant shall take no position with respect to such motion. The proposed Preliminary Approval Order shall provide that, *inter alia*:

a. the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Classes;

b. the proposed Class Notice meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances for settlement purposes;

c. after Class Notice has been carried out, a Fairness Hearing on the settlement proposed in this Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair,

reasonable, and adequate, and whether it should be finally approved by the Court;

d. Class Members who wish to object to this Settlement Agreement must submit a valid and timely written statement of the grounds for objection; and

e. Class Members who wish to appear in person to object to this Settlement Agreement may do so at the Fairness Hearing pursuant to directions by the Court.

2. **Opt-Out.** The End-Payor Plaintiffs will recommend to the Court that a second, discretionary opt-out period pursuant to Rule 23(e)(4) is unnecessary. In the event such a second opt-out period is allowed, simultaneously herewith, the End-Payor Plaintiffs, by and through Co-Lead Counsel, and Settling Defendant are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be withdrawn or terminated at the sole discretion of Settling Defendant if potential Class Members who meet certain criteria exclude themselves from the Settlement Class. The Supplemental Agreement shall not be filed with the Court except that the substantive contents of the Supplemental Agreement may be brought to the attention of the Court, *in camera*, if so requested by the Court or as otherwise ordered by the Court. The Parties will keep the terms of the Supplemental Agreement confidential, except if compelled by judicial process to disclose the Supplemental Agreement. In the event of a withdrawal from this Settlement Agreement pursuant to the Supplemental Agreement, this Settlement Agreement shall become null and void and of no further force and effect, and the Parties shall revert to their respective status as of June 15, 2022, with all substantive and procedural claims and defenses that might be available to them. In the event the Settlement Agreement is terminated, the provisions of Sections II(D)(4), II(D)(7)(e), and II(D)(9)(b) shall survive termination. Notwithstanding the foregoing, this Settlement Agreement shall not become null and void as a result of the election by Settling Defendant to exercise its right to withdraw from the Settlement pursuant to the

Supplemental Agreement until the conditions set forth in the Supplemental Agreement have been satisfied.

3. **Class Notice.** Upon preliminary approval of the Settlement, Class Counsel shall provide notice to the Classes substantially in the form(s) attached as Exhibit B hereto. Co-Lead Counsel will recommend notice to the Classes according to the Notice Plan submitted by the Claims and Notice Administrator which shall provide the best notice practicable.

4. **Cost of Class Notice**. The costs of providing Class Notice to Class Members shall be paid by the Escrow Agent from the Settlement Fund pursuant to Sections II(C)(2). In the event that the Settlement Agreement is terminated pursuant to the terms of this Settlement Agreement, or the Supplemental Agreement described in Section II(D)(2), costs of notice and administration incurred, paid, or payable, including any related fees, shall not be returned or repaid to Settling Defendant, its insurance carriers, or any other person or entity who or which funded the Settlement Amount.

5. **CAFA Notice.** In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), Settling Defendant will provide notice to the appropriate state and federal officials.

6. **Final Approval**. If this Settlement Agreement is preliminarily approved by the Court, End-Payor Plaintiffs shall submit a motion for final approval of this Settlement by the Court, after appropriate notice to the End-Payor Classes, and shall seek entry of an Order and Final Judgment substantially in the form attached as Exhibit C hereto. Settling Defendant shall take no position with respect to such motion. End-Payor Plaintiffs shall seek entry of an Order and Final Judgment that, *inter alia:*

a. finally approves this Settlement Agreement as being fair, reasonable, and adequate as to and in the best interests of the Classes

within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms and conditions;

b. determines that the Class Notice constituted, under the circumstances, the most effective and practicable notice of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Class Members;

c. orders that all Claims made against the Settling Defendant in the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without further costs or fees;

d. incorporates the release set forth in this Settlement Agreement such that the Releasing Parties release the Released Parties of the Released Claims as of the date of the Order and Final Judgment;

e. reserves to the Court exclusive jurisdiction over this Settlement Agreement, including the administration and consummation of this Agreement;

f. determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to the Released Parties shall be final and entered forthwith; and

g. orders that settlement funds may be disbursed as provided in the Order and Final Judgment or other order of the Court.

7. **Class Counsel Fees and Expenses; No Other Costs.**

a. Except as otherwise provided in this Settlement Agreement, Settling Defendant shall have no responsibility for any other costs, including End-Payor Plaintiffs' attorneys' fees, costs, and expenses or the fees, costs, or expenses of any End-Payor Plaintiffs, Class Members, or Class Member's respective attorneys, experts, advisors, or representatives; provided, however, that with respect to the Action, including this Settlement Agreement, Settling Defendant shall bear its own costs and attorneys' fees.

b. At their discretion and after proper notice to the Classes and opportunity to object, Co-Lead Counsel may seek a court order granting attorneys' fees and expenses from the Settlement Fund, separately or in conjunction with other settlements.

c. At their discretion and after proper notice to the Classes and opportunity to object, Co-Lead Counsel may seek from the Settlement Fund, separately or in conjunction with other settlements, a court order granting reimbursement of costs or service awards for the work Named Plaintiffs performed on behalf of the Classes, and to compensate for the time and expense they have incurred in bringing this Action.

d. The procedure for the approval by the Court of any applications by Co-Lead Counsel for attorneys' fees and expenses or the expenses of or service awards to Named Plaintiffs to be paid out of the Settlement Fund are not part of or a condition to the settlement set forth herein, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement Agreement, and any order or proceeding relating to any application for attorneys' fees or expenses shall not operate to terminate or cancel this Agreement or the releases set forth herein, or affect or delay the finality of the judgment approving this Settlement Agreement.

e. Within fifteen (15) calendar days after any order by the Court awarding attorneys' fees, expenses, Named Plaintiffs' service awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service awards via wire transfer from the Settlement Fund as directed by Co-Lead Counsel. In the event the Court's approval of this Settlement Agreement is reversed on appeal, or the amount of any distributions pursuant to Court orders (including but not limited to orders with respect to attorneys' fees, costs, or service awards) is reduced on appeal, Co-Lead Counsel shall, within thirty (30) days of such appellate order, cause the difference in the amount paid and the amount awarded on appeal to be returned to the Settlement Fund. In the event Settling Defendant terminates the Settlement Agreement pursuant to the Supplemental Agreement defined in Section II(D)(2), Co-Lead Counsel shall, within thirty

(30) days of such termination, make the appropriate refund or repayment after the notice of termination.

