# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE OPANA ER ANTITRUST LITIGATION | MDL 2580 |
| | Lead Case No. 14-cv-10150 |
| THIS DOCUMENT RELATES TO: | Hon. Harry D. Leinenweber |
| All End-Payor Actions | |

**DECLARATION OF LINDA V. YOUNG IN SUPPORT OF END-PAYOR PLAINTIFFS'**
**MOTION TO APPOINT NOTICE ADMINISTRATOR AND APPROVE NOTICE PLAN**

I, Linda V. Young, being duly sworn, certify as follows:

1.      I am the Media Executive with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"). I submit this Declaration in support of End-Payor Plaintiffs' Motion to Appoint Notice Administrator and Approve Notice Plan filed in the above-captioned action (the "Action").

2.      As set forth on its website, A.B. Data was founded in 1980 and has earned an international reputation for skillfully managing complex class action settlements and notice plans. The company has administered hundreds of class action cases involving billions of dollars in settlement funds. *See* http://abdataclassaction.com/.

3.      This Declaration is based upon my personal knowledge and information provided by End-Payor Plaintiffs' Counsel, my associates, and A.B. Data staff members. The methods and tools used in developing the notice plan are of a type reasonably relied upon in the fields of media, advertising, and communications. My curriculum vitae is attached as Exhibit A.

4.      Pursuant to the Court's Order Granting End-Payor Plaintiffs' Motion to Appoint Notice Administrator and Approve Notice Plan entered on September 23, 2021 (the "Class

Certification Notice Order"), A.B. Data is acting as the Court-appointed Notice Administrator in connection with the litigation notice ordered by this Court. I understand from End-Payor Plaintiffs' Counsel that a proposed settlement with Impax Laboratories, Inc. has been reached. This Declaration details a proposed Notice Plan substantially similar to the successful class certification plan A.B. Data effectuated pursuant to the Class Certification Notice Order. The Notice Plan is designed to inform the Antitrust/Consumer Protection Class and Unjust Enrichment Subclasses for the End-Payor Plaintiffs (hereinafter referred to as the "Classes") of the proposed settlement.

5.    The proposed Notice Plan described in this Declaration, attached as Exhibit B, is consistent with recent A.B. Data notice plans that have been approved by courts and implemented for other similar pharmaceutical cases, including the following:

- *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litigation*, (Case No. 17-md-2785) (D. Kan.)

- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County v. Momenta Pharmaceuticals, Inc.* (Case No. 15-CV-01100) (M.D. Tenn.)

- *In re Loestrin 24 FE Antitrust Litigation* (MDL No. 2472) (D. R.I.)

- *Shannon Mahoney v. Endo Health Solutions, Inc., et al.* (Case No. 15-cv-9841) (S.D.N.Y.)

- *In re Aggrenox Antitrust Litigation* (Case No. 3:14-md-02516) (D. Conn.)

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation* (Case No. 14-md-2503) (D. Mass.)

- *Vista Healthplan, Inc. v. Cephalon, Inc., et al.* (Case No. 2:06-cv-01833) (E.D. Pa.) [1]

---

[1] In addition, the Court appointed A.B. Data as notice administrator in connection with the dissemination of class notice after the Court certified the End-Payor Classes. *See In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 752 (N.D. Ill.).

**Audiences**

6.      There are two different types of End-Payor Class Members that the Notice Plan is designed to reach: (a) consumers and (b) third-party payors ("TPPs"), such as health and welfare funds and insurance companies. A.B. Data's approaches to these two groups are discussed below.

**Consumer Target Audience**

7.      In developing the target audience for consumers and to evaluate the media options to be considered for this case, A.B. Data first reviewed the uses of Opana ER and the circumstances under which it was prescribed to patients. For this information, the label for Opana ER was examined.[2] It was determined that people suffering from moderate to severe chronic pain from ailments such as arthritis and cancer were the most likely users of Opana ER and generic Opana ER.

8.      To further develop the target audience, we next examined 2021 demographic data from a nationally accredited resource, MRI Simmons,[3] for adults in the United States who have chronic pain from arthritis, cancer treatments, and other ailments. It was determined that the target audience for this medication has the following characteristics:

- Men – 38.2%; Women – 61.8%

- Age 35+:  79.2%

---

[2] https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/021610s009lbl.pdf

[3] MRI Simmons Survey of the American Consumer is the country's largest, most comprehensive, and most reliable consumer and media and product/service usage database. Data from the Survey of the American Consumer, conducted continuously since 1979, is used in the majority of media and marketing plans written in the United States. The firm's multidimensional database is the largest and most reliable source for integrated media planning. About 450 U.S. advertising agencies, including 90 of the top 100, subscribe to MRI Simmons Research, along with A.B. Data and more than 200 national marketers. MRI Simmons offers the most detailed and representative picture of U.S. demographics and lifestyles, including information on usage of nearly 6,000 product and service brands across 550 categories, the magazines and newspapers audiences read, the websites they look at, the television programs they watch, and the radio stations they listen to.

- Not working/retired: 59.3%

9.      Based on the MRI-Simmons audience demographic data, we recommend adults age 35+ as the buying target audience for the Notice Plan, with an emphasis on women.

10.     The Class Members are numerous and geographically dispersed across the United States. Notice will be targeted first to the Class states and the District of Columbia and secondarily nationwide to reach those who may have relocated.

## Digital Media

11.     Banner ads will appear in the United States, with emphasis on the Class states, on targeted websites and across multiple devices, including desktop, tablet, and mobile devices. Ads will be placed in premium positioning on websites and social media sites, ensuring that they can be easily seen when viewers first open website pages. Internet advertising allows the viewer to click on a banner advertisement and instantly be directed to the settlement website to file a claim and/or obtain additional information to allow Class Members to make an informed decision as it relates to executing their rights.

12.     A 30-day campaign will be scheduled, which ensures ample time to deliver the targeted impressions. At least 237.3 million targeted impressions will be delivered to the target audience.

13.     All banner ads will include an embedded link to the case-specific website. Images appropriate for this Action and target audience will also be included in all digital ad formats, as this increases the visibility and click-through rate of the ads.

## Social Media

14.     To further extend engagement with potential Class Members, newsfeed ads will be purchased on Facebook, Instagram, and YouTube. Impressions on these social media platforms can be highly targeted, specifically reaching those who express an interest in and information

relevant to the subject of this case, such as arthritis pain, cancer pain, and pain management. By utilizing microtargeting strategies, we can be very tactical in reaching potential Class Members.

### Google AdWords/Search

15. To assist with easy location of the case website, sponsored search listings will be acquired on Google, the most highly visited search engine. When identified target phrases and keywords are used in searches on Google, links will appear on the search result pages. Representative keywords could include "pain management," "pain medication," plus many others.

### Print Media

16. A Short-Form Notice in a form to be approved by the Court will also be published one time in *People* magazine. *People* offers a broad reach of the target audience as one of the leading consumer magazines in the United States. *People* is also an important component of the Notice Plan to reach segments of the population that are not frequent users of digital or social media.

### Targeted TPP Notice

17. A.B. Data maintains, and updates annually, a proprietary database of approximately 41,000 entities that include insurance companies; health maintenance organizations; self-insured entities such as certain large corporations, labor unions, and employee benefit and pension plans; and certain record keepers, such as PBMs and third-party administrators (the "TPP Database").

18. A Postcard Notice in a form approved by the Court will also be sent via First-Class Mail directly to each TPP identified in this database. In addition, A.B. Data will send emails to potential TPP Class Members where email addresses are available. Included within the email notices will be a link allowing recipients to view the full, detailed notice package.

19.     To reach TPPs and related entities, in addition to direct notice, a 30-day banner ad campaign will be purchased on the following websites:

- ThinkAdvisor.com/life-health

- BenefitNews.com

- SHRM.org

TPP banner ads will include an embedded link to the case-specific website. Banner ads that are written specifically for this industry will appear on these websites.

### Earned Media

20.     To supplement direct notice, A.B. Data recommends that a news release be disseminated via *PR Newswire*'s US1 Newsline distribution list. This news release will be distributed via *PR Newswire* to the news desks of approximately 10,000 newsrooms, including those of print, broadcast, and digital websites across the United States.

### Toll-Free Telephone Number

21.     A.B. Data will establish and maintain a case-specific toll-free telephone number to support the Action, with live operators during business hours. Services will specifically include the following:

a.     Inbound toll-free line;

b.     Interactive-voice-response system;

c.     Live operators during business hours;

d.     Call scripts developed by our experts and approved by End-Payor Plaintiffs' Counsel; and

e.     Detailed reporting.

**Case Website**

22.     A dedicated informational case website will be developed to complement the Notice Plan and to ensure Class Members have easy access to updated information. The website will provide, among other things, a summary of the case and Class Member rights and options, relevant documents, important dates, and any pertinent updates concerning the Action. The website will also allow for potential Class Members to submit their claims online.

**Form and Content of Notice and Claim Forms**

23.     A detailed Long-Form Notice, attached as Exhibit C, will, once approved, be available on the case website and will include more detailed information about the Action, including that this is a class action; the definition of the Classes in plain and engaging language; that the Classes allege antitrust, consumer protection, and unjust enrichment claims; and that a Class Member may appear through an attorney (at their own expense) if the Class Member desires. The Long-Form Notice will also provide information regarding how Class Members can submit claims online or via mail.

24.     A Short-Form Notice attached as Exhibit D will, once approved, also be used to provide notice of the proposed settlement, as a press release, as the copy in *People* magazine, and formatted into a postcard to be mailed to the TPP list (the "Postcard Notice"). The Short-Form and Postcard Notices include summary information concerning the proposed settlement in the Action, including a description of the Classes; the nature of the claims asserted by the Plaintiffs; the rights and options available to Class Members; the case website address; and the toll-free telephone number. Each form of notice is well-organized, and written in a reader-friendly, plain-English format.

25.     Consumer and TPP banner ads will draw attention to the case and encourage recipients to click on the ad for more information. Both consumer and TPP banner ads will link directly to the case website. Examples of these ads are included in the Notice Plan.

26.     Class Members must submit a timely, valid claim through the case website or by mail to be eligible to receive monetary compensation.  For consumer Class Members, the Claim Form attached hereto as Exhibit E, will require each Class Member to set forth the total out-of-pocket costs for purchases of brand or generic Opana ER (oxymorphone hydrochloride extended release) in the 5, 10, 20, 30, and 40 mg sold by Endo or Impax during the Class Period.  A.B. Data may request supporting documentation from consumer Class Members for claims with potentially suspicious amounts of out-of-pocket costs claimed.  For TPP Class Members, a TPP-specific Claim Form, attached hereto as Exhibit F, will be used and supporting documentation will be required for claim amounts that exceed $100,000.

### Conclusion

27.     It is my opinion that the Notice Plan described herein reflects a strategic and contemporary method of deploying notice to the Classes and is adequate and reasonable to reach the Class Members effectively. Through a multi-media-channel approach that includes social media ads, digital banner ads, a print publication ad, and a direct notice campaign targeted to TPPs, an estimated 82.1% of the target audience will be reached. The proposed Notice Plan provides a reach similar to those approved by other courts and recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. The Notice Plan is the best practicable approach to reach consumer and TPP Class Members. It is also fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of August 2022.

_____

Linda V. Young

# EXHIBIT A

# LINDA V. YOUNG
Linda.Young@abdata.com

## EXPERIENCE

### A.B. Data, Ltd., Milwaukee, WI

Vice President, Media

Lead the A.B. Data Class Action Administration media team in research, development, and implementation of media notice plans for settlements and other class action administrations. Cases include the following:

### Antitrust/Commodities Cases

- *Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. et al.,* (Case No. 3:15-cv-01100) (M.D. Tenn.);

- *Laydon v. Mizuho Bank Ltd., et al.,* No. 12-cv-3419 (S.D.N.Y.) and *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.,* No. 15-cv-5844 (S.D.N.Y.)*;*

- *Sullivan, et al. v. Barclays plc et al.,* No. 13-cv-028111 (S.D.N.Y.)*;*

- *In re Loestrin 24 FE Antitrust Litigation,* Case No. MDL 2472, United States District Court, District of Rhode Island;

- *In re Resistors Antitrust Litigation* No. 3:15-cv-03820-JD, United States District Court, Northern District of California, San Francisco Division;

- *In re Qualcomm Antitrust Litigation,* No. 17-md-02773-LHK, United States District Court, Northern District of California, San Jose Division;

- *State of Washington v. LG Electronics, Inc., et al.,* No. 12-2-15842-8 SEA, State of Washington, King County Superior Court;

1

- *The State of New York, et al. v. Cephalon, Inc., et al.,* No. 16-cv-4234-MSG, United States District Court, Eastern District of Pennsylvania;

- *In re Liquid Aluminum Sulfate Antitrust Litigation,* No. 16-md-2687 (JLL) (JAD), United States District Court, District of New Jersey;

- *In re Aggrenox Antitrust Litigation,* No. 3:14-md-02516 (SRU), United States District Court, District of Connecticut;

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation (All End-Payor Actions),* MDL No. 14-MD-2503-DJC, United States District Court, District of Massachusetts;

- *In re Capacitors Antitrust Litigations: All Indirect Purchaser Actions,* No. 14-CV-03264-JD, United States District Court, Northern District of California;

- *In re Polyurethane Foam Antitrust Litigation,* MDL Docket No. 2196, United States District Court, Northern District of Ohio;

- *In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation,* MDL No. 1508, United States District Court, Southern District of New York;

- *In re Warfarin Sodium Antitrust Litigation*, MDL No. 98-1232 (SLR), United States District Court, District of Delaware;

- *Blevins v. Wyeth-Ayerst Laboratories, Inc. and American Home Products Corp.,* No. 324380, Superior Court of California, County of San Francisco;

- *In re Terazosin Hydrochloride Antitrust Litigation,* 99-MDL-1317, United States District Court, Southern District of Florida;

- *In re Cardizem CD Antitrust Litigation,* 99-MD-1278, United States District Court, Eastern District of Michigan;

- *In re High Pressure Laminate Antitrust Litigation*, Civil Action No. 00C-1989 and Related Cases, Second Circuit Court for Davidson County, Tennessee, 20th Judicial District at Nashville;

- *In re Pennsylvania Baycol Third-Party Payor Litigation*, September Term, 2001 No. 001874, Court of Common Pleas, Philadelphia County, South Carolina;

- *In re Remeron End-Payor Antitrust Litigation*, Master File No. 02-CV-2007 (FSH), United States District Court, District of New Jersey;

- *In re Relafen Antitrust Litigation,* 01-12239-WGY, United States District Court, District of Massachusetts;

- *In re Buspirone Antitrust,* 01-MD-01413, United States District Court, Southern District of New York;

- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation,* No. 2:02cv442, United States District Court, Eastern District of Virginia;

- *Cipro Cases I and II*, Judicial Council Coordination Proceedings Nos. 4154 and 4220, Superior Court of the State of California, County of San Diego;

- *In re Potash Antitrust Litigation (II),* No. 1:08-CV-6910, United States District Court, Northern District of Illinois;

- *In re Optiver Commodities Litigation,* No. 1:08-CV-06842-LAP, United States District Court, Southern District of New York;

- *In re: Rough Rice Commodity Litigation,* No. 11-CV-00618, United States District Court, Northern District of Illinois;

- *In re Platinum and Palladium Commodities Litigation (Platinum/Palladium Futures Action),* 10-CV-3617 (WHP) ("Futures Action"), United States District Court, Southern District of New York;

- *In re Platinum and Palladium Commodities Litigation (Platinum/Palladium Physical Action),* 10-CV-3617 (WHP) ("Physical Action"), United States District Court, Southern District of New York;

- *Kamakahi and Levy v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology,* No. 3:11-CV-1781 JCS, United States District Court, Northern District of California;

- *Mahoney v. Endo Health Solutions, Inc., et al.,* No. 15-CV-9841 (DLC), United States District Court, Southern District of New York;

- *In re London Silver Fixing, Ltd. Antitrust Litigation,* Case No. 14-MD-02573-VEC, 14-MC-02573-VEC, United States District Court, Southern District of New York;

- *In re GSE Bonds Antitrust Litigation,* Case No. 1:19-cv-01704 (JSR), United States District Court, Southern District of New York;

- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee, d/b/a Nashville General Hospital and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.,* Case No. 3:15-cv-01100, United States District Court, Middle District of Tennessee, Nashville Division;

- *In re Libor-Based Financial Instruments Antitrust Litigation, Metzler Investment GmbH, et al., v. Credit Suisse Group AG, et al.* Master File No. 11-md-2262 (NRB) Case No. Civ. 2613 (Exchange-Based Action), United States District Court, Southern District of New York;

- *Laydon v. Mizuho Bank, Ltd., et al.,* No. 12-CV-3419 (GBD) and *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.* No. 15-CV-5844 (GBD), United States District Court, Southern District of New York;

- *Sullivan v. Barclays plc et al.,* No. 13-cv-028111 (PKC), United States District Court, Southern District of New York;

- *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation,* MDL No: 2785 Case No. 17-md-2785-DDC-TJJ, In the United States District Court for the District of Kansas;

- *In re Pork Antitrust Litigation* Civil No. 0:18-1779 (JRT/HB) United States District Court, District Court of Minnesota;

- *Breckenridge Brewery of Colorado, LLC, a Colorado limited liability company; and BBD Acquisition CO., a Colorado corporation, On behalf of themselves and all other similarly situated direct purchasers of natural gas in the State of Colorado, Plaintiffs, v. XCEL ENERGY, INC., E PRIME, INC., Defendants.* Civil Action No. 06-cv-01110-REB-MEH In The United States District Court for the District of Colorado;

- *In re Namenda Indirect Purchaser Antitrust Litigation* Case No. 1:15-cv-06549-CM-RWL In The United States District Court for the Southern District of New York

- *In re Mexican Government Bonds Antitrust Litigation* Case No. 18-cv-02830-JPO United States District Court for the Southern District of New York;

- *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation, Wisconsin, et al. v. Indivior Inc. et al. Case No. 16-cv-5073 State of Wisconsin By Attorney General Brad D. Schimel, et al. Plaintiffs, v. Indivior Inc. f/k/a Reckitt Benckiser Pharmaceuticals, Inc., er al. Defendants.* Case No. 2:13-md-02445-MSG, In the United States District Court for the Eastern District of Pennsylvania;

- *In re Broiler Chicken Antitrust Litigation.* Case No. 1:16-cv-08637, United States District Court for the Northern District of Illinois Eastern Division;

- *In re Ranbaxy Generic Drug Application Antitrust Litigation.* Case: 19-md-02878-NMG, United States District Court District of Massachusetts;

- *In re Broiler Chicken Antitrust Litigation.* Case No.: 1:16-cv-08637, In the United States District Court Northern District of Illinois Eastern Division;

- *In Re Opana ER Antitrust Litigation.* Case: 1:14-cv-10150, United States District Court Northern District of Illinois Eastern Division;

- *In re Broiler Chicken Antitrust Litigation.* Case No. 1:16-cv-08637, United Stated District Court Northern District of Illinois Eastern Division;

- *In re Pork Antitrust Litigation.* Case No. 0:18-cv-01776-JRT-HB, United States District Court District of Minnesota;

- *EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation.* Case No. 17-md-2785-DDC-TJJ, In the United States District Court for the District of Kansas;

- *In re Pork Antitrust Litigation.* Case 0:18-cv-01776-JRT-HB, United States District Court District of Minnesota;

- *In re Capacitors Antitrust Litigation.* Case No. 3:14-cv-03264-JD, United States District Court for the Northern District of California San Francisco Division;

- *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litigation.* Case No. 18-MD-2819 (NG) (LB) United States District Court Eastern District of New York;

- *In re Zetia (Ezetimibe) Antitrust Litigation.* Case No. 2:18-md-2836 United States District Court for the Eastern District of Virginia Norfolk Division;

## **Securities Cases**

- *Boutchard, et al. v. Gandhi, et al.,* No. 1:18-cv-07041 (N.D. Ill.);

- *Elkin v. Walter Investment Management Corp.,* No. 2:17-cv-02025-JCJ, United States District Court, Eastern District of Pennsylvania;

- *In re Flowers Foods, Inc. Securities Litigation,* No. 7:16-CV-00222 (WLS), United States District Court, Middle District of Georgia, Valdosta Division*;*

- *Steven Lazan v. Quantum Corporation, et. al.,* No. 3.18-cv-00923-RS, United States District Court, Northern District of California*;*

- *Cheng Jiangchen, Individually and on Behalf of All Others Similarly Situated v. Rentech, Inc., Keith B. Forman, and Jeffrey Spain*, No. 2.17-cv-01490-GW-FFM, United States District Court, Central District of California*;*

- *In re Medley Capital Stockholder Litigation,* No. 2019-0100-KSJM, The Court of Chancery of the State of Delaware*;*

- *Judith Godinez, Individually and on Behalf of All Others Similarly Situated v. Alere, Inc., et. al.,* No. 1.16-cv-10766-PBS, United States District Court, District of Massachusetts*;*

- *Edmund Murphy III, Individually and on Behalf of All Others Similarly Situated v. JBS S.A.,* No. 1.17-cv-03084-ILG-RER, United States District Court, Eastern District of New York*;*

- *In re Starz Stockholder Litigation,* No. 12584-VCG, The Court of Chancery of the State of Delaware*;*

- *In re Quality Systems, Inc. Securities Litigation,* No. 8:13-cv-01818-CJC-JPR, United States District Court, Central District of California, Southern Division*;*

- *In re PTC Therapeutics, Inc. Securities Litigation,* No. 16-1224 (KM)(MAH), United States District Court, District of New Jersey*;*

- *Aude, et al., v. Kobe Steel, Ltd., et al.,* No. 17-CV-10085-VSB, United States District Court, Southern District of New York*;*

- *Rahman v. GlobalSCAPE, Inc., et al.,* No. 5:17-cv-00753-XR, United States District Court, Western District of Texas*;*

- *In re CytRx Corporation Securities Litigation,* No. 2:16-CV-05519-SJO-SK, United States District Court, Central District of California*;*

- *In re CPI Card Group Inc. Securities Litigation,* No. 16-cv-04531 (LAK), United States District Court, Southern District of New York;

- *Singh v. 21Vianet Group, Inc.,* No. 2:14-cv-00894-JRG-RSP, United States District Court, Eastern District of Texas, Marshall Division;

- *Kasper v. AAC Holdings, Inc., et al.,* No. 3:15-CV-00923-JPM, United States District Court, Middle District of Tennessee, Nashville Division*;*

- *In re Facebook, Inc. IPO Securities and Derivative Litigation,* MDL No. 12-2389, United States District Court, Southern District of New York*;*

- *GFI Group, Inc. Securities Litigation,* No. 1:14-CV-09438 WHP, United States District Court, Southern District of New York*;*

- *In re Juno Therapeutics Inc.,* No. C16-1069 RSM, United States District Court, Western District of Washington at Seattle*;*

- *Zacharia v. Straight Path Communications, Inc. et al.,* Case No. 2:15-CV-08051-JMV-MF, United States District Court, District of New Jersey;

- *In re DFC Global Corp. Securities Litigation*, Civ. A. No. 2:13-CV-06731-BMS, United States District Court, Eastern District of Pennsylvania*;*

- *In re Berkshire Realty Company, Inc. Shareholder Litigation,* C.A. No. 17242, Court of Chancery, State of Delaware in and for New Castle County*;*

- *Lipson, et al. v. Simon et al.,* 98-CV-4573 (TCP), United States District Court, Eastern District of New York*;*

- *In re Service Corporation International*, Civil Action H-99-280, United States District Court, Southern District of Texas*;*

- *Hicks v. Morgan Stanley & Co.,* 01 Civ. 10071 (RJH), United States District Court, Southern District of New York*;*

- *High Tide Harry's, Inc. v. Waste Management Inc. of Florida,* 05-CA-009441, 9th Judicial Circuit, State of Florida*;*

- *In re Campbell Soup Co. Securities Litigation,* 00-152-JEI, United States District Court, District of New Jersey;

- *Abrams v. Van Kampen Funds, Inc.* 01-C-7538, United States District Court, Northern District of Illinois*;*

- *In re Seitel, Inc. Securities Litigation,* No. 02-1566, United States District Court, Southern District of Texas*;*

- *Stevelman v. Alias Research, Inc.,* 591-CV-00682 (EBB), United States District Court, District of Connecticut*;*

- *In re Phoenix Leasing Limited Partnership Litigation,* No. 173739, Superior Court of the State of California, County of Marin*;*

- *In re Nuko Information Systems, Inc.,* C-97-20471 EAI, United States District Court, Northern District of California*;*

- *In re PriceSmart Securities Litigation,* Master File No. 03-CV-2260-JAH- (BLM), United States District Court, Southern District of California*;*

- *In re General Electric Co. Securities Litigation,* Civ. No. 09-CIV-1951 (DLC) ECF CASE, United States District Court, Southern District of New York*;*

- *In re PAR Pharmaceutical Securities Litigation,* Master File No. 2:06-03226 (ES) (SCM), United States District Court, District of New Jersey*;*

- *In re ING Groep, N.V. ERISA Litigation,* Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia*;*

- *In re Massey Energy Co. Securities Litigation,* Civil Action No. 5:10-CV-00689-ICB, United States District Court, Southern District of West Virginia;

- *In re Fannie Mae 2008 Securities Litigation,* No. 08-CV-7831, United States District Court, Southern District of New York*;*

- *In re 2014 Avon Products, Inc. ERISA Litigation,* Case No. 1:14-cv-10083, United States District Court, Southern District of New York*;*

- *In re BioScrip, Inc. Securities Litigation,* Civil Action No. 13-CV-6922-AJN, United States District Court, Southern District of New York*;*