8. **When Settlement Becomes Final**. This Settlement Agreement shall become final on the later of the dates that: (a) the Court has entered the Order and Final Judgment approving this Settlement Agreement, in accordance with Section II(D)(6) under Rule 23(e) of the Federal Rules of Civil Procedure, and dismissed the Action as against the Settling Defendant with prejudice as to all Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of the order of Final Judgment, as described in Section II(D)(6), has expired with no appeal having been filed or, if appealed, approval of this Settlement Agreement and the Order and Final Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

9. **Termination.**

a. **Rejection or Alteration of Settlement Terms.** If the Court declines to grant either preliminary or final approval to this Settlement Agreement or any material part hereof (as set forth in Sections II(D)(1) or (D)(6), respectively), or if the Court approves this Settlement Agreement in a materially modified form, or if after the Court's approval, such approval is materially modified or set aside on appeal, or if the Court does not enter the Order and Final Judgment, or if the Court enters the Order and Final Judgment and appellate review is sought and on such review such Order and Final Judgment is not affirmed (each, individually, a "Triggering Event"), then Settling Defendant and End-Payor Plaintiffs shall each, in their respective sole discretion, have the option to terminate this Settlement Agreement by providing written notice of their election to do so ("Termination Notice") to each other within thirty (30)

calendar days of any such Triggering Event. For purposes of this Section II(D)(9)(a), a material modification includes, but is not limited to, any modification to the settlement payment or to the scope of the release pursuant to Sections I(18), I(19), I(20), and II(B).

b. **Termination of Settlement.** In the event this Settlement Agreement is terminated pursuant to this Section II(D)(9) or the Supplement Agreement defined in Section II(D)(2), then: (i) within fifteen (15) business days of such termination, the Settlement Fund—including accrued interest, less taxes and tax expenses that have been paid or that have accrued and will be payable at some later date, and less expenses and costs that have been disbursed pursuant to Section II(C)(2)—shall be refunded by the Escrow Agent to the Settling Defendant pursuant to written instructions from Settling Defendant's Counsel to Co-Lead Counsel; (ii) the Parties shall be deemed to have reverted to their respective status in the Action as of June 15, 2022, and without waiver of any positions asserted in the Action as of June 15, 2022, with all substantive and procedural claims and defenses that might be available to them, and without having deemed adopted or accepted any part of this Settlement Agreement for purposes of the Action, which shall then resume proceedings in the District Court, that Court having retained jurisdiction over the Settlement Agreement and related matters and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed. Settling Defendant shall have no rights to reversion of the Settlement Fund, except as provided in this Section II(D)(9) of this Settlement Agreement.

10. **No Admission**.

a. Nothing in this Settlement Agreement constitutes an admission by Settling Defendant as to the merits of the allegations made in the Action, or an admission by End-

Payor Plaintiffs or the Classes of the validity of any defenses that have been or could be asserted by Settling Defendant.

b. This Settlement Agreement, and any of its terms, and any agreement or order relating thereto, shall not be deemed to be, or offered by any of the Parties to be received in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as, a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any of the Settling Defendant or other Released Parties; provided, however, that nothing contained in this Section II(D)(10)(b) shall prevent this Settlement Agreement from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement Agreement or the Order and Final Judgment, or in which the reasonableness, fairness, or good faith of any Party participating in the Settlement Agreement (or any agreement or order relating thereto) is in issue, or to enforce or effectuate provisions of this Settlement Agreement or the Order and Final Judgment. This Settlement Agreement may, however, be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence, including but not limited to Settling Defendant filing the Settlement Agreement and/or the Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, waiver, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## III. MISCELLANEOUS

**A. Entire Agreement**. This Settlement Agreement, together with the Supplemental Agreement, shall constitute the entire agreement between End-Payor Plaintiffs and Settling Defendant pertaining to the settlement of the Action against Settling Defendant and supersedes

any and all prior and contemporaneous undertakings of the End-Payor Plaintiffs and Settling Defendant in connection therewith. All terms of the Settlement Agreement are contractual and not mere recitals.

**B. Inurement**. The terms of the Settlement Agreement are and shall be binding upon, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties, Releasing Parties, or Released Parties, including any Class Members.

**C. Modification**. This Settlement Agreement may be modified or amended only by a writing executed by the End-Payor Plaintiffs and Settling Defendant, subject (if after preliminary or final approval) to approval by the Court. Amendments and modifications may be made without notice to the Classes unless notice is required by law or by the Court.

**D. Drafted Mutually**. For the purpose of construing or interpreting this Settlement Agreement, the Classes and Settling Defendant shall be deemed to have drafted it equally, and it shall not be construed strictly for or against any party.

**E. Governing Law**. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Illinois without regard to its choice-of-law or conflict-of-law principles.

**F. Jurisdiction**. This Settlement Agreement is subject to the continuing and exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. If for any reason this Settlement Agreement is terminated, or fails to become effective, then, in such event, nothing in this Settlement Agreement or with regard to any conduct of Settling Defendant or Settling Defendant's Counsel pursuant to any

obligation Settling Defendant has pursuant to the Agreement shall constitute or are intended to be construed as any agreement to personal jurisdiction (general or specific) or subject matter jurisdiction so as to confer the jurisdiction of the District Court over Settling Defendant, nor shall it constitute any waiver of any defenses based on personal or subject matter jurisdiction.

**G. Counterparts**. This Settlement Agreement may be executed in counterparts by End-Payor Plaintiffs' Co-Lead Counsel and Settling Defendant's Counsel, each of which shall be deemed an original and all of which taken together shall constitute the same Settlement Agreement. A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

**H. Represented by Counsel**. End-Payor Plaintiffs, the Classes, and Settling Defendant acknowledge that each have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so and are not relying on any representation or warranty by the other party other than as set forth herein. Therefore, the Parties and their respective counsel agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake.

**I. Authorization**. Subject to Court approval, the undersigned Co-Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of End-Payor Plaintiffs and the Settlement Classes; and the undersigned Settling Defendant's Counsel represent that they are authorized to execute the Settlement Agreement on behalf of Settling Defendant.

**J. Privilege.** Nothing in this Settlement Agreement or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the accountants' privilege, the attorney-client privilege, the joint defense privilege, or work product immunity.

**K. Notice.** Any notice required pursuant to or in connection with this Settlement Agreement shall be in writing and shall be given by: (1) hand delivery; (2) registered or certified mail, return receipt requested, postage prepaid; or (3) UPS or similar overnight courier, addressed, in the case of notice to any End-Payor Plaintiff or Class Member, to Co-Lead Counsel at their addresses set forth below, and, in the case of notice to Settling Defendant, to their representative at the address set forth below, or such other address as Settling Defendant or Co-Lead Counsel may designate, from time to time, by giving notice to all Parties in the manner described in this Section III(K). In addition, any notice must also be given electronically to Co-Lead Counsel or counsel for Settling Defendant at their respective email addresses listed below.

For Plaintiffs:

Gregory S. Asciolla
DICELLO LEVITT GUTZLER
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel: (646) 933-1000
gasciolla@dicellolevitt.com

Robert Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521
rwozniak@fklmlaw.com

For Settling Defendant:

Devora W. Allon, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
devora.allon@kirkland.com

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the Effective Date.