- *In re BP plc Securities Litigation,* No. 4:10-MD-02185, United States District Court, Southern District of Texas*;*

- *The Department of the Treasury of the State of New Jersey and Its Division of Investment v. Cliffs Natural Resources Inc., et al.,* No. 1:14-CV-1031, United States District Court, Northern District of Ohio*;*

- *In re Eastman Kodak ERISA Litigation,* Master File No. 6:12-CV-06051 DGL, United States District Court, Western District of New York;

- *In re NII Holdings, Inc. Securities Litigation,* Civ. No. 1:14-CV-00227-LMB-JFA, United States District Court, Eastern District of Virginia;

- *In re Nu Skin Enterprises, Inc., Securities Litigation,* Master File No. 2:14-CV-00033-JNP-BCW, United States District Court, District of Utah*;*

- *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc., et al.,* Civil No. 12-3070 (JNE/HB), United States District Court, District of Minnesota*;*

- *In re TIBCO Software Inc. Stockholders Litigation,* Consolidated C.A. No. 10319-CB, Court of Chancery, State of Delaware;

- *In re Brightview Holdings, Inc. Securities Litigation,* Consolidated Civil Action Case No. 2019-07222, Court of Common Pleas of Montgomery County, Pennsylvania;

- *David Ronge, Individually and on Behalf of All Others Similarly Situated, v. Camping World Holdings, Inc., et al.,* Consolidated C.A. Case No. 1:18-cv-07030, United States District Court, Northern District of Illinois, Eastern Division;

- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation,* Consolidated Case No. 10-014311-CB, State of Michigan, in the Circuit Court for the County of Wayne;

- *Yellow Dog Partners, LP, Individually and on Behalf of All Others Similarly Situated, vs. Curo Group Holdings Corp., et al.,* C.A. Civil Action No. 2:18-cv-02662-JWL-KGG, United States District Court, District of Kansas, Kansas City;

- *Vancouver Alumni Asset Holdings Inc., Individually and on Behalf of All Others Similarly Situated, v. Daimler AG, Dieter Zetsche, Bodo Uebber, and Thomas Weber,* Master Case No. 16-cv-02942-DSF-KS, *Maria Munro, Individually and on Behalf of All Others Similarly Situated, v.Daimler AG, Dieter Zetsche, Bodo Uebber, and Thomas Weber* Case No. 16-cv-03412-DSF-KS, United States District Court, Central District of California;

- *Jennifer Tung, Individually and on Behalf of all Others Similarly Situated, v. Dycom Industries, Inc., Steven E. Nielsen and Andrew Deferrari,* Case No: 18-cv-81448-SINGHAL, United States District Court Southern District of Florida;

- *In re Henry Schein, Inc. Securities Litigation,* Master File No. 1:18-cv-01428-MKB-VMS, United States District Court, Eastern District of New York;

- *In re Impinj, Inc. Securities Litigation,* C.A. No. 3:18-cv-05704-RSL, United States District Court, Western District of Washington at Seattle;

- *Richard Di Donato, Individually and On Behalf of All Others Similarly Situated, v. Insys Therapeutics, Inc.; et al.,* Class Action No. CV-16-00302-PHX-NVW, United States District Court, for the District of Arizona;

- *Oklahoma Firefighters Pension and Retirement System, Individually and on Behalf of All Others Similarly Situated, v. Lexmark International, Inc., Paul A. Rooke, David Reeder and Gary Stromquist,* Class Action, Civil Action No. 1:17-cv-05543-WHP, United States District Court, Southern District of New York;

- *In re Netshoes Securities Litigation,* Index No. 157435 / 2018, Supreme Court of the State of New York, New York County;

- *In re Sequans Communications S.A. Securities Litigation,* Class Action, Case No. 1:17-cv04665-FB-SJB, United States District Court, Eastern District of New York;

- *Spectrum Brands Holdings, Inc., David M. Maura, Joseph S. Steinberg, George C. Nicholson, Curtis Glovier, Frank Iannna, Gerald Luterman, Andrew A. McKnight, Andrew Whittaker and HRG Group, Inc.,* Case No. 2019-CV-000982, State of Wisconsin, Circuit Court Branch 3, Dane County;

- *SEB Investment Management AB, individually and on behalf of all others similarly situated, v. Symantec Corporation and Gregory S. Clark,* No. C 18-02902 WHA, United States District Court, Northern District of California;

- *United States Steel Corporation, et al.,* Case No. 2:17-cv-0579-CB, United States District Court, Western District of Pennsylvania;

- *Harry Ploss, as Trustee for the Harry Ploss Trust DTD 8/16/1993, on behalf of Plaintiff and all others similarly situated, v. Kraft Foods Group, Inc. and Mondelez Global LLC,* Case No. 15-cv-02937, United States District Court, Northern District of Illinois, Eastern Division;

- *Richard Medoff v. CVS Caremark Corp., et al.,* Civil No. 09-cv-544-JNL, United States District Court, District of New York;

- *Norfolk County Retirement System, individually and on behalf of all others similarly situated, v. Community Health Systems, Inc., Wayne T. Smith and W. Larry Cash,* Consolidated Civil Action No.: 11-cv-0433, United States District Court for the Middle District of Tennessee, Nashville Division;

13

- *Douglas S. Chabot, et al., Individually and on Behalf of All Others Similarly Situated, Plaintiffs v. Walgreens Boots Alliance, Inc., et al., Defendants,* Civil Action No. 1:18-cv-02118-JEJ-KM, United States District Court, Middle District of Pennsylvania;

- *In re Obalon Therapeutics Inc. Securities Litigation,* Master File No. 3:18-cv-00352-AJB-AHG, United States District Court, Southern District of California

- *Plymouth County Contributory Retirement System, Individually and on Behaf of All Others Similarly Situated, Plaintiff, vs. Adamas Pharmaceuticals, Inc.; William Ericson; Martha J. Demski; Ivan Lieberburg; Gregory T. Went; Michael F. Bigham; David L. Mahoney; John Macphee; Rajiv Patni; Jennifer J. Rhodes; Alfred G. Merriweather; Christopher B. Prentiss; Richard King; Mardi C. Dier; Merrill Lynch, Pierce, Fenner, & Smith Incoporated; Leerink Partners LLC; and Evercore Group L.L.C.,* Case No.; RG19018715, Superior Court of the State of California for the County of Alameda;

- *Harry Ploss, as Trustee for the Harry Ploss Trust DTD 8/16/1993, on behalf of Plaintiff and all others similarly situated, Plaintiffs, v. Kraft Foods Group, Inc. and Mondelez Global LLC, Defendants.* Case No.; 15-cv-02937, In the United States District Court for the Northern District of Illinois Eastern Division;

- *In re Perrigo Company PLC Securities Litigation,* Case No.; 1:19-cv-00070-DLC, United States District Court, Southern District of New York;

- *In re Qudian Inc. Securities Litigation,* Master File No.: 1:17-cv-09741-JMF, United States District Court, Southern District of New York;

- *City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust, on Behalf of Itself and All Others Similarly Situated, Plaintiff, v. Charles W. Ergen, Michael T. Dugan, David J. Rayner, Echostar Corp., Echostar BSS Corp., Hughes Network Corp., and BSS*

14

*Merger Sub, Inc. Defendants.* Case No.: A-19-797799-B Dept. No.: XI, District Court Clark County, Nevada;

- *Teamsters Local 456 Pension Fund, et al., Plaintiffs, vs. Universal Health Services, Inc., et al., Defendants.* Case No. 2:17-cv-02817-JHS, United States District Court, Eastern District of Pennsylvania;

- *Maz Partners LP, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. First Choice Healthcare Solutions, Inc. and Christian Romandetti, Sr., Defendants.* Case No. 6:19-cv-00619-PGB-LRH, United States District Court, Middle District of Florida Orlando Division;

- *In Re The Allstate Corporation Securities Litigation,* Case No. 16-cv-10510, In the United States District Court for the Northern District of Illinois Eastern Division;

- *In Re Willis Towers Watson PLC Proxy Litigation,* Civ. A. No. 1:17:cv-01338-AJT-JFA, In the United States District Court for the Eastern District of Virginia Alexandria Division;

- *Larry Enriquez, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. Nabriva Therapeutics PLC, TED Schroeder, Gary Sender, and Jennifer Schranz, Defendants.* Case No. 19 Civ. 4183 (VM), United States District Court, Southern District of New York;

- *In re Blue Apron Holdings, Inc. Securities Litigation* No. 17-cv-04846-NGG-PK, United States District Court, Eastern District of New York;

- *Christina Lewis, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. YRC Worldwide Inc., et al., Defendants.* Case No. 1:19-cv-00001-GTS-ATB, United States District Court, Northern District of New York;

- *Paul Eric Weiss, on behalf of himself and all other similarly situated former stockholders of Nutraceutical International Corporation, Plaintiff, v. Michael D. Burke, J. Kimo Esplin, Frank*

*W. Gay II, Jeffrey A. Hinrichs, James D. Stice, HGGC Fund III, L.P. and HGGC LLC, Defendants.* C.A. No. 2020-0364-PAF, In The Court of Chancery of the State of Delaware;

- *Oklahoma Police Pension and Retirement System, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Sterling Bancorp, Inc.; Gary Judd; Thomas Lopp; Michael Montemayor; Scott Seligman; Barry Allen; Jon Fox; Seth Meltzer; Sandra Seligman; Peter Sinatra; Benjamin Wineman; Lyle Wolberg; Piper Sandler Companies; and American Capital Partners, LLC, Defendants.* Case 5:20-cv-10490-JEL-EAS, United States District Court, Eastern District of Michigan;

- *SEB Investment Management AB, individually and on behalf of all others similarly situated, Plaintiffs, v. Symantec Corporation and Gregory S. Clark, Defendants.* Case No. 3:18-cv-02902-WHA ECF CASE, United States District Court, Northern District of California San Francisco Division;

- *Christopher Vataj, Plaintiff, v. William D. Johnson, et al., Defendants.* Case No. 19-cv-06996-HSG, United States District Court, Northern District of California;

- *Patrick Machniewicz, Individually and on behalf of all others similarly situated, Plaintiff, v. Uxin Limited, Kun Dai, Zhen Zeng, Rong Lu, Julian Cheng, Dou Shen, Hainan Tan, Morgan Stanley & Co. International PLC, Goldman Sachs (Asia) L.L.C., J.P. Morgan Securities LLC, China International Capital Corporation Hong Kong Securities Limited, and China Renaissance Securities (Hong Kong) Limited, Defendants.* Case No: 1:19-cv-822-MKB-VMS, United States District Court, Eastern District of New York;

- *Dr. William Tomaszewski, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. Trevena, Inc., Maxine Gowen, and David Soergel, Defendants.* Civil Action No. 2:18-cv-4378-CMR, United States District Court, Eastern District of Pennsylvania;

- *In re Restoration Robotics, Inc. Securities Litigation.* Case No. 5:18-cv-03712-EJD, United States District Court, Northern District of California San Jose Division;

- *In re Dynagas LNG Partners LP Securities Litigation* Case No. 1:19-cv-04512 (AJN), United States District Court, Southern District of New York;

- *St. Lucie County Fire District Firefighters' Pension Trust, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. Southwestern Energy Company, et al., Defendants.* No. 2016-70651, In The District Court of Harris County, Texas 61ST Judicial District;

- *Hollywood Firefighters' Pension Fund, West Palm Beach Firefighters' Pension Fund, and Sheet Metal Workers' Local Union No. 80 Pension Trust Fund, on behalf of themselves and all others similarly situated, Plaintiffs, v. John C. Malone, Gregory B. Maffei, Gregg L. Engles, Ronald A. Duncan, Donne F. Fisher, and Richard R. Green, Defendants.* C.A. No. 2020-0880-SG, In The Court of Chancery of the State of Delaware;

- *Avi Yaron, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. Intersect ENT, Inc., Lisa D. Earnhardt, Jeryl L. Hilleman, and Robert H. Binney, Jr., Defendants.* Case No.: 4:19-cv-02647-JSW, United States District Court, Northern District of California;

- *The Arbitrage Fund et al Plaintiff(s) v. William Petty et al Defendant(s).* Case No: 2018-004060-CA-01, In the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida;

- *In re JPMorgan Precious Metals Spoofing Litig.,* No. 1:18-cv-10356 (S.D.N.Y.)

- *In Re Maxar Technologies, Inc. Shareholder Litigation.* Case No. 19CV357070, Superior Court of the State of California County of Santa Clara;

- *In Re Frontier Communications Corporation Stockholders Litigation.* Case No. 3:17-cv-01617-VAB, United States District Court District of Connecticut;

- *In Re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations.* Misc. Action No. 13-mc-1288 (RCL), In the United States District Court for the District of Columbia;

- *Dan Kohl, et al., Plaintiff, v. Loma Negra Compania Industrial Argentina Sociedad Anonima, Loma Negra Holding GMBH, Sergio Faifman, Marco Gradin, Ricardo Fonseva De Mendonca Lima, Luiz Augusto Klecz, Paulo Diniz, Carlos Boero Hughes, Diana Mondino, Sergio Daniel Alonso, Bradesco Securities Inc., Citigroup Global Markets Inc., HSBC Securities (USA) Inc., Itau BBA USA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Morgan Stanley & Co. LLC.* Index No. 653114/2018, Supreme Court of the State of New York County of New York;

- *In Re Merit Medical Systems, Inc. Securities Litigation.* Case No. 8:19-cv-02326-DOC-ADS, United States District Court Central District of California;

- *In re JPMorgan Treasury Futures Spoofing Litig.,* No. 1:20-cv-03515 (S.D.N.Y.);

- *Cory Longo, individually and on behalf of all others similarly situated, et al., Plaintiffs v. OSI Systems, Inc., et al., Defendants.* Case No. CV 17-8841 FMO (SKx), United States District Court Central District of California;

- *In Re Navient Corporation Securities Litigation.* Case: 1:17-cv-08373-RBK-AMD, United States District Court District of New Jersey;

- *In Re Vivint Solar, Inc. Securities Litigation.* Case No. 2:20-cv-919 (JNP) (CMR), In the United States District Court District of Utah, Central Division;

- *In Re Perrigo Company PLC Securities Litigation.* Case No. 1:19-cv-00070-DLC, United States District Court Southern District of New York;

- *In Re Aqua Metals, Inc. Securities Litigation.* Case No.: 4:17-cv-07142-HSG, United States District Court Northern District of California Oakland Division;

- *SEB Investment Management AB, individually and on behalf of all others similarly situated, Plaintiffs, v. Symantec Corporation and Gregory S. Clark, Defendants.* Case No. 3:18-cv-02902-WHA, United States District Court Northern District of California San Francisco Division;

- *Sandra Searles, individually and on behalf of all others similarly situated, Plaintiff, v. Richard M. Demartini, Christopher G. Marshall, R. Eugene Taylor, Crestview Partners, L.P., Crestview-NAFH, LLC and Crestview Advisors, LLC, Defendants.* Case No. 2020-0136-KSJM, In the Court of Chancery of the State of Delaware;

- *In Re PPDAI Group Inc. Securities Litigation.* Case No: 1:18-cv-06716-LDH-TAM, United States District Court Eastern District of New York;

- *Jeff Kirkland, Anthony Fiore, and Employees' Retirement System of the Puerto Rico Electric Power Authority, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, -against- WIDEOPENWEST, INC., Steven Cochran, Richard E. Fish, Jr., David Frederick Burgstahler, Brian Cassidy, Daniel Kilpatrick, Jeffrey Marcus, Phil Seskin, Joshua Tamaroff, Avista Capital Partners, UBS Securities LLC, Credit Suisse Securities (USA) LLC, RBC Capital Markets, LLC, Suntrust Robinson Humphrey, Inc., Evercore Group LLC, MacQuarie Capital (USA) Inc., Liontree Advisors LLC, and Raymond James & Associates, Inc., Defendants.* Index No. 653248/2018, Supreme Court of the State of New York County of New York: Commercial Division;

- *Public Employees' Retirement System of Mississippi, Individually and on behalf of all others Similarly Situated, Plaintiff, v. Treehouse Foods, Inc., Sam K. Reed, Dennis F. Riodan and*

*Christopher D. Silva. Defendants.* Case No.: 16-cv-10632, United States District Court Northern District of Illinois;

- *Ronald L. Jackson, as Trustee Under Agreement Dated 01/05/2012 by Ronald L. Jackson, Individually, and on Behalf of all Others Similarly Situated, Plaintiff, v. Microchip Technology Inc.; Steve Sanghi; Ganesh Moorthy; and J. Eric Bjornholt, Defendants.* Case No. 2:18-cv-02914-ROS, United States District Court District of Arizona;

- *City of Hallandale Beach Police Officers' and Firefighters' Personnel Retirement Trust, on Behalf of Itself and all others similarly situated, Plaintiff, v. Charles W. Ergen, Michael T. Dugan, David J. Rayner, Echostar Corp., Echostar BSS Corp., DISH Network Corp., and BSS Merger SUB Inc. Defendants.* Case No.: A-19-797799-B, District Court Clark County, Nevada;

- *In RE TAL Education Group Securities Litigation.* Case No. 1:18-cv-05480-LAP-KHP, United States District Court Southern District of New York;

- *In Re Evoqua Water Technologies Corp. Securities Litigation.* Case 1:18-cv-10320-JPC, United States District Court Southern District of New York;

- *Utah Retirement Systems, Plaintiff, v. Healthcare Services Group, Inc., Daniel P. McCartney, Theodore Wahl, John C. Shea, and Matthew J. McKee, Defendants.* Case No. 2:19-cv-01227-ER, United States District Court Eastern District of Pennsylvania;

- *In re Lyft, Inc. Securities Litigation.* Case No. 4:19-cv-02690-HSG, United States District Court Northern District of California Oakland Division;

- *In re Myriad Genetics, Inc. Securities Litigation.* Case No. 2:19-cv-00707-DBB The United States District Court District of Utah;

- *Ronald L. Jackson, Plaintiff, v. Microchip Technology Incorporated, et al., Defendants.* Case No. CV-18-02914-PHX-JJT In the United States District Court for the District of Arizona;

- *Daniel Yannes, Individually and on behalf of All Others Similarly Situated, Plaintiff, vs. SCWORX CORPORATION and MARC S. SCHESSEL, Defendants.* Case No. 20-cv-3349-JGK United States District Court Southern District of New York;

- *In re Columbia Pipeline Group, Inc. Merger Litigation.* Case No. 2018-0484-JTL In the Court of Chancery of the State of Delaware;

- *The ARBITRAGE FUND, on behalf of itself and all other similarly situated shareholders of EXACTECH, INC., Plaintiff, v. WILLIAM PETTY, BETTY PETTY, DAVID PETTY, PRIMA INVESTMENTS, INC., PRIMA INVESTMENTS, L.P., JAMES G. BINCH, ANDREW KRUSEN, JR., WILLIAM B. LOCANDER, RICHARD C. SMITH, and FERN S. WATTS, Defendants.* Case No. 2018-004061 Circuit Court of Florida Eleventh Judicial Circuit Miami-Dade County;

- *In re Yay Yo, Inc. Securities Litigation.* Case No. 2:20-cv-08235-SVW-AFM United States District Court Central District of California;

**<u>Consumer Cases</u>**

- *Charles Roberts, an individual, and Kenneth McKay, an individual, on Behalf of Themselves and Others Similarly Situated v. C.R. England, Inc., a Utah Corporation; and Opportunity Leasing, Inc., a Utah Corporation,* Civil Case No. 2:12-cv-00302, United States District Court, District of Utah, Central Division;

- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC,* No. 18-2-00283-4 SEA, Superior Court of the State of Washington King County;

- *Wave Lengths Hair Salons of Florida, Inc., on Behalf of Itself and All Others Similarly Situated, d/b/a Salon Adrian v. CBL & Associates Properties, Inc., CBL & Associates Management, Inc., CBL & Associates Limited Partnership, and JC Gulf Coast Town Center, LLC,* No. 2:16-cv-206-FtM-PAM-MRM, United States District Court, Middle District of Florida, Fort Myers Division;

- *In re: Vizio, Inc., Consumer Privacy Litigation,* No. 8:16-ml-02693-JLS (KESx), United States District Court, Central District of California, Santa Ana Division;

- *In re Google LLC Streetview Electronic Communications Litigation,* Case No. 5:10-md-02184, United States District Court, Northern District of California, San Francisco Division;

- *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins. Co.,* No. 2015-1946 CA-01, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida;

- *Valle v. Popular Community Bank,* No. 653936/2012, Supreme Court, State of New York, County of New York;

- *Bizarro, et al., v. Ocean County,* No. OCN-1644-17, Superior Court of New Jersey, Law Division, Ocean County;

- *Christina Martin et al. v. the State of Washington, et al.,* No 14-2-00016-7, Superior Court, State of Washington, County of Spokane;

- *Picant v. Premier Cruise Lines,* 96-06932-CA-FN, 18th Judicial Circuit, State of Florida;

- *McParland and Picking v. Keystone Health Plan Central, Inc.,* Civil Action No. 98-SU- 00770-01, Court of Common Pleas, York County, Pennsylvania;

- *Smith v. American Family Mutual Automobile Insurance Co.,* No. 00-CV-211554, Circuit Court of Jackson County, Missouri;

- *Phil Shin, on Behalf of Himself and All Others Similarly Situated v. Plantronics, Inc.,* No. 5:18-cv-05626-NC, United States District Court, Northern District of California;

- *Lincoln Adventures, LLC, a Delaware Limited Liability Company and Michigan Multi-King, Inc., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated v. Those Certain Underwriters at Lloyd's, London Members of Syndicates, et al.,* No. 2:08-cv-00235-CCC-JAD, United States District Court, Court of New Jersey;

- *Scott Meeker and Erin Meeker, Kelly Goodwin, Bruce Ely and Kristi Hauke, Elizabeth Borte and Rino Pasini, Christian Miner, and Judy Sanseri and Howard Banich; Individually and on Behalf of All Others Similarly Situated v. Bullseye Glass Co., an Oregon Corporation,* Civil Action No. 16CV07002, In the Circuit Court of the State of Oregon, County of Multnomah;

- *Duncan v. The Unity Life and Accident Insurance Association, et al.*, Civil Action No. 00-CIV-7621, United States District Court, Southern District of New York;

- *Duncan v. Columbian Protective Association of Binghamton, New York, and Columbian Mutual Life Insurance Company,* No. 00 CIV. 7236 (JGK), United States District Court, Southern District of New York;

- *Watkins, as Executrix of the Estate of Hines, and as Beneficiary of the Adult Whole Life Industrial Policy of Hines, v. Columbian Mutual Life Insurance Company, a Subsidiary of Columbian Financial Group, and Golden Eagle Mutual Life Insurance Corporation,* No. 03 CIV. 8620 (JGK), United States District Court, Southern District of New York;

- *In re: Benzion v. Vivint, Inc.,* No. 12-CV-61826-WJZ, United States District Court, Southern District of Florida;

- *In re: ADT Security Services, Inc.*, No. 1:11-CV-1925, United States District Court, Northeastern District of Illinois;

- *The State of Illinois v. Au Optronics Corporation, et al.,* No. 10 CH 34472, Circuit Court of Cook County, Illinois;

- *State of Washington v. AU Optronics Corporation, et al.,* No. 10-2-29164-4 SEA, King County Superior Court, Washington;

- *LLE One, LLC, et al. v. Facebook, Inc.,* Case No. 4:16-cv-06232-JSW, United States District Court, Northern District of California;

- *Mey v. Interstate National Dealer Services, Inc., et al.,* No. 1:14-CV-01846-ELR, United States District Court, Northern District of Georgia;

- *Estakhrian, et al., v. Obenstine, et al.,* No. CV11-3480-FMO (CWx), Nevada District Court;

- *Krakauer v. DISH Network, L.L.C.,* Civil Action No. 14-CV-333, United States District Court, Middle District of North Carolina;

- *Lofton v. Verizon Wireless (VAW) LLC,* No. 13-CV-05665-YGR, United States District Court, Northern District of California;

- *Lyons, et al., v. Litton Loan Servicing, LP, et al.,* No. 13-CV-00513, United States District Court, Southern District of New York;

- *Katz, et al. v. Live Nation, Inc., et al.,* Civil Action No. 1:09-CV-003740-MLC-DEA, United States District Court, District of New Jersey;

- *Bergman, et al. v. DAP Products Inc., et al.,* No. 14-CV-03205-RDB, United States District Court, District of Maryland;

- *In re Google LLC Street View Electronic Communications Litigation,* Case No. 3:10-md-02184-CRB, United States District Court, Northern District of California, San Francisco Division;

- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC,* No. 18-2-00283-4 SEA, Superior Court of the State of Washington King County;

- *Valle v. Popular Community Bank,* No. 653936/2012, Supreme Court, State of New York, County of New York;

- *Royce Solomon, et al., individually and on behalf of all others similarly situated, v. American Web Loan, Inc., et al.,* Class Action, Civil Action No. 4:17-cv-0145-HCM-RJK, United States District Court, Eastern District of Virginia, Newport News Division;

- *Arandell Corporation, et al., v. Xcel Energy, Inc., et al.,* Case No.: 3:07-cv-00076-wme; *Newpage Wisconsin System Inc., v. CMS Energy Resource Management Company, et al.,* Case No.:3:09-cv-00240-wme, United States District Court for the Western District of Wisconsin;

- *Jeffrey Koenig and Marcellus Holt, on behalf of themselves and all others similarly situated, Plaintiffs, v. Vizio, Inc., Defendant.* LASC Case No: BC702266, Superior Court of the State of California for the County of Los Angeles;

- *Tallen Todorovich, on behalf of himself and all others similarly situated, Plaintiff, against, 63 Wall Street Owner, LLC and 67 Wall Street Owner LLC, Defendants.* Index No.: 161441/2019, Supreme Court of the State of New York, County of New York