Dated: July 19, 2022

____________________________
Gregory S. Asciolla

Gregory S. Asciolla
Karin E. Garvey
Matthew J. Perez
**DICELLO LEVITT GUTZLER LLC**
One Grand Central Place
60 East 42nd Street
New York, NY 10165
Tel: (646) 933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com
mperez@dicellolevitt.com

____________________________
Robert J. Wozniak

Michael J. Freed
Robert J. Wozniak
Brian M. Hogan
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, #130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521
mfreed@fklmlaw.com
rwozniak@fklmlaw.com
bhogan@fklmlaw.com

***Co-Lead Counsel for End-Payor Plaintiffs and the Classes***

Dated: July 19, 2022

____________________________
Devora W. Allon, P.C.

Devora W. Allon, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
devora.allon@kirkland.com

***Counsel for Defendant Impax Laboratories, Inc.***

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION | MDL DOCKET NO. 2580 |
| | Lead Case No. 14-cv-10150 |
| This document relates to: END-PAYOR ACTIONS | Hon. Harry D. Leinenweber |

**[PROPOSED] ORDER PRELIMINARILY APPROVING END-PAYOR CLASS PLAINTIFFS' SETTLEMENT WITH DEFENDANT IMPAX LABORATORIES, INC.**

WHEREAS, on July 19, 2022, Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund; Wisconsin Masons' Health Care Fund; Pennsylvania Employees Benefit Trust Fund; and International Union of Operating Engineers, Local 138 Welfare Fund (collectively, "End-Payor Plaintiffs"), on behalf of themselves and on behalf of the certified End-Payor Plaintiff Classes (the "End-Payor Classes"), and Defendant Impax Laboratories, Inc. ("Impax") entered into a settlement agreement, which sets forth the terms and conditions of the parties' proposed settlement and the release and dismissal with prejudice of the End-Payor Classes' claims against Impax (the "Impax Settlement").

WHEREAS, on August ___, 2022, End-Payor Plaintiffs filed a Motion for Preliminary Approval of the Proposed Class Action Settlement with Impax, requesting the entry of an Order (i) preliminarily approving the Impax Settlement; (ii) staying End-Payor Plaintiffs' litigation against Impax; (iii) approving the Notice Plans and Long and Short Form Notices; (iv)

appointing A.B. Data, Ltd. as Claims and Notice Administrator; (v) appointing The Huntington National Bank to serve as Escrow Agent; (vi) approving the plan of allocation; and (vii) setting a schedule for final approval of the Impax Settlement;

WHEREAS, Impax does not oppose the End-Payor Plaintiffs' Motion; and

WHEREAS, the Court is familiar with and has reviewed the record in this case and the Impax Settlement, and has found good cause for entering the following Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**JURISDICTION**

1. This Court has jurisdiction to enter this Order. The Court has jurisdiction over the subject matter of this action and over Impax and End-Payor Plaintiffs, including all members of the Classes.

**PREVIOUSLY CERTIFIED CLASSES**

2. Given the Court's previous order dated June 4, 2021, certifying the Classes (ECF No. 741) pursuant to Fed. R. Civ. P. 23(a) and (b)(3), as amended by orders dated August 11, 2021, and September 23, 2021 (ECF Nos. 746, 752), the Classes in the Impax Settlement are defined as follows:

> **Antitrust/Consumer Protection Class:** All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018; and

> **Unjust Enrichment Subclasses:** All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or

40 mg sold by Defendants, other than for resale, in the following states and commonwealths:

**Subclass 1**: Iowa, Michigan, Oregon, West Virginia

**Subclass 2**: Maine, New Mexico, Wisconsin

**Subclass 3**: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont

**Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah

**Subclass 5**: Arizona*, North Dakota

** With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all the purchase price of brand or generic Opana ER from June 4, 2011 through September 2018.*

3. The following persons or entities are excluded from the End-Payor Classes:

(a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b) Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

(c) All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;

(d) All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;

(e) Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

(f) Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

(g) Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists");

(h) Consumers with copay insurance plans who purchased only generic versions of Opana ER (i.e., "generic-only copay consumers");

(i) Pharmacy Benefit Managers;

(j) All Counsel of Record; and

(k) The Court, Court personnel and any member of their immediate families.

In addition, people who or entities that submitted a valid exclusion request before the December 6, 2021 exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

**PRELIMINARY APPROVAL OF SETTLEMENT**

4. The terms of the Impax Settlement, dated July 19, 2022, are hereby preliminarily approved. This Order incorporates the Impax Settlement and terms used in this Order that are defined in the Impax Settlement have the same meanings. The Impax Settlement was entered into after full fact and expert discovery, class certification (including a Rule 23(f) petition), summary judgment and Daubert motions, and five (5) days of trial. The Court finds that the Impax Settlement was concluded after arm's-length negotiations by experienced counsel on behalf of the End-Payor Classes. Accordingly, the Court preliminarily finds that the Impax Settlement is fair, reasonable, and adequate, and in the best interests of the End-Payor Classes, and that preliminary approval under Federal Rule of Civil Procedure 23 is warranted.

5. Huntington Bank is hereby appointed as Escrow Agent pursuant to the Impax Settlement.

6. The Court approves the establishment of the Settlement Fund under the Settlement Agreement as a qualified settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration

of the QSF. Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

7. A.B. Data is hereby appointed as Claims and Notice administrator.

8. Pending further Order of the Court, all litigation activity against Impax on behalf of the Classes is hereby stayed, and all hearings, deadlines, and other proceedings related to the End-Payor Plaintiffs' claims against Impax, other than those incident to the settlement process, are hereby taken off the Court's calendar. The stay shall remain in effect until such time that (i) the Impax or End-Payor Plaintiffs exercise their right to terminate the Impax Settlement pursuant to its terms; (ii) the Impax Settlement is terminated pursuant to its terms; or (iii) the Court renders a final decision regarding approval of the Impax Settlement, and if it approves the Impax Settlement, enters final judgment and dismisses End-Payor Plaintiffs' claims against Impax with prejudice. Impax shall not be party to the ongoing proceedings in this case, and Impax is neither bound nor estopped by any findings made hereafter.

9. In the event that the Impax Settlement fails to become effective in accordance with its terms, or if an Order granting final approval to the Impax Settlement and dismissing End-Payor Plaintiffs' claims against Impax with prejudice is not entered or is reversed, vacated, or materially modified on appeal, this Order shall be null and void.

10. In the event the Impax Settlement is terminated, not approved by the Court, or the Impax Settlement does not become final pursuant to the terms of the Impax Settlement, litigation against Impax shall resume in a reasonable manner as approved by the Court upon joint application of the End-Payor Plaintiffs and Impax.

## APPROVAL OF NOTICE, CLAIMS, AND ALLOCATION PLAN

11. The Court finds that the plan for distributing notice of the Impax Settlement to the End-Payor Classes satisfies the requirements of Fed. R. Civ. P. 23(e)(1) and due process and is a reasonable manner of distributing notice to class members who would be bound by the Impax Settlement.

12. The Court approves the Long- and Short-Form Notices (as well as the Third-Party Payor Postcard Notice, which will contain the same text as the Short-Form Notice) attached as Exhibit B to the Impax Settlement and as Exhibits C and D to the Declaration of Linda V. Young filed concurrently with End-Payor Plaintiffs' Motion. A.B. Data may modify the form and/or content of the targeted advertisements and banner notices as it deems necessary and appropriate to maximize their impact and reach, as long as those modifications substantially comport with the Notices attached to the Declaration of Linda V. Young.

13. The Court approves the claim forms attached as Exhibits C and D to the Declaration of Linda V. Young as fair, reasonable, and adequate.