- *Melissa Atkinson and Katie Renvall, Individually and on Behalf of Classes of Similarly Situated Individuals, Plaintiffs, v. Minted, Inc., Defendant.* Case No.: 3:20-cv-03869-VC, United States District Court, Northern District of California;

- *William Cleary, et al.*, *Plaintiffs, v. American Airlines, Inc, Defendant.* Case 4:21-cv-00184-O, In the United States District Court for the Northern District of Texas Fort Worth Division;

- *Andrew Mackmin, et al.*, *Plaintiffs, v. VISA Inc., et al., Defendants.* Case 1:11-cv-01831-RJL, In the United States District Court for the District of Columbia;

- *Peter Staley, et al. Plaintiffs, v. Gilead Sciences, Inc., et al. Defendants.* Case No. 3:19-cv-02573-EMC, In the United States District Court for the Northern District of California San Francisco Division;

- *Olean Wholesale Grocery Cooperative, Inc.*, *et al., Plaintiffs, v. AGRI STATS, Inc., et al., Defendants.* Case: 1:19-cv-08318, United States District Court Northern District of Illinois Eastern Division;

- *In re Valeant Pharmaceuticals International, Inc. Third Party Payor Litigation.* Case 3:16-cv-03087-MAS-LHG, United States District Court District of New Jersey;

- *Peter Staley, et al. Plaintiffs, v. Gilead Sciences, Inc., et al. Defendants.* Case No. 3:19-cv-02573-EMC United States District Court for the Northern District of California, San Francisco Division;

- *Brian Resendez, Rodica Alina Resendez, individually and on behalf of all others similarly situated. Plaintiffs. v. Precision Castparts Corp., an Oregon corporation, and PCC Structurals, Inc., Defendants;* Case No. 16cv16164 In The Circuit Court of the State of Oregon for the County of Multnomah;

- *BCBSM, INC., d/b/a BLUE CROSS and BLUE SHIELD OF MINNESOTA, on behalf of itself and those similarly situated, Plaintiff, v. VYERA PHARMACEUTICALS, LLC, PHOENIXUS AG, MARTIN SHKRELI, and Kevin Mulleady, Defendants.* Case No. 1:21-cv-1884-DLC In The United States District Court for the Southern District of New York;

**Employment Cases**

- *Tapanga Hardeman, et al., Plaintiff, v. Office of Lake County Sheriff, et al. Defendant.* Case No. 1:17-cv-08729, United States District Court, for the Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3 Eastern Division;

- *Ronen Sartena, Elizabeth Gordon, Nathaniel Dearth, and Isabel Strobing, on behalf of themselves and all others similarly situated, Plaintiffs, against, Meltwater News US, Inc. and Meltwater News US 1, INC., Defendants.* Index No.: 614389/2020, Supreme Court of the State of New York, County of Suffolk;

<u>Mile Marker Zero, LLC, Greenville, SC</u>

Principal
Directed the development of marketing and advertising plans for national and local clients, including the following:

- **Complete Claim Solutions, Inc.**

Mile Marker Zero worked with Complete Claim Solutions, Inc., for six years as its sole media planning and buying partner. Mile Marker Zero developed and implemented national and international print and earned media notice programs to support the notification of consumers and third-party payors in cases such as the following:

| Coumadin-Warfarin | Taxol | Van Kampen |
|---|---|---|
| Hytrin | Waste Management | Unity Life Insurance Co. |
| Cardizem | Campbell Soup | Premier Cruise Lines |
| Buspar | Alias Research | MedCo |
| Nuko | Augmentin | Berkshire Realty |
| Columbian Mutual Life | Keystone Health Plan | Platinol |
| Freeport-McMoRan | Seitel, Inc. Securities | Transaction System Architects |
| Sulpher, Inc. | Relefen | Remeron |
| Service Corporation | 3M-Scotch | Baycol |

| International | | |
|---|---|---|
| Smartforce, PLC | American Family Mutual Automobile Insurance Co. | Eaton Vance Corp. |
| Cipro | PriceSmart | Premarin |
| Morgan Stanley | | |

Other clients include:
- **The National Arthritis Foundation**
- **Papa Murphy's Pizza**
- **FIERO** (Fire Industry Equipment Research Organization) – national fire services association.
- **TeamPoint Systems, Inc.** – a global software company

**Denny's Corporation, Spartanburg, SC**

Senior National Advertising Manager

**The Coca-Cola Company, Atlanta, GA**

Advertising Services Manager

**McCann Erickson, Atlanta, GA**

Media Supervisor

**EDUCATION**

Bachelor of Business Administration, University of North Dakota

# EXHIBIT B



A.B. Data, Ltd.
Class Action Administration Company
600 A.B. Data Drive
Milwaukee, WI 53217

# Proposed Notice Plan

---

*In re Opana ER Antitrust Litigation*
Case No. 1:14-cv-10150 (N.D. Ill.)
August  12, 2022

## CONTENTS

Case Background and Class Definition..........................................................................  Page 3

Proposed Notice Plan Overview…...............................................................................  Page 6

Paid-Media Planning Methodology..............................................................................  Page 10

Consumer Target Audience ........................................................................................ Page 12

Geographic Considerations...........................................................................................  Page 15

Media-Usage Analysis...................................................................................................  Page 17

Digital Media Analysis and Recommendation..............................................................  Page 19

Consumer Print-Media Analysis and Recommendations…………………………….Page 26

Earned Media Notice Recommendation.......................................................................  Page 29

Additional Third-Party Payor Recommendation……………………………… Page 31

National Media Delivery................................................................................................  Page 33

Notice Design Strategies ..............................................................................................  Page 35

## APPENDICES

**APPENDIX A**    MRI Data Audience Demographics – Ailments/Remedies: Persons who have or have had Chronic/Severe Pain

**APPENDIX B**    MRI Data Media Quintiles – Ailments/Remedies: Persons who have or have had Chronic/Severe Pain

**APPENDIX C**    MRI Data Digital Media Usage – Ailments/Remedies: Persons who have or have had Chronic/Severe Pain

**APPENDIX D**    MRI Data Websites and Social Media Usage – Ailments/Remedies: Persons who have or have had Chronic/Severe Pain

**APPENDIX E**    MRI Data Magazine Audiences - Ailments/Remedies: Persons who have or have had Chronic/Severe Pain



# CASE BACKGROUND AND

# CLASS DEFINITION



## CASE BACKGROUND AND CLASS DEFINITION

This proposed Notice Plan is submitted by A.B. Data, Ltd. ("A.B. Data") in connection with *In re Opana ER Antitrust Litigation*, a case in the United States District Court for the Northern District of Illinois (the "Court").

"End-Payor Plaintiffs" or "Plaintiffs" claim that Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Penwest Pharmaceuticals Co. (collectively, "Endo"), and Impax Laboratories, Inc. ("Impax" and, together with Endo, "Defendants") violated certain U.S. state antitrust, consumer protection, and unjust enrichment laws, harming competition and causing Class Members to overpay for brand and generic versions of Opana ER® 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg (collectively, "Opana ER products") sold by Endo and Impax.

This document details a proposed Notice Plan substantially similar to the successful class certification plan A.B. Data effectuated pursuant to the Class Certification Notice Order.

Although Plaintiffs do not know the exact number of Class Members, it is believed that they number in the millions. Therefore, members of the Classes are numerous, and joinder is impracticable.

Because direct notice to all Class Members in this case is impracticable, a paid-media plan targeting unidentified Class Members is necessary.

The End-Payor Plaintiff Classes certified by the Court (hereinafter referred to as the "Classes") include the following persons and entities:

- **Antitrust/Consumer Protection Class**: All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018;; and

- **Unjust Enrichment Subclasses**:
- All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the following states and commonwealths:

  - Subclass 1: Iowa, Michigan, Oregon, West Virginia

  - Subclass 2: Maine, New Mexico, Wisconsin

  - Subclass 3: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont

  - Subclass 4: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah



    ○   Subclass 5: Arizona*, North Dakota.

*With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.*

The following individuals and entities were excluded from the Classes:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;

- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;

- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");

- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");

- Pharmacy Benefit Managers;

- All Counsel of Record; and

- The Court, Court personnel, and any member of their immediate families.



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# NOTICE PLAN OVERVIEW



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# NOTICE PLAN OVERVIEW

## Consumer Plan Components

This document outlines the process for providing notice of Settlement related to *In re Opana ER Antitrust Litigation* to potential Class Members. This proposed plan is consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and is substantially similar to the successful class certification plan A.B. Data effectuated pursuant to the Class Certification Notice Order.

In evaluating the media options to be considered for this case, A.B. Data first reviewed the uses of Opana ER and the circumstances under which it was prescribed to patients. For this information, the label for Opana ER was examined[1]. It was determined that people suffering from moderate to severe chronic pain from ailments such as arthritis and cancer were the most likely users of Opana ER and generic Opana ER

To further define the proposed Classes and develop the target audience, we next examined demographic data from the nationally accredited resource, MRI Simmons,[2] for people in the United States who have chronic pain from arthritis, cancer treatments, and other ailments. It was determined that the target audience for this medication has the following characteristics:

- Men – 38.2%; Women – 61.8%
- Age 35+: 79.2%
- Not working/retired: 59.3%

We also researched media usage data for the demographic, which confirmed that digital media would be the most efficient and effective media vehicle to reach the audience of "Adults with Chronic Pain."

The proposed Notice Plan will be national in scope with emphasis from the digital media in the 26 class states plus the District of Columbia.

---

[1] https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/021610s009lbl.pdf.

[2] MRI Simmons Survey of the American Consumer is the country's largest, most comprehensive, and most reliable consumer and media and product/service usage database. Data from the Survey of the American Consumer, conducted continuously since 1979, is used in the majority of media and marketing plans written in the United States. The firm's multidimensional database is the largest and most reliable source for integrated media planning. About 450 U.S. advertising agencies, including 90 of the top 100, subscribe to MRI Simmons Research, along with A.B. Data and more than 200 national marketers. MRI Simmons offers the most detailed and representative picture of U.S. demographics and lifestyles, including information on usage of nearly 6,000 product and service brands across 550 categories, the magazines and newspapers audiences read, the websites they look at, the television programs they watch, and the radio stations they listen to.



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

The components of the proposed Notice Plan are as follows:

| Digital and Social Media | | | | |
|---|---|---|---|---|
| **Audience Targets** | **Ad Unit** | **Placement** | **Networks** | **Impressions Delivered** |
| Adults age 35+ Chronic Pain; emphasis on women age 35+ | Banner Ads; Newsfeed Ads; Google Search (AdWords) | Mobile; In-App; Desktop | Google Display Networks; Google AdWords; YouTube; Facebook/Instagram | 237.3 million minimum |

| Print Media | | | |
|---|---|---|---|
| **Publication Name** | **Circulation** | **Publishing Frequency** | **Ad Size** |
| People | 3,400,000 | Weekly on Friday | 1/3 page |

| Earned Media |
|---|
| Press Release distributed via *PR Newswire* US1 National newswire; Tweeted to *PR Newswire* and A.B. Data followers |

| TPP Media | | | |
|---|---|---|---|
| **Media Vehicle** | **Ad Unit** | **Website** | **Audience** |
| Direct Notice | Postcard | | 40,000 mailed |
| Digital media | Banner ads | • ThinkAdvisor.com/life-health<br>• BenefitNews.com<br>• SHRM.org | 30-day campaign |

These paid media components, which will include online platforms, social media, print media and earned media vehicles, are all specifically targeted for and will reach unidentified potential members of the Classes. A dedicated informational case website and case Facebook page will be developed to complement the proposed Notice Plan and to ensure Class Members' easy access to updated information. Detailed information about each component of the proposed Notice Plan and its coverage of the target audience in this case appears in the Media Analysis and Recommendation sections below.

The proposed Notice Plan is geographically targeted to the 26 class states plus the District of Columbia, with some national coverage to reach those who may have relocated. The proposed plan will deliver an estimated reach of 82.1% to the target audience.



## Delivery and Due Process

The proposed Notice Plan will deliver an estimated reach of 82.1% and an average frequency of 1.6 times to the target audience of adults age 35+, as calculated by Comscore,[3] MRI-Simmons, and A.B. Data media professionals.

The methods described herein reflect a strategic, microtargeted, and contemporary method to deploy notice to potential Class Members. This proposed Notice Plan provides a reach and frequency similar to those that other courts have approved and that are recommended by The Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,* which considers a 70%-95% reach among class members reasonable.

The proposed Notice Plan described in this document is consistent with recent Court-approved A.B. Data notice plans for other similar pharmaceutical cases with regard to the methods and tools for developing such plans. Previous notice plans include those for the following pharmaceutical cases:

- *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litigation*, Case No. 17-md-2785 (D. Kan.)

- *The Hosp. Auth. of Metro. Gov't. of Nashville & Davidson Cnty. v. Momenta Pharmas., Inc.*, No. 15-cv-01100 (M.D. Tenn.);

- *In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-md-2472 (D.R.I.);

- *Shannon Mahoney v. Endo Health Solutions, Inc.*, No. 15-cv-9841 (S.D.N.Y.)

- *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (D. Conn.);

- *In re Solodyn (Minocycline Hydrochloride) Litig.*, No. 14-md-2503 (D. Mass.);

- *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-01833 (E.D. Pa.)[4]

The proposed Notice Plan is, in A.B. Data's experience, the best practicable under the circumstances for reaching potential Class Members and meets due process requirements.

---

[3] Comscore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet data usage. Comscore maintains a proprietary database of more than two million consumers who have given Comscore permission to monitor their browsing and transaction behavior, including online and offline purchasing.

[4] In addition, the Court appointed A.B. Data as notice administrator in connection with the dissemination of class notice after the Court certified the End-Payor Classes. *See In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 752 (N.D. Ill.).



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# PAID-MEDIA PLANNING METHODOLOGY



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

## PAID-MEDIA PLANNING METHODOLOGY

A.B. Data notice plans are developed to reach class members effectively and efficiently and do the following:

1. Identify the demographics of class members through the use of syndicated and/or peer-reviewed, accredited research to establish a primary target audience;
2. Outline the methodology for selecting the media vehicles recommended and their relationship to product/service purchase and usage by the target audience; and
3. Provide results that quantify for the Court the adequacy of the Notice based upon recognized tools of media measurement.

The first steps to developing a notice plan involve determining the demographics of the potential class members and defining the target audience. A.B. Data then analyzes media quintile usage data and the ability of each advertising medium to provide cost-efficient coverage of the target audience to develop the direction of the notice plan, *i.e.*, whether notification is best done through print, online, broadcast, and/or some other methodology.

In the development of successful notice plans, A.B. Data uses reach and frequency as the standards upon which to measure effectiveness of delivering notice to a defined target audience. Below are the definitions of these terms as they relate to paid media.

- Reach – expressed as a percentage, a measurement of a target audience that was exposed at least one time to a specific media message or combination of media messages, whether via print, broadcast, online, outdoor, etc. media, within a given time period.
- Frequency – the estimated average number of opportunities a member of the target audience sees the Notice during the campaign.

These analytical tools, provided by Comscore and MRI-Simmons, are used to determine the publications/websites selected and the number of insertions/impressions to be purchased. MRI-Simmons is the leading supplier of multimedia audience research in the United States. As a nationally accredited research firm, it presents a single-source measurement of major media, products, services, and consumer demographic, lifestyle, and psychographic characteristics. Comscore provides detailed internet data usage. It is the most trusted platform for planning, transacting, and evaluating digital media across platforms.



# CONSUMER
# TARGET AUDIENCE



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

12

# CONSUMER TARGET AUDIENCE

To define the Class and develop the primary consumer target audience for this case, we examined accredited marketing data from 2021 Doublebase MRI-Simmons for "Adults Who [have/had] Chronic/Severe Pain." *See* Appendix A for the complete results of the syndicated data from MRI-Simmons regarding this demographic group.

Below is a summary of some of the key demographic statistics for these categories.

| Demographics | Adults Who [Have/Had] Chronic/Severe Pain |
|---|---|
| Men | 38.2% |
| Women | 61.8% |
| 18-24 | 8.5% |
| 25-34 | 12.3% |
| 35-44 | 14.6% |
| 45-54 | 20.1% |
| 55-64 | 21.1% |
| 65+ | 23.4% |
| 25-64 | 68.1% |
| 25+ | 91.5% |
| **Education** | |
| Did Not Graduate High School | 14.6% |
| Graduated High School Only | 31.1% |
| Attended/Graduated College | 54.3% |
| **Household Income** | |
| Median Household Income | $50,700 |
| HHI $100,000+ | 23.1% |
| HHI $60,000-$99,999 | 20.9% |
| HHI $30,000-$59,999 | 24.9% |
| HHI Under $30,000 | 31.0% |
| Wage Earner: Sole Earner | 14.0% |
| Wage Earner: Primary Earner | 12.6% |
| Wage Earner: Secondary Earner | 14.2% |
| Not Working/retired | 59.3% |
| **Marital Status** | |
| Now Married | 46.0% |
| **Household Size** | |
| Household size 2 | 35.7% |
| Household size 3-4 | 30.2% |
| Home Owned | 61.3% |
| **Spanish Language** | |
| Spanish, Hispanic, or Latino Descent | 12.4% |



| Demographics | Adults Who [Have/Had] Chronic/Severe Pain |
|---|---|
| Spanish Spoken in Home | 13.1% |
| **County Size[5]** | |
| A County | 32.9% |
| B County | 34.0% |
| C County | 17.7% |
| D County | 15.5% |
| **Race \*** | |
| White | 77.7% |
| Black/African American | 12.6% |
| Asian | 2.6% |
| Other Race/Multiple Classifications | 13.0% |

\*May add up to more than 100%, as people could select as many classifications as applied.

Based on these data, adults who have or have had moderate to severe pain generally have the following characteristics:

- Age 35-74, especially women
- Likely to be divorced, legally separated, or never married
- High School graduates or Associate degree from college
- Tend to be unemployed/not working
- Are more likely to have household incomes below the U.S. average of $61,937
- Live in urban areas
- There is no significant ethnic emphasis

Based on the MRI-Simmons audience demographic data, we recommend adults age 35+ as the buying target audience for the proposed Notice Plan with an emphasis on women.

---

[5] A Counties, as defined by A.C. Nielsen Company ("Nielsen"), are all counties belonging to the 25 largest metropolitan areas. These metro areas correspond to the Metropolitan Statistical Area and include the largest cities and consolidated areas in the U.S. B Counties, as defined by Nielsen, are all counties not included under category A that either have a population greater than 150,000 or are in a metro area with a population greater than 150,000 according to the latest census. C Counties, as defined by Nielsen, are all counties not included under categories A or B that either have a population greater than 40,000 or are in a metro area with a population greater than 40,000 according to the latest census. D Counties are, essentially, rural counties.



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# CONSUMER TARGET AUDIENCE

To define the Class and develop the primary consumer target audience for this case, we examined accredited marketing data from 2021 Doublebase MRI-Simmons for "Adults Who [have/had] Chronic/Severe Pain." *See* Appendix A for the complete results of the syndicated data from MRI-Simmons regarding this demographic group.

Below is a summary of some of the key demographic statistics for these categories.

| Demographics | Adults Who [Have/Had] Chronic/Severe Pain |
|---|---|
| Men | 38.2% |
| Women | 61.8% |
| 18-24 | 8.5% |
| 25-34 | 12.3% |
| 35-44 | 14.6% |
| 45-54 | 20.1% |
| 55-64 | 21.1% |
| 65+ | 23.4% |
| 25-64 | 68.1% |
| 25+ | 91.5% |
| **Education** | |
| Did Not Graduate High School | 14.6% |
| Graduated High School Only | 31.1% |
| Attended/Graduated College | 54.3% |
| **Household Income** | |
| Median Household Income | $50,700 |
| HHI $100,000+ | 23.1% |
| HHI $60,000-$99,999 | 20.9% |
| HHI $30,000-$59,999 | 24.9% |
| HHI Under $30,000 | 31.0% |
| Wage Earner: Sole Earner | 14.0% |
| Wage Earner: Primary Earner | 12.6% |
| Wage Earner: Secondary Earner | 14.2% |
| Not Working/retired | 59.3% |
| **Marital Status** | |
| Now Married | 46.0% |
| **Household Size** | |
| Household size 2 | 35.7% |
| Household size 3-4 | 30.2% |
| Home Owned | 61.3% |



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

| Demographics | Adults Who [Have/Had] Chronic/Severe Pain |
|---|---|
| **Spanish Language** | |
| Spanish, Hispanic, or Latino Descent | 12.4% |
| Spanish Spoken in Home | 13.1% |
| **County Size[6]** | |
| A County | 32.9% |
| B County | 34.0% |
| C County | 17.7% |
| D County | 15.5% |
| **Race \*** | |
| White | 77.7% |
| Black/African American | 12.6% |
| Asian | 2.6% |
| Other Race/Multiple Classifications | 13.0% |

\*May add up to more than 100%, as people could select as many classifications as applied.

Based on these data, adults who have or have had moderate to severe pain generally have the following characteristics:

- Age 35-74, especially women
- Likely to be divorced, legally separated, or never married
- High School graduates or Associate degree from college
- Tend to be unemployed/not working
- Are more likely to have household incomes below the U.S. average of $61,937
- Live in urban areas
- There is no significant ethnic emphasis

Based on the MRI-Simmons audience demographic data, we recommend adults age 35+ as the buying target audience for the proposed Notice Plan with an emphasis on women.

---

[6] A Counties, as defined by A.C. Nielsen Company ("Nielsen"), are all counties belonging to the 25 largest metropolitan areas. These metro areas correspond to the Metropolitan Statistical Area and include the largest cities and consolidated areas in the U.S. B Counties, as defined by Nielsen, are all counties not included under category A that either have a population greater than 150,000 or are in a metro area with a population greater than 150,000 according to the latest census. C Counties, as defined by Nielsen, are all counties not included under categories A or B that either have a population greater than 40,000 or are in a metro area with a population greater than 40,000 according to the latest census. D Counties are, essentially, rural counties.



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# GEOGRAPHIC CONSIDERATIONS



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

17

# GEOGRAPHIC CONSIDERATIONS

The two Classes are numerous and geographically dispersed across the United States. Notice to the Classes will be targeted first to the Class states and secondarily nationwide to reach those who may have relocated from the Class states.

Below is a summary of the states included in each Class.

Antitrust/Consumer Protection Class:

| | | |
|---|---|---|
| Arizona | California | Florida |
| Hawaii | Iowa | Maine |
| Michigan | Minnesota | Missouri |
| Nebraska | Nevada | New Hampshire |
| New Mexico | New York | North Carolina |
| North Dakota | Oregon | South Dakota |
| Tennessee | Vermont | West Virginia |
| Wisconsin | District of Columbia | |

Unjust Enrichment Subclasses

- **Subclass 1**: Iowa, Michigan, Oregon, West Virginia
- **Subclass 2**: Maine, New Mexico, Wisconsin
- **Subclass 3**: Hawaii, Massachusetts, Mississippi, Nebraska, Vermont
- **Subclass 4**: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah
- **Subclass 5**: Arizona, North Dakota



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

18

# MEDIA-USAGE ANALYSIS

*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# MEDIA-USAGE ANALYSIS

Everybody is exposed to and consumes media differently, sometimes with daily changes. However, we all develop patterns to our media consumption. And those patterns become our individual media habits. MRI divides those habits into five categories of media usage, from heavy consumption of media to light users of a media type. These five categories are defined by Quintiles ranked from 1 to 5, with Quintile 1 representing the heaviest user of a media vehicle and Quintile 5 representing a light user.

The media usage of the target audience in each Quintile is expressed as an index. An index of 100 is an average usage of a particular medium. Therefore, an index above 100 indicates a heavier usage of the medium than that of the average adult, and an index below 100 indicates a lighter usage of the medium than that of the average adult.

Media vehicles in the Quintile analysis summarized below include magazines, newspapers and newspaper supplements, radio, television, and the Internet.

| Media Indices | [Have/Had] Chronic/ Severe Pain |
|---|---|
| **Magazines** | |
| Quintile 1 | 113 |
| Quintile 2 | 104 |
| **Newspapers and Supplements** | |
| Quintile 1 | 103 |
| Quintile 2 | 101 |
| **Radio (Weekday)** | |
| Quintile 1 | 104 |
| Quintile 2 | 98 |
| **Television** | |
| Quintile 1 | 148 |
| Quintile 2 | 99 |
| **Digital** | |
| Quintile 1 | 93 |
| Quintile 2 | 100 |

Appendix B includes the entire 2021 MRI-Simmons media Quintile analysis for adults who "Have/Had Chronic/Severe Pain."

Based upon the flexibility of geographic targeting, the demographic analysis, and the media Quintile results, it is recommended that targeted digital, social media and national print media be reviewed and included in the proposed Notice Plan. Television will not be included at this time due to cost restraints.



# DIGITAL MEDIA ANALYSIS AND RECOMMENDATION



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

21

## DIGITAL MEDIA ANALYSIS AND RECOMMENDATION

MRI-Simmons provides data on internet usage by asking survey respondents about their online usage during the 30 days prior. According to the 2021 MRI-Simmons Doublebase survey, 91.3% of "Adults Who Have/Had Chronic Severe Pain" have used the Internet during the past 30 days.