14. Defendant shall provide notice of the Impax Settlement as required by 28 U.S.C. § 1715.

15. The Court finds that the Plan of Allocation is fair, reasonable, and adequate.

## APPROVAL OF SCHEDULE

16. A.B. Data and End-Payor Plaintiffs shall adhere to the following schedule:

a. Within five (5) days of the date of this Order, A.B. Data shall update the Class website (www.opanaerantitrustlitigation.com) to announce the Impax Settlement.

b. Within fourteen (14) days of the date of this Order, A.B. Data shall begin the process of providing notice to the End-Payor Classes of the Impax Settlement, in accordance with the Plan of Notice.

c. A.B. Data shall complete publication of the Notice of Settlement by ________, 2022.

d. Members of the End-Payor Classes may object to the Impax Settlement not later than ___________, 2022.

e. Class Members who wish to object to the proposed Impax Settlement and/or appear in person at the hearing on final approval of the settlement (the "Fairness Hearing") must first send an objection and, if intending to appear, a notice of intention to appear, along with a summary statement outlining the position(s) to be asserted and the grounds therefore, together with copies of any supporting papers or briefs, via first class mail, postage prepaid, to the Clerk of the U.S. District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, with copies to the following counsel:

Co-Lead Counsel for the End-Payor Classes:

Gregory S. Asciolla
DICELLO LEVITT GUTZLER LLC
One Grand Central Place
60 East 42nd Street, Suite 2400
New York, NY 10165
Tel: (646) 933-1000
gasciolla@dicellolevitt.com

Robert Wozniak
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521

rwozniak@fklmlaw.com

For Settling Defendant:

Devora W. Allon, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
devora.allon@kirkland.com

The objection and/or notice of intention to appear shall state that they relate to *In re Opana ER Antitrust Litigation*, 14-cv-10150 (N.D. Ill.). To be valid, any such objection to the Impax Settlement and/or notice of intention to appear must be postmarked no later than _______, 2022, and it must include the class member's name, address, telephone number, and signature. Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed Impax Settlement. All persons and entities who fail to file a notice of intention to appear or a letter stating reasons for objecting as provided above shall be deemed to have waived any objections by appeal, collateral attack, or otherwise and will not be heard at the Fairness Hearing.

f. All briefs and materials in support of final approval of the Impax Settlement and entry of final judgment proposed by the parties to the Impax Settlement shall be filed with the Court no later than thirty (30) days before the date of the Fairness Hearing.

g. A hearing on final approval of the Impax Settlement shall be held before this Court on ___________ at ____ Central Time, in Courtroom 1941 of the U.S. District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

17. Neither this Order nor the Impax Settlement nor any other Settlement-related document or anything contained herein or therein or contemplated hereby or thereby nor any

proceedings undertaken in accordance with the terms set forth in the Impax Settlement or herein or in any other Settlement-related document shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Impax as to the validity of any claim that has been or could have been asserted against Impax or as to any liability of Impax or as to any matter set forth in this Order.

**SO ORDERED**

Dated: __________, 2022

______________________________
Harry D. Leinenweber
United States District Judge

# EXHIBIT B1

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

**If you paid for or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release),**

***You Could Get a Payment from a Class Action Lawsuit. A Federal Court ordered this Class Notice.***

***YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT, SO PLEASE READ THIS NOTICE CAREFULLY.***

*This is not a solicitation from a lawyer. You are not being sued.*

The purpose of this Notice is to alert you of a proposed partial settlement in a lawsuit (the "Lawsuit") brought by consumers and third-party payors ("End Payors") who indirectly purchased, paid for, and/or reimbursed for some or all of the purchase price for brand or generic Opana ER against Impax Laboratories, Inc. ("Impax") and Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co. (collectively, "Endo," and, together with Impax, "Defendants"). The proposed settlement only concerns End Payors' claims against Impax.

No one is claiming the drugs at issue are unsafe. Rather the Lawsuit alleges that Defendants violated certain state antitrust, consumer protection, and unjust enrichment laws, harming competition and causing Class Members to overpay for Opana ER products. Specifically, End Payors allege that in June 2010, Endo and Impax entered into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. Absent the alleged reverse payment agreement, End Payors claim that Impax would have launched its generic version of Opana ER earlier than January 2013 and that Endo would have launched an authorized generic version of Opana ER at or about the same time as Impax launched its generic product. End Payors allege that the prices of brand and generic versions of Opana ER sold by Defendants were higher than they would have been absent the alleged unlawful conduct, causing drug purchasers to overpay for brand and generic Opana ER. Defendants deny all these allegations, that they violated any law, or that End Payors or the Classes, as defined below, are entitled to damages or any relief. Defendants have denied any wrongdoing. After Plaintiffs settled with Impax, a federal jury determined that as to Impax's co-Defendant Endo, Plaintiffs did not meet their burden in showing that Endo's reverse payment agreement with Impax violated federal or state laws.

The Court previously determined that the Lawsuit can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The "End-Payor Plaintiff Classes" (or "Classes") are defined as follows:

- **Antitrust/Consumer Protection Class:** All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other

than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018; and

- **Unjust Enrichment Subclasses:** All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the following states and commonwealths:
  - Subclass 1: Iowa, Michigan, Oregon, West Virginia
  - Subclass 2: Maine, New Mexico, Wisconsin
  - Subclass 3: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont
  - Subclass 4: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah
  - Subclass 5: Arizona*, North Dakota.

  * With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

**Excluded from the Classes are:**

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;
- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and

- The Court, Court personnel, and any member of their immediate families.

In addition, people who or entities that submitted a valid exclusion request before the December 6, 2021, exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

The Court preliminarily approved the proposed settlement between the End-Payor Plaintiff Classes and Impax (the "Impax Settlement" or "Settlement") on ________, 2022. The proposed Impax Settlement provides for the payment of $15 million (the "Settlement Fund") to resolve the Classes' claims against Impax. The full text of the proposed Settlement Agreement is available at www.opanaerantitrustlitigation.com.

The Court scheduled a hearing to decide whether to approve the Impax Settlement, the plan for allocating the Settlement Fund to members of the Classes ("Class Members"), and the request of the attorneys for the Classes ("Co-Lead Counsel") for payment of attorneys' fees and reimbursement of expenses and possible service awards to the Class Representatives (defined below) out of the Settlement Fund (the "Fairness Hearing"). The Fairness Hearing is scheduled for ______, at ______, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | If you are a member of a Class, by doing nothing you will remain in that Class but will not be entitled to share in any distribution from the Settlement Fund. You will be bound by any decision of the Court in this Lawsuit, including rulings on the Impax Settlement. See **Question 11**. |
| **SUBMIT A CLAIM FORM** | If you did not exclude yourself from one or more of the classes prior to the _______, 2022, deadline and believe you are a Class Member, you will need to complete and return a Claim Form to obtain a share of the Settlement Fund. The Claim Form, and information on how to submit it, are available on the Settlement website. Claim Forms must be postmarked (if mailed) or received (if submitted online) on or before _______, 2022. See **Question 7** for more information**.** |

| | |
|---|---|
| **OBJECT TO THE SETTLEMENT OR SPEAK AT THE FAIRNESS HEARING** | If you object to all or any part of the Settlement or desire to speak in person at the Fairness Hearing, you must file a written letter of objection and/or a notice of intention to speak, including a summary statement, with the Court, Co-Lead Counsel, and Counsel for Impax by _______, 2022. See **Question 10**. |
| **GET MORE INFORMATION** | If you would like more information about the Lawsuit, you can review this Notice and send questions to the Claims and Notice Administrator and/or Co-Lead Counsel. See **Questions 12 and 18**. **DO NOT CONTACT THE COURT OR THE DEFENDANTS IF YOU HAVE QUESTIONS REGARDING THIS NOTICE.** |

This Notice incorporates by reference the definitions in the Settlement Agreement. The Settlement Agreement and the Court's Preliminary Approval Order are posted on the Settlement website, www.opanaerantitrustlitigation.com. All capitalized terms used, but not defined, shall have the same meanings as in the Settlement Agreement and the Court's Preliminary Approval Order.