Below is an overview of Internet usage. For a complete list of Internet usage activities, please refer to Appendix C.

| Internet Usage | Adults Who Have/Had Chronic Severe Pain |
|---|---|
| Looked at/used Internet in the last 30 days | 91.3% |
| Have Internet access at home | 91.5% |
| Desktop computer | 36.9% |
| Laptop or Netbook | 45.9% |
| iPad or tablet | 31.4% |
| Smartphone | 80.4% |
| Obtained financial information | 32.4% |
| Paid bills online | 56.9% |
| Used email | 76.4% |
| Used Instant Messenger | 74.6% |
| Made a purchase for personal use in past 30 days | 62.6% |
| Played games in past 30 days | 37.2% |
| Obtained the latest news/current events in past 30 days | 48.8% |
| Obtained medical information in past 30 days | 38.6% |
| Obtained entertainment/celebrity information in past 30 days | 26.6% |
| Visited a TV network's website | 20.2% |
| Looked for recipes online in past 30 days | 48.1% |
| Shared Photos through Internet website | 31.4% |



Because the Internet is such an integral part of the lives of the target audience, it is recommended that online media drive the proposed Notice Plan.

A.B. Data recommends using a variety of top websites and social media applications, enabling maximum exposure opportunities to reach the target audience. Additionally, websites and apps with audiences that include large percentages of the specific target audience will be selected. Delivery of Internet impressions to specific sites and categories such as news, games, email, and medical content will also be reviewed.

Following is a summary of the search engines and websites used most frequently by the target audiences. A complete list of search engines and websites reviewed by 2021 MRI-Simmons Doublebase survey is included in Appendix D.

| Search Engines/ Websites Visited | Adults Who Have/Had Chronic Severe Pain |
|---|---|
| Google | 81.8% |
| Yahoo! | 18.3% |
| WebMD | 29.4% |
| Wikipedia | 21.2% |
| Facebook Messenger | 53.6% |
| Gmail | 58.6% |
| CNN | 16.3% |
| FOXNews | 14.7% |
| Accuweather | 20.1% |
| NY Times | 14.2% |
| Amazon | 63.4% |
| eBay | 20.7% |
| ESPN | 11.1% |
| Weather Channel | 36.6% |
| Zillow | 15.5% |



| Social Media Apps Visited | Adults Who Have/Had Chronic Severe Pain |
|---|---|
| Facebook | 64.8% |
| YouTube | 52.8% |
| Instagram | 29.7% |
| Pinterest | 21.0% |
| Snapchat | 17.7% |
| Twitter | 13.5% |

## Digital Media Recommendation

Based on the above data, A.B. Data recommends placing banner and social media ads on a variety of websites and mobile applications, enabling maximum exposure and delivering the reach required to provide Rule 23-compliant notice to potential Class Members to advise them of their rights and options.

Based on our in-house Comscore data analysis, we recommend a mix of Internet banner and newsfeed ads to run using the Google Display Network via their millions of websites, as well as mobile devices and apps, plus the social media platforms Facebook, Instagram, YouTube, and Google AdWords (Search).

A minimum of 237.3 million impressions will be served to the target audience to deliver the necessary reach.

The digital media campaign will be implemented over a 30-day desktop and mobile plan utilizing standard IAB (Interactive Advertising Bureau) banner sizes (300 x 250, 728 x 90, 300 x 600, 320 x 50, 300 x 50). All banner and newsfeed ads will include embedded and trackable links to the case-specific website. Links will be tracked using Google Analytics tracking codes, providing a way to optimize the campaign for efficiency.

Ads will be served across multiple devices including mobile, tablet, and desktop. Ads will be placed in premium positioning on websites, ensuring they can be viewed without scrolling and easily seen when visitors first open the page.

Background information on each digital platform is detailed below:





- Ads are served by Google on its properties, as well as 2 million websites across the Internet.[7]
- The target audience uses Google for search, email, maps, and other applications.
- Google allows for the purchase of relevant content where we want the banner ads to appear, such as websites with pain management related topics.
- A mix of display banner ad sizes will be utilized.



- More than 80% of the target audience used Google to search for information in the past 30 days.
- Google AdWords text ads will be placed on relevant keyword searches such as "pain management," "pain medication," "prescription pain medicine," and several other appropriate keywords and phrases.



- YouTube usage continues to grow with over 197 million adults in the U.S. viewing content on YouTube each month.[8]
- Owned by Google, so campaigns can be optimized jointly and simultaneously.
- YouTube offer advertisers very selective targeting abilities.
- Very popular app among adults with chronic severe pain, with 51.2% accessing YouTube within the past 30 days.
- Affinity targeting to be implemented based on users' interests and habits, *i.e.*, viewers who have chronic pain or interest in pain management.
- Dynamic prospecting to be implemented with banner ads served to new users who are searching for videos regarding pain management and pain relief.

---

[7] https://support.google.com/google-ads/answer/2404191?hl=en
[8] https://variety.com/2019/digital/news/youtube-2-billion-users-tv-screen-watch-time-hours-1203204267/



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan



- A case Facebook page will be created as a landing page for Facebook and Instagram users and to share case information.
- Most popular social media platform among the target audience. Many are frequent visitors to the platform, using it to post photos and videos, send messages to family and friends, and keep current with them.
- Two-thirds of adults with chronic severe pain (64.5%) have visited Facebook in the last 30 days.
- Facebook allows specific demographic targeting, including reaching those who are interested in health, pain management, headaches, etc.

- Instagram has the highest engagement rate in the industry with 4.21% of users clicking on posts and ads, according to Forrester Research.
- Instagram users visit the site frequently, with half their users visiting daily and 38% visiting multiple times daily.
- Mobile newsfeed ads will drive potential Class Members to the case website.
- Instagram is one of the most popular social media sites within the target demographic, reaching almost a third of the target audience.
- Instagram users can be targeted by location, interests, behaviors, and other demographic characteristics to effectively reach potential Class Members.

The digital media placements will be chosen, first to meet audience notification requirements, and secondly to achieve maximum engagement with the ads. Campaigns and creative will be optimized through the course of the proposed Notice Plan to maximize efficiency and effectiveness. Several campaign targeting strategies will be utilized, including:

| Digital Media Strategy | Digital Media Tactics |
| --- | --- |
| Mobile In-App | Targeting users inside mobile applications that fit into our data pools. This could include health and medical apps, game apps, weather apps, or entertainment/cooking apps. |



| Digital Media Strategy | Digital Media Tactics |
|---|---|
| Mobile – Websites | Targeting phones and tablets whose users are visiting websites that are contextually relevant or websites being visited by relevant users in our data pool. |
| Contextual | Targeting websites with relevant content and context, such as allergies, health, and family wellness websites. |
| Behavioral | Targeting user IDs whose owners have shown activity in the target data pools, such as those interested in allergies, health, and family health websites. |
| Predictive Modeling | Using "look-alike" modeling to target user IDs whose owners have strong similarities to users who previously clicked through to the case website. |

A.B. Data employs a fully staffed digital buying team to manage all digital and social media programs in-house for the greatest control and oversight. During the course of the proposed Notice Plan, A.B. Data's digital media experts will monitor the success, conversions, and activity associated with the digital and social media campaigns and will optimize the number of impressions delivered across each platform to achieve maximum engagement and efficiency. A.B. Data's digital media experts have the following certifications:

- Facebook's Certified Digital Marketing Associate Certification

- Google Ads Display Certification

- Google Ads Search Certification

- Google Analytics Certification

- IAB Digital Media Buying & Planning Certification

With this level of expertise, digital and social media campaigns are assured impressions are delivered to the target audience efficiently and effectively, with online ad verification and minimal threat of bot-traffic and inappropriate content



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# CONSUMER PRINT-MEDIA ANALYSIS

# AND RECOMMENDATION



## CONSUMER PRINT-MEDIA ANALYSIS AND RECOMMENDATION

Print media include consumer magazines, newspapers, and newspaper supplements. Most adults read one or more magazines every month. With over 200 publications that offer mass-appeal editorial content to very narrowly targeted interest-specific publications, there is something available to attract everyone to a print publication each month.

While many in the younger age breaks are turning to digital versions of their favorite print publications and are visiting the websites of their favorite print publications on a regular basis, the media quintile analysis of indicate that consumer magazines are still very popular. Therefore, print media will provide a cost-effective method of reaching potential Settlement Class Members for this case. Below is a ranking of the ten leading consumer magazines/newspaper supplements in the U.S. based on their audience of "Adults Have/Had Chronic/Severe Pain."

| Print Media Ranking | | |
|---|---|---|
| **Ranking** | **Magazine/Newspaper Supplement Ranking** | **Total Audience (000) Print and Digital** |
| 1 | *Parade* | 43,077 |
| 2 | *AARP, The Magazine* | 36,948 |
| 3 | *Better Homes & Gardens* | 27,016 |
| 4 | *People* | 28,639 |
| 5 | *National Geographic* | 24,674 |
| 6 | *Good Housekeeping* | 14,390 |
| 7 | *Reader's Digest* | 14,742 |
| 8 | *Southern Living* | 13,119 |
| 9 | *Time* | 13,833 |
| 10 | *Food Network Magazine* | 12,123 |

A complete list of consumer print magazines reviewed by MRI is included in Appendix E.

## Print-Media Recommendation

For this proposed Notice Plan, A.B. Data recommends publishing the Short-Form Notice one time in *People.*



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

*People* magazine, a weekly publication, offers a broad reach of the target audience. *People* is one of the leading consumer magazines in the U.S. in terms of total audience and they have millions of monthly visitors to their website.



| Media Tactics: | Publish Short-Form Notice one time |
|---|---|
| Total Circulation: | 3,400,000 |
| Total Audience: | 28,639,000 |
| Publication Frequency: | 52x; weekly on Friday |
| Editorial Focus: | Contains insightful, compassionate, and entertaining coverage of the most intriguing people in our culture, from extraordinary people doing the ordinary to ordinary people caught up in extraordinary circumstances. By revealing the human side to every story, *People* connects readers to their world. |

*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# EARNED MEDIA
# NOTICE RECOMMENDATION



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# EARNED MEDIA NOTICE RECOMMENDATION

In addition to the proposed Notice Plan components comprised of digital media, social media and print advertising it is recommended that a news release regarding the case be run via *PR Newswire*. The news release will be distributed via *PR Newswire* to more than 10,000 newsrooms across the United States, including those in general-market print, broadcast, and digital media.

News about the case will also be broadcast to the news media via Twitter. It will be tweeted from *PR Newswire*'s and A.B. Data's Twitter accounts to thousands of news media and other followers. The news release will also assist with driving search engine results, which will help increase traffic to the case website.



# ADDITIONAL THIRD-PARTY PAYOR RECOMMENDATION



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

## Targeted Notice to Third-Party Payors

Many of the members of the Classes are third-party payors ("TPPs"). Accompanying the proposed Notice Plan discussed above will be a significant TPP-targeted notice program using direct mail and digital media. A.B. Data has a proprietary database listing the names and addresses of approximately 41,000 TPPs, compiled of membership listings and existing databases from publicly available sources, including U.S. Department of Labor Form 5500 filings and the Pharmacy Benefits Management Institute, and prior pharmaceutical litigations that A.B. Data has administered. This database is updated annually. A.B. Data's notice efforts in this litigation will include the preparation and mailing of notice to these TPPs.

To reach TPPs and other entities that may be members of the Classes, in addition to the direct notice program, it is recommended that a 30-day digital banner ad campaign be scheduled on the following websites:

- ThinkAdvisor.com/life-health – This website is affiliated with the former publication *National Underwriter Life & Health*. This website is uniquely positioned to provide agents and brokers with timely, insightful information as they navigate the specialty insurance markets and sort through critical industry developments.

- BenefitNews.com – This website is affiliated with the publication *Employee Benefit News*. It serves human resource management personnel that specialize in determining and implementing benefits for employees, including health insurance.

- SHRM.org – This website is the official website of the Society of Human Resource Management. The visitors to this website include HR management specializing in a variety of HR disciplines such as benefits, health insurance, compliance, and many others. It also reaches the HR management within large companies that offer private health insurance policies to their employees.

Banner ads that are written specifically for this industry will be served on the TPP-targeted websites.



# NATIONAL MEDIA DELIVERY



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# NATIONAL MEDIA DELIVERY

The proposed Notice Plan, summarized in the chart below, will deliver an estimated reach of 82.1% to the target audience of adults age 35+, as calculated by Comscore, MRI-Simmons, and A.B. Data media professionals.

The Notice efforts described herein reflect a strategic, microtargeted, and contemporary method to deploy notice to potential members of the Class. The proposed Notice Plan provides a reach and frequency similar to those that Courts have approved and are recommended by The Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which considers a 70%-95% reach among class members reasonable.[9]

The proposed Notice Plan described in this document is consistent with notice plans that A.B. Data has developed and have been approved by the Court and implemented for other similar pharmaceutical cases with regard to the methods and tools for developing such plans.

The proposed Notice Plan is, in A.B. Data's experience, the best practicable under the circumstances for potential Class Members and meets due process requirements.

| Notice Plan Summary | |
| --- | --- |
| **Media Vehicle** | **82.1% Estimated Reach Plan** |
| Digital Media | <ul><li>237.3 million impressions</li><li>Banner ads on general interest and health-related websites, social media</li><li>Case Facebook page</li></ul> |
| Print Media | <ul><li>*People* magazine; one insertion</li></ul> |
| Earned Media | <ul><li>National Press Release</li><li>US1 National</li></ul> |
| TPP Media | <ul><li>Direct Notice</li><li>Thinkadvisor.com banner ads</li><li>BenefitNews.com banner ads</li><li>SHRM.org banner ads</li></ul> |

---

[9] As the 2010 edition of the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* notes (page 3): "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."



*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

36

# NOTICE DESIGN STRATEGIES

*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# NOTICE DESIGN STRATEGIES

The Federal Rules of Civil Procedure require notices in class action cases to be written in "plain, easily understood language." This process will be utilized in developing the Long-Form Notice, Short-Form Notice, and Postcard Notice for this case.

A.B. Data is committed to adhering to the easily-understood-language requirement of Rule 23(c)(2) and Rule 23(b)(3).

The plain-language Notices that will be developed for this plan will be designed with a large, bold headline to be easily seen by potential Class Members. The plain, easily understood language in the text of the Notice will offer potential Class Members the opportunity to read it at their leisure, helping ensure they understand the subject of the case and the legal rights and options of all Class Members.

The online banner ads and social media newsfeed ads will be designed to alert potential Class Members about the case. The ads will each include a link to the case website so potential Class Members may click on it and go directly to the website for answers and other case information. A.B. Data strongly recommends including product or usage photos as part of the newsfeed and banner ads to increase awareness, generate interest, and increase the click-through rate to the website.

Shown below are proposed banner ads for consumers and TPPs.





*In re Opana ER Antitrust Litigation*
Proposed Notice Plan

# Appendices A-E

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|
| Adults | 9,398 | 3.73 | 100.00 | 100 |
| Men | 3,586 | 2.94 | 38.16 | 79 |
| Women | 5,812 | 4.46 | 61.84 | 120 |
| Respondent is parent of child under 18 currently living in the household | 2,025 | 2.97 | 21.55 | 80 |
| Respondent is mom of child under 18 currently living in the household | 1,385 | 3.68 | 14.74 | 99 |
| Respondent is dad of child under 18 currently living in the household | 640 | 2.09 | 6.81 | 56 |
| Respondent is parent of a child under 18 not currently living in the household | 638 | 3.54 | 6.79 | 95 |
| Age 18-24 | 802 | 2.73 | 8.53 | 73 |
| Age 25-34 | 1,151 | 2.53 | 12.25 | 68 |
| Age 35-44 | 1,372 | 3.33 | 14.60 | 89 |
| Age 45-54 | 1,893 | 4.61 | 20.14 | 124 |
| Age 55-64 | 1,982 | 4.71 | 21.09 | 126 |
| Age 65+ | 2,198 | 4.15 | 23.39 | 111 |
| Mean Respondent Age | 50.5 | N/A | N/A | 107 |
| Median Respondent Age | 52.5 | N/A | N/A | 111 |
| Adults 18-34 | 1,953 | 2.61 | 20.78 | 70 |
| Adults 18-49 | 4,197 | 3.08 | 44.66 | 82 |
| Adults 25-54 | 4,416 | 3.46 | 46.98 | 93 |
| Adults 35-54 | 3,265 | 3.97 | 34.74 | 106 |
| Men 18-24 | 360 | 2.44 | 3.83 | 66 |
| Men 18-34 | 850 | 2.27 | 9.04 | 61 |
| Men 18-49 | 1,710 | 2.52 | 18.20 | 68 |
| Men 25-34 | 490 | 2.15 | 5.22 | 58 |
| Men 25-54 | 1,671 | 2.65 | 17.78 | 71 |
| Men 35-44 | 524 | 2.58 | 5.58 | 69 |
| Men 35-54 | 1,181 | 2.93 | 12.57 | 79 |
| Men 45-54 | 657 | 3.28 | 6.99 | 88 |
| Men 55-64 | 711 | 3.55 | 7.56 | 95 |
| Men 65+ | 844 | 3.53 | 8.98 | 95 |
| Women 18-24 | 442 | 3.02 | 4.71 | 81 |
| Women 18-34 | 1,103 | 2.96 | 11.74 | 79 |
| Women 18-49 | 2,487 | 3.62 | 26.46 | 97 |
| Women 25-34 | 661 | 2.92 | 7.03 | 78 |
| Women 25-54 | 2,744 | 4.25 | 29.20 | 114 |
| Women 35-44 | 848 | 4.05 | 9.02 | 109 |
| Women 35-54 | 2,084 | 4.97 | 22.17 | 133 |
| Women 45-54 | 1,236 | 5.88 | 13.15 | 158 |

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Women 55-64 | | 1,271 | 5.76 | 13.53 | 154 |
| Women 65+ | | 1,354 | 4.67 | 14.41 | 125 |
| Highest Degree Received by Respondent: 12th grade or less (did not graduate high school) | | 1,369 | 5.12 | 14.57 | 137 |
| Highest Degree Received by Respondent: Graduated high school or equivalent | | 2,921 | 4.09 | 31.08 | 110 |
| Highest Degree Received by Respondent: Some college, no degree | | 1,650 | 3.68 | 17.55 | 99 |
| Highest Degree Received by Respondent: Associate degree | | 1,098 | 4.32 | 11.68 | 116 |
| Highest Degree Received by Respondent: Bachelor's degree | | 1,566 | 3.09 | 16.67 | 83 |
| Highest Degree Received by Respondent: Post-graduate degree | | 794 | 2.40 | 8.45 | 64 |
| Highest Degree Received by Respondent: Some college (no degree) OR Associate degree | | 2,748 | 3.92 | 29.24 | 105 |
| Highest Degree Received by Respondent: Bachelor's degree OR Post-graduate degree | | 2,360 | 2.82 | 25.11 | 76 |
| Employment: Working full time | | 2,697 | 2.27 | 28.70 | 61 |
| Employment: Working part time | | 1,128 | 3.53 | 12.00 | 95 |
| Employment: Working full time or part time | | 3,825 | 2.53 | 40.70 | 68 |
| Employment: Not working | | 5,573 | 5.51 | 59.30 | 148 |
| If not employed: Retired | | 2,554 | 4.86 | 27.17 | 130 |
| If not employed: Temporarily Unemployed | | 801 | 5.65 | 8.52 | 151 |
| If not employed: Student | | 212 | 2.54 | 2.25 | 68 |
| If not employed: Homemaker | | 914 | 5.90 | 9.73 | 158 |
| If not employed: Other | | 1,093 | 10.33 | 11.63 | 277 |
| Occupation: Professional and related occupations | | 819 | 2.24 | 8.72 | 60 |
| Occupation: Management, business and financial operations | | 506 | 1.87 | 5.38 | 50 |
| Occupation: Sales and office occupations | | 810 | 2.70 | 8.61 | 72 |
| Occupation: Natural resources, construction and maintenance occup. | | 454 | 3.37 | 4.83 | 90 |
| Occupation: Other employed | | 1,236 | 2.82 | 13.15 | 76 |
| Respondent is a Veteran of the U.S. Armed Forces | | 884 | 4.16 | 9.40 | 112 |
| Individual Employment Income: $250,000+ | * | 34 | 1.18 | 0.36 | 32 |
| Individual Employment Income: $200,000-$249,999 | * | 31 | 1.44 | 0.33 | 39 |
| Individual Employment Income: $150,000-$199,999 | * | 61 | 1.20 | 0.65 | 32 |
| Individual Employment Income: $100,000-$149,999 | | 319 | 2.22 | 3.40 | 59 |
| Individual Employment Income: $75,000-$99,999 | | 355 | 2.04 | 3.78 | 55 |

2

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Individual Employment Income: $60,000-$74,999 | | 323 | 2.02 | 3.44 | 54 |
| Individual Employment Income: $50,000-$59,999 | | 257 | 1.97 | 2.74 | 53 |
| Individual Employment Income: $40,000-$49,999 | | 441 | 2.66 | 4.69 | 71 |
| Individual Employment Income: $30,000-$39,999 | | 553 | 3.01 | 5.88 | 81 |
| Individual Employment Income: $20,000-$29,999 | | 564 | 3.23 | 6.00 | 87 |
| Individual Employment Income: Under $20,000 | | 886 | 3.21 | 9.43 | 86 |
| Wage Earner Status: Not employed | | 5,573 | 5.51 | 59.30 | 148 |
| Wage Earner Status: Sole earner | | 1,316 | 3.04 | 14.00 | 82 |
| Wage Earner Status: Primary earner | | 1,179 | 2.34 | 12.55 | 63 |
| Wage Earner Status: Secondary earner | | 1,330 | 2.33 | 14.15 | 62 |
| Household Income: $500,000+ | * | 19 | 0.67 | 0.20 | 18 |
| Household Income: $350,000-$499,999 | * | 28 | 0.88 | 0.29 | 24 |
| Household Income: $250,000-$349,999 | | 160 | 2.08 | 1.70 | 56 |
| Household Income: $200,000-$249,999 | | 267 | 2.15 | 2.84 | 58 |
| Household Income: $150,000-$199,999 | | 591 | 2.48 | 6.29 | 67 |
| Household Income: $100,000-$149,999 | | 1,110 | 2.50 | 11.81 | 67 |
| Household Income: $75,000-$99,999 | | 982 | 2.84 | 10.45 | 76 |
| Household Income: $60,000-$74,999 | | 982 | 3.98 | 10.45 | 107 |
| Household Income: $50,000-$59,999 | | 603 | 3.33 | 6.41 | 89 |
| Household Income: $40,000-$49,999 | | 901 | 4.95 | 9.58 | 133 |
| Household Income: $30,000-$39,999 | | 841 | 4.39 | 8.95 | 118 |
| Household Income: $20,000-$29,999 | | 1,080 | 6.13 | 11.49 | 164 |
| Household Income: Under $20,000 | | 1,835 | 7.18 | 19.53 | 193 |
| Mean Household Income | | 71,314.0 | N/A | N/A | 71 |
| Median Household Income | | 50,699.8 | N/A | N/A | 66 |
| Household Income: $250,000+ | | 207 | 1.51 | 2.20 | 41 |
| Household Income: $150,000+ | | 1,064 | 2.14 | 11.32 | 57 |
| Household Income: $100,000+ | | 2,174 | 2.31 | 23.13 | 62 |
| Household Income: $75,000+ | | 3,156 | 2.45 | 33.58 | 66 |
| Household Income: $60,000+ | | 4,139 | 2.70 | 44.04 | 72 |
| Household Income: $50,000+ | | 4,741 | 2.76 | 50.45 | 74 |
| Household Income: $40,000+ | | 5,642 | 2.97 | 60.03 | 80 |
| Household Income: $30,000+ | | 6,483 | 3.10 | 68.98 | 83 |
| Total Net Worth of All HH Members: $1,000,000+ | | 660 | 2.24 | 7.02 | 60 |
| Total Net Worth of All HH Members: $500,000-$999,999 | | 1,087 | 2.74 | 11.56 | 74 |
| Total Net Worth of All HH Members: $250,000-$499,999 | | 2,065 | 3.45 | 21.97 | 92 |
| Total Net Worth of All HH Members: $100,000-$249,999 | | 2,074 | 3.92 | 22.07 | 105 |

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Total Net Worth of All HH Members: Under $100,000 | | 3,513 | 5.01 | 37.38 | 134 |
| Census Region: North East | | 1,552 | 3.50 | 16.52 | 94 |
| Census Region: South | | 3,842 | 3.99 | 40.88 | 107 |
| Census Region: Midwest | | 1,767 | 3.36 | 18.80 | 90 |
| Census Region: West | | 2,237 | 3.81 | 23.80 | 102 |
| Marketing Region: New England | | 506 | 4.31 | 5.39 | 116 |
| Marketing Region: Mid Atlantic | | 1,190 | 3.13 | 12.66 | 84 |
| Marketing Region: East Central | | 1,084 | 3.69 | 11.53 | 99 |
| Marketing Region: West Central | | 1,204 | 3.30 | 12.81 | 89 |
| Marketing Region: Southeast | | 2,144 | 4.02 | 22.82 | 108 |
| Marketing Region: Southwest | | 1,295 | 4.07 | 13.77 | 109 |
| Marketing Region: Pacific | | 1,976 | 3.84 | 21.02 | 103 |
| Mediamarkets: Top 5 | | 1,451 | 2.82 | 15.44 | 76 |
| Mediamarkets: Next 5 | | 833 | 2.98 | 8.86 | 80 |
| Mediamarkets: New York | | 373 | 2.20 | 3.97 | 59 |
| Mediamarkets: Los Angeles | | 478 | 3.26 | 5.09 | 87 |
| Mediamarkets: Chicago | | 179 | 2.38 | 1.90 | 64 |
| Metropolitan CBSA | | 7,851 | 3.61 | 83.53 | 97 |
| Micropolitan CBSA/unassigned | | 1,548 | 4.45 | 16.47 | 119 |
| County Size: A | | 3,087 | 2.90 | 32.85 | 78 |
| County Size: B | | 3,194 | 4.25 | 33.99 | 114 |
| County Size: C | | 1,662 | 4.55 | 17.69 | 122 |
| County Size: D | | 1,454 | 4.30 | 15.47 | 115 |
| Marital Status: Never married | | 2,397 | 3.28 | 25.50 | 88 |
| Marital Status: Now married | | 4,319 | 3.24 | 45.96 | 87 |
| Marital Status: Legally separated/widowed/divorced | | 2,682 | 5.87 | 28.54 | 157 |
| Marital Status: Never married or Legally separated/widowed/divorced | | 5,079 | 4.28 | 54.04 | 115 |
| Marital Status: Engaged | | 402 | 3.57 | 4.27 | 96 |
| Living w/partner/fiance/boyfriend or girlfriend (same or opposite sex) | | 1,058 | 4.14 | 11.26 | 111 |
| Married in last 12 months | * | 160 | 3.12 | 1.70 | 84 |
| Household size: 1 | | 1,815 | 4.96 | 19.31 | 133 |
| Household size: 2 | | 3,352 | 3.99 | 35.67 | 107 |
| Household size: 3-4 | | 2,833 | 3.11 | 30.15 | 84 |
| Household size: 5+ | | 1,398 | 3.45 | 14.87 | 93 |
| Children: Any | | 2,846 | 3.11 | 30.29 | 84 |
| Children: 1 | | 1,221 | 3.14 | 12.99 | 84 |
| Children: 2 | | 829 | 2.63 | 8.82 | 70 |