**BASIC INFORMATION** .......... **6**

1. Why did I receive this notice? .......... 6
2. What is the Lawsuit about? .......... 6
3. Why is this Lawsuit a class action? .......... 7
4. Why is there a Settlement with Impax? .......... 8

**WHO CAN PARTICIPATE IN THE SETTLEMENT?** .......... 8

5. Am I part of one or more of the Classes? .......... 8

**THE SETTLEMENT BENEFITS** .......... **10**

6. What does the Impax Settlement with  provide? .......... 10

**HOW YOU GET A PAYMENT: SUBMITTING A CLAIM FORM** .......... **11**

7. How can I get a payment? .......... 11
8. How much will my payment be? .......... 11
9. When would I get my payment? .......... 11

**OBJECTING TO THE SETTLEMENT** .......... **11**

10. How do I tell the Court what I think about the Impax Settlement? .......... 12

**IF YOU DO NOTHING** .......... **12**

11. What happens if I do nothing at all? .......... 12

**THE LAWYERS REPRESENTING THE CLASSES** .......... **13**

12. Do I have a lawyer in this case? .......... 13
13. Should I hire my own lawyer? .......... 13
14. How will the lawyers be paid? .......... 13

**THE FAIRNESS HEARING** .......... **14**

15. When and where will the Court decide whether to approve the Impax Settlement? .......... 14
16. Do I have to come to the hearing? .......... 14
17. May I speak at the hearing? .......... 14

**GETTING MORE INFORMATION** .......... **15**

18. Are more details available? .......... 15

## BASIC INFORMATION

### 1. Why did I receive this Notice?

A federal court authorized this Notice because you have a right to know that you may be part of one or more of the certified Classes and about all of your options under the proposed Impax Settlement. This Notice explains the Lawsuit and the Impax Settlement; describes the certified Classes whose rights may be affected by the Impax Settlement; and explains your legal rights. Note that you may have received this Notice in error; simply receiving this Notice does not mean that you are definitely a member of one or more Classes. You may confirm that you are a member of one or more of the Classes by reviewing the criteria set forth in **Question 5** below. You may also call, email, or write to the lawyers in this case at the telephone numbers or addresses listed in **Question 12** below.

### 2. What is the Lawsuit about?

Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Wisconsin Masons' Health Care Fund, Pennsylvania Employees Benefit Trust Fund, and International Union of Operating Engineers, Local 138 Welfare Fund (collectively, "Plaintiffs") filed lawsuits individually and as representatives of all persons or entities in the Classes. The Court has appointed them as class representatives ("Class Representatives").

The Lawsuit alleges that Defendants violated certain state antitrust, consumer protection, and unjust enrichment laws, harming competition and causing Class Members to overpay for Opana ER products. Specifically, Plaintiffs allege that in June 2010, Endo and Impax entered into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. Absent the alleged reverse payment agreement, Plaintiffs claim that Impax would have launched its generic version of Opana ER earlier than January 2013 and that Endo would have launched an authorized generic version of Opana ER at or about the same time as Impax launched its generic product.

The Lawsuit asserts that, as a result of Defendants' alleged unlawful conduct, the prices paid for brand and generic Opana ER were higher than they otherwise would have been. Plaintiffs seek to recover damages in the form of overcharges they allege were caused by Defendants' conduct. A copy of the operative class action complaint, filed May 4, 2015, is available at www.opanaerantitrustlitigation.com, a website designed to keep Class Members informed of the status of the Impax Settlement. Defendants deny these allegations, including that the Plaintiffs or Class Members are entitled to damages or other relief.

Following the completion of fact discovery, expert discovery, class certification, summary judgment motions, motions determining the admissibility of expert testimony, and several days of trial, and following extensive negotiations, Plaintiffs, individually and on behalf of the Classes, entered into the Impax Settlement. The Settlement Agreement is available for review at www.opanaerantitrustlitigation.com. The Impax Settlement is not an admission of wrongdoing by Impax or an admission by Plaintiffs of any lack of merit in their claims.

THE COURT HAS NOT DECIDED WHETHER IMPAX HAS VIOLATED ANY LAWS. THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES ASSERTED BY IMPAX.

However, after Plaintiffs settled with Impax, a federal jury determined that Plaintiffs had not met their burden in establishing that Impax's co-Defendant Endo had violated federal or state law arising from its reverse payment agreement with Impax. Specifically, the jury found that although Endo had market power over Opana ER and that it made a large, unjustified reverse payment to Impax, it found that the procompetitive benefits of the settlement outweighed any anticompetitive effect of the payments. Although Plaintiffs intend to file post-trial briefs and appeals seeking to vacate the jury's verdict, there is no certainty that they will be successful.

## 3. Why is this Lawsuit a class action?

In a class action lawsuit, one or more persons or entities sue on behalf of others who have similar claims. Together, all these entities make up the "classes" and are called the "classes" or "class members." The companies that filed suit are called the "plaintiffs" (or "class representatives"). The companies that are sued, in this case Impax and Endo, are called the "Defendants."

In a class action lawsuit, one court resolves the issues for everyone in the classes, except for those class members who exclude themselves from the class.

In allowing this Lawsuit to proceed as a class action, on June 4, 2021, as amended by orders dated August 11, 2021, and September 23, 2021, Judge Harry D. Leinenweber certified the End-Payor Classes, described in more detail in **Question 5** below.

The Court decided that this Lawsuit can proceed as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- The members of the Classes are so numerous that joinder of all members is impractical ("numerosity");
- There are questions of law or fact common to the Classes ("commonality");
- The claims or defenses of the representative parties are typical of the claims or defenses of the Classes ("typicality");

- The representative parties and their lawyers will fairly and adequately protect the interests of the Classes ("adequacy"); and
- Common legal and factual questions predominate over any questions affecting only individual members of the Classes, and this class action is the superior method for fair and efficient adjudication of this controversy ("predominance" and "superiority").

In so doing, the Court found that Plaintiffs sufficiently showed that class-wide injury "is provable through common evidence" to the Class and that common issues predominate over individualized inquiries.

A copy of the Court's orders may be found at www.opanaerantitrustlitigation.com.

## 4. Why is there a Settlement with Impax?

The Impax Settlement is the product of extensive negotiations between Co-Lead Counsel and counsel for Impax, after lengthy, hard-fought litigation. At the time of the Settlement, discovery was complete, expert reports had been exchanged and experts examined, motions for class certification and summary judgment and to determine the admissibility of expert testimony had been decided, and the trial had begun with opening arguments having taken place and several witnesses having been examined. By settling, the End Payors and Impax avoid the cost and risks of trial and possible appeals. For the End Payors, the Settlement, if approved by the Court, ensures that the Class Members will receive compensation for harm arising from Defendants' alleged scheme to delay the market entry of less expensive, generic versions of Opana ER. Plaintiffs and Co-Lead Counsel believe that the terms of the Impax Settlement, including payment by Impax of $15 million in exchange for a release of End Payors' claims against Impax, are fair, adequate, and reasonable, and in the best interests of the Classes.