4

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Children: 3+ | | 797 | 3.79 | 8.48 | 102 |
| Child Age: <12 months | | 308 | 3.02 | 3.28 | 81 |
| Child Age: 12-23 months | | 256 | 3.42 | 2.72 | 92 |
| Child Age: <2 years | | 533 | 3.17 | 5.67 | 85 |
| Child Age: <6 years | | 1,169 | 2.89 | 12.43 | 77 |
| Child Age: 2-5 years | | 866 | 2.81 | 9.22 | 75 |
| Child Age: 6-11 years | | 1,456 | 3.52 | 15.49 | 94 |
| Child Age: 12-17 years | | 1,449 | 3.16 | 15.42 | 85 |
| Life Cycle: Respondent 18-34 1 person household | | 182 | 3.36 | 1.94 | 90 |
| Life Cycle: Respondent 18-34 married no kids | | 167 | 2.47 | 1.77 | 66 |
| Life Cycle: Respondent 18-34 married young child under 6 | | 249 | 1.96 | 2.65 | 53 |
| Life Cycle: Respondent 18-34 married young child 6-17 | * | 93 | 3.26 | 0.99 | 87 |
| Life Cycle: Balance of respondents 18-34 | | 1,262 | 2.68 | 13.43 | 72 |
| Life Cycle: Respondent 35-49 1 person household | | 241 | 4.50 | 2.56 | 121 |
| Life Cycle: Respondent 35-49 married no kids | | 344 | 3.89 | 3.66 | 104 |
| Life Cycle: Respondent 35-49 married young child under 6 | | 348 | 2.90 | 3.71 | 78 |
| Life Cycle: Respondent 35-49 married young child 6-11 | | 209 | 1.94 | 2.23 | 52 |
| Life Cycle: Respondent 35-49 married young child 12-17 | | 230 | 2.89 | 2.45 | 78 |
| Life Cycle: Balance of respondents 35-49 | | 871 | 5.19 | 9.27 | 139 |
| Life Cycle: Respondent 50+ 1 person household | | 1,307 | 5.36 | 13.90 | 144 |
| Life Cycle: Respondent 50+ married no kids | | 2,250 | 3.71 | 23.94 | 100 |
| Life Cycle: Respondent 50+ married w/kids | | 428 | 3.96 | 4.56 | 106 |
| Life Cycle: Balance of respondents 50+ | | 1,216 | 6.14 | 12.94 | 165 |
| Years at Present Address: Under 1 year | | 1,199 | 4.01 | 12.76 | 107 |
| Years at Present Address: 1-4 years | | 2,758 | 3.70 | 29.34 | 99 |
| Years at Present Address: 5+ years | | 5,441 | 3.69 | 57.90 | 99 |
| Own or Rent Home: Own | | 5,758 | 3.33 | 61.27 | 89 |
| Own or Rent Home: Rent | | 3,461 | 4.64 | 36.82 | 124 |
| Own or Rent Home: Rent-free | | 179 | 3.68 | 1.91 | 99 |
| Home Value: $500,000+ | | 685 | 2.29 | 7.29 | 61 |
| Home Value: $200,000-$499,999 | | 2,363 | 2.99 | 25.15 | 80 |
| Home Value: $100,000-$199,999 | | 1,602 | 3.81 | 17.04 | 102 |
| Home Value: $50,000-$99,999 | | 616 | 4.49 | 6.56 | 121 |
| Home Value: Under $50,000 | | 492 | 6.26 | 5.23 | 168 |
| Race: White | | 7,304 | 3.88 | 77.71 | 104 |
| Race: Black/African American | | 1,182 | 3.58 | 12.58 | 96 |

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Race: American Indian or Alaska Native | | 127 | 3.65 | 1.35 | 98 |
| Race: Asian | | 245 | 2.41 | 2.61 | 65 |
| Race: Other | | 821 | 3.37 | 8.74 | 90 |
| Race: White only | | 7,080 | 3.87 | 75.33 | 104 |
| Race: Black/African American only | | 1,098 | 3.56 | 11.68 | 96 |
| Race: Other race/Multiple classifications | | 1,220 | 3.17 | 12.98 | 85 |
| Spanish Spoken in Home (Most Often or Other) | | 1,234 | 2.86 | 13.13 | 77 |
| Hispanic Respondent Personally Speaks at Home: Only English | | 224 | 3.19 | 2.39 | 85 |
| Hispanic Respondent Personally Speaks at Home: Mostly English, but some Spanish | | 280 | 2.76 | 2.98 | 74 |
| Hispanic Respondent Personally Speaks at Home: Only Spanish | * | 363 | 3.03 | 3.87 | 81 |
| Hispanic Respondent Personally Speaks at Home: Mostly Spanish, but some English | * | 180 | 1.87 | 1.91 | 50 |
| Hispanic Respondent Personally Speaks at Home: Both English and Spanish equally at home | * | 114 | 4.31 | 1.21 | 116 |
| Spanish, Hispanic or Latino Origin or Descent | | 1,166 | 2.81 | 12.40 | 75 |
| Not of Spanish, Hispanic or Latino Origin/Descent | | 8,232 | 3.91 | 87.60 | 105 |
| Pet owner | | 5,761 | 4.05 | 61.30 | 109 |
| Dog owner | | 4,518 | 4.07 | 48.07 | 109 |
| Cat owner | | 2,572 | 4.20 | 27.37 | 113 |
| Generations: Gen Z (b.1997-2010) only includes respondents 18+ | | 614 | 2.41 | 6.54 | 65 |
| Generations: Millennials (b.1977-1996) | | 2,575 | 2.95 | 27.40 | 79 |
| Generations: GenXers (b.1965-1976) | | 2,268 | 4.62 | 24.13 | 124 |
| Generations: Boomers (b. 1946-1964) | | 3,030 | 4.38 | 32.24 | 118 |
| Generations: Early Boomers (b. 1946-1955) | | 1,303 | 4.13 | 13.87 | 111 |
| Generations: Late Boomers (b. 1956-1964) | | 1,726 | 4.59 | 18.37 | 123 |
| Generations: Pre-Boomers (b. before 1946) | | 911 | 4.30 | 9.70 | 115 |
| Respondent's Sexual Orientation:  Heterosexual/Straight | | 8,364 | 3.68 | 89.00 | 99 |
| Respondent's Sexual Orientation:  NET Gay/Lesbian | | 220 | 4.16 | 2.34 | 112 |
| Respondent's Sexual Orientation:  NET Gay/Lesbian/Bisexual/Transgender | | 440 | 4.21 | 4.69 | 113 |

* Projections relatively unstable; use with caution.
Source: 2021 GfK MRI-Simmons Spring Doublebase; USA weighted to Population (000) - Base: all

**Appendix A**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Audience Demographic: Ailments/Remedies: Chronic/Severe Pain Have/Had**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|

**Appendix B**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Media Quintiles: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|
| Magazine Quintile I (Heavy) | 2,155 | 4.20 | 22.93 | 113 |
| Magazine Quintile II | 1,920 | 3.88 | 20.43 | 104 |
| Magazine Quintile III | 2,008 | 4.12 | 21.37 | 110 |
| Magazine Quintile IV | 1,388 | 2.83 | 14.77 | 76 |
| Magazine Quintile V (Light) | 1,927 | 3.59 | 20.50 | 96 |
| Newspaper Quintile I | 1,955 | 3.85 | 20.80 | 103 |
| Newspaper Quintile II | 1,899 | 3.77 | 20.21 | 101 |
| Newspaper Quintile III | 1,810 | 3.60 | 19.26 | 97 |
| Newspaper Quintile IV | 1,882 | 3.74 | 20.03 | 100 |
| Newspaper Quintile V | 1,852 | 3.68 | 19.71 | 99 |
| Radio/Audio Quintile I | 1,939 | 3.86 | 20.63 | 104 |
| Radio/Audio Quintile II | 1,841 | 3.66 | 19.58 | 98 |
| Radio/Audio Quintile III | 1,651 | 3.28 | 17.57 | 88 |
| Radio/Audio Quintile IV | 1,717 | 3.40 | 18.27 | 91 |
| Radio/Audio Quintile V | 2,251 | 4.44 | 23.95 | 119 |
| Radio/Audio (Primetime M-F 6am - 7pm) Quintile I | 1,850 | 3.68 | 19.69 | 99 |
| Radio/Audio (Primetime M-F 6am - 7pm) Quintile II | 1,774 | 3.54 | 18.87 | 95 |
| Radio/Audio (Primetime M-F 6am - 7pm) Quintile III | 1,645 | 3.26 | 17.51 | 87 |
| Radio/Audio (Primetime M-F 6am - 7pm) Quintile IV | 1,765 | 3.50 | 18.78 | 94 |
| Radio/Audio (Primetime M-F 6am - 7pm) Quintile V | 2,364 | 4.66 | 25.15 | 125 |
| TV (Total) Quintile I | 2,801 | 5.52 | 29.81 | 148 |
| TV (Total) Quintile II | 1,867 | 3.71 | 19.86 | 99 |
| TV (Total) Quintile III | 1,740 | 3.47 | 18.51 | 93 |
| TV (Total) Quintile IV | 1,391 | 2.76 | 14.80 | 74 |
| TV (Total) Quintile V | 1,599 | 3.17 | 17.01 | 85 |
| Internet Quintile I (Heavy) | 1,749 | 3.48 | 18.61 | 93 |
| Internet Quintile II | 1,869 | 3.71 | 19.89 | 100 |
| Internet Quintile III | 1,725 | 3.42 | 18.36 | 92 |
| Internet Quintile IV | 1,611 | 3.19 | 17.14 | 86 |
| Internet Quintile V (Light) | 2,444 | 4.83 | 26.00 | 130 |
| Outdoor Quintile I | 1,597 | 3.16 | 16.99 | 85 |
| Outdoor Quintile II | 1,772 | 3.53 | 18.85 | 95 |
| Outdoor Quintile III | 1,728 | 3.41 | 18.39 | 92 |
| Outdoor Quintile IV | 2,012 | 3.97 | 21.41 | 107 |
| Outdoor Quintile V | 2,290 | 4.57 | 24.36 | 123 |
| TV (Primetime) Quintile I | 2,439 | 4.83 | 25.96 | 129 |
| TV (Primetime) Quintile II | 1,819 | 3.60 | 19.35 | 97 |
| TV (Primetime) Quintile III | 1,855 | 3.69 | 19.73 | 99 |
| TV (Primetime) Quintile IV | 1,681 | 3.34 | 17.89 | 90 |
| TV (Primetime) Quintile V | 1,605 | 3.18 | 17.07 | 85 |

**Appendix B**

**Opana ER Settlement Antitrust Litigation MRI Data**
**Media Quintiles: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

|  | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|
| TV (Daytime) Tercile I | 1,814 | 5.85 | 19.30 | 157 |
| TV (Daytime) Tercile II | 1,365 | 4.40 | 14.53 | 118 |
| TV (Daytime) Tercile III | 1,106 | 3.56 | 11.77 | 95 |

\* Projections relatively unstable; use with caution.
Source: 2021 GfK MRI-Simmons Spring Doublebase; USA weighted to Population (000) - Base: all

**Appendix C**

**Opana ER Settlement ER Antitrust Litigation MRI Data**

**Digital Media Usage: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Have Internet access at home | | 8,600 | 3.60 | 91.51 | 97 |
| Internet Service Providers (to HH): AOL | * | 68 | 3.57 | 0.73 | 96 |
| Internet Service Providers (to HH): AT&T Internet (measured as AT&T U-verse or DSL) in Waves 81-84) | | 1,140 | 3.48 | 12.13 | 93 |
| Internet Service Providers (to HH): CenturyLink | | 442 | 4.61 | 4.71 | 124 |
| Internet Service Providers (to HH): Cox | | 342 | 3.29 | 3.64 | 88 |
| Internet Service Providers (to HH): Frontier | | 300 | 4.71 | 3.19 | 126 |
| Internet Service Providers (to HH): Optimum | | 128 | 2.23 | 1.36 | 60 |
| Internet Service Providers (to HH): Spectrum | | 1,935 | 3.85 | 20.59 | 103 |
| Internet Service Providers (to HH): Suddenlink | * | 124 | 4.75 | 1.32 | 127 |
| Internet Service Providers (to HH): Verizon or Fios by Verizon | | 711 | 3.32 | 7.56 | 89 |
| Internet Service Providers (to HH): Xfinity/Comcast | | 1,749 | 3.16 | 18.61 | 85 |
| Internet Service Providers (to HH): Any Service | | 8,600 | 3.61 | 91.51 | 97 |
| Looked at/used Internet /last 30 days: At home | | 8,073 | 3.55 | 85.90 | 95 |
| Looked at/used Internet /last 30 days: At work | | 2,424 | 2.48 | 25.79 | 67 |
| Looked at/used Internet /last 30 days: At school or library | | 719 | 3.62 | 7.65 | 97 |
| Looked at/used Internet /last 30 days: Another place | | 3,209 | 3.79 | 34.15 | 102 |
| Looked at/used Internet /last 30 days: Any Internet Usage | | 8,579 | 3.62 | 91.28 | 97 |
| Devices used to use the Internet/last 30 days: Desktop computer | | 3,468 | 3.24 | 36.90 | 87 |
| Devices used to use the Internet/last 30 days: Laptop or Netbook computer | | 4,317 | 3.10 | 45.93 | 83 |
| Devices used to use the Internet/last 30 days: Any computer | | 6,216 | 3.27 | 66.14 | 88 |
| Devices used to use the Internet/last 30 days: iPad or other Tablet | | 2,949 | 3.34 | 31.38 | 90 |
| Devices used to use the Internet/last 30 days: Cellphone or Smartphone | | 7,556 | 3.58 | 80.40 | 96 |
| Devices used to use the Internet/last 30 days: E-reader | | 351 | 4.32 | 3.73 | 116 |
| Devices used to use the Internet/last 30 days: iPod or other MP3 Player | * | 66 | 2.72 | 0.70 | 73 |
| Devices used to use the Internet/last 30 days: Video game console | | 789 | 3.09 | 8.39 | 83 |
| Devices used to use the Internet/last 30 days: Television | | 2,171 | 3.30 | 23.10 | 88 |
| Visited a chat room/past 30 days | | 422 | 2.66 | 4.49 | 71 |
| Used e-mail/past 30 days | | 7,364 | 3.60 | 78.36 | 97 |
| Used instant messenger/past 30 days | | 7,009 | 3.60 | 74.58 | 97 |
| Participated in online dating/past 30 days | | 267 | 3.23 | 2.84 | 87 |
| Made a purchase for personal use (on the Internet)/past 30 days | | 5,880 | 3.47 | 62.57 | 93 |

**Appendix C**

**Opana ER Settlement ER Antitrust Litigation MRI Data**

**Digital Media Usage: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Made a purchase for business use (on the Internet)/past 30 days | | 892 | 2.60 | 9.49 | 70 |
| Obtained information to help make a purchase/past 30 days | | 3,602 | 3.54 | 38.32 | 95 |
| Made personal or business travel plans online/past 30 days | | 1,228 | 2.85 | 13.06 | 77 |
| Played games online/past 30 days | | 3,497 | 3.86 | 37.21 | 103 |
| Downloaded a video game/past 30 days | | 1,020 | 2.88 | 10.85 | 77 |
| Used on-line gambling site/past 30 days | * | 174 | 3.98 | 1.85 | 107 |
| Obtained financial information online/past 30 days | | 3,040 | 3.75 | 32.35 | 101 |
| Tracked investments/Traded stocks, bonds or mutual funds online/past 30 days | | 1,157 | 2.80 | 12.31 | 75 |
| Paid bills online/past 30 days | | 5,350 | 3.49 | 56.93 | 94 |
| Obtained the latest news/current events online/past 30 days | | 4,588 | 3.50 | 48.82 | 94 |
| Obtained sports news/information online/past 30 days | | 2,183 | 3.08 | 23.23 | 83 |
| Obtained information for new/used car purchase online/past 30 days | | 1,045 | 3.78 | 11.12 | 101 |
| Obtained information about real estate online/past 30 days | | 1,144 | 2.94 | 12.18 | 79 |
| Obtained medical information online/past 30 days | | 3,625 | 4.41 | 38.57 | 118 |
| Obtained childcare or parenting information online/past 30 days | | 398 | 3.05 | 4.23 | 82 |
| Obtained information about entertainment or celebrities | | 2,500 | 3.71 | 26.60 | 99 |
| Looked for employment online/past 30 days | | 1,263 | 3.69 | 13.44 | 99 |
| Looked for recipes online/past 30 days | | 4,516 | 3.58 | 48.05 | 96 |
| Took an online class or course/past 30 days | | 902 | 2.88 | 9.60 | 77 |
| Visited a TV network or TV show's website/past 30 days | | 1,894 | 4.01 | 20.16 | 107 |
| Looked at TV listings online/past 30 days | | 988 | 4.10 | 10.51 | 110 |
| Looked up movie listings or showtimes online/past 30 days | | 1,199 | 3.45 | 12.76 | 92 |
| Downloaded a TV program/past 30 days | | 374 | 4.01 | 3.98 | 108 |
| Watched a TV program online/past 30 days | | 1,962 | 3.57 | 20.88 | 96 |
| Downloaded a movie/past 30 days | | 671 | 3.49 | 7.14 | 94 |
| Watched a movie online/past 30 days | | 2,786 | 3.27 | 29.65 | 88 |
| Watched other online video/past 30 days | | 2,368 | 3.46 | 25.19 | 93 |
| Visited online blogs/past 30 days | | 960 | 3.11 | 10.21 | 84 |
| Wrote online blog/past 30 days | * | 148 | 4.20 | 1.57 | 113 |
| Posted a comment or review on a blog, online forum, message or bulletin board/past 30 days | | 1,328 | 4.49 | 14.13 | 120 |
| Made a phone call online/past 30 days | | 3,342 | 3.59 | 35.56 | 96 |
| Used video chat/past 30 days | | 3,030 | 3.43 | 32.24 | 92 |
| Uploaded or added video to website/past 30 days | | 780 | 3.90 | 8.30 | 104 |

2

**Appendix C**

**Opana ER Settlement ER Antitrust Litigation MRI Data**

**Digital Media Usage: Ailments/Remedies:
Chronic/Severe Pain [Have/Had]**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|
| Shared photos through Internet website/past 30 days | 2,950 | 3.86 | 31.39 | 104 |
| Sent an electronic greeting card/past 30 days | 551 | 4.23 | 5.86 | 114 |
| Total time spent yesterday using the Internet (does not include email): 10+ hours | 828 | 3.33 | 8.81 | 89 |
| Total time spent yesterday using the Internet (does not include email): 5-10 hours | 1,886 | 3.66 | 20.06 | 98 |
| Total time spent yesterday using the Internet (does not include email): 2-5 hours | 2,611 | 3.51 | 27.78 | 94 |
| Total time spent yesterday using the Internet (does not include email): 1-2 hours | 1,456 | 3.35 | 15.49 | 90 |
| Total time spent yesterday using the Internet (does not include email): 1/2-1 hour | 726 | 3.44 | 7.73 | 92 |
| Total time spent yesterday using the Internet (does not include email): less than 1/2 hour | 549 | 4.45 | 5.84 | 119 |
| Total time spent last Saturday using the Internet (does not include email): 10+ hours | 618 | 3.56 | 6.57 | 96 |
| Total time spent last Saturday using the Internet (does not include email): 5-10 hours | 1,606 | 3.83 | 17.08 | 103 |
| Total time spent last Saturday using the Internet (does not include email): 2-5 hours | 2,531 | 3.52 | 26.93 | 95 |
| Total time spent last Saturday using the Internet (does not include email): 1-2 hours | 1,452 | 3.11 | 15.45 | 84 |
| Total time spent last Saturday using the Internet (does not include email): 1/2-1 hour | 973 | 4.02 | 10.35 | 108 |
| Total time spent last Saturday using the Internet (does not include email): less than 1/2 hour | 578 | 3.71 | 6.14 | 99 |
| Total time spent last Sunday using the Internet (does not include email): 10+ hours | 509 | 3.35 | 5.41 | 90 |
| Total time spent last Sunday using the Internet (does not include email): 5-10 hours | 1,445 | 3.78 | 15.37 | 101 |
| Total time spent last Sunday using the Internet (does not include email): 2-5 hours | 2,451 | 3.49 | 26.07 | 94 |
| Total time spent last Sunday using the Internet (does not include email): 1-2 hours | 1,703 | 3.55 | 18.13 | 95 |
| Total time spent last Sunday using the Internet (does not include email): 1/2-1 hour | 925 | 3.68 | 9.84 | 99 |
| Total time spent last Sunday using the Internet (does not include email): less than 1/2 hour | 575 | 3.52 | 6.12 | 94 |
| Activities using social media, photo or video-sharing site: Updated status/last 30 days | 2,643 | 4.22 | 28.13 | 113 |
| Activities using social media, photo or video-sharing site: Updated profile/last 30 days | 1,811 | 3.73 | 19.27 | 100 |
| Activities using social media, photo or video-sharing site: Posted a picture/last 30 days | 4,090 | 3.76 | 43.52 | 101 |
| Activities using social media, photo or video-sharing site: Used a filter on a picture/last 30 days | 1,195 | 3.88 | 12.71 | 104 |
| Activities using social media, photo or video-sharing site: Posted a video/last 30 days | 1,768 | 3.80 | 18.81 | 102 |

**Appendix C**

**Opana ER Settlement ER Antitrust Litigation MRI Data**

**Digital Media Usage: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|
| Activities using social media, photo or video-sharing site: Posted a website link/last 30 days | 1,248 | 4.19 | 13.28 | 112 |
| Activities using social media, photo or video-sharing site: Visited a friend's profile or page/last 30 days | 4,435 | 3.79 | 47.19 | 102 |
| Activities using social media, photo or video-sharing site: Commented on a friend's post/last 30 days | 4,516 | 3.97 | 48.05 | 106 |
| Activities using social media, photo or video-sharing site: Posted a blog entry/last 30 days | 208 | 3.68 | 2.21 | 99 |
| Activities using social media, photo or video-sharing site: Rated or reviewed a product or service/last 30 days | 988 | 4.49 | 10.51 | 120 |
| Activities using social media, photo or video-sharing site: Sent a message or e-mail/last 30 days | 4,749 | 3.83 | 50.53 | 103 |
| Activities using social media, photo or video-sharing site: Used Instant Messaging/IM/last 30 days | 2,335 | 4.08 | 24.84 | 110 |
| Activities using social media, photo or video-sharing site: Played a game/last 30 days | 2,147 | 4.31 | 22.84 | 116 |
| Activities using social media, photo or video-sharing site: Invited people to an event/last 30 days | 593 | 3.62 | 6.31 | 97 |
| Activities using social media, photo or video-sharing site: Sent a real or virtual gift/last 30 days | 348 | 5.42 | 3.70 | 145 |
| Activities using social media, photo or video-sharing site: Posted that you "like" something/last 30 days | 3,894 | 4.02 | 41.44 | 108 |
| Activities using social media, photo or video-sharing site: "Followed" or became a "fan of" something or someone/last 30 days | 2,422 | 3.85 | 25.77 | 103 |
| Activities using social media, photo or video-sharing site: Clicked on an advertisement/last 30 days | 1,528 | 3.55 | 16.26 | 95 |
| Activities using social media, photo or video-sharing site: Watched a video/last 30 days | 4,521 | 3.70 | 48.10 | 99 |
| Activities using social media, photo or video-sharing site: Posted your current location/last 30 days | 688 | 4.11 | 7.32 | 110 |
| Activities using social media, photo or video-sharing site: Re-posted or shared a post created by someone else/last 30 days | 2,288 | 4.20 | 24.35 | 113 |

* Projections relatively unstable; use with caution.
Source: 2021 GfK MRI-Simmons Spring Doublebase; USA weighted to Population (000) - Base: all