## WHO CAN PARTICIPATE IN THE SETTLEMENT?

To see if you are in the Classes and, if so, how you will be able to share in the Settlement Fund, you need to determine whether you may be a Class Member.

## 5. Am I part of one or more of the Classes?

End Payors included individuals and Third-Party Payors. Third-Party Payors are entities (besides the patient) that provide payment or reimbursement for health care expenses, like prescription drug benefits. They include entities such as health insurance companies, self-insured health and welfare plans that make payments from their own funds, and other health benefit providers and entities with self-funded plans that contract with a health insurer or administrator to administer their prescription drug benefits. Third-Party Payors include such private entities that may provide prescription drug benefits for current or former public employees and/or public benefits programs, but only to the extent that such a private entity purchased for consumption by its members, employees, insureds, participants, or beneficiaries, brand or generic Opana ER. You are a member

of the Class(es) if you are an End Payor and you purchased or provided reimbursement for prescription drugs as described below.

You are a member of the Classes if:

> You purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER sold by Endo or Impax for the purpose of consumption, and not resale, by yourself, your family member(s), insureds, plan participants, employees, or beneficiaries, at any time from April 2011 through September 2018 in any of the following states or commonwealths:
>
> > Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.
>
> * With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

You are not a member of the Classes if you are among the following:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;
- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and
- The Court, Court personnel, and any member of their immediate families.

People who or entities that submitted a valid exclusion request before the December 6, 2021, exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

If you are not sure whether you are included, you may call, email, or write to the Claims and Notice Administrator in this case at the telephone number, email address, or address listed in **Question 12** below.

## THE SETTLEMENT BENEFITS

### 6. What does the Impax Settlement provide?

Impax has paid $15 million into the Settlement Fund, which will be held in escrow for the benefit of the Classes (including any interest that accrues) pending the Court's approval of the Settlement and Co-Lead Counsel's plan to distribute the Settlement Fund to Class Members.

If the Settlement is approved by the Court and becomes final, Co-Lead Counsel will seek approval from the Court to obtain from the Settlement Fund: (i) reimbursement of reasonable costs and expenses incurred by Co-Lead Counsel in connection with the Settlement and the litigation; (ii) attorneys' fees for Co-Lead Counsel of up to 33 1/3% of the Settlement Fund; and (iii) payment for service awards to End-Payor Plaintiffs in recognition of their efforts to date on behalf of the Classes. The remainder after payment of the above expenses and payment of any Administration Expenses (the "Net Settlement Fund") will be divided among Class Members that timely return valid, approved Claim Forms pursuant to the Plan of Allocation, which is subject to Court approval.

In exchange, Plaintiffs' and the Classes' claims against Impax will be dismissed with prejudice, and Impax will be released by Class Members from all claims concerning the subject matter of or acts, omissions, or other conduct alleged in the operative complaint. The full text of the release is included in the Impax Settlement, which is available at www.opanaerantitrustlitigation.com.

The Impax Settlement may be terminated if, for example, the Court does not approve the Impax Settlement. If the Impax Settlement is terminated, the Lawsuit will proceed against Impax as if a settlement had not been reached.

Please note that after Plaintiffs settled with Impax, a federal jury determined that as to Impax's co-Defendant Endo, Plaintiffs had not met their burden in establishing that Endo violated federal or state law based on the conduct Plaintiffs alleged. Although Plaintiffs intend to file post-trial briefs and appeals seeking to vacate the jury's verdict, there is no certainty that they will be successful. **As a result, this may be your only opportunity to receive compensation in this Litigation.**

## HOW YOU GET A PAYMENT: SUBMITTING A CLAIM FORM

### 7. How can I get a payment?

To be eligible to receive a payment if the Court approves the Impax Settlement, all Class Members must complete and submit a valid Claim Form to request their *pro rata* shares of the Net Settlement Fund. You will not be responsible for calculating the amount you are entitled to receive. You can get a Claim Form at www.opanaerantitrustlitigation.com or by calling 1-877-888-6423 or writing to the address below and requesting a Claim Form. Claim Forms must be received (if submitted online) or postmarked (if mailed) by __________, and may be submitted online at www.opanaerantitrustlitigation.com or mailed to the address below:

Opana ER Class Action
c/o A.B. Data, Ltd.
P.O. Box 173067
Milwaukee, WI 53217

### 8. How much will my payment be?

Each Class Member's share of the Net Settlement Fund will be based on its qualifying purchases of brand or generic Opana ER and will be determined according to the Plaintiffs' proposed Plan of Allocation, if approved by the Court. Payments will be based on a number of factors, including the number of valid claims filed by all members of the Classes and the dollar value of each member of the Classes' purchase(s) in proportion to the total claims filed. Complete details of how your recovery will be calculated are in the detailed Plan of Allocation, which can be viewed at www.opanaerantitrustlitigation.com.

### 9. When would I get my payment?

The Court must approve the Impax Settlement and any appeals of that decision must be resolved before any money is distributed to Class Members. The Claims and Notice Administrator must also complete processing of all of the Claim Forms and determine distribution amounts. This process can take several months.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with any part of the Impax Settlement and/or Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses by filing an objection.

| **10.** | **How do I tell the Court what I think about the Impax Settlement?** |
|---|---|

If you are a Class Member, you can ask the Court to deny approval of the Impax Settlement by filing an objection. You may tell the Court that you object, entirely or in part, to the Settlement and/or Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses and End-Payor Plaintiffs' request for service awards. You cannot ask the Court to order a different Settlement; the Court can only approve or reject the Impax Settlement. If the Court denies approval, no Settlement payments will be sent out and the Lawsuit against Impax will continue. If that is what you want to happen, you must object. You may also ask the Court to speak in person at the Fairness Hearing.

Any objection to the Settlement and/or requests to speak in person at the Fairness Hearing must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Fairness Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers and/or requests to speak in person at the Fairness Hearing must (a) include your name, address, telephone number, and signature and clearly identify the case name and number (*In re Opana ER Antitrust Litigation*, No. 14-cv-10150 (N.D. Ill.)); (b) provide a summary statement outlining the position to be asserted and the grounds for the objection, including whether the objection applies only to you, to a specific subset of one or more of the Classes, or to an entire Class or Classes, together with copies of any supporting papers or briefs; (c) be submitted to the Court either by filing them electronically via the Court's Case Management/Electronic Case Files (CM/ECF) system or by mailing it to the Clerk of the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 on or before ________; and (d) also be mailed and postmarked by ________ to Co-Lead Counsel listed in **Question 12** and to Defense Counsel: Devora Allon, KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, NY 10022.

## IF YOU DO NOTHING

| **11.** | **What happens if I do nothing at all?** |
|---|---|

If you are a Class Member and you do nothing, you will remain in the Classes and be bound by the decision in the Action and on the Impax Settlement, but you may not participate in the Impax Settlement as described in this Notice, if the Impax Settlement is approved. To participate in the Impax Settlement, you must complete, sign, and return the Claim Form before the claims filing deadline provided on the Claim Form and on the Settlement website to be eligible to receive a payment.