4

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Website or search engines used/last 30 days: AOL/AOL.com | | 371 | 4.72 | 3.95 | 127 |
| Website or search engines used/last 30 days: Ask.com | * | 97 | 6.62 | 1.03 | 178 |
| Website or search engines used/last 30 days: Bing.com | | 791 | 3.31 | 8.42 | 89 |
| Website or search engines used/last 30 days: Google.com | | 7,686 | 3.58 | 81.78 | 96 |
| Website or search engines used/last 30 days: Yahoo.com | | 1,723 | 3.94 | 18.33 | 106 |
| Chat, Instant Messenger, video chat used/last 30 days: Facebook Messenger | | 5,035 | 3.98 | 53.57 | 107 |
| Chat, Instant Messenger, video chat used/last 30 days: FaceTime | | 2,339 | 3.02 | 24.89 | 81 |
| Chat, Instant Messenger, video chat used/last 30 days: Google Hangouts | | 359 | 3.05 | 3.82 | 82 |
| Chat, Instant Messenger, video chat used/last 30 days: Skype | | 552 | 2.92 | 5.87 | 78 |
| Chat, Instant Messenger, video chat used/last 30 days: Slack | | 150 | 2.37 | 1.60 | 64 |
| Chat, Instant Messenger, video chat used/last 30 days: Snapchat Chat | | 1,165 | 2.89 | 12.39 | 78 |
| Chat, Instant Messenger, video chat used/last 30 days: Viber | * | 38 | 2.07 | 0.40 | 56 |
| Chat, Instant Messenger, video chat used/last 30 days: WeChat | * | 81 | 3.38 | 0.86 | 91 |
| Chat, Instant Messenger, video chat used/last 30 days: WhatsApp | | 1,100 | 2.66 | 11.71 | 71 |
| Subscribes to Amazon Prime | | 5,198 | 3.44 | 55.31 | 92 |
| E-mail used/last 30 days: AOL Mail | | 680 | 4.27 | 7.24 | 115 |
| E-mail used/last 30 days: Gmail | | 5,512 | 3.56 | 58.65 | 95 |
| E-mail used/last 30 days: Outlook | | 1,730 | 2.84 | 18.41 | 76 |
| E-mail used/last 30 days: Yahoo! Mail | | 2,227 | 3.86 | 23.70 | 103 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: ABC | | 732 | 4.90 | 7.79 | 131 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: BuzzFeed | | 704 | 4.14 | 7.49 | 111 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: CBS | | 774 | 5.57 | 8.23 | 149 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Disney.com | | 297 | 3.71 | 3.16 | 99 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Fandango | | 204 | 3.10 | 2.17 | 83 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Fox.com/FOX NOW | | 425 | 3.77 | 4.53 | 101 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: IMDb | | 1,023 | 4.15 | 10.88 | 111 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: MSN Entertainment | | 131 | 4.02 | 1.39 | 108 |

1

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| ENTERTAINMENT Websites/apps visited or used in last 30 days: MTV | * | 258 | 7.82 | 2.75 | 210 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: NBC | | 524 | 4.68 | 5.58 | 126 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: PBS.org or PBS Video | | 434 | 4.97 | 4.62 | 133 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: POPSUGAR | * | 126 | 7.04 | 1.34 | 189 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Ticketmaster | | 291 | 3.28 | 3.09 | 88 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Vevo.com | * | 106 | 5.40 | 1.13 | 145 |
| ENTERTAINMENT Websites/apps visited or used in last 30 days: Yahoo! Entertainment | | 300 | 3.47 | 3.19 | 93 |
| FINANCE Websites/apps visited or used in last 30 days: CNBC | | 219 | 2.38 | 2.33 | 64 |
| FINANCE Websites/apps visited or used in last 30 days: FOX Business | | 226 | 2.52 | 2.41 | 67 |
| FINANCE Websites/apps visited or used in last 30 days: MSN Money | * | 83 | 2.07 | 0.89 | 55 |
| FINANCE Websites/apps visited or used in last 30 days: TheStreet | * | 39 | 1.89 | 0.41 | 51 |
| FINANCE Websites/apps visited or used in last 30 days: Yahoo! Finance | | 284 | 2.56 | 3.02 | 69 |
| HEALTH Websites/apps visited or used in last 30 days: WebMD | | 2,760 | 4.22 | 29.36 | 113 |
| INFORMATION/REFERENCE Websites/apps visited or used in last 30 days: Answers.com/WikiAnswers | | 296 | 3.83 | 3.15 | 103 |
| INFORMATION/REFERENCE Websites/apps visited or used in last 30 days: eHow.com | | 252 | 3.77 | 2.68 | 101 |
| INFORMATION/REFERENCE Websites/apps visited or used in last 30 days: WhitePages | | 338 | 4.54 | 3.60 | 122 |
| INFORMATION/REFERENCE Websites/apps visited or used in last 30 days: Wikipedia | | 2,032 | 3.25 | 21.62 | 87 |
| INFORMATION/REFERENCE Websites/apps visited or used in last 30 days: Zillow | | 1,456 | 3.18 | 15.49 | 85 |
| JOBS/CAREERS Websites/apps visited or used in last 30 days: CareerBuilder | | 255 | 4.76 | 2.72 | 128 |
| JOBS/CAREERS Websites/apps visited or used in last 30 days: Indeed.com or Indeed Job Search | | 1,176 | 3.42 | 12.51 | 92 |
| JOBS/CAREERS Websites/apps visited or used in last 30 days: Monster | * | 111 | 3.09 | 1.18 | 83 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: ABCNews | | 1,139 | 4.83 | 12.12 | 130 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: BBC.com | | 656 | 3.99 | 6.98 | 107 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: CBSNews | | 760 | 4.65 | 8.09 | 125 |

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: CNN | | 1,530 | 3.40 | 16.28 | 91 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: FOX News | | 1,378 | 3.51 | 14.66 | 94 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: HuffPost | | 689 | 4.21 | 7.33 | 113 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: NBCNews | | 692 | 4.12 | 7.36 | 111 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: NYTimes.com | | 1,336 | 2.99 | 14.21 | 80 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: Reuters | | 350 | 4.10 | 3.72 | 110 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: The Washington Post | | 1,009 | 3.66 | 10.74 | 98 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: USAToday.com | | 944 | 3.49 | 10.04 | 94 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: WSJ.com | | 673 | 2.64 | 7.16 | 71 |
| NEWS/COMMENTARY Websites/apps visited or used in last 30 days: Yahoo! News | | 729 | 3.51 | 7.76 | 94 |
| SHOPPING Websites/apps visited or used in last 30 days: Amazon | | 5,962 | 3.46 | 63.44 | 93 |
| SHOPPING Websites/apps visited or used in last 30 days: Coupons | | 316 | 5.44 | 3.36 | 146 |
| SHOPPING Websites/apps visited or used in last 30 days: eBay | | 1,948 | 3.75 | 20.73 | 101 |
| SHOPPING Websites/apps visited or used in last 30 days: Groupon | | 705 | 4.01 | 7.50 | 108 |
| SHOPPING Websites/apps visited or used in last 30 days: LivingSocial | * | 38 | 2.74 | 0.41 | 74 |
| SHOPPING Websites/apps visited or used in last 30 days: Overstock | | 425 | 3.66 | 4.52 | 98 |
| SPANISH LANGUAGE Websites/apps visited or used in last 30 days: Telemundo.com | * | 104 | 1.73 | 1.11 | 46 |
| SPANISH LANGUAGE Websites/apps visited or used in last 30 days: Univision or Univision NOW | * | 177 | 2.62 | 1.88 | 70 |
| SPANISH LANGUAGE Visited or used in last 30 days: Any spanish language website/app | | 302 | 2.75 | 3.21 | 74 |
| SPORTS Websites/apps visited or used in last 30 days: BleacherReport.com or B-R | | 230 | 2.54 | 2.45 | 68 |
| SPORTS Websites/apps visited or used in last 30 days: CBSSports | | 240 | 2.85 | 2.55 | 76 |
| SPORTS Websites/apps visited or used in last 30 days: ESPN | | 1,044 | 2.59 | 11.11 | 69 |
| SPORTS Websites/apps visited or used in last 30 days: FOX Sports | | 465 | 2.95 | 4.95 | 79 |
| SPORTS Websites/apps visited or used in last 30 days: MLB.com/MLB.com At Bat | | 270 | 3.15 | 2.87 | 84 |
| SPORTS Websites/apps visited or used in last 30 days: NASCAR | * | 161 | 4.23 | 1.71 | 114 |

3

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| SPORTS Websites/apps visited or used in last 30 days: NBA | | 313 | 3.28 | 3.33 | 88 |
| SPORTS Websites/apps visited or used in last 30 days: NBCSports.com | | 142 | 2.52 | 1.52 | 68 |
| SPORTS Websites/apps visited or used in last 30 days: NFL.com or NFL/NFL Mobile | | 659 | 3.54 | 7.01 | 95 |
| SPORTS Websites/apps visited or used in last 30 days: WWE | * | 181 | 5.94 | 1.92 | 159 |
| SPORTS Websites/apps visited or used in last 30 days: Yahoo! Sports | | 245 | 2.81 | 2.60 | 75 |
| TECHNOLOGY Websites/apps visited or used in last 30 days: CNET | | 349 | 3.24 | 3.71 | 87 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Airbnb | | 509 | 2.39 | 5.42 | 64 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Bings Maps | * | 67 | 2.81 | 0.71 | 75 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Cheap Tickets | | 309 | 4.92 | 3.28 | 132 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Expedia | | 510 | 3.29 | 5.42 | 88 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Google Maps | | 3,532 | 3.38 | 37.58 | 91 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Hotels.com | | 387 | 3.29 | 4.12 | 88 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Hotwire | * | 120 | 3.90 | 1.28 | 105 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Lyft | | 352 | 3.82 | 3.74 | 103 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: MapQuest | | 793 | 4.24 | 8.44 | 114 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Orbitz | * | 95 | 2.74 | 1.01 | 73 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Priceline | | 227 | 3.71 | 2.42 | 100 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Travelocity | | 207 | 2.78 | 2.21 | 75 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: TripAdvisor | | 440 | 3.71 | 4.68 | 99 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Uber | | 565 | 3.21 | 6.02 | 86 |
| TRAVEL/MAPS Websites/apps visited or used in last 30 days: Waze | | 745 | 3.42 | 7.93 | 92 |
| WEATHER Websites/apps visited or used in last 30 days: AccuWeather | | 1,889 | 4.19 | 20.10 | 112 |
| WEATHER Websites/apps visited or used in last 30 days: The Weather Channel (weather.com) | | 3,436 | 3.40 | 36.56 | 91 |
| WEATHER Websites/apps visited or used in last 30 days: WeatherBug | | 568 | 4.60 | 6.05 | 123 |

4

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| WEATHER Websites/apps visited or used in last 30 days: Weather Underground (wunderground.com) | | 351 | 3.39 | 3.74 | 91 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Facebook | | 6,088 | 3.71 | 64.78 | 99 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Flickr | * | 37 | 2.33 | 0.40 | 63 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Google Photos | | 1,494 | 3.93 | 15.90 | 106 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Instagram | | 2,795 | 3.01 | 29.74 | 81 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: LinkedIn | | 807 | 2.30 | 8.59 | 62 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Pinterest | | 1,976 | 3.84 | 21.03 | 103 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Reddit | | 545 | 2.53 | 5.79 | 68 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Shutterfly | | 204 | 2.83 | 2.17 | 76 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Snapchat | | 1,661 | 3.11 | 17.67 | 84 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Tumblr | | 169 | 3.29 | 1.80 | 88 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Twitch | | 272 | 3.06 | 2.89 | 82 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Twitter | | 1,267 | 2.93 | 13.48 | 78 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Vimeo | | 117 | 2.10 | 1.24 | 56 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: Yelp | | 524 | 3.49 | 5.58 | 94 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Websites/apps visited or used in last 30 days: YouTube | | 4,960 | 3.58 | 52.78 | 96 |
| SOCIAL MEDIA/PHOTO/VIDEO-SHARING Visited or used in last 30 days: Any Socializing/Networking/Photos/Video-sharing services | | 7,494 | 3.57 | 79.74 | 96 |

5

**Appendix D**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Websites and Social Media Usage:**
**Ailments/Remedies: Chronic/Severe Pain**
**[Have/Had]**

| | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|

\* Projections relatively unstable; use with caution.
Source: 2021 GfK MRI-Simmons Spring Doublebase; USA weighted to Population (000) - Base: all

**Appendix E**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Magazine Ranker: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| AARP The Magazine: Print + Digital Edition [29] | | 1,849 | 5.00 | 19.68 | 134 |
| Allrecipes: Print + Digital Edition [29] | | 448 | 5.10 | 4.77 | 137 |
| Allure: Print + Digital Edition [29] | | 176 | 4.62 | 1.87 | 124 |
| American Hunter: Print + Digital Edition [29] | | 97 | 3.32 | 1.03 | 89 |
| American Legion: Print + Digital Edition [29] | | 136 | 4.88 | 1.45 | 131 |
| American Rifleman: Print + Digital Edition [29] | | 216 | 4.79 | 2.30 | 129 |
| Architectural Digest: Print + Digital Edition [29] | | 93 | 3.35 | 0.99 | 90 |
| The Atlantic: Print + Digital Edition [29] | | 94 | 2.58 | 1.00 | 69 |
| Backpacker: Print + Digital Edition [29] | * | 20 | 1.69 | 0.21 | 45 |
| Barron's: Print + Digital Edition [29] | * | 27 | 3.33 | 0.28 | 89 |
| Bassmaster: Print + Digital Edition [29] | | 122 | 5.10 | 1.30 | 137 |
| Better Homes & Gardens: Print + Digital Edition [29] | | 1,475 | 5.46 | 15.69 | 146 |
| Bicycling: Print + Digital Edition [29] | * | 42 | 3.03 | 0.45 | 81 |
| Birds & Blooms: Print + Digital Edition [29] | | 274 | 6.16 | 2.92 | 165 |
| Bloomberg Businessweek: Print + Digital Edition [29] | | 103 | 3.61 | 1.10 | 97 |
| Boating: Print + Digital Edition [29] | * | 51 | 3.43 | 0.55 | 92 |
| Bon Appétit: Print + Digital Edition [29] | | 243 | 3.69 | 2.59 | 99 |
| Car and Driver: Print + Digital Edition [29] | | 159 | 2.60 | 1.69 | 70 |
| Cigar Aficionado: Print + Digital Edition [29] | * | 63 | 4.79 | 0.67 | 128 |
| Condé Nast Traveler: Print + Digital Edition [29] | | 113 | 3.35 | 1.20 | 90 |
| Consumer Reports: Print + Digital Edition [29] | | 432 | 3.81 | 4.60 | 102 |
| Cooking with Paula Deen: Print + Digital Edition [29] | | 101 | 5.03 | 1.08 | 135 |
| Cosmopolitan: Print + Digital Edition [29] | | 491 | 4.47 | 5.22 | 120 |
| Costco Connection: Print + Digital Edition [29] | | 897 | 3.17 | 9.55 | 85 |
| Country: Print + Digital Edition [29] | | 148 | 5.45 | 1.57 | 146 |
| Country Living: Print + Digital Edition [29] | | 489 | 5.49 | 5.20 | 147 |
| Country Sampler: Print + Digital Edition [29] | | 121 | 6.22 | 1.29 | 167 |
| Diabetes Self-Management: Print + Digital Edition [29] | | 227 | 6.17 | 2.41 | 165 |
| Discover: Print + Digital Edition [29] | | 169 | 3.29 | 1.80 | 88 |
| Ducks Unlimited: Print + Digital Edition [29] | * | 129 | 7.58 | 1.38 | 203 |
| Dwell: Print + Digital Edition [29] | * | 41 | 3.68 | 0.44 | 99 |
| EatingWell: Print + Digital Edition [29] | | 273 | 4.77 | 2.90 | 128 |
| The Economist: Print + Digital Edition [29] | | 70 | 2.44 | 0.75 | 66 |
| The Elks Magazine: Print + Digital Edition [29] | * | 40 | 3.19 | 0.42 | 86 |
| Elle: Print + Digital Edition [29] | | 239 | 5.32 | 2.54 | 143 |
| Elle Décor: Print + Digital Edition [29] | | 79 | 3.88 | 0.84 | 104 |
| Entertainment Weekly: Print + Digital Edition [29] | | 510 | 5.15 | 5.43 | 138 |
| Entrepreneur: Print + Digital Edition [29] | | 165 | 5.18 | 1.75 | 139 |
| Esquire: Print + Digital Edition [29] | | 93 | 3.58 | 0.99 | 96 |

**Appendix E**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Magazine Ranker: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Essence: Print + Digital Edition [29] | | 243 | 4.20 | 2.59 | 113 |
| Family Handyman: Print + Digital Edition [29] | | 298 | 6.25 | 3.18 | 168 |
| First For Women: Print + Digital Edition [29] | | 154 | 6.39 | 1.63 | 171 |
| Food & Wine: Print + Digital Edition [29] | | 225 | 3.19 | 2.39 | 85 |
| Food Network Magazine: Print + Digital Edition [29] | | 552 | 4.56 | 5.88 | 122 |
| Forbes: Print + Digital Edition [29] | | 265 | 3.30 | 2.82 | 89 |
| Fortune: Print + Digital Edition [29] | | 115 | 4.16 | 1.22 | 112 |
| Four Wheeler: Print + Digital Edition [29] | * | 59 | 3.49 | 0.63 | 94 |
| Game & Fish: Print + Digital Edition [29] | | 136 | 5.33 | 1.45 | 143 |
| Game Informer: Print + Digital Edition [29] | | 348 | 4.46 | 3.71 | 120 |
| Golf Digest: Print + Digital Edition [29] | | 123 | 3.22 | 1.30 | 86 |
| Golf Magazine: Print + Digital Edition [29] | | 128 | 3.02 | 1.36 | 81 |
| Golfweek: Print + Digital Edition [29] | * | 59 | 3.61 | 0.63 | 97 |
| Good Housekeeping: Print + Digital Edition [29] | | 924 | 6.42 | 9.83 | 172 |
| GQ (Gentlemen's Quarterly): Print + Digital Edition [29] | | 156 | 3.24 | 1.66 | 87 |
| Guideposts: Print + Digital Edition [29] | | 183 | 4.54 | 1.95 | 122 |
| Guns & Ammo: Print + Digital Edition [29] | | 332 | 4.51 | 3.54 | 121 |
| Harper's Bazaar: Print + Digital Edition [29] | | 133 | 4.88 | 1.42 | 131 |
| Health: Print + Digital Edition [29] | | 317 | 5.24 | 3.37 | 141 |
| HGTV Magazine: Print + Digital Edition [29] | | 469 | 4.98 | 4.99 | 133 |
| Hot Rod: Print + Digital Edition [29] | | 110 | 3.18 | 1.17 | 85 |
| House Beautiful: Print + Digital Edition [29] | | 226 | 5.50 | 2.41 | 148 |
| Hunting: Print + Digital Edition [29] | | 135 | 6.26 | 1.43 | 168 |
| In-Fisherman: Print + Digital Edition [29] | * | 92 | 3.99 | 0.98 | 107 |
| In Touch: Print + Digital Edition [29] | | 175 | 5.30 | 1.86 | 142 |
| Inc.: Print + Digital Edition [29] | | 60 | 3.97 | 0.64 | 106 |
| InStyle: Print + Digital Edition [29] | | 255 | 4.40 | 2.71 | 118 |
| Kiplinger's Personal Finance: Print + Digital Edition [29] | | 61 | 3.18 | 0.65 | 85 |
| Life & Style Weekly: Print + Digital Edition [29] | | 60 | 2.70 | 0.63 | 72 |
| Magnolia Journal: Print + Digital Edition [29] | | 281 | 5.11 | 2.99 | 137 |
| Marie Claire: Print + Digital Edition [29] | | 123 | 5.53 | 1.31 | 148 |
| Martha Stewart Living: Print + Digital Edition [29] | | 317 | 4.95 | 3.37 | 133 |
| Maxim: Print + Digital Edition [29] | | 70 | 2.83 | 0.74 | 76 |
| Men's Health: Print + Digital Edition [29] | | 337 | 3.54 | 3.59 | 95 |
| Men's Journal: Print + Digital Edition [29] | | 76 | 2.61 | 0.81 | 70 |
| Midwest Living: Print + Digital Edition [29] | | 119 | 4.76 | 1.27 | 128 |
| Mother Earth News: Print + Digital Edition [29] | | 121 | 4.70 | 1.29 | 126 |
| MotorTrend: Print + Digital Edition [29] | | 137 | 2.67 | 1.45 | 72 |
| National Enquirer: Print + Digital Edition [29] | | 180 | 5.04 | 1.92 | 135 |
| National Geographic: Print + Digital Edition [29] | | 966 | 3.92 | 10.28 | 105 |

**Appendix E**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Magazine Ranker: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| National Geographic Kids: Print + Digital Edition [29] | | 224 | 3.78 | 2.38 | 101 |
| National Wildlife: Print + Digital Edition [29] | | 171 | 3.98 | 1.82 | 107 |
| New York Magazine: Print + Digital Edition [29] | | 101 | 3.27 | 1.07 | 88 |
| New York Times (Daily) [newspaper]: Print + Digital Edition [29] | | 575 | 3.24 | 6.12 | 87 |
| New York Times (Sunday) [newspaper]: Print + Digital Edition [29] | | 632 | 3.40 | 6.73 | 91 |
| The New Yorker: Print + Digital Edition [29] | | 177 | 2.99 | 1.88 | 80 |
| OK!: Print + Digital Edition [29] | | 100 | 3.96 | 1.06 | 106 |
| Outside: Print + Digital Edition [29] | | 85 | 2.74 | 0.90 | 73 |
| Parents: Print + Digital Edition [29] | | 309 | 4.68 | 3.29 | 126 |
| Parents Latina: Print + Digital Edition [29] | * | 40 | 2.80 | 0.42 | 75 |
| People: Print + Digital Edition [29] | | 1,287 | 4.50 | 13.70 | 121 |
| People en Español: Print + Digital Edition [29] | | 222 | 3.69 | 2.36 | 99 |
| Popular Mechanics: Print + Digital Edition [29] | | 183 | 3.40 | 1.95 | 91 |
| Prevention: Print + Digital Edition [29] | | 203 | 5.23 | 2.15 | 140 |
| Psychology Today: Print + Digital Edition [29] | | 163 | 5.53 | 1.73 | 148 |
| Reader's Digest: Print + Digital Edition [29] | | 752 | 5.10 | 8.00 | 137 |
| Real Simple: Print + Digital Edition [29] | | 295 | 4.72 | 3.14 | 127 |
| Reminisce: Print + Digital Edition [29] | * | 85 | 4.93 | 0.90 | 132 |
| Road & Track: Print + Digital Edition [29] | | 50 | 2.14 | 0.53 | 57 |
| Rolling Stone: Print + Digital Edition [29] | | 380 | 4.34 | 4.04 | 117 |
| Runner's World: Print + Digital Edition [29] | * | 53 | 3.06 | 0.57 | 82 |
| Salt Water Sportsman: Print + Digital Edition [29] | * | 44 | 3.64 | 0.46 | 98 |
| The Saturday Evening Post: Print + Digital Edition [29] | | 91 | 6.30 | 0.97 | 169 |
| Scientific American: Print + Digital Edition [29] | | 118 | 4.08 | 1.25 | 109 |
| Shape: Print + Digital Edition [29] | | 185 | 5.28 | 1.97 | 142 |
| Ski: Print + Digital Edition [29] | * | 50 | 4.00 | 0.53 | 107 |
| Smithsonian: Print + Digital Edition [29] | | 338 | 4.89 | 3.60 | 131 |
| Southern Living: Print + Digital Edition [29] | | 740 | 5.64 | 7.87 | 151 |
| Sports Illustrated: Print + Digital Edition [29] | | 435 | 3.19 | 4.62 | 86 |
| Star: Print + Digital Edition [29] | | 186 | 5.25 | 1.98 | 141 |
| Taste of Home: Print + Digital Edition [29] | | 521 | 5.00 | 5.54 | 134 |
| Tennis: Print + Digital Edition [29] | * | 35 | 3.34 | 0.37 | 90 |
| Texas Monthly: Print + Digital Edition [29] | | 86 | 3.43 | 0.91 | 92 |
| This Old House: Print + Digital Edition [29] | | 286 | 5.79 | 3.04 | 155 |
| TIME: Print + Digital Edition [29] | | 593 | 4.28 | 6.31 | 115 |
| Town & Country: Print + Digital Edition [29] | | 115 | 4.67 | 1.23 | 125 |
| Traditional Home: Print + Digital Edition [29] | | 132 | 4.77 | 1.41 | 128 |
| Travel + Leisure: Print + Digital Edition [29] | | 204 | 3.46 | 2.17 | 93 |
| TV Guide Magazine: Print + Digital Edition [29] | | 370 | 4.69 | 3.94 | 126 |

**Appendix E**

**Opana ER Settlement Antitrust Litigation MRI Data**

**Magazine Ranker: Ailments/Remedies:**
**Chronic/Severe Pain [Have/Had]**

| | | Audience (000) | % Coverage | % Composition | Index |
|---|---|---|---|---|---|
| Us Weekly: Print + Digital Edition [29] | | 352 | 4.20 | 3.75 | 113 |
| USA Hockey: Print + Digital [29] | * | 60 | 5.24 | 0.64 | 141 |
| USA Today [newspaper]: Print + Digital Edition [29] | | 394 | 3.44 | 4.19 | 92 |
| Vanity Fair: Print + Digital Edition [29] | | 321 | 4.59 | 3.42 | 123 |
| Veranda: Print + Digital Edition [29] | * | 56 | 5.14 | 0.59 | 138 |
| VFW Magazine: Print + Digital Edition [29] | | 77 | 5.21 | 0.82 | 140 |
| Vogue: Print + Digital Edition [29] | | 307 | 3.30 | 3.27 | 89 |
| Wall Street Journal [newspaper]: Print + Digital Edition [29] | | 301 | 2.75 | 3.21 | 74 |
| WebMD Magazine: Print + Digital Edition [29] | | 416 | 6.57 | 4.43 | 176 |
| THE WEEK: Print + Digital Edition [29] | | 95 | 5.12 | 1.01 | 137 |
| Wine Spectator: Print + Digital Edition [29] | | 95 | 3.98 | 1.01 | 107 |
| Wired: Print + Digital Edition [29] | | 153 | 3.33 | 1.63 | 89 |
| Woman's Day: Print + Digital Edition [29] | | 697 | 6.44 | 7.42 | 173 |
| Woman's World: Print + Digital Edition [29] | | 263 | 5.55 | 2.80 | 149 |
| Women's Health: Print + Digital Edition [29] | | 409 | 4.67 | 4.35 | 125 |
| Yankee: Print + Digital Edition [29] | * | 81 | 6.65 | 0.86 | 179 |
| Yoga Journal: Print + Digital Edition [29] | | 72 | 3.96 | 0.77 | 106 |

* Projections relatively unstable; use with caution.
Source: 2021 GfK MRI-Simmons Spring Doublebase; USA weighted to Population (000) - Base: all

# Exhibit C

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

**If you paid for or provided reimbursement for some or all of the purchase price of brand
or generic Opana ER (oxymorphone hydrochloride extended release),**

*You Could Get a Payment from a Class Action Lawsuit.
A Federal Court ordered this Class Notice.*

***YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT, SO
PLEASE READ THIS NOTICE CAREFULLY.***

*This is not a solicitation from a lawyer. You are not being sued.*

The purpose of this Notice is to alert you of a proposed partial settlement in a lawsuit (the "Lawsuit") brought by consumers and third-party payors ("End Payors") who indirectly purchased, paid for, and/or reimbursed for some or all of the purchase price for brand or generic Opana ER against Impax Laboratories, Inc. ("Impax") and Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co. (collectively, "Endo," and, together with Impax, "Defendants"). The proposed settlement only concerns End Payors' claims against Impax.