## THE LAWYERS REPRESENTING THE CLASSES

### 12. Do I have a lawyer in this case?

The law firms listed below have been appointed by the Court as Co-Lead Counsel for the Classes. Co-Lead Counsel for the Classes are experienced in handling similar cases against other companies. Lead Counsel for the Classes are:

| DICELLO LEVITT GUTZLER LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 2400<br>New York, NY 10165<br>gasciolla@dicellolevitt.com<br>kgarvey@dicellolevitt.com<br>mperez@dicellolevitt.com | FREED KANNER LONDON & MILLEN LLC<br>2201 Waukegan Road, Suite 130<br>Bannockburn, IL 60015<br>rwozniak@fklmlaw.com<br>bhogan@fklmlaw.com |
|---|---|

You will not be personally charged for the services of these lawyers in litigating this case against the Defendants.

### 13. Should I hire my own lawyer?

You do not need to hire your own lawyer because the lawyers appointed by the Court are working on your behalf. You may hire a lawyer and enter an appearance through your lawyer at your own expense if you so desire.

### 14. How will the lawyers be paid?

If the Court approves the Impax Settlement, Co-Lead Counsel will ask the Court for an award of attorneys' fees of up to 40% of the Settlement Fund, and reimbursement of litigation expenses incurred prior to the Impax Settlement. Co-Lead Counsel may ask for service awards for the Class Representatives from the Settlement Fund for their efforts to date on behalf of the End-Payor Classes. If the Court grants Co-Lead Counsel's requests, these amounts would be deducted from the Settlement Fund. You will not have to pay these fees, expenses, and costs out of your own pocket. The Administrative Expenses for the Impax Settlement will also be paid out of the Settlement Fund.

Co-Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses and for possible service awards for the Class Representatives will be filed with the Court and made available for download or viewing on or before ________ on the Impax Settlement website at info@opanaerantitrustlitigation.com, on the Court docket for this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States

District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays. You can tell the Court you do not agree with Co-Lead Counsel's request for attorneys' fees and expenses, or for service awards for the Class Representatives, by filing an objection as described in **Question 10**.

## THE FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Impax Settlement. You may attend and you may ask to speak, but you do not have to.

### 15. When and where will the Court decide whether to approve the Impax Settlement?

The Court will hold a Fairness Hearing at _______ Central Time on ____________, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to give final approval to the proposed Impax Settlement. We do not know how long the decision will take.

The time and date of the Fairness Hearing may change without additional mailed publication notice. For updated information on the hearing, visit www.opanaerantitrustlitigation.com or check the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov.

### 16. Do I have to come to the hearing?

No. Co-Lead Counsel will answer questions that the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it; as long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Attendance is not necessary to receive a *pro rata* share of the Settlement Fund.

### 17. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing, either in person or through your own attorney, if you file a request to speak in person. See **Question 10.** If you appear through your own attorney, you are responsible for paying that attorney.

## GETTING MORE INFORMATION

**18. Are more details available?**

You can review relevant decisions and orders and additional information about this Lawsuit on the Settlement website at www.opanaerantitrustlitigation.com. You may also contact the Claims and Notice Administrator, by mail, at Opana ER Antitrust Class Action, P.O. Box 173067, Milwaukee, WI 53217, email at info@opanaerantitrustlitigation.com, or phone at 877-888-6423. Complete copies of all public pleadings, Court rulings, and other filings are available for review by accessing the Court docket for this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS CASE.

**DATED: _________, 2022**

BY ORDER OF THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS, HARRY D. LEINENWEBER

# EXHIBIT B2

**If you paid for or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release), you could get a payment from a class action lawsuit.**

Your rights may be affected by a proposed partial settlement in a class action lawsuit regarding the prices paid for brand and generic Opana ER by consumers and third-party payors filed against Defendant Impax Laboratories, Inc. ("Impax"). The case name is *In re Opana ER Antitrust Litigation*, MDL No. 2580, Lead Case No. 14-cv-10150 (N.D. Ill.) (the "Lawsuit"). The Lawsuit, which is pending in the Northern District of Illinois, alleges that Impax, together with Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co. (collectively, "Endo") violated certain state antitrust, consumer protection, and unjust enrichment laws by entering into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. As a result, the Lawsuit alleges that the End-Payor Classes paid or reimbursed for brand and generic Opana ER at prices that were higher than they would have otherwise been. Impax denies any wrongdoing. After Plaintiffs settled with Impax, a federal jury determined that as to Endo, Plaintiffs did not meet their burden in showing that Endo violated federal or state laws arising from Plaintiffs' allegations.

The Court has preliminarily approved the proposed settlement between the End-Payor Classes and Impax (the "Settlement"). The proposed Impax Settlement will provide for the payment of $15 million (the "Settlement Fund") to resolve the End-Payor Classes' claims against Impax. The full text of the proposed Settlement Agreement is available at www.opanaerantitrustlitigation.com.

The Court has scheduled a hearing to decide whether to approve the Settlement, the plan for allocating the Settlement Fund to Class Members, and the request of Co-Lead Counsel for payment of attorneys' fees and reimbursement of expenses and service awards to the Class Representative Plaintiffs out of the Settlement Fund (the "Fairness Hearing"). The Fairness Hearing is scheduled for ______, at ______, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

**Who Is Included?**

You are a member of the End-Payor Plaintiff Classes if:

> You purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER sold by Endo or Impax for the purpose of consumption, and not resale, by yourself, your family member(s), insureds, plan participants, employees, or beneficiaries, at any time from April 2011 through September 2018 in any of the following states or commonwealths:
>
> > Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.
>
> * With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

The following are NOT members of the Classes:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and
- The Court, Court personnel, and any member of their immediate families.

For additional details, please read the Long Form Notice available at www.opanaerantitrustlitigation.com.

**Your Rights and Options**

DO NOTHING: If you are a member of a Class, by doing nothing you will remain in that Class but will not be entitled to share in any distribution from the Settlement Fund. You will be bound by any decision of the Court in this Lawsuit, including rulings on the Settlement.

SUBMIT A CLAIM FORM: If you did not exclude yourself from one or more of the Classes prior to the December 6, 2021, deadline and believe you are a Class Member, you will need to complete and return a Claim Form to obtain a share of the Settlement Fund. The Claim Form, and information on how to submit it, are available on the Settlement website. Claim Forms must be postmarked (if mailed) or received (if submitted online) on or before __________. **Because a federal jury has recently determined that Impax's co-defendant Endo has not violated federal or state law arising from its reverse payment agreement, this may be your only opportunity to receive compensation in this Litigation.**

OBJECT TO THE SETTLEMENT: If you object to all or any part of the Settlement or desire to speak in person at the Fairness Hearing, you must file a written letter of objection and/or a notice of intention, including a summary statement, with the Court, Co-Lead Counsel, and Counsel for Impax by ______.

**Want More Information?**

Go to www.opanaerantitrustlitigation.com. You may also contact the Claims and Notice Administrator, by mail at Opana ER Antitrust Litigation, P.O. Box 173067, Milwaukee, WI 53217, email at info@opanaerantitrustlitigation.com, or phone at 877-888-6423. The deadlines contained in this notice may be amended by Court Order, so check the Settlement website for any updates.

Please do not call the Court or the Clerk of the Court for information about the Impax Settlement.