No one is claiming the drugs at issue are unsafe. Rather the Lawsuit alleges that Defendants violated certain state antitrust, consumer protection, and unjust enrichment laws, harming competition and causing Class Members to overpay for Opana ER products. Specifically, End Payors allege that in June 2010, Endo and Impax entered into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. Absent the alleged reverse payment agreement, End Payors claim that Impax would have launched its generic version of Opana ER earlier than January 2013 and that Endo would have launched an authorized generic version of Opana ER at or about the same time as Impax launched its generic product. End Payors allege that the prices of brand and generic versions of Opana ER sold by Defendants were higher than they would have been absent the alleged unlawful conduct, causing drug purchasers to overpay for brand and generic Opana ER. Defendants deny all these allegations, that they violated any law, or that End Payors or the Classes, as defined below, are entitled to damages or any relief. Defendants have denied any wrongdoing. After Plaintiffs settled with Impax, a federal jury determined that as to Impax's co-Defendant Endo, Plaintiffs did not meet their burden in showing that Endo's reverse payment agreement with Impax violated federal or state laws.

The Court previously determined that the Lawsuit can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The "End-Payor Plaintiff Classes" (or "Classes") are defined as follows:

- **Antitrust/Consumer Protection Class:** All persons or entities who indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other

than for resale, in the states and commonwealths of Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018; and

- **Unjust Enrichment Subclasses:** All persons or entities who from April 2011 through September 2018 indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for brand or generic Opana ER 5 mg, 10 mg, 20 mg, 30 mg, and/or 40 mg sold by Defendants, other than for resale, in the following states and commonwealths:

  - o Subclass 1: Iowa, Michigan, Oregon, West Virginia
  - o Subclass 2: Maine, New Mexico, Wisconsin
  - o Subclass 3: Hawaii, Massachusetts*, Mississippi*, Nebraska, Vermont
  - o Subclass 4: Florida, Minnesota, Missouri, Nevada, Pennsylvania, South Dakota, Utah
  - o Subclass 5: Arizona*, North Dakota.

  * With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

**Excluded from the Classes are:**

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;
- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and

- The Court, Court personnel, and any member of their immediate families.

In addition, people who or entities that submitted a valid exclusion request before the December 6, 2021, exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

The Court preliminarily approved the proposed settlement between the End-Payor Plaintiff Classes and Impax (the "Impax Settlement" or "Settlement") on _____, 2022. The proposed Impax Settlement provides for the payment of $15 million (the "Settlement Fund") to resolve the Classes' claims against Impax. The full text of the proposed Settlement Agreement is available at www.opanaerantitrustlitigation.com.

The Court scheduled a hearing to decide whether to approve the Impax Settlement, the plan for allocating the Settlement Fund to members of the Classes ("Class Members"), and the request of the attorneys for the Classes ("Co-Lead Counsel") for payment of attorneys' fees and reimbursement of expenses and possible service awards to the Class Representatives (defined below) out of the Settlement Fund (the "Fairness Hearing"). The Fairness Hearing is scheduled for _____, at _____, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | If you are a member of a Class, by doing nothing you will remain in that Class but will not be entitled to share in any distribution from the Settlement Fund. You will be bound by any decision of the Court in this Lawsuit, including rulings on the Impax Settlement. See **Question 11**. |
| **SUBMIT A CLAIM FORM** | If you did not exclude yourself from one or more of the classes prior to the _____, 2022, deadline and believe you are a Class Member, you will need to complete and return a Claim Form to obtain a share of the Settlement Fund. The Claim Form, and information on how to submit it, are available on the Settlement website. Claim Forms must be postmarked (if mailed) or received (if submitted online) on or before _____, 2022. See **Question 7** for more information. |

| **OBJECT TO THE SETTLEMENT OR SPEAK AT THE FAIRNESS HEARING** | If you object to all or any part of the Settlement or desire to speak in person at the Fairness Hearing, you must file a written letter of objection and/or a notice of intention to speak, including a summary statement, with the Court, Co-Lead Counsel, and Counsel for Impax by _____, 2022. See **Question 10**. |
|---|---|
| **GET MORE INFORMATION** | If you would like more information about the Lawsuit, you can review this Notice and send questions to the Claims and Notice Administrator and/or Co-Lead Counsel. See **Questions 12 and 18**.<br><br>**DO NOT CONTACT THE COURT OR THE DEFENDANTS IF YOU HAVE QUESTIONS REGARDING THIS NOTICE.** |

This Notice incorporates by reference the definitions in the Settlement Agreement. The Settlement Agreement and the Court's Preliminary Approval Order are posted on the Settlement website, www.opanaerantitrustlitigation.com. All capitalized terms used, but not defined, shall have the same meanings as in the Settlement Agreement and the Court's Preliminary Approval Order.

**BASIC INFORMATION**................................................................................**6**

   1.  Why did I receive this notice? ...................................................... 6

   2.  What is the Lawsuit about?........................................................... 6

   3.  Why is this Lawsuit a class action? ............................................. 7

   4.  Why is there a Settlement with Impax? ...................................... 8

**WHO CAN PARTICIPATE IN THE SETTLEMENT?** ................................ 8

   5.  Am I part of one or more of the Classes? ................................... 8

**THE SETTLEMENT BENEFITS** ............................................................ **10**

   6.  What does the Impax Settlement with  provide? .......................... 10

**HOW YOU GET A PAYMENT: SUBMITTING A CLAIM FORM**.....................**11**

   7.  How can I get a payment? ............................................................ 11

   8.  How much will my payment be? .................................................. 11

   9.  When would I get my payment? ................................................... 11

**OBJECTING TO THE SETTLEMENT** ..................................................... **11**

   10.  How do I tell the Court what I think about the Impax Settlement? .............................. 12

**IF YOU DO NOTHING** ............................................................................ **12**

   11.  What happens if I do nothing at all? ........................................... 12

**THE LAWYERS REPRESENTING THE CLASSES** ................................. **13**

   12.  Do I have a lawyer in this case? ................................................. 13

   13.  Should I hire my own lawyer? ..................................................... 13

   14.  How will the lawyers be paid? ..................................................... 13

**THE FAIRNESS HEARING** ..................................................................... **14**

   15.  When and where will the Court decide whether to approve the Impax Settlement? ..... 14

   16.  Do I have to come to the hearing?............................................... 14

   17.  May I speak at the hearing?......................................................... 14

**GETTING MORE INFORMATION**............................................................ **15**

   18.  Are more details available? ......................................................... 15

## BASIC INFORMATION

| **1.  Why did I receive this Notice?** |
| --- |

A federal court authorized this Notice because you have a right to know that you may be part of one or more of the certified Classes and about all of your options under the proposed Impax Settlement. This Notice explains the Lawsuit and the Impax Settlement; describes the certified Classes whose rights may be affected by the Impax Settlement; and explains your legal rights. Note that you may have received this Notice in error; simply receiving this Notice does not mean that you are definitely a member of one or more Classes. You may confirm that you are a member of one or more of the Classes by reviewing the criteria set forth in **Question 5** below. You may also call, email, or write to the lawyers in this case at the telephone numbers or addresses listed in **Question 12** below.

| **2.  What is the Lawsuit about?** |
| --- |

Plaintiffs Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Wisconsin Masons' Health Care Fund, Pennsylvania Employees Benefit Trust Fund, and International Union of Operating Engineers, Local 138 Welfare Fund (collectively, "Plaintiffs") filed lawsuits individually and as representatives of all persons or entities in the Classes. The Court has appointed them as class representatives ("Class Representatives").

The Lawsuit alleges that Defendants violated certain state antitrust, consumer protection, and unjust enrichment laws, harming competition and causing Class Members to overpay for Opana ER products. Specifically, Plaintiffs allege that in June 2010, Endo and Impax entered into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. Absent the alleged reverse payment agreement, Plaintiffs claim that Impax would have launched its generic version of Opana ER earlier than January 2013 and that Endo would have launched an authorized generic version of Opana ER at or about the same time as Impax launched its generic product.

The Lawsuit asserts that, as a result of Defendants' alleged unlawful conduct, the prices paid for brand and generic Opana ER were higher than they otherwise would have been. Plaintiffs seek to recover damages in the form of overcharges they allege were caused by Defendants' conduct. A copy of the operative class action complaint, filed May 4, 2015, is available at www.opanaerantitrustlitigation.com, a website designed to keep Class Members informed of the status of the Impax Settlement. Defendants deny these allegations, including that the Plaintiffs or Class Members are entitled to damages or other relief.

Following the completion of fact discovery, expert discovery, class certification, summary judgment motions, motions determining the admissibility of expert testimony, and several days of trial, and following extensive negotiations, Plaintiffs, individually and on behalf of the Classes, entered into the Impax Settlement. The Settlement Agreement is available for review at www.opanaerantitrustlitigation.com. The Impax Settlement is not an admission of wrongdoing by Impax or an admission by Plaintiffs of any lack of merit in their claims.

THE COURT HAS NOT DECIDED WHETHER IMPAX HAS VIOLATED ANY LAWS. THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES ASSERTED BY IMPAX.

However, after Plaintiffs settled with Impax, a federal jury determined that Plaintiffs had not met their burden in establishing that Impax's co-Defendant Endo had violated federal or state law arising from its reverse payment agreement with Impax. Specifically, the jury found that although Endo had market power over Opana ER and that it made a large, unjustified reverse payment to Impax, it found that the procompetitive benefits of the settlement outweighed any anticompetitive effect of the payments. Although Plaintiffs intend to file post-trial briefs and appeals seeking to vacate the jury's verdict, there is no certainty that they will be successful.

| 3. | Why is this Lawsuit a class action? |

In a class action lawsuit, one or more persons or entities sue on behalf of others who have similar claims. Together, all these entities make up the "classes" and are called the "classes" or "class members." The companies that filed suit are called the "plaintiffs" (or "class representatives"). The companies that are sued, in this case Impax and Endo, are called the "Defendants."

In a class action lawsuit, one court resolves the issues for everyone in the classes, except for those class members who exclude themselves from the class.

In allowing this Lawsuit to proceed as a class action, on June 4, 2021, as amended by orders dated August 11, 2021, and September 23, 2021, Judge Harry D. Leinenweber certified the End-Payor Classes, described in more detail in **Question 5** below.

The Court decided that this Lawsuit can proceed as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- The members of the Classes are so numerous that joinder of all members is impractical ("numerosity");
- There are questions of law or fact common to the Classes ("commonality");
- The claims or defenses of the representative parties are typical of the claims or defenses of the Classes ("typicality");

- The representative parties and their lawyers will fairly and adequately protect the interests of the Classes ("adequacy"); and
- Common legal and factual questions predominate over any questions affecting only individual members of the Classes, and this class action is the superior method for fair and efficient adjudication of this controversy ("predominance" and "superiority").

In so doing, the Court found that Plaintiffs sufficiently showed that class-wide injury "is provable through common evidence" to the Class and that common issues predominate over individualized inquiries.

A copy of the Court's orders may be found at www.opanaerantitrustlitigation.com.

## 4.    Why is there a Settlement with Impax?

The Impax Settlement is the product of extensive negotiations between Co-Lead Counsel and counsel for Impax, after lengthy, hard-fought litigation. At the time of the Settlement, discovery was complete, expert reports had been exchanged and experts examined, motions for class certification and summary judgment and to determine the admissibility of expert testimony had been decided, and the trial had begun with opening arguments having taken place and several witnesses having been examined. By settling, the End Payors and Impax avoid the cost and risks of trial and possible appeals. For the End Payors, the Settlement, if approved by the Court, ensures that the Class Members will receive compensation for harm arising from Defendants' alleged scheme to delay the market entry of less expensive, generic versions of Opana ER. Plaintiffs and Co-Lead Counsel believe that the terms of the Impax Settlement, including payment by Impax of $15 million in exchange for a release of End Payors' claims against Impax, are fair, adequate, and reasonable, and in the best interests of the Classes.

## WHO CAN PARTICIPATE IN THE SETTLEMENT?

To see if you are in the Classes and, if so, how you will be able to share in the Settlement Fund, you need to determine whether you may be a Class Member.

## 5.    Am I part of one or more of the Classes?

End Payors included individuals and Third-Party Payors. Third-Party Payors are entities (besides the patient) that provide payment or reimbursement for health care expenses, like prescription drug benefits. They include entities such as health insurance companies, self-insured health and welfare plans that make payments from their own funds, and other health benefit providers and entities with self-funded plans that contract with a health insurer or administrator to administer their prescription drug benefits. Third-Party Payors include such private entities that may provide prescription drug benefits for current or former public employees and/or public benefits programs, but only to the extent that such a private entity purchased for consumption by its members, employees, insureds, participants, or beneficiaries, brand or generic Opana ER. You are a member

of the Class(es) if you are an End Payor and you purchased or provided reimbursement for prescription drugs as described below.

You are a member of the Classes if:

You purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER sold by Endo or Impax for the purpose of consumption, and not resale, by yourself, your family member(s), insureds, plan participants, employees, or beneficiaries, at any time from April 2011 through September 2018 in any of the following states or commonwealths:

Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.

* With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

You are not a member of the Classes if you are among the following:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;
- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and
- The Court, Court personnel, and any member of their immediate families.

People who or entities that submitted a valid exclusion request before the December 6, 2021, exclusion deadline described in the previous notice of this Lawsuit sent to all Class Members are also excluded.

If you are not sure whether you are included, you may call, email, or write to the Claims and Notice Administrator in this case at the telephone number, email address, or address listed in **Question 12** below.

## THE SETTLEMENT BENEFITS

| 6. What does the Impax Settlement provide? |
| --- |

Impax has paid $15 million into the Settlement Fund, which will be held in escrow for the benefit of the Classes (including any interest that accrues) pending the Court's approval of the Settlement and Co-Lead Counsel's plan to distribute the Settlement Fund to Class Members.

If the Settlement is approved by the Court and becomes final, Co-Lead Counsel will seek approval from the Court to obtain from the Settlement Fund: (i) reimbursement of reasonable costs and expenses incurred by Co-Lead Counsel in connection with the Settlement and the litigation; (ii) attorneys' fees for Co-Lead Counsel of up to 33 1/3% of the Settlement Fund; and (iii) payment for service awards to End-Payor Plaintiffs in recognition of their efforts to date on behalf of the Classes. The remainder after payment of the above expenses and payment of any Administration Expenses (the "Net Settlement Fund") will be divided among Class Members that timely return valid, approved Claim Forms pursuant to the Plan of Allocation, which is subject to Court approval.

In exchange, Plaintiffs' and the Classes' claims against Impax will be dismissed with prejudice, and Impax will be released by Class Members from all claims concerning the subject matter of or acts, omissions, or other conduct alleged in the operative complaint. The full text of the release is included in the Impax Settlement, which is available at www.opanaerantitrustlitigation.com.

The Impax Settlement may be terminated if, for example, the Court does not approve the Impax Settlement. If the Impax Settlement is terminated, the Lawsuit will proceed against Impax as if a settlement had not been reached.

Please note that after Plaintiffs settled with Impax, a federal jury determined that as to Impax's co-Defendant Endo, Plaintiffs had not met their burden in establishing that Endo violated federal or state law based on the conduct Plaintiffs alleged. Although Plaintiffs intend to file post-trial briefs and appeals seeking to vacate the jury's verdict, there is no certainty that they will be successful. **As a result, this may be your only opportunity to receive compensation in this Litigation.**

## HOW YOU GET A PAYMENT: SUBMITTING A CLAIM FORM

### 7.    How can I get a payment?

To be eligible to receive a payment if the Court approves the Impax Settlement, all Class Members must complete and submit a valid Claim Form to request their *pro rata* shares of the Net Settlement Fund. You will not be responsible for calculating the amount you are entitled to receive. You can get a Claim Form at www.opanaerantitrustlitigation.com or by calling 1-877-888-6423 or writing to the address below and requesting a Claim Form. Claim Forms must be received (if submitted online) or postmarked (if mailed) by _____, and may be submitted online at www.opanaerantitrustlitigation.com or mailed to the address below:

Opana ER Class Action
c/o A.B. Data, Ltd.
P.O. Box 173067
Milwaukee, WI 53217

### 8.    How much will my payment be?

Each Class Member's share of the Net Settlement Fund will be based on its qualifying purchases of brand or generic Opana ER and will be determined according to the Plaintiffs' proposed Plan of Allocation, if approved by the Court. Payments will be based on a number of factors, including the number of valid claims filed by all members of the Classes and the dollar value of each member of the Classes' purchase(s) in proportion to the total claims filed. Complete details of how your recovery will be calculated are in the detailed Plan of Allocation, which can be viewed at www.opanaerantitrustlitigation.com.

### 9.    When would I get my payment?

The Court must approve the Impax Settlement and any appeals of that decision must be resolved before any money is distributed to Class Members. The Claims and Notice Administrator must also complete processing of all of the Claim Forms and determine distribution amounts. This process can take several months.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with any part of the Impax Settlement and/or Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses by filing an objection.

| **10.** | **How do I tell the Court what I think about the Impax Settlement?** |

If you are a Class Member, you can ask the Court to deny approval of the Impax Settlement by filing an objection. You may tell the Court that you object, entirely or in part, to the Settlement and/or Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses and End-Payor Plaintiffs' request for service awards. You cannot ask the Court to order a different Settlement; the Court can only approve or reject the Impax Settlement. If the Court denies approval, no Settlement payments will be sent out and the Lawsuit against Impax will continue. If that is what you want to happen, you must object. You may also ask the Court to speak in person at the Fairness Hearing.

Any objection to the Settlement and/or requests to speak in person at the Fairness Hearing must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Fairness Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers and/or requests to speak in person at the Fairness Hearing must (a) include your name, address, telephone number, and signature and clearly identify the case name and number (*In re Opana ER Antitrust Litigation*, No. 14-cv-10150 (N.D. Ill.)); (b) provide a summary statement outlining the position to be asserted and the grounds for the objection, including whether the objection applies only to you, to a specific subset of one or more of the Classes, or to an entire Class or Classes, together with copies of any supporting papers or briefs; (c) be submitted to the Court either by filing them electronically via the Court's Case Management/Electronic Case Files (CM/ECF) system or by mailing it to the Clerk of the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604 on or before _____; and (d) also be mailed and postmarked by _____ to Co-Lead Counsel listed in **Question 12** and to Defense Counsel: Devora Allon, KIRKLAND & ELLIS LLP, 601 Lexington Avenue, New York, NY 10022.

## IF YOU DO NOTHING

| **11.** | **What happens if I do nothing at all?** |

If you are a Class Member and you do nothing, you will remain in the Classes and be bound by the decision in the Action and on the Impax Settlement, but you may not participate in the Impax Settlement as described in this Notice, if the Impax Settlement is approved. To participate in the Impax Settlement, you must complete, sign, and return the Claim Form before the claims filing deadline provided on the Claim Form and on the Settlement website to be eligible to receive a payment.

## THE LAWYERS REPRESENTING THE CLASSES

| 12. | Do I have a lawyer in this case? |
|-----|----------------------------------|

The law firms listed below have been appointed by the Court as Co-Lead Counsel for the Classes. Co-Lead Counsel for the Classes are experienced in handling similar cases against other companies. Lead Counsel for the Classes are:

| **DICELLO LEVITT GUTZLER LLC** | **FREED KANNER LONDON & MILLEN LLC** |
|---|---|
| One Grand Central Place | |
| 60 East 42nd Street, Suite 2400 | 2201 Waukegan Road, Suite 130 |
| New York, NY 10165 | Bannockburn, IL 60015 |
| gasciolla@dicellolevitt.com | rwozniak@fklmlaw.com |
| kgarvey@dicellolevitt.com | bhogan@fklmlaw.com |
| mperez@dicellolevitt.com | |

You will not be personally charged for the services of these lawyers in litigating this case against the Defendants.

| 13. | Should I hire my own lawyer? |
|-----|------------------------------|

You do not need to hire your own lawyer because the lawyers appointed by the Court are working on your behalf. You may hire a lawyer and enter an appearance through your lawyer at your own expense if you so desire.

| 14. | How will the lawyers be paid? |
|-----|-------------------------------|

If the Court approves the Impax Settlement, Co-Lead Counsel will ask the Court for an award of attorneys' fees of up to 40% of the Settlement Fund, and reimbursement of litigation expenses incurred prior to the Impax Settlement. Co-Lead Counsel may ask for service awards for the Class Representatives from the Settlement Fund for their efforts to date on behalf of the End-Payor Classes. If the Court grants Co-Lead Counsel's requests, these amounts would be deducted from the Settlement Fund. You will not have to pay these fees, expenses, and costs out of your own pocket. The Administrative Expenses for the Impax Settlement will also be paid out of the Settlement Fund.

Co-Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses and for possible service awards for the Class Representatives will be filed with the Court and made available for download or viewing on or before _____ on the Impax Settlement website at info@opanaerantitrustlitigation.com, on the Court docket for this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States

District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays. You can tell the Court you do not agree with Co-Lead Counsel's request for attorneys' fees and expenses, or for service awards for the Class Representatives, by filing an objection as described in **Question 10**.

## THE FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Impax Settlement. You may attend and you may ask to speak, but you do not have to.

| 15. | When and where will the Court decide whether to approve the Impax Settlement? |
|---|---|

The Court will hold a Fairness Hearing at ⬚⬚⬚ Central Time on ⬚⬚⬚⬚, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to give final approval to the proposed Impax Settlement. We do not know how long the decision will take.

The time and date of the Fairness Hearing may change without additional mailed publication notice. For updated information on the hearing, visit www.opanaerantitrustlitigation.com or check the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov.

| 16. | Do I have to come to the hearing? |
|---|---|

No. Co-Lead Counsel will answer questions that the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it; as long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Attendance is not necessary to receive a *pro rata* share of the Settlement Fund.

| 17. | May I speak at the hearing? |
|---|---|

You may ask the Court for permission to speak at the Fairness Hearing, either in person or through your own attorney, if you file a request to speak in person. See **Question 10.** If you appear through your own attorney, you are responsible for paying that attorney.

## GETTING MORE INFORMATION

| 18. | Are more details available? |
|---|---|

You can review relevant decisions and orders and additional information about this Lawsuit on the Settlement website at www.opanaerantitrustlitigation.com. You may also contact the Claims and Notice Administrator, by mail, at Opana ER Antitrust Class Action, P.O. Box 173067, Milwaukee, WI 53217, email at info@opanaerantitrustlitigation.com, or phone at 877-888-6423. Complete copies of all public pleadings, Court rulings, and other filings are available for review by accessing the Court docket for this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.ilnd.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS CASE.

DATED: _____, 2022     BY ORDER OF THE UNITED STATES DISTRICT
                            COURT NORTHERN DISTRICT OF ILLINOIS, HARRY
                            D. LEINENWEBER

# EXHIBIT D

**If you paid for or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release), you could get a payment from a class action lawsuit.**

Your rights may be affected by a proposed partial settlement in a class action lawsuit regarding the prices paid for brand and generic Opana ER by consumers and third-party payors filed against Defendant Impax Laboratories, Inc. ("Impax"). The case name is *In re Opana ER Antitrust Litigation*, MDL No. 2580, Lead Case No. 14-cv-10150 (N.D. Ill.) (the "Lawsuit"). The Lawsuit, which is pending in the Northern District of Illinois, alleges that Impax, together with Endo Health Solutions Inc., Endo Pharmaceuticals Inc., and Penwest Pharmaceuticals Co. (collectively, "Endo") violated certain state antitrust, consumer protection, and unjust enrichment laws by entering into a "pay for delay" or "reverse payment" agreement, delaying the launch of Impax's generic version of Opana ER until January 2013. As a result, the Lawsuit alleges that the End-Payor Classes paid or reimbursed for brand and generic Opana ER at prices that were higher than they would have otherwise been. Impax denies any wrongdoing. After Plaintiffs settled with Impax, a federal jury determined that as to Endo, Plaintiffs did not meet their burden in showing that Endo violated federal or state laws arising from Plaintiffs' allegations.