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION | MDL DOCKET NO. 2580 |
| | Lead Case No. 14-cv-10150 |
| This document relates to:<br><br>END-PAYOR ACTIONS | Hon. Harry D. Leinenweber |

**[PROPOSED] ORDER APPROVING END-PAYOR PLAINTIFFS' SETTLEMENT WITH DEFENDANT IMPAX LABORATORIES, INC.; ENTERING FINAL JUDGMENT; AND DISMISSING END-PAYOR CLASSES' CLAIMS AGAINST IMPAX LABORATORIES, INC.**

WHEREAS, on July 19, 2022, Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund; Wisconsin Masons' Health Care Fund; Pennsylvania Employees Benefit Trust Fund; and International Union of Operating Engineers, Local 138 Welfare Fund (collectively, "End-Payor Plaintiffs"), on behalf of themselves and on behalf of the certified End-Payor Plaintiff Classes (the "End-Payor Classes"), and Defendant Impax Laboratories, Inc. ("Impax") entered into a settlement agreement, which sets forth the terms and conditions of the parties' proposed settlement and the release and dismissal with prejudice of the End-Payor Classes' claims against Impax (the "Impax Settlement").

WHEREAS, on __________, 2022, upon End-Payor Plaintiffs' Motion for Preliminary Approval of the Proposed Class Action Settlement with Impax, this Court entered an Order (i) preliminarily approving the Impax Settlement; (ii) staying End-Payor Plaintiffs' litigation against

Impax; and (iii) approving the Notice Plans and Long and Short Form Notices, setting schedules for final approval of the Impax Settlement and appointing A.B. Data, Ltd. as Claims and Notice Administrator;

WHEREAS, notice of the Impax Settlement to the End-Payor Classes, including Co-Lead Counsel's intent to seek attorneys' fees, reimbursement of costs and expenses and service awards for the named plaintiffs from the Settlement Fund, was provided in accordance with the approved Notice Plan, and was completed on or before the Court-ordered deadlines of ________, 2022 for the Impax Settlement;

WHEREAS, members of the End-Payor Classes were afforded the opportunity to object to the Impax Settlement;

WHEREAS, on _______, 2022, End-Payor Plaintiffs filed a Motion for Final Approval of the Impax Settlement;

WHEREAS, Impax does not oppose End-Payor Plaintiffs' Motion;

WHEREAS, the Court held a hearing on a final approval of the Impax Settlement on __________; and

WHEREAS, the Court is familiar with and has reviewed the record in this case and the Impax Settlement, and has found good cause for entering the following Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. This Court has jurisdiction to enter this Order and Final Judgment. The Court has jurisdiction over the subject matter of this action and over Impax and End-Payor Plaintiffs, including all members of the End-Payor Classes.

2. This Order and Final Judgment incorporates the Impax Settlement Agreement, and terms used in this Order and Final Judgment that are defined in the Impax Settlement have the same meanings as in the Impax Settlement.

3. Given the Court's previous order dated June 4, 2021, certifying the End-Payor Classes (ECF No. 741) pursuant to Fed. R. Civ. P. 23(a) and (b)(3), as amended by orders dated August 11, 2021, and September 23, 2021 (ECF Nos. 746, 752), the End-Payor Classes in the Impax Settlement are defined as follows:

> **Antitrust/Consumer Protection Class:** All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018; and
>
> **Unjust Enrichment Subclasses:** All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the following states and commonwealths:
>
> **Subclass 1**: Iowa, Michigan, Oregon, West Virginia
>
> **Subclass 2**: Maine, New Mexico, Wisconsin
>
> **Subclass 3**: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont
>
> **Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah
>
> **Subclass 5**: Arizona*, North Dakota
>
> ** With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all the purchase price*

*of brand or generic Opana ER from June 4, 2011 through September 2018.*

4. The following persons or entities are excluded from the End-Payor Classes:

(a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b) Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

(c) All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;

(d) All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;

(e) Fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

(f) Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

(g) Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists");

(h) Consumers with copay insurance plans who purchased only generic versions of Opana ER (i.e., "generic-only copay consumers");

(i) Pharmacy Benefit Managers;

(j) All Counsel of Record; and

(k) The Court, Court personnel and any member of their immediate families.

In addition, people who or entities that submitted a valid exclusion request before the December 6, 2021 exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

5. Members of the End-Payor Classes were provided with due and adequate notice of the Impax Settlement, including their right to object to the Impax Settlement and End-Payor Class Co-Lead Counsel's intent to seek from the Settlement Funds attorneys' fees, reimbursement of costs and expenses and incentive awards for the named Plaintiffs. Notice was distributed via both direct mail and publication notice. Such notice fully complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law. A full and fair opportunity to be heard was afforded to all members of the Classes with respect to the foregoing matters. Accordingly, the Court hereby determines that all members of the Classes are bound by this Order and Final Judgment.

6. The terms of the Impax Settlement, dated July 19, 2022, are approved. The Impax Settlement was entered into after substantial discovery and motion practice and arm's-length negotiations by experienced counsel on behalf of the End-Payor Classes. The Court finds the Impax Settlement and its terms to be a fair, reasonable, and adequate settlement as to the End-Payor Classes within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directs the consummation of the Impax Settlement pursuant to its terms.

7. The Proposed Plan of Allocation for the Impax Settlement (ECF No. ___), is hereby approved, and the Claims and Notice Administrator, A.B. Data, Ltd., is authorized to begin administration and distribution of the Settlement Fund in accordance with the Plan of Allocation.

8. The Court will address by separate Order the motion filed by End-Payor Plaintiffs and Co-Lead Counsel for attorneys' fees, reimbursement of costs and expenses, and service awards for named End-Payor Plaintiffs.

9. The End-Payor Classes' claims against Impax in this action are dismissed with prejudice and, except as provided for herein and in the Impax Settlement, without costs.

10. As set forth in the Impax Settlement, upon the Impax Settlement becoming final in accordance with Section B.1 of the Impax Settlement, each of the Releasing Parties shall be deemed to have unconditionally, fully, and finally released and forever discharged, each Released Claim against each of the Released Parties.

11. This Order and Final Judgment shall not be offered or admitted against any of the Released Parties as evidence of, or construed as or deemed to be evidence of, any admission by any of the Released Parties with respect to the truth of any allegations made by the End-Payor Plaintiffs or the validity of any claim asserted against any of the Released Parties. This Order and Final Judgment shall not be offered or admitted as evidence against any of the Released Parties in any other matter or proceeding except as may be necessary to consummate or enforcer the Impax Settlement or the terms of this Order and Final Judgment; or if offered by any Releasing Party or Released Party in a dispute over the scope or interpretation of the Released Claims, the dismissed claims or any other terms of this Order and Final Judgment.

12. Pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay in the entry of this Order and Final Judgment, and the Clerk of the Court is directed to immediately enter final judgment dismissing with prejudice the End-Payor Classes' claims against Impax. Such judgment shall be final and immediately appealable.

13. The Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Impax Settlement, including the administration and consummation of the Impax Settlement and, as provided for in the Impax Settlement, the payment and

reimbursement of attorneys' fees, costs and expenses, and disbursement of the remainder of the Settlement Fund.

SO ORDERED

Dated: ___________, 202_

_________________________________
Harry D. Leinenweber
United States District Judge