The Court has preliminarily approved the proposed settlement between the End-Payor Classes and Impax (the "Settlement"). The proposed Impax Settlement will provide for the payment of $15 million (the "Settlement Fund") to resolve the End-Payor Classes' claims against Impax. The full text of the proposed Settlement Agreement is available at www.opanaerantitrustlitigation.com.

The Court has scheduled a hearing to decide whether to approve the Settlement, the plan for allocating the Settlement Fund to Class Members, and the request of Co-Lead Counsel for payment of attorneys' fees and reimbursement of expenses and service awards to the Class Representative Plaintiffs out of the Settlement Fund (the "Fairness Hearing"). The Fairness Hearing is scheduled for _____, at _____, before Judge Harry D. Leinenweber at the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

## Who Is Included?

You are a member of the End-Payor Plaintiff Classes if:

> You purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER sold by Endo or Impax for the purpose of consumption, and not resale, by yourself, your family member(s), insureds, plan participants, employees, or beneficiaries, at any time from April 2011 through September 2018 in any of the following states or commonwealths:

>> Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.

> * With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011, through September 2018.

The following are NOT members of the Classes:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;

- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (*i.e.*, "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (*i.e.*, "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and
- The Court, Court personnel, and any member of their immediate families.

For additional details, please read the Long Form Notice available at www.opanaerantitrustlitigation.com.

### Your Rights and Options

<u>DO NOTHING</u>: If you are a member of a Class, by doing nothing you will remain in that Class but will not be entitled to share in any distribution from the Settlement Fund. You will be bound by any decision of the Court in this Lawsuit, including rulings on the Settlement.

<u>SUBMIT A CLAIM FORM</u>: If you did not exclude yourself from one or more of the Classes prior to the December 6, 2021, deadline and believe you are a Class Member, you will need to complete and return a Claim Form to obtain a share of the Settlement Fund. The Claim Form, and information on how to submit it, are available on the Settlement website. Claim Forms must be postmarked (if mailed) or received (if submitted online) on or before _____. **Because a federal jury has recently determined that Impax's co-defendant Endo has not violated federal or state law arising from its reverse payment agreement, this may be your only opportunity to receive compensation in this Litigation.**

<u>OBJECT TO THE SETTLEMENT</u>: If you object to all or any part of the Settlement or desire to speak in person at the Fairness Hearing, you must file a written letter of objection and/or a notice of intention, including a summary statement, with the Court, Co-Lead Counsel, and Counsel for Impax by _____.

### Want More Information?

Go to www.opanaerantitrustlitigation.com. You may also contact the Claims and Notice Administrator, by mail at Opana ER Antitrust Litigation, P.O. Box 173067, Milwaukee, WI 53217, email at info@opanaerantitrustlitigation.com, or phone at 877-888-6423. The deadlines contained in this notice may be amended by Court Order, so check the Settlement website for any updates.

Please do not call the Court or the Clerk of the Court for information about the Impax Settlement.

# EXHIBIT E

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION | MDL DOCKET NO. 2580 |
| | Lead Case No. 14-cv-10150 |
| This document relates to: | |
| END-PAYOR ACTIONS | |

**Instructions for Submitting Your Consumer Claim Form**

If you are a member of the Class as a consumer, you may file a claim for a share of the Settlement Fund.  You must complete this Claim Form and mail it to the Claims and Notice Administrator at the address provided below postmarked, or submit your claim online at www.OpanaERAntitrustLitigation.com, **no later than _____, 202_**.

- Complete all required portions of the attached Claim Form:

1. Complete *Section A*.

2. Answer the question in *Section B* to determine your eligibility.

3. Provide information about your total purchases of brand or generic Opana ER in *Section C*.

4. If possible, provide documentation of at least one purchase of brand or generic Opana ER as described in *Section D*.

5. Review and sign the Claim Form in *Section E*, which includes the Certification that the information you provide is true and correct to the best of your knowledge.

- By signing and submitting the Claim Form, you are swearing under penalty of perjury that you qualify to submit a claim according to the criteria given in *Section B*.

- You have two options for submitting a Claim Form:

  o You can mail the completed and signed Claim Form and Certification by First-Class U.S. Mail, postage prepaid, postmarked no later than _____, 202_, to:

  Opana ER Class Action

  c/o A.B. Data, Ltd.

  P.O. Box 173067

  Milwaukee, WI 53217

  **OR**

  o You can complete and submit the Claim Form and Certification using the Claims and Notice Administrator's settlement website, www.OpanaERAntitrustLitigation.com.  When you complete the online Claim Form, you will receive an acknowledgement that your claim has been submitted.  If you choose this option and file a claim electronically, your electronic signature and submission of the form will conform to the requirements of the Electronic Signatures Act, 15 U.S.C. § 7001, et seq., and will have the same force and effect as if you signed the Claim Form in hard copy.

- If your completed Claim Form is not postmarked or filed online by _____, 202_, you will not receive any payment from the Settlement.  Submission of this Claim Form does not ensure that you will share in the payments related to the Settlement.

*Opana ER Settlement*

> **MUST BE POSTMARKED ON OR BEFORE, OR SUBMITTED ONLINE BY _____, 202_**

### Consumer Claim Form

Use Blue or Black Ink Only

**Attention: This Form Is Only to Be Filled Out for a Consumer and Not a Third-Party Payor.**

| Section A: Claimant Identification |
|---|

Claimant's Name

Agent/Legal Representative (if any)

Street Address

City      State      Zip Code

Daytime Telephone Number      Email Address*

*By providing your email address, you authorize the Claims and Notice Administrator to use it to send you information relevant to this claim.

| Section B: Should I File a Claim Form? |
|---|

You may be eligible to file a claim form and receive a cash distribution from the proposed Settlement, if you purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER, in the 5, 10, 20, 30, or 40 mg strengths, sold by Endo or Impax for the purpose of consumption, and not resale, by yourself or your family member(s) and dependents, at any time from April 2011 through September 2018 in any of the following states or commonwealths:

Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.

* With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011 through September 2018.

You are not a member of the Classes if you are among the following:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors;
- All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans;
- All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists");
- Consumers with copay insurance plans who purchased only generic versions of Opana ER (i.e., "generic-only copay consumers");
- Pharmacy Benefit Managers;
- All Counsel of Record; and
- The Court, Court personnel and any member of their immediate families.

**If you excluded yourself from the Class, you may not file a claim.**

□ **By checking this box, I confirm that I have read the definition of the Class and I am not excluded from participating in the proposed Settlement.**

| Section C: Purchase Information |
| --- |

Please type or print in the box below, the total amount paid or reimbursed for brand or generic Opana ER (oxymorphone hydrochloride extended release), in the 5, 10, 20, 30, and 40 mg strengths, sold by Endo or Impax net of any copay coupons, patient assistance programs, or other discounts for use by yourself, or your family member(s), where such persons purchased the drug in a pharmacy or received brand or generic Opana ER (oxymorphone hydrochloride extended release) by mail-order prescription:

Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018.

*With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release) from June 4, 2011 through September 2018.*

| **TOTAL AMOUNT YOU PAID FOR BRAND OR GENERIC OPANA ER (OXYMORPHONE HYDROCHLORIDE EXTENDED RELEASE), 5, 10, 20, 30, 40 MG SOLD BY ENDO OR IMPAX – NET OF COPAY COUPONS, PATIENT ASSISTANCE PROGRAMS, OR OTHER DISCOUNTS** | $ |
| --- | --- |

## Section D: Claim Documentation and Disputes Regarding Claim Amounts

You may file a claim by providing the information requested in Section C and completing the certification below.

If possible, you should also submit any of the following, which are all acceptable as claim documentation:

1) Records from your pharmacy showing that you purchased brand or generic Opana ER at least once; or
2) A note from your doctor (or records) describing the amount of brand or generic Opana ER you were prescribed.

**Note**: You may have a claim even if you cannot provide any of the above claim documentation as long as you provide the certification below. However, if you do not provide the above documentation, the Claims and Notice Administrator may ask for additional claim documentation after you submit your Claim Form, so please keep all records of your purchases. Claims may be selected for audit and rejected because of fraud concerns, or potentially inaccurate amounts based on expected average purchases.

If the Claims and Notice Administrator rejects or reduces your claim and you believe the rejection or reduction is in error, you may contact the Claims and Notice Administrator to request further review. If the dispute concerning your claim cannot be resolved by the Claims and Notice Administrator and Class Counsel, you may request that the Court review your claim.

To request Court review, you must send the Claims and Notice Administrator a signed written statement that (a) states your reasons for contesting the rejection or payment determination regarding your claim; and (b) specifically states that you "request that the Court review the determination regarding this claim." You must include all documentation supporting your argument(s). The Claims and Notice Administrator and Class Counsel will present the dispute to the Court for review, which may include public filing with the Court of your claim and the supporting documentation. Please note that Court review should only be sought if you disagree with the Claims and Notice Administrator's determination regarding your claim.

## Section E: Certification

I have read and am familiar with the contents of the Instructions accompanying this Claim Form. I certify that the information I have set forth in the above Claim Form and in any documents attached by me are true, correct, and complete to the best of my knowledge. I certify that I, or the Class Member I represent purchased, paid for, or provided reimbursement for some or all of the purchase price of brand or generic Opana ER sold by Endo or Impax for the purpose of consumption, and not resale, by yourself, your family member(s), insureds, plan participants, employees, or beneficiaries, at any time from April 2011 through September 2018 in any of the following states or commonwealths:

Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia.

* With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER from June 4, 2011 through September 2018.

I further certify that I, or the Class Member I represent, did not ask to be excluded from the Class(es) in this Action and did not purchase such brand or generic Opana ER for purposes of resale. In addition, I am not (or the represented Class Member is not) among the persons or entities that have been excluded from the Class(es), which are listed above in Section B.

To the extent I have been given authority to submit this Claim Form by a Class Member on their behalf, and accordingly am submitting this Claim Form in the capacity of an authorized agent with authority to submit it by the Class Member, and to the extent I have been authorized to receive on behalf of this Class Member any and all amounts that may be allocated to it from the Settlement Fund, I certify that such authority has been properly vested in me and that I will fulfill all duties I may owe the Class Member. If amounts from the Settlement Fund are distributed to me and a Class Member later claims that I did not have the authority to claim and/or receive those amounts on their behalf, I and/or my employer will hold the Classes, counsel for the Classes, and the Claims and Notice Administrator harmless with respect to any claims made by the Class Member.

I hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois for all purposes connected with this Claim Form, including resolution of disputes relating to this Claim Form. I acknowledge that any false information or representations contained herein may subject me to sanctions, including the possibility of criminal prosecution. I agree to supplement this Claim Form by submitting documentary backup for the information provided in this form, upon request of the Claims and Notice Administrator.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge and that this Claim Form was executed this _____ day of _____, 20_____.**

| Signature | Print or Type Name |
|---|---|
| | |

Mail the completed Claim Form postmarked on or before **_____, 202_**, along with claim documentation, if available, to the following address, or submit the information online at the website below:

Opana ER Class Action
c/o A.B. Data, Ltd.
P.O. Box 173067
Milwaukee, WI 53217
Toll-Free Telephone: 1-877-888-6423
Website: www.OpanaERAntitrustLitigation.com

**Reminder Checklist:**

1. Please complete and sign the above Claim Form, or complete the online claim form. Attach or upload any documentation supporting your claim.

2. Keep a copy of your Claim Form and supporting documentation for your records.

3. If you would also like acknowledgement of receipt of your Claim Form, please complete the form online or mail this form via Certified Mail, Return Receipt Requested.

4. If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims and Notice Administrator at info@OpanaERAntitrustLitigation.com or via U.S. Mail at the address listed above.

# EXHIBIT F

| | |
|---|---|
| IN RE: OPANA ER ANTITRUST LITIGATION | MDL DOCKET NO. 2580 |
| | Lead Case No. 14-cv-10150 |
| This document relates to: | |
| END-PAYOR ACTIONS | |

### INSTRUCTIONS FOR SUBMITTING YOUR THIRD-PARTY PAYOR CLAIM FORM

A Third-Party Payor ("TPP") Class Member or an authorized agent can complete this Claim Form.  If both a Class Member and its authorized agent submit a Claim Form, the Claims and Notice Administrator will only consider the Class Member's Claim Form.  The Claims and Notice Administrator may request supporting documentation in addition to the documentation and information requested below.  The Claims and Notice Administrator may reject a claim if the TPP Class Member or their authorized agent does not provide all requested documentation in a timely manner.

If you are a Class Member submitting a Claim Form on your own behalf, you must provide the information requested in "**Section A – COMPANY OR HEALTH PLAN CLASS MEMBER ONLY**," in addition to the other information requested by this Claim Form.

If you are an **authorized agent** of one or more Class Members, you must provide the information requested in "**Section B – AUTHORIZED AGENT ONLY**," in addition to the other information requested by this Claim Form. **Do not submit a Claim Form on behalf of any Class Member unless that Class Member provided prior authorization to submit the Claim Form.**

If you are submitting a Claim Form only as an authorized agent of one or more Class Members, you may submit a separate Claim Form for each Class Member, OR you may submit one Claim Form for all such Class Members as long as you provide the information required for each Class Member on whose behalf you are submitting the form.

If you are submitting Claim Forms both on your own behalf as a Class Member AND as an authorized agent on behalf of one or more Class Members, you should submit one Claim Form for yourself, completing Section A and another Claim Form or Forms as an authorized agent for the other Class Member(s), completing Section B.

To qualify to receive a payment from the Settlement, you must complete and submit this Claim Form either on paper or electronically on the Settlement website, and you may need to provide certain requested documentation to substantiate your Claim.

Your failure to complete and submit the Claim Form postmarked or filed online by **\_\_\_\_\_, 2022**, will prevent you from receiving any payment from the Settlement.  Submission of this Claim Form does not ensure that you will share in the payments related to the Settlement.  If the Claims and Notice Administrator rejects or reduces your Claim, you may invoke the dispute resolution process described on pages 5-6.

CLAIM INFORMATION AND DOCUMENTATION REQUIREMENTS

Please provide the following information to support your Claim for purchases and/or reimbursement of brand or generic Opana ER (oxymorphone hydrochloride extended release) in the 5, 10, 20, 30, and 40 mg sold by Endo or Impax for use by your members, employees, insureds, participants, or beneficiaries, where such persons purchased the drug in a pharmacy or received brand or generic Opana ER (oxymorphone hydrochloride extended release) by mail-order prescription, in the following states:

Arizona*, California, Florida, Hawaii, Iowa, Maine, Massachusetts*, Michigan, Minnesota, Missouri, Mississippi*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia (the "Applicable States" from April 2011 through September 2018.

* *With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release) from June 4, 2011 through September 2018.*

Unique patient identification number or code
- a) Unique patient identification number or code.
- b) NDC Number (a list of NDC Numbers is included with this Claim Form) – *e.g.*, 00000-0000-00
- c) Fill Date or Date of Service – *e.g.*, 01/01/2011
- d) Location (State) of Service – *e.g.*, CA
- e) Amount Billed (not including dispensing fee) – *e.g.*, $40.00
- f) Amount Paid by TPP net of co-pays, deductibles, and co-insurance – *e.g.*, $20.00

If you are submitting a Claim Form on behalf of multiple Class Members, also provide the following information for each prescription:
- g) Plan or Group Name.
- h) Plan or Group FEIN – provide group number for each transaction.

Information submitted will be covered by the Protective Order entered by the Court. For your convenience, an exemplar spreadsheet containing these categories is attached at the end of this Claim Form.

In addition, an Excel spreadsheet can be downloaded from the website, www.OpanaERAntitrustLitigation.com. Please use this format if possible. Following the exemplar spreadsheet, the website provides a list of the NDCs that the Claims and Notice Administrator will consider. If possible, please provide the electronic data in Microsoft Excel, ASCII flat file pipe "|", tab-delimited, or fixed-width format.

Please provide as much of the information requested above as possible. Transaction data supporting claims is mandatory for claims of $100,000 or more, although the Claims and Notice Administrator may also require transaction data for claims of less than $100,000, so keep related transaction data and any other documentation supporting your Claim (*e.g.*, invoices) in case the Claims and Notice Administrator requests it later. If your Claim is for less than $100,000, you should still provide the transaction data with your Claim submission if you can. If, after an audit of your Claim, the Claims and Notice Administrator still has questions about your Claim and you have not provided sufficient substantiation of your Claim, the Claims and Notice Administrator may reject your Claim.

Please contact the Claims and Notice Administrator at 1-877-868-6810 with any questions about the required claims information or documentation.

**MUST BE POSTMARKED ON OR BEFORE, OR SUBMITTED ONLINE BY _____, 202_**

*Opana ER Settlement*

<u>**THIRD-PARTY PAYOR CLAIM FORM**</u>

Use Blue or Black Ink Only

**ATTENTION: THIS FORM IS ONLY TO BE FILLED OUT ON BEHALF OF A THIRD-PARTY PAYOR (OR AN AUTHORIZED AGENT) AND NOT INDIVIDUAL CONSUMERS.**

- Complete Section A only if you are filing as an individual TPP Class Member.
- Complete Section B only if you are an authorized agent filing on behalf of one or more TPP Class Members.

**Section A: Company or Health Plan Class Member Only**

Company or Health Plan Name

Contact Name

Address 1

Address 2                                                               Floor/Suite

City                                                State                Zip Code

Area Code - Telephone Number                        Tax Identification Number

Email Address

List other names by which your company or health plan has been known or other Federal Employer Identification Numbers ("FEINs") it has used since April 1, 2011.

☐ Health Insurance Company/HMO          ☐ Self-Insured Employee Health or Pharmacy Benefit Plan

☐ Self-Insured Health & Welfare Fund

☐ Other (Explain)

**Section B: Authorized Agent Only**

As an authorized agent, please check how your relationship with the Class Member(s) is best described (you may be required to provide documentation demonstrating this relationship):

☐  Third-Party Administrator or Administrative Services Only Provider

☐  Pharmacy Benefits Manager

☐  Other (Explain): _____

Authorized Agent's Company Name
_____

Contact Name
_____

Address _____  Floor/Suite _____

City _____  State _____  Zip Code _____

Area Code - Telephone Number _____  Authorized Agent's Tax Identification Number _____

Email Address _____

Please list the name and FEIN of every Class Member (*i.e.,* Company or Health Plan) for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Claim Form as necessary).  Alternatively, you may submit the requested list of Class Member names and FEINs in an electronic format, such as Excel or a tab-delimited text file.  Please contact the Claims and Notice Administrator to determine what formats are acceptable.

| CLASS MEMBER'S NAME | CLASS MEMBER'S FEIN |
|---|---|
| | |
| | |
| | |
| | |

**Section C: Purchase Information**

Please type or print in the box below, the total amount paid or reimbursed for brand or generic Opana ER (oxymorphone hydrochloride extended release), in the 5, 10, 20, 30, and 40 mg strengths, sold by Endo or Impax net of co-pays, deductibles, and co-insurance for use by your members, employees, insureds, participants, or beneficiaries, where such persons purchased the drug in a pharmacy or received brand or generic Opana ER (oxymorphone hydrochloride extended release) by mail-order prescription:

> Arizona\*, California, Florida, Hawaii, Iowa, Maine, Massachusetts\*, Michigan, Minnesota, Missouri, Mississippi\*, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and the District of Columbia from April 2011 through September 2018.

*\* With respect to Arizona, Massachusetts, and Mississippi unjust enrichment claims, Class Members must have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of brand or generic Opana ER (oxymorphone hydrochloride extended release) from June 4, 2011 through September 2018.*

| **TOTAL AMOUNT YOU PAID FOR BRAND OR GENERIC OPANA ER (OXYMORPHONE HYDROCHLORIDE EXTENDED RELEASE), 5, 10, 20, 30, 40 MG SOLD BY ENDO OR IMPAX – NET OF CO-PAYS, DEDUCTIBLES, AND CO-INSURANCE** | $ |
|---|---|

**Authorized Agents Only:** For each Class Member for whom you are submitting this Claim Form, please provide the above information with respect to purchases made by the Class Member's members, employees, insureds, participants, or beneficiaries. If you are submitting claims for multiple Class Members, please provide, separately for each Class Member, as much of the transaction data and other information and documentation requested in the "CLAIM INFORMATION AND DOCUMENTATION REQUIREMENTS" section of the instructions above as possible. Fill out the box above with the combined amounts paid by all Class Members for whom you are submitting this Claim Form, net of co-pays, deductibles, and co-insurance.

**Section D: Proof of Payment and Disputes Regarding Claim Amounts**

Please provide as much of the information requested above as possible. Transaction data supporting claims is mandatory for claims of $100,000 or more, although the Claims and Notice Administrator may also require transaction data for claims of less than $100,000, so keep related transaction data and any other documentation supporting your Claim (*e.g.*, invoices) in case the Claims and Notice Administrator requests it later. If your Claim is for less than $100,000, you should still provide the transaction data with your Claim submission if you can. If, after an audit of your Claim, the Claims and Notice Administrator still has questions about your Claim and you have not provided sufficient substantiation of your Claim, the Claims and Notice Administrator may reject your Claim.

If the Claims and Notice Administrator rejects or reduces your claim and you believe the rejection or reduction is in error, you may contact the Claims and Notice Administrator to request further review. If the dispute concerning your claim cannot be resolved by the Claims and Notice Administrator and Class Counsel, you may request that the Court review your claim.

To request Court review, you must send the Claims and Notice Administrator a signed written statement that (a) states your reasons for contesting the rejection or payment determination regarding your claim; and (b) specifically states that you "request that the Court review the determination regarding this claim." You must include all documentation supporting your argument(s). The Claims and Notice Administrator and Class Counsel will present the dispute to the Court for review, which may include public filing with the Court of your claim and the supporting documentation. Please note: Court review should only be sought if you disagree with the Claims and Notice Administrator's determination regarding your claim.

## Section E: Certification

I have read and am familiar with the contents of the Instructions accompanying this Claim Form. I certify that the information I have set forth in the above Claim Form and in any documents attached by me are true, correct, and complete to the best of my knowledge. I certify that I, or the Class Member(s) I represent, paid or reimbursed for brand or generic Opana ER (oxymorphone hydrochloride extended release) in 5, 10, 20, 30, and 40 mg strengths sold by Endo or Impax in the total amount set forth above for use by members, employees, insureds, participants, or beneficiaries, where such persons purchased the drug in a pharmacy or received brand or generic Opana ER (oxymorphone hydrochloride extended release) by mail-order prescription, in the Class States listed in Section C.

I further certify that I, or the Class Member(s) I represent, did not seek to be excluded ("opt out") from the Classes in this Action. Nor did I, or the represented Class Member(s), pay for or provide reimbursement of brand or generic Opana ER (oxymorphone hydrochloride extended release) for purposes of resale. In addition, I (or the represented Class Member(s)) are not among the entities excluded from the Classes, include the following: Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates; Persons or entities whose only purchases of or reimbursements or payments for brand or generic Opana ER (oxymorphone hydrochloride extended release)were of or for the generic Opana ER product sold by Actavis South Atlantic LLC or its successors; All governmental entities and Medicare Part D plans and beneficiaries, except for non-Medicare Part D government-funded employee benefit plans; All persons or entities who purchased Opana ER for purposes of resale or directly from Defendants or their affiliates; Fully insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members); Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs); Any consumer who purchased only Endo's brand version of Opana ER after the AB-rated generic version became available in January 2013 (i.e., "brand loyalists"); Consumers with copay insurance plans who purchased only generic versions of Opana ER (i.e., "generic-only copay consumers"); Pharmacy Benefit Managers; All Counsel of Record; or the Court, Court personnel and any member of their immediate families.

I further certify I have provided all of the information requested above to the extent I have it.

To the extent I have been given authority to submit this Claim Form by one or more Class Members on their behalf, and accordingly am submitting this Claim Form in the capacity of an authorized agent with authority to submit it, and to the extent I have been authorized to receive on behalf of the Class Member(s) any and all amounts that may be allocated to them from the Settlement Fund, I certify that such authority has been properly vested in me and that I will fulfill all duties I may owe the Class Member(s). If amounts from the Settlement Fund are distributed to me and a Class Member later claims that I did not have the authority to claim and/or receive such amounts on its behalf, I and/or my employer will hold the Classes, counsel for the Classes, and the Claims and Notice Administrator harmless with respect to any claims made by the Class Member.

I hereby submit to the jurisdiction of the United States District Court for the Northern District of Illinois for all purposes connected with this Claim Form, including resolution of disputes relating to this Claim Form. I acknowledge that any false information or representations contained herein may subject me to sanctions, including the possibility of criminal prosecution. I agree to supplement this Claim Form by furnishing documentary backup for the information provided herein, upon request of the Claims and Notice Administrator.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge and that this Claim Form was executed this _____ day of _____, 20_____.**

Signature

Position/Title

Print Name

Date

Mail the completed Claim Form to the address below, along with any supporting documentation as described in the CLAIM INFORMATION AND DOCUMENTATION INSTRUCTIONS on pages 1-2 above, postmarked on or before **_____, 202_**, or submit the information online at the website below by that date:

Opana ER Class Action

c/o A.B. Data, Ltd.

P.O. Box 173067

Milwaukee, WI 53217

Toll-Free Telephone: 1-877-888-6423

Website: www.OpanaERAntitrustLitigation.com

**REMINDER CHECKLIST:**

1. Please complete and sign the above Claim Form. Attach or upload any documentation supporting your claim.
2. Keep a copy of your Claim Form and supporting documentation for your records.
3. If you would also like acknowledgement of receipt of your Claim Form, please complete the form online or mail this form via Certified Mail, Return Receipt Requested.
4. If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims and Notice Administrator at info@OpanaERAntitrustLitigation.com or via U.S. Mail at the address listed above.